## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| JOHN DOE | |
| Plaintiff, | Civil Action No.: 4:22-cv-00297 |
| vs. | |
| TEXAS CHRISTIAN UNIVERSITY, | |
| VICTOR J. BOSCHINI, JR, *in his official capacity.* | |
| Defendants. | |

## REPLY TO DEFENDANTS' RESPONSE AND BRIEF IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION

Plaintiff John Doe ("Doe") files this Reply to Defendants Texas Christian University's ("TCU") and Victor J. Boschini, Jr.'s Response and Brief in Opposition to Plaintiff's Emergency Motion.

**I.    TCU's Violation of the Title IX Regulations Constitute Procedural Irregularities that Cast Articulable Doubt as to the Accuracy of the Proceeding and Evidence Gender Bias.**

TCU's procedural irregularities in violating the Title IX Regulations[1] by (A) excluding exculpatory evidence and (B) consolidating the Allegations[2] into one hearing create articulable doubt as to the accuracy of the proceeding and evidence gender bias in satisfaction of the erroneous outcome test. *See Pacheco v. St. Mary's Univ.*, 2017 WL 2670758, at *15 (W.D. Tex. 2017); *Doe*

---

[1] 34 C.F.R § 106.45.
[2] All undefined capitalized terms as used herein shall have the same meaning given to such terms in Doe's Emergency Motion and Brief in Support thereof.

*v. Marymount Univ.*, 297 F. Supp. 3d 573, 584-85 (E.D. Va. 2018) ("The procedural deficiencies alleged by Doe are sufficient, standing alone, to cast doubt on the accuracy of the outcome of Doe's Title IX hearing."); *Norris v. Univ. of Colorado, Boulder*, 362 F. Supp. 3d 1001, 1012 (D. Colo. 2019) (articulable doubt cast by procedural irregularities); *Doe v. Baum*, 903 F.3d 575, 585–86 (6th Cir. 2018) ("because Doe alleged that the university did not provide an opportunity for cross-examination even though credibility was at stake in his case, he has pled facts sufficient to cast some articulable doubt…."); *Doe v. Oberlin Coll.*, 963 F.3d 580, 587 (6th Cir. 2020) ("Procedural irregularities provide strong support for Doe's claim of bias here.")

### A.  Exclusion of Exculpatory Evidence in Violation of Title IX Regulations

 "Without my consent, and despite my verbal objections over and over again, *he raped me on my campus*"—that was Roe's statement in her response to the final investigative report she submitted on January 24, 2022, and which she reasserted at the panel hearing four days later. Appx. 183, ECF No. 15. As rebuttal, Doe attempted to introduce the "I don't think its rape [Doe]" text (the Exculpatory Text) Roe sent Doe on the very same date of the Colby Hall incident (Allegation 1).[3] Despite the Exculpatory Text's relevancy and direct contradiction of Roe's Allegation 1, Judge Ruvolo (a retired California state court judge appointed by TCU to conduct the hearing) improperly excluded the Exculpatory Text along with other evidence, which the panel, if they had such evidence before them, should have found Doe innocent.

Doe was prohibited from  introducing exculpatory rebuttal evidence to counter Roe's testimony, all of which Doe submitted prior to the hearing. TCU's interpretation of its own rules

---

[3] Despite TCU's assertion that Roe's statement was merely her "thought" (initially) that Doe inserting his fingers into her vagina without her consent would not be considered rape, the quote that "he raped me on my campus" certainly clears up any misconception about what she considered to be rape. Defs' Resp. 11, ECF N. No. 26. If there was confusion before, this late breaking statement on Roe's part makes her prior contemporaneous admission that Doe had not raped her, even more relevant.

violates the Title IX Regulations, which expressly prohibit evidentiary rules that limit evidence gathered or presented *prior* to the hearing as explained further below.  TCU's evidentiary rules provide that "[a]ny evidentiary responses made to the Office of Institutional Equity during the investigation, as provided in Policy 1.009, ***or to the Dean of Students when reviewing the final Investigative Report*** and the other party's responses to the investigative materials and the preliminary Investigative Report, will be considered by the panel chair at the beginning of the Title IX Conduct Panel hearing. The admissibility of this disputed evidence will be resolved just as relevancy determinations are made…. The panel chair shall instruct the panelists to disregard any information that is deemed inadmissible."  Appx. 49, ECF No. 15 (emphasis added).  On its face, the foregoing rule appears to allow for the admission of evidence provided in response to the final investigative report. Judge Ruvolo's exclusion of evidence therefore contradicted TCU's own rules regarding the admission of relevant evidence and worked to prejudice Doe's defense. Judge Ruvolo ruled that the exclusion of the "[a]dditional texts and digital photos offered by Respondent which allegedly were exchanged with Complainant throughout their relationship and including a period of time after the alleged incidents were excluded … *because any relevance of the proffered evidence was more prejudicial than probative of a material fact* (Dean of Students 5.7, Title IX Conduct Process, 5.7.10.)." Appx. 253, ECF No. 15. That evidentiary ruling violated the Title IX Regulations in light of the commentary to those regulations.[4] The only thing that Doe's proffered evidence could have been prejudicial to was Roe's allegation that Doe had raped her.

---

[4] **Relevance is the standard that these final regulations require, and any evidentiary rules that a recipient chooses must respect this standard of relevance. For example, a recipient may not adopt a rule excluding relevant evidence because such relevant evidence may be unduly prejudicial, concern prior bad acts, or constitute character evidence.**  Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30026-01, at  30248 (emphasis added).

Judge Ruvolo's ruling to exclude Doe's evidence because it was unavailable at the time of the investigation further contradicts Title IX Regulations and constitutes a procedural irregularity evidencing gender bias. Title IX's preamble directly addresses the issue of whether recipient schools may limit the hearing evidence to consideration only of evidence previously included in the investigation report and answered that they could not.[5] Schools can only place limits on evidence introduced at the hearing that was not gathered and presented *prior* to the hearing.

### B.  Consolidation of the Allegations in Violation of the Title IX Regulations

TCU consolidated the Allegations in violation of the Title IX Regulations[6] and to Doe's detriment, which resulted in another procedural irregularity evidencing gender bias.  TCU argues that argument has "incomprehensible" because TCU found in favor of Doe with respect to Allegation 2. Defs' Resp. 10, ECF No. 26. However, the Court in *Doe v. Regents of Univ. of California*, 23 F.4th 930, 941 (9th Cir. 2022) rejected that same concept, stating "the fact that the Regents ultimately found Doe not responsible for twelve of the thirteen allegations made against him does not make the allegations of irregularities in the proceedings any less relevant to our inquiry."

---

[5] The 2020 Title IX Rule's preamble states in pertinent part:

… the Department disagrees that properly conducted hearings will become a springboard to introduce new evidence, derail hearings by embarrassing the parties, or require hearing panels to seek out extensive legal advice…. Thus, recipients may decide whether or how to place **limits on evidence introduced at a hearing that was not gathered and presented <u>prior</u> to the hearing**, and rules controlling the conduct of participants to ensure that questioning is done in a respectful manner. Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30026-01, at  30357 & 30358
…
Similarly, recipients may adopt evidentiary rules (that also must apply equally to both parties), but any such rules must comport with all provisions in § 106.45, such as the obligation to summarize all relevant evidence in an investigative report, the obligation to evaluate all relevant evidence both inculpatory and exculpatory, the right of parties to gather and present evidence including fact and expert witnesses, the right to pose relevant cross-examination questions, and the rape shield provisions that deem sexual behavior evidence irrelevant subject to two exceptions. Thus, a recipient's additional evidentiary rules may not, for example, exclude relevant cross-examination questions even if the recipient believes the questions assume facts not in evidence or are misleading.  *Id.*  at  30361 (emphasis added).

[6] 34 C.F.R § 106.45(b)(4).

**II.    TCU's Response Fails to Refute Doe's Evidence of (A) Articulable Doubt on the Accuracy of the Outcome of the Proceeding and (B) Gender Bias.**

TCU abruptly states—without support or merit—that Doe's "lawsuit is perhaps the weakest" in the "line of cases" filed across the country involving students disciplined for violating institutional sexual misconduct policies. Defs' Resp. 1, ECF No. 26. TCU acknowledges that factors considered under the erroneous outcome test include evidence of "'particular evidentiary weaknesses behind the finding such as motive to lie on the part of complainant or witnesses, particularized strengths of the defense,' 'procedural flaws,' or 'statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender,'" yet it fails to either address or refute Doe's evidence of those factors. *Id.* at 9 (quoting *Pacheco v. St. Mary's Univ.*, 2017 WL 2670758, at *15 (W.D. Tex. 2017)). Consequently, TCU's "weakest case ever" allegation quickly falls apart.

**A.  Articulable Doubt**

The case law supports that Doe's evidence creates articulable doubt. For example, TCU ignores Doe's evidence of Roe's jealousy and motive to lie, but *Klocke v. Univ. of Tex. at Arlington*, 938 F.3d 204, 210 (5th Cir. 2019), *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994); *Oliver v. Univ. of Tex. Sw. Med. Sch.*, No. 3:18-CV-1549-B, 2019 WL 536376, at *17-18 (N.D. Tex. Feb. 11, 2019) and *Pacheco*, 2017 WL 2670758, at *15 all state that a complainant's motive to lie can create articulable doubt. TCU likewise ignores the strengths of Doe's case—such as the inconsistencies in Roe's statements, exculpatory texts, Roe's confusion of dates, her inability to recall facts, and her continued engagement in and desire to have sex with Doe after the Colby Hall incident—yet those same foregoing cases hold that the strengths of a disciplined student's defense can create articulable doubt. *See also Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 584-85 (E.D. Va. 2018) (articulable doubt cast by the omission of exculpatory evidence,

5

statements by Roe that were "dishonest, inconsistent and factually improbable" and Roe's behavior immediately following the incident that was inconsistent with her allegation that she had just been brutally sexually assaulted).

TCU further ignores the unexplained discrepancies in the Deliberative Report in finding Doe responsible for the Colby Hall incident, but not the Austin incident. The case law shows that such flaws can create articulable doubt. For example, in *Doe v. Miami Univ.*, 882 F.3d 579, 592–93 (6th Cir. 2018) the Court found articulable doubt cast by the fact that (1) the hearing panel failed to explain how it resolved inconsistencies in the complainant's testimony; and (2) "the panel's terse statement does not elucidate why it found the oral sex to be non-consensual when it appears to have found that the digital penetration was consensual."

## B. Gender Bias

TCU disregards Doe's evidence of gender bias. For example, case law is clear that statements by members of the disciplinary tribunal and statements by pertinent university officials can show evidence of gender bias. *See Pacheco v. St. Mary's Univ.*, 2017 WL 2670758, at \*15 (W.D. Tex. 2017). TCU, however, conclusively states that with regard to Doe's evidence of Jeremy Steidl's and Jessica Ledbetter's (Co-Panel Chairs at Doe's panel hearing) gender biased statements to Doe, "Obviously fatal to Plaintiff's arguments is the fact that neither Steidl nor Ledbetter were part of the Hearing Panel and neither participated in the decision-making." In fact, the Second Circuit expressly rejected that same argument in *Doe v. Columbia Univ.*, 831 F.3d 46, 58 (2d Cir. 2016) as follows:

> The argument is not persuasive. Although Sessions-Stackhouse was not the decision-maker, she allegedly had significant influence, perhaps even determinative influence, over the University's decision. According to Plaintiff's allegations, Sessions-Stackhouse was appointed by Columbia to the role of Title IX investigator with the expectation that her investigations and reports would inform the University's decisions. The Complaint plausibly alleges that her report advocating discipline influenced the University's decision to sanction John Doe.

6

> **The fact that Sessions-Stackhouse was not the decision-maker does not render sex bias in her performance of her duties irrelevant to liability of the University.**

(Emphasis added); *see also Doe v. Regents of Univ. of California*, 23 F.4th 930, 940 (9th Cir. 2022) ("The FAC enumerates several other allegations of irregular proceedings during the appeal hearing itself, including that "**Associate Dean Rush evidenced gender bias when she falsely stated that the two-year suspension was required by SVSH Policy for any type of dating violence**") (emphasis added). That false statement of policy is akin to Steidl's false statement to Doe that he was ineligible for enrollment in the Spring semester because of the pending Title IX complaint.

Further, the case law supports that Doe's evidence of TCU's "Believe Survivors" mentality and the equating of complainants to survivors as reflected on the TCU website, its CARE Facebook page, panelist Reece Harty's tweets, TCU 360 articles establishes gender bias. For example, in *Doe v. Purdue Univ*., 928 F.3d 652, 656 (7th Cir. 2019*)*, the Court found that the inference of gender bias was "strengthened by a post that CARE put up on its Facebook page during the same month that John was disciplined: an article from The Washington Post titled 'Alcohol isn't the cause of campus sexual assault. Men are,'" which CARE advertised to the community. TCU, however, misleadingly infers that "courts have routinely rejected this exact theory [institutional bias in favor of all complainants] in erroneous-outcome cases…." Defs' Resp. 14, ECF No. 26. For example, the court in *Austin v. Univ. of Oregon*, 205 F. Supp. 3d 1214, 1225 (D. Or. 2016), aff'd, 925 F.3d 1133 (9th Cir. 2019) (which TCU relies on for support) did not hold that "merely alleging that the University is biased against 'alleged perpetrators' 'does not implicate gender discrimination simply because those alleged perpetrators are typically male' because 'survivors and perpetrators alike may be male or female.'" Defs' Resp. 14, ECF No. 26. Rather, those quotes

7

are simply a restatement of the Defendants' argument! *Austin,* 205 F. Supp. 3d at 1225. **Collectively**, the evidence of the procedural irregularities and that TCU promotes "Believe Survivors," TCU equates complainants with "survivors" and those involved in the panel hearing showed bias in favor of Roe, a woman, indicates that gender bias played a role in the outcome of the proceeding.

## III.   Doe Will Be Irreparably Harmed Absent a TRO

### A.  Status Quo

TCU claims Doe "does not seek to preserve the status quo via TRO" and that Doe seeks to "upset the status quo." Defs' Resp. 6-7, ECF No. 26. According to the Fifth Circuit in the oft cited case of *Canal Authority of State of Florida v. Calloway*, 489 F.2d 567 (5th Cir. 1974):

> It is often loosely stated that the purpose of a preliminary injunction is to preserve the status quo. See, e.g., Exhibitors Poster Exchange, Inc. v. National Screen Service Corp., 5 Cir. 1971, 441 F.2d 410. Indeed, some such notion may have influenced the district judge in this case, since he wrote of a 'status quo that would normally be entitled to temporary protection.' It must not be thought, however, that there is any particular magic in the phrase 'status quo.' The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits.

Id. at 576.

In the Fifth Circuit, "status quo" refers to the "last uncontested status of parties." *Yeargin Const. Co. v. Parsons & Whittemore Ala. Mach. & Servs. Corp.*, 609 F.2d 829, 931 (5th Cir. 1980) (citing *Wash. Capitols Basketball Club, Inc.*, 419 F.2d 472, 476 (9th Cir. 1969); *Domain Protection, LLC v. Sea Wasp, LLC*, 2019 WC 3219939 (E.D. Tex. 2019). Here, Doe is not seeking to alter the status quo, rather he seeks to preserve the last uncontested status of the parties by restraining TCU from enforcing his suspension.

### B.  Irreparable Harm

TCU argues that Doe should not be granted a TRO because "the Fifth Circuit has never recognized irreparable harm under such circumstances," but neither has the Fifth Circuit precluded the remedy under Doe's circumstances. Defs' Resp. 17, ECF No. 26.  The Federal District Court in *King v. DePauw University*, 2014 WL 4197507 (S.D. Ind. 2014)[7] explained why a college student in Doe's position will suffer irreparable harm:

> The Court also finds that King has demonstrated that he will suffer irreparable harm if an injunction is not entered. If King is not permitted to complete this upcoming semester at DePauw—even if, as DePauw asserts, he could choose to attend another university and ultimately graduate on time—he will forever have either a gap or a senior-year transfer on his record. The Court finds it inevitable that he would be asked to explain either situation by future employers or graduate school admissions committees, which would require him to reveal that he was found guilty of sexual misconduct by DePauw. Successfully seeing this lawsuit to its conclusion could not erase the gap or the transfer ; the question will still be raised, and any explanation is unlikely to fully erase the stigma associated with such a finding. Money damages would not provide an adequate remedy at that point; DePauw's disciplinary finding—even if determined to have been arbitrary or made in bad faith—would continue to affect him in a very concrete way, likely for years to come.

Id. at *13.  *See also Doe v. Rector & Visitors*, 2019 U.S. Dist. LEXIS 108990 at *18 (finding irreparable harm because the penalty could negatively impact educational and employment opportunities"); *Doe v. Univ. of Mich.*, 325 F. Supp. 3d 821, 826 (E.E. Mich. 2018) (granting preliminary injunction where sexual assault allegations may impugn a student's reputation and integrity); *Ritter v. Oklahoma*, No. 5:16-cv-00438, 2016 U.S. Dist. LEXIS 60193, at *8 (W.D. Okla. May 6, 2016) (irreparable harm found because the "loss of educational and career opportunities [plaintiff] will encounter if not reinstated and allowed to graduate is not readily compensable in money damages"); *See Doe v. Baum,*  No. 16-13174, 2019 U.S. Dist. LEXIS 169625, at *41 (E.D.

---

[7] This case was cited by TCU in the Response, albeit for a different proposition.

9

Mich. Sep. 30, 2019) ("risk to the plaintiff's reputation due to prospective disclosure of the wrongfully imposed disciplinary sanctions readily suggests a prospect of irreparable harm").

Dated: April 19, 2022

Respectfully Submitted,

| | | |
|---|---|---|
| /s/ *Brian Roark* | /s/ *Bryan D. Bruner* | /s/ *H. Dustin Fillmore, III* |
| Brian Roark (*pro hac vice*) | Bryan D. Bruner | H. Dustin Fillmore, III |
| State Bar No. 00794536 | State Bar No. 03252475 | State Bar No. 06996010 |
| brian@brianroark.com | bbruner@bjplaw.com | dusty@fillmorefirm.com |
| BOTSFORD & ROARK | Lynne B. Frank | THE   FILLMORE   LAW |
| 1307 West Avenue | State Bar No. 24087215 | FIRM, L.L.P. |
| Austin, Texas 78701 | Lfrank@bjplaw.com | 201 Main Street, Suite 801 |
| Telephone: (512) 476 – 1900 | BRUNER & BRUNER, P.C. | Fort Worth, Texas 76102 |
| Fax: (512) 479 – 8040 | 3700 W. 7th Street | Telephone: (817) 332-2351 |
| | Fort Worth, Texas 76107 | Facsimile: (817) 870-1859 |
| | Telephone: (817) 332-6633 | |
| | Facsimile: (817) 332-6619 | |

*- Attorneys for John Doe -*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served on the following counsel of record via the Court's CM/ECF electronic filing system in accordance with the Federal Rules of Civil Procedure on April 19, 2022.

Alex E. Brakefield (alex.brakefield@huschblackwell.com)
Samuel P. Rajaratnam (sammy.rajaratnam@huschblackwell.com)
Caidi Davis (caidi.davis@huschblackwell.com)
Scott D. Schneider (scott.schneider@huschblackwell.com)
HUSCH BLACKWELL LLP
1900 N. Pearl Street, Suite 1800
Dallas, Texas 75201

*Attorneys for Defendants*

/s/ Brian Roark