IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

| | |
|---|---|
| JOHN DOE, Plaintiff, | ) CASE NO. 4:22-cv-00297-O |
| VS. | ) FORT WORTH, TEXAS |
| TEXAS CHRISTIAN UNIVERSITY, VICTOR J. BOSCHINI, JR., in his official capacity, Defendants. | ) APRIL 26, 2022 |

VOLUME 1 of 1
TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE REED C. O'CONNOR
UNITED STATES DISTRICT COURT JUDGE

A P P E A R A N C E S:

FOR THE PLAINTIFF:

BRIAN ROARK
FRANCISCO MARTINEZ
BOTSFORD AND ROARK
1307 West Avenue
Austin, Texas 78701
Telephone: 512.476.8040

BRYAN BRUNER
BRUNER & BRUNER
3700 West 7th Street
Fort Worth, Texas 76107
Telephone: 817.332.6633

H. DUSTIN FILLMORE, III
THE FILLMORE LAW FIRM, LLP
201 Main Street, Suite 801
Fort Worth, Texas 76102
Telephone: 817.870.1859

A P P E A R A N C E S:

FOR THE DEFENDANTS: SCOTT SCHNEIDER
SAMUEL RAJARATNAM
CAIDI DAVIS
HUSCH BLACKWELL, LLP
111 Congress Avenue, Suite 1400
Austin, Texas 78701
Telephone: 512.479.1101

I N D E X

PLAINTIFF's WITNESSES:

DR. JESSICA LEDBETTER

Direct Examination by Mr. Roark...............09

Cross-Examination by Mr. Rajartnam............69

Redirect Examination by Mr. Roark.............99

Recross-Examination by Mr. Rajartnam.........104

JOHN DOE

Direct Examination by Mr. Roark..............105

Cross-Examination by Mr. Schneider...........124

Redirect Examination by Mr. Roark............177

Recross-Examination by Mr. Schneider.........185

JEREMY STEIDL

Direct Examination by Mr. Roark..............185

Cross-Examination by Mr. Rajartnam...........193

Redirect Examination by Mr. Roark............202

REECE HARTY

Direct Examination by Mr. Roark...............207

Cross-Examination by Mr. Schneider............231

DEFENDANTS' WITNESSES:

(None.)

E X H I B I T S

PLAINTIFF'S EXHIBITS:

38 - Dr. Ledbetter's Dissertation..................65

(All plaintiff's exhibits from their appendix were admitted.)

Reporter's Certificate..............................280
Word Index.................................... 281

P R O C E E D I N G S

APRIL 26, 2022

oOo

THE COURT: Please be seated. All right. This is case number 4:22-cv-297, Doe v. Texas Christian University.

All right. Who's here for the plaintiff?

MR. ROARK: Brian Roark for John Doe, your Honor.

MR. BRUNER: Bryan Bruner, local counsel for the plaintiff.

THE COURT: Very good.

MR. FILLMORE: Dusty Fillmore, local counsel for plaintiff.

THE COURT: Very good. Thank you.

Who do we have over here?

MR. SCHNEIDER: Scott Schneider on behalf of Texas Christian University.

THE COURT: All right.

MR. RAJARATNAM: And Samuel Rajaratnam, your Honor, also on behalf of defendant.

THE COURT: Okay. Very good.

MS. DAVIS: Caidi Davis also on behalf of defendant.

THE COURT: Very good.

All right. So are you ready to get started?

MR. ROARK: I am, your Honor.

THE COURT: Okay. Do you want to call your witnesses?

MR. ROARK: Absolutely.

Judge, we call Jessica Ledbetter.

THE COURT: Very good.

MR. ROARK: And Judge, we would also like to invoke the rule.

THE COURT: Okay. Why don't you all have your witnesses come in here and I will swear them all in.

Just fan all out there. Just come on up here in front just so our court reporter can see and hear you all. If you all would raise your right hand to be sworn.

(The witnesses were sworn in.)

THE COURT: Why don't we start with you, sir. What is your name?

MR. STEIDL: Jeremy Steidl.

THE COURT: Did you get that, Zoie?

THE COURT REPORTER: Yes. Jeremy Steidl.

MS. LEDBETTER: Jessica Ledbetter.

MR. HARTY: Reece Harty.

MR. RUSSELL: Michael Russel.

THE COURT: Tell me your name.

MR. DOE SR: John Doe's dad.

MR. DOE: John Doe.

THE COURT: Okay. Very good.

Go ahead and give me your name, and we can have them seal it.

MR. DOE SR: XXXX XXXX.

THE COURT: XXXX XXXX.

MR. DOE: XXXX XXXX.

THE COURT: Junior, I guess?

MR. DOE SR: XXXX and XXXX.

THE COURT: Gotcha. Okay. Very good.

So the rule has been invoked which means you cannot talk about your testimony with anyone, and you cannot be in the courtroom when someone else is testifying.

You can talk to the lawyers for either side during this process or their investigators. But when someone else is talking to the lawyers, or their investigators, you need to absent yourself from that conversation.

The testimony needs to be your testimony, uninfluenced from this point forward, not by what you may hear of the testimony or the discussion from someone else.

You are not excluded from the courtroom, sir. So you can remain here with your attorneys.

And is there a TCU representative here?

MR. SCHNEIDER: The TCU representative is Lee Tyner general counsel, your Honor.

THE COURT: Okay. Very good. So if you all would wait out in the hall and remember these instructions.

And, ma'am, would you come to the witness stand?

MS. LEDBETTER: Yes.

MR. ROARK: Judge, as a procedural matter, this is Francisco Martinez.

THE COURT: Thank you.

MR. ROARK: He is not licensed in federal court. He's not going to have a speaking role in any way. Do you mind if he stays here?

THE COURT: Yes. That will be fine.

MR. ROARK: Judge, do you prefer me at the podium?

THE COURT: I do, yes.

MR. ROARK: May I proceed, your Honor?

THE COURT: Yes. Thank you.

MR. ROARK: Thank you, your Honor.

DIRECT EXAMINATION

(BY MR. ROARK:)

Q. Would you please state your name for the record.

A. Sure. It's Dr. Jessica Ledbetter.

Q. And Dr. Ledbetter, what is your role at TCU?

A. I serve as Assistant Dean of Students at TCU in the Dean of Students office.

Q. And what does that mean in a practical matter, at least in relation to Title IX cases, different conduct cases?

A. Absolutely. So my role is that I help students

with matters of concern related to conduct, as well as CARE issues. So I help students deal with crises, personal, family, academic crises.

As it relates to Title IX and policies, I help write student policies for student conduct, as well as CARE policies.

Related to Title IX, I've helped redraft internal policies and processes, as well as our Student Code of Conduct. I also served on the committee that helped rewrite the Student Code of Conduct related to the changes in the Title IX federal regulation recently.

Q. Okay. And so, because of those roles, and as you said, the drafting, making sure that TCU's rules are compliant with the new federal rules in 2020, you are very familiar with the federal rules, is that correct?

A. I am, yes.

Q. And obviously, you're very familiar with TCU's rules; correct?

A. Yes.

Q. You are also kind of, I'm going to refer to it as a hub for contact, when an individual, specifically in this case, Mr. Doe, is going through this process; is that correct?

A. Yes. Part of my role is to be an advocate for the process and a facilitator. So I communicate with the

parties, the panelists to make sure that everyone has the materials that they need to in order to make sure the process is fair and prompt.

Q. And part of, just the logistics of that, is that you respond to emails, for instance?

And if Mr. Doe had a question prior to having an advisor, you would email him certain notices, those types of things, is that accurate?

A. That's correct, yes.

Q. And once he had advisors involved, the prior advisor and myself would also contact you, Mr. Doe, of course, on the email, and we would correspond about a variety of things, is that correct?

A. A little bit. I would also clarify that TCU's relationship is with the student and our policy requires that we really communicate with the student, not the advisor directly.

I remember you and I having communication related to this case in that matter telling you, as well as Jane Roe's counsel, that our primary responsibility is to talk with the students directly.

So whenever I would have communication with an advisor, I would also make sure that the student was part and parcel of what communication was going back and forth. Our preference is that the student would communicate with us

directly.

Q. Right.

And part of the reason for that is when these rules were enacted originally when the Dear Colleague letter came out in 2011, the purpose was not to make everything in the courtroom, but it was educational for the students; is that correct?

A. Yes, that's correct. The primary purpose of the conduct process is one of education. The goal is to help develop and educate students in support of our institutional mission. The goal is to help students develop to be ethical leaders and responsible citizens. The conduct process is part and parcel of that.

Q. Right.

And the process is far more informal than it would be in a court of law; is that correct?

A. That's the goal, yes.

Q. And also, obviously, when you're dealing directly with the students, you're dealing with, in some cases, teenagers, but in other cases young adults; is that correct?

A. Yes.

Q. And specifically, with regard to Mr. Doe's case, you handled scheduling of various -- of the hearing in particular and also responded to some of his requests related to, not legal matters, but objections that he had

regarding the process; would you agree with that?

A. Yes.

Q. And in addition to that, you're also the hub in a different way, despite the fact that -- or in addition to the fact that you're kind of leading the charge from the student conduct office perspective, you are good friends with one of the panel members that ended up deciding this case; is that correct?

A. So, sir, I would take a little bit to task with what you're saying. Mr. Harty and I have been friends for probably the last year, but that's not really relevant to the matter of this case.

THE COURT: Hold on. Hold on. Just answer his question. Are you good friends?

THE WITNESS: Yes, we are friends. That's fair.

THE COURT: Okay.

(BY MR. ROARK:)

Q. Okay. And you're also very good friends with Mr. Russel -- Dr. Russel, correct?

A. Dr. Russel has been my boss for a number of years.

Q. Right.

And you described him as a "very good friend" of yours, right?

A. I would describe him now as a friend of mine, yes. I don't know if I ever described him to you or to Mr. Doe as

a good friend. I don't have any recollection of that.

THE COURT: Hold on. The question is, have you described him as a very good friend?

THE WITNESS: I would now, yes.

(BY MR. ROARK:)

Q. Dr. Ledbetter, are you biased against males?

A. Absolutely not.

Q. Do you believe males are morally inferior to females?

A. Absolutely not.

Q. Do you believe males have lower moral identity than females?

A. No, but I know where you're going with this question.

THE COURT: Hold on.

(BY MR. ROARK:)

Q. Do you believe males struggle to understand the consequences of their behavior?

A. If you're referring to my dissertation --

THE COURT: Hold on just a second. Just answer the question. Do you believe --

THE WITNESS: No, I don't.

(BY MR. ROARK:)

Q. Do you believe that males need to be programmed to have a higher moral identity?

A. No, I don't.
Q. Do you believe that this reprogramming should be informed by gender --
THE COURT REPORTER: I didn't hear your last word after gender.
(BY MR. ROARK:)
Q. I apologize.
Do you believe that this reprogramming should be informed by gender norms?
A. No, I don't.
Q. Dr. Ledbetter, you submitted a dissertation just last year?
A. I did.
Q. For TCU, correct?
A. Yes.
Q. What is the title of that dissertation?
A. I couldn't even give you the entire title from memory.
Q. May I refresh your memory?
A. Absolutely.
MR. ROARK: May I approach, your Honor?
THE WITNESS: Would you like me to read it?
(BY MR. ROARK:)
Q. Not out loud.
But does that refresh your memory about what the

title is?

A. Yes.

Q. The title is Moral Identity, Implicit Theory, and Moral Behavior: Untangling the Web of Connected Characteristics in Student Conduct, right?

A. Yes.

Q. And this was submitted just last year, so it's contemporaneous to your beliefs, would you agree with that?

A. Yes.

Q. In the acknowledgement sections, in particular, you mentioned Dr. Russel. And in the last little section there you said, also a good friend, correct?

A. I can look at it. I'm guessing that's correct.

Q. Okay. I am now looking on page 153 of that document.

The very first sentence of that says, "Under category of males," correct?

A. Uh-huh. Yes. Do you want me to read it?

Q. The very first sentence says, "Male students tend to have lower moral identity"; is that correct?

A. Yes.

Q. That's another way of saying that males morally are inferior to females, correct?

A. No, that's not what that says. You would have to understand what moral identity, internalization --

Q. You've answered the question, ma'am.

Regardless, your words say, "Male students tend to have lower moral identity, internalization and symbolization"; is that correct?

A. According to the findings of the study.

Q. The next sentence says, "Additionally being a male student significantly predicted lower moral behavior"; is that correct?

A. Intentionality and consciousness.

Q. Right.

And then your commentary, "Unfortunately, this was an unsurprising result given some of the available academic literature"; is that correct?

A. Yes, that's correct.

Q. And the literature that you refer to is a study by Stimpson and Jasonik in 2011, correct?

A. Yes.

Q. That particular study was an extremely small study that's been criticized by other academics; is that correct?

A. No, that's not correct.

Q. Okay.

THE COURT: Which part, that it's small or it's been criticized?

THE WITNESS: Either.

///

(BY MR. ROARK:)

Q. Under particular criticism, "Although a small number of studies have suggested that students reported moderate learning gains as opposed to" --

THE COURT: Hold on. Hold on.

MR. ROARK: I apologize.

THE COURT: You're going fast and talking low. So if you want it in the record, slow down and speak up.

MR. ROARK: I apologize. Yes. Thank you.

(BY MR. ROARK:)

Q. "These studies have suffered from a common set of weaknesses." Do you recall seeing this?

A. I'm sure I've read it. I've slept a few times.

Q. "All lack experimental or longitudinal designs and fail to include any controls or comparison samples to help isolate any specific or meaningful effects of the conduct proceedings." Do you recall seeing that?

A. Yes.

Q. You also stated in your dissertation that, "The predominance of repeat male offenders may be due to differing cultural or gender expectations between men and women present within today's college environment," correct?

A. Yes.

Q. And it added that, "Perhaps men struggle with understanding the consequences of their behavioral choices,"

correct?

A. Yes.

Q. Now, those were quotes from the study that you -- that was cited. And then you made some conclusions about what should be done about that -- I'm looking on here. I'm starting on page 162 -- correct?

Now, these are your words, not words from another study or anything like that; is that correct?

A. I'm looking at it out of context. So I honestly don't know where I'm looking, because I don't see headings.

Q. I'm on page 162.

A. I understand. I'm not looking at the entire dissertation, so I don't know. It's 200 pages.

Q. Right.

A. Yes, that's correct under practical --

Q. It's 200 pages of off and on talking about how men are morally inferior to women; is that correct?

A. No, that's not correct.

Q. Okay. Page 162, the first sentence, "Impacting male students. The result of this study make plain that HTI administrators need to be doing more to reach male students who tend to have lower moral identity, internalization and symbolization," is that correct?

A. That's correct.

Q. Having lower moral identity, internalization and

symbolization than a female is a fancy way of saying that males are not as morally righteous as females; is that correct?

A. This is based on a study of 400 students at TCU.

Q. This is --

A. And you're not correct. That's a --

Q. This is what you chose to do your dissertation on?

THE COURT: Hold on. Hold on. Don't talk over each other.

So is that, what he's saying, is that another way of saying that males are not as on an equal plane as females; is that true?

THE WITNESS: No. It's saying that they have a different moral identity standard.

(BY MR. ROARK:)

Q. Right.

And one that's not as high as a female's, correct?

A. You would have to understand what moral identity, internalization and symbolization are, the technical definition of what those mean, in order for me to be able to explain an answer. It's much more basic than just moral identity.

Q. Well, the next sentence says, "Males" and you referred to males as, "'they' are also significantly more likely to have lower moral behavior intentionality."

Now, if it's lower, it's lower than females. That's who you're referring to here, correct?

A. It would be all others. So females and those who identify outside the binary between male and female. They would identify in a different way.

Q. If you move on to the next page, on page 163, "With these findings in mind, the development of targeted programming" --

THE COURT: Hold on just a second. Hold on. Why would someone outside of this binary, if they had male genitalia, not be at the same level?

THE WITNESS: It's a great question to ask. So there are some students who would identify not as male and not as female. So the only way to code that statistically is male and not male.

THE COURT: And so if you have male genitalia, but you do not identify as either --

THE WITNESS: Uh-huh.

THE COURT: -- are you equal to -- or are you equal to male, or are you superior or inferior to male?

THE WITNESS: You would be categorized as female, because you would be not male.

THE COURT: Okay. All right.

THE WITNESS: Yes. Good question.

///

(BY MR. ROARK:)

Q. "So with these findings in mind, the development of targeted programming to build male moral behavior and the comprehension of behavioral consequences in male students is more crucial than ever for the explicit benefit of those male students and to continue prioritizing institutional mission development"; is that correct?

A. Yes.

Q. So what you're arguing for here, is the continuing institutional mission fulfillment of TCU in making males better morally than you think they currently are; is that correct?

A. No. It's about providing programming to students based on their needs.

Q. It's not students. It's males, correct?

A. Males and females.

Q. You don't say a thing in here about programming females, do you?

A. It's because the study found results that were different between the sexes. So we talked about the difference in that result based on males. And that's where we saw, statistically, that males had lower moral identity, symbolization and internalization.

That's why I talked about it here. The results were not significant for the females. That's why I didn't

talk about females.

Q. Right.

And but the point is, you're arguing for the programming of males, because you think they're inferior to women?

A. I don't think they're inferior to women.

Q. Well, that's what your dissertation is?

A. They're different. They're different than women.

Q. Well, to me the word "lower" is a value judgment, is it not to you?

A. We're talking about something, again, that is an academic definition.

Q. Is lower a value judgment to you?

A. It is a value judgment.

Q. Absolutely.

And you say, "Developing this type of effective programming will certainly be no small feat," correct?

A. Yes.

Q. And, "Males end up as more frequent offenders because they do not appreciate and internalize the consequences of their behavioral choices," correct?

A. That's what the study found, yes.

Q. Finally, at the bottom of page 163.

"In other words, to materially change male moral behavior, administrators," like yourself, "must target moral

internalization and symbolization, and likewise, this programming must be informed by gender norms," correct?

A. Yes.

Q. So if we want to change men, we have to target them and program them to gender norms; is that correct?

A. Yes.

Q. Now, you don't think all those beliefs make you biased against males?

A. No.

Q. Do you think the parents of most male students would want someone like you, with those types of thoughts, to have anything to do with the fact-finding and disciplining of their children?

A. I actually think they would.

Q. You don't notify these individuals though that these are your thoughts prior to engaging in the conduct that you engage in, do you?

A. It's publicly available on the Internet, as you found.

Q. You're right, it is, and I'm glad it was.

So would you agree that the belief that males' behavior, as compared to females, is being harmful to their peers is a biased opinion?

A. Can you restate the question? I'm not sure --

Q. Actually, I said it extraordinarily poorly, and I

will withdraw it and do a better job of asking questions.

So you have positioned yourself in the role that you have, as the tip of the spear for changing and programming male moral behavior; is that correct?

A. No.

Q. Has Dr. Sullivan read your thesis or your dissertation?

A. No.

Q. How do you know that?

A. Because the last time I saw him attend a dissertation defense that wasn't mine, he fell asleep.

Q. Dr. Russel decided Mr. Doe's appeal, correct?

A. He did.

Q. Are you familiar with a Dear Colleague letter that was sent out by the Obama Administration in 2011?

A. Which one are you referring to specifically?

Q. I refer to it as the Dear Colleague letter.

A. I don't remember which one you're talking about in 2011.

Q. The one from 2011.

A. I would like clarification as to which one you're talking about.

Q. The letter that went out by the Obama Administration --

A. Okay. On what subject, sir?

Q. Pardon?
A. There was lots of Dear Colleague letters that went out --
Q. Title IX. That's what we're here for.
A. Yes. I don't remember what was in that 2011 letter at this point.
Q. Okay. Do you remember that, generally speaking, it instructed colleges that they were going to have to more vigorously investigate and punish sexual assault-type activities or have their federal funding removed?
A. Yes, I remember that letter.
Q. Schools had to react to that; is that correct?
A. Yes.
Q. And, in fact, TCU had to react to that, correct?
A. Yes.
Q. And it did so, correct?
A. I wasn't in this position in 2011.
Q. I agree.
But are you aware of the context of Title IX processes?
A. I am. All schools were required to act.
Q. Right.
And then those goals were changed in 2020 and you had a very big role in that, correct?
A. Yes.

Q. And so if TCU did not do those things, they could lose their federal funding, correct?
A. Yes.
Q. One of the choices that the new federal rules give you is choosing the burden of proof, whether it's clear and convincing or preponderance of evidence; is that accurate?
A. Yes.
Q. There was a justice that opined, out of the Fifth Circuit, that a clear and convincing standard would be one that would be with -- better ensure accuracy.
Why did TCU go with clear and convincing?
A. TCU has always utilized a preponderance for its conduct matters. So it made sense for it all to be equivalent.
Q. I misspoke. TCU didn't go with clear and convincing. They went with preponderance.
A. I understood what you were saying.
Q. So thank you.
But they went with a lesser standard; is that correct?
A. Yes.
Q. Would you consider an institution of higher education to be one that was a seeker of truth?
A. Yes.
Q. Why would they choose a standard that resulted in,

statistically speaking, less chances of actually getting to the truth in one of these types of cases?

MR. RAJARATNAM: Your Honor, I'm going to object to this question. A preponderance of the evidence is a legal and required standard for Title IX cases and clear and convincing. So this is a mischaracterization to say that it's not a fair standard.

THE COURT: Okay. Can you answer the question?

THE WITNESS: Can you repeat it? I would be happy to.

MR. ROARK: Sure.

THE COURT: He's essentially saying, why did you land on the preponderance of the evidence standard when, in his view -- well, I don't know if, in his view, but the question included whether it actually would allow to determine the truth in a matter?

That's what I understood his question to be.

THE WITNESS: Is that correct? Is that the question?

(BY MR. ROARK:)

Q. That's absolutely correct.

A. I think that TCU would say, if it's a good standard for civil court, it should be a good enough standard for our conduct process. It's worked well for years for non-Title IX and all other conduct matters, it

should work well for this particular situation. If it's good enough for civil court, it's definitely good enough for our educational process.

Q. Okay. It also has the ultimate effect though of making it easier to find men responsible for sexual assault-type behavior, correct?

A. I would disagree with that.

Q. How?

How is it possible that you could disagree with that?

A. Because of the simple fact that it is a good standard. It's a standard --

Q. It's not a matter of whether it's a good standard; it's a matter of whether it makes it easier --

A. I don't believe it does.

Q. Is the clear and convincing standard a higher standard than preponderance of evidence?

A. It is.

Q. So it would be harder to reach that standard, correct?

A. Yes.

Q. So, by definition, it's easier to reach clear and convincing, which makes it easier to find men guilty --

A. And/or women; men and women.

Q. I'm asking the question here.

It makes it easier to find men guilty of sexual assault-type behavior, correct?

A. And women, yes.

Q. Let's talk about that. Do you know how many men were charged in 2021 at TCU with some type of Title IX offense?

A. I couldn't tell you that off the top of my head, no.

Q. Do you know how many women were?

A. No, I couldn't tell you that either.

THE COURT: Do you know if any women were?

THE WITNESS: Yes, they were.

(BY MR. ROARK:)

Q. How many?

A. The ones that I can remember, we've had at least two cases that have gone to hearing where a female on male sexual assault has been in play. One was a false complaint, one was a sexual assault.

Q. And no idea how many male cases went to hearing last year?

A. No. I know we also had a male on male sexual assault case, as well that went to hearing. We also, just this last week, settled through an informal resolution, a male on male dating violence case, that was set to go to a hearing today. So we do have others beyond just the

traditional male on female that you are insinuating.

Q. Statistically, there are far more cases where males are the respondents; is that correct?

A. Statistically, yes, that would be true.

Q. I want to talk to you about Title IX hearing panel members.

A. Sure.

Q. Well, tell you what. Let me back up.

We had a little pretrial hearing prior to the -- prior to actual hearing in Mr. Doe's case in which you were present, the retired judge that was going to be the panel hearing officer, and myself and Mr. Doe were present; is that correct?

A. That's correct, yes.

Q. We were asking how things went with cross and recross and those kind of things. You mentioned that TCU does not allow recross because you wanted to avoid retraumatization of survivors; is that correct?

A. I didn't say that, survivors, no. I said, we don't allow for redirect, recross, et cetera, and extraneous questions, because we want to prevent retraumatization of both parties.

Q. How would the respondent be traumatized by trying to get to the truth about being able to recross-examine a complainant?

A. That's an excellent question. I don't know the history of students when they're presented to us. It's possible that they have another sexual assault experience in their past or some other form of trauma related to sex or any other kind of trauma.

My goal is to ensure that that student is taken care of as they go through the process. So I'm very keenly aware of making sure that that process is fair and that they are managed and taken care of. I don't want them to have any additional questions that are unnecessary.

Q. Limiting recross also is another technique to -- well, not technique -- but it's another circumstance that limits the accuracy of these hearings, correct?

A. It applies to both parties.

Q. Right.

A. Yes.

Q. So both parties can ask fewer questions?

A. Yes, but they have a limitless amount of time on direct and cross initially.

Q. Right. But then, when they say something when someone else questions them, you can't go back to requestion them?

A. No. No.

Q. You can't, essentially, rebut what they've said, correct?

A. No.
Q. Which is foreshadowing, of course, for the lack of your inability to turn in rebuttal evidence, correct?
A. Yes.
Q. You also -- withdraw the question.
Let's talk about the Title IX hearing panel members. So someone goes through this process. There's an investigation, and then there's a hearing.
And as part of that hearing, there's a panel hearing -- what I'm going to refer to as kind of a judge. In this case, it was an actual retired judge -- who rules on relevancy and those kinds of things.
And then there's three panel members who actually make the decision; is that correct?
A. That's correct.
Q. Who determines who those panelists are?
A. Our office does.
Q. When you say "your office," who?
A. It's me, myself, Dean Steidl, Dean Morgan, and sometimes Dean Cooper is involved in those conversations as well.
Q. So for any particular case, is it a group effort to decide who those folks should be?
A. Typically, yes.
Q. How did that play out with Mr. Doe's case?

A. It's been a while. I don't recall the details of it. But I can tell you how the process typically takes place, if that's what you're asking.

Q. You can tell me what?

A. How the process would typically take place for any case.

Q. Please do.

A. So typically what happens is, when we are notified by the Office of Institutional Equity that a case is going to be transferred to us, it's usually done a week or two before the hearing -- or excuse me, before the transfer would take place.

When we receive that notification, I usually will reach out to JAMS, which is an external contracted source that we would utilize to get retired judges. We have a couple that we have essentially on retainer that we utilize. They've been trained. We've spent time with them. They know our process. They've read our policies that we utilize.

So we determine who's available based on the timeline of when the hearing would need to take place, when we are able to secure a particular retired judge. At that point, we set the hearing date.

And then I will send out an email to all of our potential panelists. We have a group of approximately 50

trained staff and faculty members who are able to serve as panelists. The voting members of the panel.

We receive that list back, in terms of responses. And once we have a full list of who is available, then we try to establish a diverse pool of three faculty and staff members.

The goal is always to strive to have at least one faculty member present on any panel, as they bring a level of diversity that our staff members don't have. However, say, having faculty members is a bit more challenging since their schedules are much more fixed than a staff member would be.

Q. Do you know how large the pool of potential panel members is, at least from TCU?

A. That's what I said, it's about 50.

Q. Sorry.

A. Yeah. We have, I think it's about three or four retired judges, that we use as panel chairs.

Q. And was it your testimony, you don't recall --

Do you recall if you had any involvement specifically with picking the panel members in Mr. Doe's case?

A. I'm sure I gathered the information of who was available, provided it to our other deans, and we had a conversation about it.

Q. Okay. And as you stated, in this case in particular, Mr. Harty is a friend of yours, correct?

A. Yes.

Q. And you referenced that in that meeting that we had, in the pretrial meeting, that you had gone to lunch with Mr. Harty just the day before that pretrial hearing, correct?

A. Actually, it was the day of.

Q. The day of?

A. About thirty minutes or an hour before we had our pretrial meeting.

Q. Okay. And so y'all had talked about the case, Mr. Doe's case?

A. No. I just asked him if he had received my email, that the new material had been loaded to the box folder. That was the extent of our conversation.

Q. And would you agree that it would not be appropriate for you to be a panel member in a Title IX case?

A. Absolutely.

Q. And that's because?

A. Because I'm the facilitator of the process.

Q. And there would also be an inference of bias, just generally speaking, based on your position alone, correct?

A. Yes.

Q. Irrespective of the other issues of bias that we

talked about earlier, correct?

A. There are no issues of bias.

Q. Do you recall how many times Mr. Harty has been a panel member on other cases?

A. I actually don't.

Q. Are you familiar with Rule 1.19 of TCU's rules of conduct?

A. Which one are you referring to? 1.19?

MR. ROARK: Approach, your Honor?

THE WITNESS: Would you like this? Mr. Roark, would you like this one back?

MR. ROARK: Yes.

(BY MR. ROARK:)

Q. I'm just referencing the student --

MR. SCHNEIDER: Which exhibit are you on?

MR. ROARK: It's Exhibit 4.

THE WITNESS: Thank you for refreshing my memory.

(BY MR. ROARK:)

Q. I'm referencing Exhibit 4 here.

And Rule 1.19, what does it state?

A. It says, "Conduct panels in Title IX conduct cases will not include a student panelist and may include an appointed panel chair and/or panelists who are not members of the TCU community to ensure fairness of the complainant and responding student and compliance with the applicable

law."

Q. Okay. Now, I appreciate that the word "may" is in there, but this was written for a reason.

Someone thinks that having non-TCU members or having panelists that are not community members would better ensure fairness for both parties, correct?

A. No, that's not correct.

Q. That's what it says.

A. No. It was written this way to allow us to use non-TCU faculty and staff as panel chairs, not for the panelists. We only use faculty staff for the panelists.

Q. I'm just reading what it says.

A. I understand that. I know that that's how it was written because I helped write the sentence.

Q. You're in a better position to know. Someone wrote, "Or panelists who are not members of the TCU community"?

A. It was written that way so that it was always available. So we wouldn't have to change the code. It's quite a process to change the code. The reason it was written this way is to allow for our panel chairs to be non-TCU faculty and staff members.

Mr. Roark, I'd also add, our process, as I said before, is an educational process. It wouldn't make sense to have external members of a community to be part of the

panel, when they aren't part of our educational act in the community. We want people who are part of our academic community and part of our institutional mission to make these decisions.

Q. Right.

Part of the institutional mission that you've described in your dissertation is to program in, correct?

A. I didn't say to "program in." I said to "offer programming." There's a big difference.

Q. Offer programming of men so you can raise their morals, correct?

A. Different definition of the word "programming."

Q. I'm glad you mentioned this, though, because I agree that that is precisely why you want members of the TCU community. You want them specifically to advance that mission that you've advocated for?

A. To advance the institutional mission.

Q. And that's also why you have friends of yours who are panelist members, correct?

A. That's not correct, sir.

Q. Regardless, there are plenty of other schools out there that use non-faculty members, non-community members, as either panelists or a single hearing examiner who makes a decision, correct?

A. Yes, but that's the minority.

Q. Is the panel chair position a paid position?

A. Yes.

Q. How much?

A. I don't know what the rate is that we pay our panel chairs.

Q. And you mentioned earlier that you spend a lot of time with those folks and they're familiar with your rules. I presume y'all would talk about the various interpretations of rules and those kind of things, correct?

A. No. We tell them what the rules are. They read the rules. We go through a training process and they make the determinations. They're retired judges. I don't need to tell them how to be judges.

Q. Well, I noticed you responded to an email from Mr. Doe with your interpretation of the rules. This was part of the stipulation that was just filed yesterday.

And regarding the rules when we -- Mr. Doe attempted to turn in exculpatory evidence and it ended up being excluded.

Your interpretation of those rules was the same as the panel chair's in this case; would you agree with that?

A. That's true, yes.

Q. And when you sent that email, you were essentially telling us we weren't going to be able to get in that evidence based on your interpretation of the rules, correct?

A. Can you tell me which email you're talking about? There were many emails that were exchanged.
Q. It was an email from January 11th.
A. January 11th?
Q. Right.
A. I think it was January 12th that I wrote to you, actually.
Q. Okay. Well, then you remember it.
A. I wanted to make sure that I was referring to the right email.
Q. Okay. The one from January 12th?
A. Yes, I remember that email.
Q. Okay. You were telling us in that email that we weren't going to be able to get in, or you were alluding to it. We didn't realize until the day of the hearing that, in all likelihood, we weren't going to be able to get the evidence in?
A. That's correct.
Q. That was your interpretation of the rules?
A. No. I was reading to you, or I actually wrote to you specifically the code provision as to what it said regarding new evidence. The evidence that was submitted was not new evidence. It was evidence that was available at the time of the investigation, when it should have been submitted.

Q. Okay. Let's chat about that.
So it was your job to make sure that TCU's rules complied to the changes in the federal regulations that took effect on August 14, 2020, correct?
A. Not just my job, but others as well.
Q. Right.
And the fact is, TCU's rules don't comply with the federal regulations in many ways; is that accurate?
A. No, that's not accurate.
Q. The definition of "relevancy" is not supposed to prohibit relevant evidence which probative value is substantially outweighed by the danger of unfair prejudice; is that correct?
A. That is correct.
Q. Your rules do precisely that, do they not?
A. I would disagree with that.
Q. Okay. If you look at your, that same exhibit, and you look on page 26.
A. Twenty-six of the exhibit?
Q. Exhibit 4, page 26. It's what you were just looking at.
A. Okay.
Q. This is 5.7.10?
A. That's not page 26.
Q. Okay. What is it?

A. Five-point what? 7.10, yes.

Q. Okay. And I'm also looking at the preamble to the Title IX rules, which you've already agreed with. "A recipient may not adopt a rule excluding relevant evidence whose probative value is substantially outweighed by the danger of unfair prejudice."

Yet, your rule does precisely that, does it not?

The very first sentence, "Relevant evidence includes evidence that is more probative of a material fact than prejudicial."

MR. SCHNEIDER: Your Honor, can I just interject? There's a preamble. There's the regs, which are three pages, and there's a 300-page preamble.

I am not aware of any authority where any institution is obligated to comply with a preamble to actual CFR regs.

THE COURT: Okay. I will consider that.

And you can answer the question, if you can.

THE WITNESS: I would like you to restate that.

(BY MR. ROARK:)

Q. Sure.

TCU's rules exclude evidence. One of the reasons for excluding is that it's because it's more prejudicial than it is probative, correct?

A. Yes, that's true.

Q. And at least the preamble to the federal rules states that you're not supposed to do that, correct?

A. I wouldn't agree with what your interpretation is there. We don't discredit relevant evidence --

Q. Well, you do.

A. It's more -- if it's more prejudicial than probative. We don't discredit relevant evidence.

Q. Well, he excluded those exculpatory texts. And he put in the decision that he was doing it because they were more prejudicial than probative.

A. Yeah, that was one of his reasons. And he also stated that it was not new evidence that --

Q. What is the new evidence part? I'm not talking about that.

I'm talking about whether it's more prejudicial than probative.

A. Yes.

Q. You're not supposed to exclude evidence for that reason, and TCU does on a regular basis, correct?

A. He eliminated that evidence, yes, because it was more prejudicial than probative.

Q. Right.

And the federal rules say, you're not supposed to do that, do they not?

A. In the preamble.

Q. Right.

The preamble says, you're not supposed to prohibit polygraph tests as well, correct?

A. That is correct.

Q. And TCU does that, correct?

A. Yes, for all conduct matters, Title IX and otherwise.

Q. And specifically, the judge excluded Mr. Doe's past polygraph for that precise reason, in this particular case, correct?

A. That's correct. It's against TCU policy.

Q. The federal regulations also contemplate that laypersons, and not lawyers or judges, will oversee these hearings, correct?

A. It does make that recommendation, yes.

Q. Pardon?

A. It does, yes.

Q. TCU doesn't follow that guidance either, does it?

A. No, and neither do several other institutions.

Q. I'm asking about TCU.

A. I realize that.

Q. Okay. And even TCU's rules even --

Well, one of the reasons that I think the rules might say that is because these rules are supposed to be informal. There's not supposed to be strict adherence to

timelines and rules of evidence, correct?

A. That's correct.

Q. Okay. Yet, despite that, Judge Ruvolo strictly adhered to his interpretation of an evidentiary deadline preventing Mr. Doe from being able to introduce exculpatory evidence, correct?

A. Yes.

Q. I would like to talk about the issue of consolidation. That was relevant in this case; would you agree with that?

A. Yes, I do remember that.

Q. There were two separate allegations of sexual misconduct. One August 19, 2020, and another October 3rd or 4th of 2020, correct?

A. Yes.

Q. About six weeks apart?

A. Yes.

Q. One was a Title IX case and one was not, correct?

A. That's correct.

Q. The federal rules prohibit consolidation of those two cases, correct?

A. That's not entirely accurate. It doesn't prohibit it. It doesn't talk about it.

Q. It actually does. It actually does.

A. You and I have talked about this before.

Q. We did.

And specifically, I'm referring to 34 CFR 106.45. So these aren't just the -- these aren't just the guidance. This is the actual regulations.

"Federal regulations allow schools to consolidate formal complaints." Let me stop there real quick.

Under the federal guidelines, if one of these cases is not a Title IX case, meaning it occurs on campus or during a school activity, it's not even a formal complaint, it must be dismissed; is that correct?

A. That's not correct. We can always address an issue off campus.

Q. Right. But you do it through a non-Title IX process, right?

A. We have the option to utilize the same process.

Q. Well, the same procedures and everything but not -- but not in the same actual hearing?

A. If they're related to one another, we absolutely can.

Q. There's no rule at TCU regarding consolidation of multiple cases, multiple allegations from the same two parties, correct?

A. There is actually a way that that can happen. I can show you the section in the code that refers to additional code violations.

Q. I'm saying, there's not a consolidation rule?

A. Not specifically, no.

Q. Okay. And the federal consolidation rule says, "Schools may consolidate formal complaints, but they may only do so as to allegations of sexual harassment against more than one respondent," correct?

A. Yes.

Q. So John Doe plus John Doe No. 2, not present here.

Or by more than one complainant against one or more respondent, correct?

A. Yes.

Q. Finally, or by one party against the other party, right?

A. Yes.

Q. It doesn't stop there though, does it?

If it was just one party versus the other party, that would include the universe of allegations between those two individuals, correct?

A. Right.

Q. It doesn't limit it there, though, does it?

It actually goes on to say, one party against the other party, where the allegations of sexual harassment arise out of the same facts or circumstances, correct?

A. Yes.

Q. These two allegations did not arise out of the

same facts or circumstances, did they?

A. I would say that they actually do.

Q. How?

A. They were in an ongoing relationship.

Q. The same people. Exactly, right.

MR. SCHNEIDER: Objection, your Honor. She was obviously not finished with her answer.

THE COURT: Go ahead and finish your answer.

THE WITNESS: I wasn't finished. Thank you.

(BY MR. ROARK:)

Q. Proceed. I apologize.

A. No, they're part of the same relationship for a number of weeks that were related to both incidents that were part of this particular case.

Each incident was interwoven with the other. If we had had to have two separate hearings, it would have been the same facts and matters that were discussed related to text messages, related to their relationship, related to their history. It would have been retrying the same thing two different times.

Q. If your definition is accurate, then this wasn't just a two or three-week relationship. This was a year and a half long relationship.

If your definition was accurate, then they wouldn't have had where the allegations of sexual harassment

arise out of the same facts or circumstances.

They would have just said, you can consolidate formal complaints filed by one party against the other?

A. I think I would also point out, one was not a Title IX matter, one was.

Q. Absolutely. That's another difference --

A. I wasn't finished.

Q. Go ahead.

A. I wasn't finished.

Which the way that it's defined under TCU policy is also, both of them, incidents of violations or potential allegations of violations of policy 1.008.

1.008 consolidates both Title IX and non-Title IX matters. They're both investigated under the same policy.

Q. Well, what you've done and that's not -- it's one more place where TCU's rules don't comply with federal law, by the way. The federal law basically said, you can investigate those cases that occur off campus any way you want to. You just can't call it a Title IX case, because it's not.

TCU does exactly the opposite of that, don't they?

MR. RAJARATNAM: Objection, your Honor. He's just testifying and saying that TCU is violating federal rules. He hasn't asked her a question.

THE COURT: He said that your policy violates the

education code regulations.
Does it?
THE WITNESS: I need you to repeat the question. That was a long lead into that question.
(BY MR. ROARK:)
Q. Sure.
Federal Title IX rules say that it can only be a Title IX case if it occurs on campus. That's one prong. Is that correct?
A. Yes.
Q. And the other prong is, if it's off campus, if it's some type of official activity at the school, like a track meet and you were on the track team, correct?
A. Yes.
Q. Otherwise, if it's just off campus and not in some school-related activity, not a Title IX case, right?
A. You also have to have substantial control if it's off campus.
Q. Right.
A. Yes.
Q. You're on private property off campus, not a Title IX case, right?
A. Yes, that's correct.
Q. TCU has added something that's specifically intended to be prohibited, which is, any activity that might

affect our students, correct? I'm paraphrasing.

A. Yes. Under the code, we are allowed to address conduct that would have a negative implication for the institution.

Q. But not under the auspices of Title IX, right?

A. Which is why it's called an OIE investigation, of the Office of Institutional Equity, which is what takes place.

Q. Right.

So the two allegations in this case were six weeks apart, correct?

A. Yes.

Q. One was off campus, one was on campus, correct?

A. That's correct.

Q. One was, in fact, 200 miles away in another town, correct?

A. Correct.

Q. Other than them being the actual same two individuals involved, nothing else about that arose out of the same facts or circumstances, correct?

A. I would disagree with that characterization.

Q. Okay. Would you agree, if my characterization is correct, then TCU consolidated these in contravention of federal regulations?

A. No.

Q. Even if I'm not right about that --

A. I just disagree with your interpretation.

Q. Okay. The guidance goes on to clarify this a little bit; do you recall that?

A. Yes.

Q. Okay. It says -- and they define facts or circumstances -- and what they defined them as, in particular was, cross-complaints, correct?

A. That's correct.

Q. So if you say I sexually assaulted you on August 19th, and I come back and say you sexually assaulted me, those are cross-complaints, obviously, out of the same facts or circumstances, and you may combine those into one hearing, correct?

A. That's correct, yes.

Q. There was not a cross-complaint in this particular case, was there?

A. No.

Q. And they also went on to further define that as -- well, I'll withdraw that, Judge.

Okay. I would like to talk about exclusion of evidence. And this is getting back to 5.7.10.

What was the deadline for Doe and Roe in this particular case?

A. The actual deadline, it was January 24th. Is that

what you're talking about, the responses?

You tell me what you're asking. I'm not clear.

Q. I'm asking what the deadline was to turn in evidence that could be used?

A. To our office or to the Office of Institutional Equity?

Q. What was the deadline for Doe or Roe to be able to turn in evidence that could later be used at the hearing?

A. They can turn in evidence right up to the end. But once the investigation closes, it has to be new evidence to be considered.

Q. My question is, what was the deadline for Mr. Doe to turn in evidence such that it could then be used at the hearing?

A. If it wasn't new evidence, November 30th.

Q. And what did November 30th signify?

A. November 30th was the end of the period -- the response period to the preliminary investigation report and the material that was shared with the parties from the investigator.

Q. I saw a letter that had the 26th. What was that?

A. It was extended. So both parties had asked for an extension because of the Thanksgiving holiday. So the Office of Institutional Equity granted them a couple extra days.

Q. Fair enough.

And at that time, the reason I was asking about that, I was not involved in the case at that time. So that's why I was wondering.

So November 30th was the deadline to turn in evidence to be used at the hearing.

Why have a deadline to turn in evidence two months prior to the hearing?

A. This case is rather extraordinary in that, because it fell, in terms of its transfer date, to the Dean of Students' office for the resolution for the hearing process two days -- well, essentially, the day before the last day of classes. TCU has a policy, in order to allow our students to focus on their academics, that we don't do any conduct matters during reading days or final exam days.

And because it's the winter holiday, the university closes for two weeks. So as much as it was transferred to our office on December 7th, we weren't even back in the office until January 3rd or 4th. I can't remember exactly the day, to be able to even pick the case up to be able to move forward. So there was a month in there where nobody was even in the office.

Q. Do you think from a reading of these rules that it would be clear to a reasonable reader, let's say particularly a 20-year-old kid, that that was the deadline?

A. I think it is because they're sent that information in a letter that spells it out very clearly.

Q. That letter does not say, does it, this is the deadline to turn in evidence, and if you don't do it by then, you will not be able to turn in more evidence for the hearing?

A. I honestly don't know because I don't write that letter. I'm not the investigator.

Q. Well, would you be surprised to learn that it didn't say that?

A. I wouldn't know. I'm not surprised one way or the other.

MR. ROARK: Judge, I will note that I don't have it off the top of my head, but that letter is in the file, and it does not say that -- or it's in the exhibits.

(BY MR. ROARK:)

Q. Okay. Going to the Rule 5.7.10, those govern the admissibility of evidence for these hearings, correct?

A. Yes. That's correct.

Q. And going down to E, E says, "Any evidentiary response made to the Office of Institutional Equity during the investigation as provided by policy 1.009, or to the Dean of Students, when reviewing the final investigative report, will be considered by the panel chair at the beginning of the Title IX conduct panel hearing. The

admissibility of this disputed evidence will be resolved just as relevancy determinations are made."

My reading of that is, and you tell me why this is crazy, because that's what y'all have been telling me so far, that you can turn in evidence in response to the final investigative report, and the judge will rule on the relevancy of that, just like he would the relevancy of the other evidence, and that you can use that for the hearing. How am I wrong about that?

MR. RAJARATNAM: Objection, your Honor. He needs to clear that up. I was a little confused there. I don't think our witness can answer that.

THE WITNESS: Yeah, I'm not sure what you're asking.

MR. ROARK: Fair enough.

(BY MR. ROARK:)

Q. My reading of that is that you can turn in evidence in response to the final investigative report and use that in the hearing. And that's exactly what this rule actually says.

So how did that not turn out to be the case?

How do you interpret that?

A. You're not reading it in context. If you look at the subsection right below it, it clarifies as to what would happen if that evidence that's submitted is not new

evidence.

If it's new evidence, it will be considered by the panel, if it's determined to be relevant. If it's not new evidence, it's evidence that would be excluded.

Q. Well, you're saying I'm not reading that in context. I'm just reading E alone. And if you read E alone, it appears as if you can turn in evidence in response to the final investigative report and have that used for the hearing, correct?

A. If you read it solely that way, yes. But relevant evidence would be evidence that was available at the time of the investigation.

Q. No, that's not what relevant evidence is.

Relevant evidence goes back up to 5.7.10. Relevant evidence includes evidence that is more probative, blah, blah, blah. That's what relevant evidence is.

It doesn't say anything, there's no distinction up there between new evidence and old evidence?

A. However, the distinction is made in F.

Q. Right.

A. Yes.

Q. And any new evidence which a party would like admitted at the hearing that was not included in the investigation of the Office of Institutional Equity -- I'm reading those together. I still read -- because when is the

investigation over?

Why would it be over prior to your ability to respond to the final investigative report?

A. Because the purpose of responding to the final investigation report, you've already had an opportunity to respond and provide evidence with the preliminary investigation report response.

The reason we allow for the comment period with the final investigation report is to clear up any minor errors that might still exist, to note any objections you have about the relevancy of the evidence that's already in the record.

And there's also the opportunity to respond to the other party's comments to the preliminary investigation report, which they haven't seen yet. That's the purpose of that additional response, not to submit new evidence.

Q. Would you agree that these two provisions are confusing?

A. I don't think they are. We also provide a number of resources to students to help them understand, including a flowchart.

Q. Would you agree that setting a deadline so quickly --

Now, let's talk about what happened in this particular case.

In this particular case, Jane Roe did not cooperate in the initial investigation, correct?

A. I can't answer that. I wasn't part of the investigation.

Q. Well, you've read the initial investigation report, have you not?

A. I have read the investigation report.

Q. And you were present for the hearing?

A. I was.

Q. So you know that they commented several times that she did not cooperate in the initial investigation report?

A. No. She came in to have her initial interview. She didn't want to do a second interview, because she, quite frankly, didn't want to be retraumatized during the second interview.

Q. Doesn't the initial investigation report state that Jane Roe failed to cooperate or provide details of the investigation?

A. That's what the investigator wrote, yes.

Q. Yes.

THE COURT: Do you disagree with that?

THE WITNESS: I don't know. I don't have enough facts to have an opinion on that.

(BY MR. ROARK:)

Q. So she refuses to cooperate, refuses to give

details, Mr. Doe, or anyone else in that situation, would be limited in his ability to rebut or respond to that.

The deadline passes to respond to the initial report in which she refused to give details, you are forever prohibited, at that point, from introducing evidence, correct?

A. I don't think that's a fair characterization of how that played out.

Q. You are forever prohibited at that point from introducing evidence to be used at a hearing, correct?

A. You can admit new evidence. You can't admit evidence that should have already been submitted to the investigator.

Q. Right.

How would you know what evidence to submit if she didn't provide details of the allegation?

A. All the material that she provided included text messages and Snapchat messages were provided to Mr. Doe when he had access prior to the preliminary investigative report. He was able to see that.

Q. In this particular case, she provided considerable more detail later on, say, in the investigation.

From your perspective, it's over, but she provided considerably more detail in response to the final investigative report, correct?

A. No. She provided a lot more detail to the preliminary investigation report, which she's permitted to do. That's when you are allowed to submit additional evidence, which she did.

Q. She actually submitted additional evidence in response to the final investigative report, did she not?

A. She did, yes. It was excluded as well.

Q. Right.

And what was her argument for being able to admit that evidence?

A. She said that, since Mr. Doe had admitted additional evidence, that she should be allowed to admit additional evidence.

Q. That's not what she said.

She had the exact same interpretation of these rules that Mr. Doe did, did she not?

A. I don't remember that. You would have to remind me.

Q. She argued the exact same thing. That Section E permits you to introduce evidence in response to the final investigative report, correct?

A. If that's what you're reading. I just don't remember.

Q. So at least someone else had the same interpretation I did, right?

A. That's what you're telling me, yes.

Q. Now, once again, this rule where you limit the ability of someone to defend themselves and turn in evidence prior to a hearing, that is contrary to federal law; is it not?

A. I would disagree again with your characterization.

Q. Okay. Specifically, the guidance to the federal rules says, and that someone asked this, "Can recipients limit the hearing to consideration only of evidence previously included in the investigative report?"

Same exact situation we have here. How did the federal regulations answer that?

A. The comments are 2,000 pages long, sir. I don't remember. I don't even know if I've read that section. It's also not the federal regulations themselves I would state.

Q. Well, they refer to the federal regulations. And they answered it this way, and it's in the brief, "Recipients may decide whether or how to place limits on evidence introduced at the hearing that was not gathered and presented prior to the hearing." Correct?

A. If you're reading it. I'm not looking at it.

Q. Which means that you can limit evidence in the hearing as new evidence, but you cannot limit someone's ability to present evidence prior to the hearing. Correct?

MR. RAJARATNAM: Objection, your Honor. He's quoting the preamble like it's requirements. These are not requirements. Again, like he said, it's guidance. So him asking a question that says you cannot do so is misleading.

THE COURT: Overruled.

(BY MR. ROARK:)

Q. Correct?

A. Yes.

Q. That's not fair, is it?

A. I would disagree.

Q. I know from your dissertation that you would.

A. I don't appreciate that characterization either.

Q. I'm just reading the words of your dissertation.

THE COURT: Ask your next question.

MR. ROARK: Thank you, Judge.

(BY MR. ROARK:)

Q. Dr. Ledbetter, the excerpts from your dissertation that I gave you earlier, those were true and accurate copies or parts of your dissertation, correct?

A. Yes, that's correct.

MR. RAJARATNAM: Objection, your Honor. We've only looked at a few pages of a 200-page dissertation. So it's improper to say that's a representation of her full dissertation when it's not. It's just a partial reading of it.

THE COURT: I'm not following. Are you introducing it?

MR. ROARK: I'm offering it, your Honor.

THE COURT: The dissertation?

MR. ROARK: Yes, your Honor. The excerpts we've referred to, yes. We've got the whole thing.

THE COURT: Okay. It will be admitted. What exhibit number is it?

MR. ROARK: It will be Exhibit 35.

THE COURT: Thirty-five will be admitted.

(Plaintiff's Exhibit 35 was admitted into evidence.)

MR. ROARK: Thirty-eight, your Honor.

THE COURT: Thirty-eight, then. It will be admitted. 38 will be admitted.

MR. ROARK: Thank you.

(Exhibit 38 was admitted into evidence.)

(BY MR. ROARK:)

Q. Did you disagree with the Trump Administration's changes to Title IX in 2020?

A. Not entirely, no.

Q. There was someone else from the Title IX department, Carnahan, who is that?

A. She's not in the Title IX department.

Q. Where is she?

A. She works in the counseling office.

Q. Okay. Have you read the articles and comments she wrote on this?

A. No.

Q. What parts did you not agree with?

A. I didn't like the amount of formalization that was created in this process. I'm a firm believer that student conduct is meant to be educational. And by creating a nearly court-like process, it doesn't meet what I would believe is necessary in order to be educational.

Q. What's curious about that, you've got a kid here who's trying to defend himself from a rape allegation, which is extraordinarily serious, and you're sitting up there acting like you don't like the formality. And yet, you strictly construe a confusing rule of evidence to prohibit him from attempting to defend himself.

How can you possibly justify that?

A. I guess I'm not sure exactly what you're asking.

Q. You act like --

A. You're making an assumption --

THE COURT: Hold on a second. Just ask a question.

MR. ROARK: Sure.

THE WITNESS: Yes, please.

(BY MR. ROARK:)

Q. You stated that you did not like the fact that

they made this more formal. But y'all strictly construe every rule that you have, do you not?

A. Because we have to follow our own policy. You know that as a lawyer.

Q. Part of your policy is that you can -- that a hearings examiner can have different -- can have discretion in these things, correct?

A. That's correct.

Q. Okay. No discretion was exercised in Mr. Doe's case, was it?

A. No.

Q. And, in fact, it says, in Rule 5.3.10, "In all conduct proceedings, formal rules of process, procedure and evidence do not apply," correct?

A. I don't know what section you said.

Q. 5.3.10.

A. Can you ask your question again, sir?

Q. That rule states that, "Formal rules of processes, procedure and evidence shall not apply," correct?

A. That's correct.

Q. Rule 5.3.14 states, University conduct officer may approve the deviations for equitable reasons, paraphrasing, is that correct?

A. Yes.

Q. Do you think that allowing someone to introduce a

text message that was introduced prior to the hearing in which the complainant admits that the respondent didn't rape her, do you think it would be equitable to allow that in?
A. It wasn't the only text message. It was in the midst of 150 pages of 1,500 text messages.
Q. Absolutely. For all the same reasons --
A. Which is why it was determined to be more prejudicial than probative. It was a massive amount of information introduced four days before the hearing.
Q. Let's talk about that. Why was it four days before the hearing?
Who set the hearing four days after that deadline?
A. That's how our system is set up, such that --
Q. You did, did you not?
A. -- such that it is a fair process, because we are required to have a prompt process.
Q. My question was --
A. It had already been delayed by an extra month because of the winter break.
Q. Who set the hearing four days --
A. We did.
THE COURT: Hold on. Hold on.
THE WITNESS: We did.
(BY MR. ROARK:)
Q. In this particular case, those text messages there

would be no surprise because they were all between Doe and Roe, correct?

A. They were all between Doe and Roe, yes.

MR. ROARK: Judge, we're offering, and I think it's been by stipulation, but just to make sure, every exhibit that we had in our appendix, we are offering.

THE COURT: Okay. That will be admitted.

(Every exhibit admitted from plaintiff's appendix.)

MR. ROARK: Pass the witness, your Honor.

THE WITNESS: Mr. Roark, would you like this back?

MR. ROARK: Sure.

MR. RAJARATNAM: Just to avoid having to recall her, can we just combine direct?

THE COURT: Yes.

CROSS-EXAMINATION

(BY MR. RAJARATNAM:)

Q. Good morning, Dr. Ledbetter.

A. Good morning.

Q. I want to ask you a few questions to address some things that you just testified --

A. Of course.

Q. -- and also go into some other things.

First of all, let's start with your dissertation, which is now Exhibit 38, I believe.

When we read some parts of your dissertation, was

that in the full context of your dissertation?

A. No, not even close.

Q. And how many pages did you say the dissertation was?

A. I believe the substantive part is about 200 pages, and then there are additional appendixes, graphs, charts, et cetera. I think it ended up at about 225 or somewhere in that range, if I remember correctly.

Q. Was your dissertation about male inferiority?

A. No.

Q. Did you have things in your dissertation that you discussed, other than the things we just read?

A. Absolutely.

Q. Okay. And the things we did read about males and male behavior, was that based on studies, or was that your beliefs?

A. That's a good question. So the way the dissertation is set up is, you have an entire chapter, Chapter 2, a literature review. Literature review talks extensively about the literature, academic literature that talks specifically about the moral identity of male students, as well as talking about the fact that most conduct cases, or a majority of conduct cases, end up being male offenders, not female.

So part of the purpose of my dissertation was to

better understand what might be causing that. That's where we get to the sections that they were talking about. Those were merely looking back at academic research in light of the study that I did with about 460 TCU students. It's taken tremendously out of context.

Q. Okay. And I think, Mr. Roark mentioned or he made a comment about how TCU parents wouldn't want someone like you to be making fact-finding and to be disciplining their children, right?

Do you remember what he said that?

A. Yes. Absolutely.

Q. Do you make any fact finding in Title IX hearings?

A. No.

Q. Do you implement any discipline of TCU students?

A. Not in Title IX hearings, no.

Q. Are you a panel member on any Title IX hearings?

A. No.

Q. Are you a panel chair in any Title IX hearings?

A. No.

Q. Do you make any sort of decisions in Title IX hearings?

A. No.

Q. I want to talk real quick about the preponderance of the evidence standard that Mr. Roark spent a little bit of time on.

Does TCU use the preponderance of the evidence standard for all of its student conduct issues?

A. Every single student conduct case, yes.

Q. Is the preponderance of the evidence allowed in Title IX regulations?

A. Yes, it is.

Q. If there was a female accused of sexual assault, would that same standard be applied?

A. Yes, sir.

Q. And has that standard been applied to a female accused?

A. Yes, sir, it has.

Q. Quickly, about just the Title IX regulations in the preamble. Based on your understanding, can you differentiate that for us?

A. Yeah. The preamble is guidance. The Title IX regulation is the actual law. Part of the issue with Title IX is it's generated a lot of press, a lot of discussion, both in academic circles, as well as political circles.

The preamble is meant to help us understand the regulations, but it's not the law itself. It's not a requirement of the institution.

Q. Is TCU required to follow the preamble?

A. No.

Q. Okay. I want to talk a little bit -- we kind of

sped through a bit of the process and, you know, the different preliminary reports in the investigation. I want to kind of break that down just to make it really clear to the Court how the process works.

And so let's just start from the very first thing that happens after a student files a formal complaint with the Title IX office. What happens after that?

A. So, if a formal complaint is filed, an investigator is assigned in the Office of Institutional Equity. It's the role of that investigator, then, to investigate, as the word would say.

That would include gathering evidence that's submitted by parties and witnesses, conducting interviews of parties and witnesses, and doing whatever else is necessary to understand the facts of the case.

They then utilize all that information to write a preliminary investigative report, which is then shared with the parties, as well as all of that material that's been gathered.

Q. Okay. I kind of want to break that down a little bit. First of all, you mentioned the Office of Institutional Equity. Is that the same as the Title IX office?

A. The Title IX office sits within the Office of the Institutional Equity.

Q. Okay. And do people also refer to that office as OIE?

A. Yes, they do. And if you would allow me, I would like to call it OIE just to save time.

Q. Great. Okay. We'll try to refer to it as OIE then.

So you mentioned parties being able to submit evidence and interviews being conducted. If parties submit evidence during this process, who has access to those materials?

A. Both parties will eventually have access to all of the material, including the preliminary investigation report.

Q. Okay. And then you mentioned the preliminary investigative report is shared with the parties?

A. Uh-huh.

Q. What happens after that?

A. So once it has been shared with both parties, they're given 10 days to, essentially, submit additional evidence that they might have and they're allowed to make comments on that preliminary investigation report that's submitted to the Office of Institutional Equity directly to the investigator.

Q. And then, after they submit comments and evidence in response to the preliminary investigative report, what

happens after that?

A. So then, the investigator, obviously, reviews and reads all of the material and then writes a final investigation report. And at that point, the investigation is deemed closed. That's why it says, "Final investigation report."

Q. Okay. So then after the investigation is closed, what's the next step?

A. The next step is then it would be transferred to our office. So when it's transferred to the Dean of Students' office, which handles all of the student conduct resolution on campus, the parties are informed by letter from the Office of Institutional Equity that the case has been transferred and that it will be resolved through the hearing process, which is facilitated in the Dean of Students' office.

Q. And we got into this a little bit when Mr. Roark was up here, but after the final investigative report is issued, do the parties still have a chance to respond to that?

A. They do. So once it's transferred to our office, the final investigation report is loaded into the same share folder that we've been utilizing. The parties are then shared back on that shared box folder.

Also, in that folder is included any responses

that were provided to the preliminary investigation report, to the Office of Institutional Equity. So they're allowed to view all of that material.

The only thing new, the final investigation report and those responses, and then they're given 10 days again to submit an additional response.

Q. Okay. Well, Dr. Ledbetter, you just told us when the final investigative report is issued that means the investigation is closed.

So if the investigation was closed, why are parties still allowed to submit comments?

A. So that's really another opportunity to note any potential errors that might have inadvertently gotten into the final investigation report. They can also note if they have an objection to some of the relevancy of the evidence that's already in that box folder.

And then they have an opportunity as well to finally respond to whatever the other party responded to in the preliminary investigation report. So if there's something that they would take to task, they can respond to it in their comments.

Q. Okay. So in the parties' comments, responses to the final investigative report, after the investigation is closed, are the parties also allowed to submit evidence during that time?

A. Well, they can submit evidence, but since the investigation is closed, it's only going to be considered if it's new evidence.

Q. What do you mean by "new evidence"?

A. That would be evidence that was unavailable to the party at the time of the investigation. Otherwise, they should have submitted it during the investigation period.

Q. Okay. Let me ask you this question. What's the rationale behind that?

So, for example, if there was evidence that was available during the investigation, but the parties just did not submit it, why would they not be allowed to submit it now?

A. So we talked about how there was a 10-day review period with OIE, and then another 10-day review period with our office. If we allow them to continue to submit new evidence, we would have to do another 10-day review and then another and then another, and it could go on forever.

At some point, we have to have the investigation closed in order to move on with the hearing. We're required, under the federal regulations, to promptly and fairly resolve these cases. That's why we move forward.

In addition, I would also say it's important to recognize the investigation process is typically 50 to 60 days long, 10 of which is that response period to the

preliminary investigation report. There's no reason why they couldn't have submitted that evidence during that time period.

Q. Okay. So now you've talked a little bit about how it moves on to a hearing process.

A. Correct.

Q. Can you just describe that hearing process for us?

A. Sure. So the hearing process really starts with the prehearing meetings that we had, which Mr. Roark had alluded to during our questioning. We schedule those.

It's really an opportunity, because we know this is a very, very difficult process for the students to go through, we want them to feel as comfortable and ready for the hearing as possible.

So we hold a meeting via Zoom with the panel chair. So the retired judge that's serving, as well as the party, their advisor, and one procedural chair, which is a dean in our office, and we hold a fairly informal conversation.

It starts out with the procedural chair just kind of running through what to expect with the hearing so that the student isn't taken off guard. We also are there to answer any questions and address any concerns that they might have.

And then, the reality is, the procedural chair,

the Dean in our office, really goes on mute, and we're really not present for much of the rest of the conversation. It's really that conversation between the student, their advisor, and the panel chair. It gives them an opportunity to talk about the response that they've just submitted to the final investigation report.

They also get to talk about any objections that they have. If they've submitted evidence, there's a conversation as to why it should be permitted so that the panel chair is able to hear their rationale.

Then, after we're done with that prehearing meeting for both parties, we would move into the actual hearing. That's usually two to three days or so after those prehearing meetings are concluded.

During the hearing itself we, obviously, would have questioning of both parties, opening, closing statements, what you would expect.

And then we move into the panel deliberation, where they deliberate and ultimately determine whether the student is found in violation or not in violation.

If they're found in violation, then they move into determining an appropriate outcome. At the conclusion of the panel deliberations, we log out of the Zoom hearing, and the panel chair has three days to craft a deliberation report, which is required by the federal regulations.

At three days they have to return it to our office, and we have two days to turn it around and send it to both parties and their advisors simultaneously.

At the conclusion of that, they have three more days, as the parties, to submit a written appeal to our office, if they choose to appeal. And both parties have that opportunity.

Q. Okay. So that was a pretty long answer.
A. Yes.
Q. So I kind of just want to --
A. It's a long process.
Q. Yeah. Just to make sure we're all on the same page, so it sounds like there's prehearings first, correct?
A. Yes, that's correct.
Q. That's for both parties?
A. Yes.
Q. Does that happen on the same day as the hearing, or is that separate?
A. No. It's always done a few days before the hearing. In fact, we have one panel chair that insists that it be about 48 hours before to make sure she has time to consider what we've talked about before the hearing begins.
Q. And that prehearing, is that combined with both the complainant and the respondent?
A. No. They're individual hearings because we want

them to feel comfortable and confident to be able to talk openly with the panel chair.

Q. Okay. And then you said there's a hearing process where there's panel chairs and then procedural chairs as well, correct?

A. Yes, that's correct.

Q. And earlier we talked about how you don't have a role in decision making in hearings.

What is your role during a Title IX hearing?

A. You could also call me "tech support." During the actual hearing itself, I'm present, but I'm on mute and typically not on camera at all or very rarely.

My job is to admit individuals out of the waiting room, to set up break-out rooms. So if a party would like to speak with their advisor, they can take off to a break-out room. Especially if we need to take a break for lunch or whatever else.

We also will do screen shares. So if they need evidence so that they can see it during the Zoom meeting, I will put it up on the screen share for them. That's one of the things that we do.

And we also help facilitate the participation of witnesses. So making sure that they're admitted appropriately and they leave the actual hearing Zoom room when their testimony is done. Other than that, I really

don't do anything.

Q. That's during the hearing?

A. Yes.

Q. So you said, after the hearing is over, there will be a deliberation by the panel, correct?

A. That's correct, yes.

Q. And so, during the deliberation process, do you have a role during that?

A. Again, I'm on mute. Typically, not on video hardly at all. My role is to be there should they have a procedural or process question. We do have one other role in that process, which is, if the student is found in violation, and only if they're found in violation, do we disclose if the student has any conduct status with the university.

In other words, are they in good standing with the university, because that would then affect the potential outcome.

Q. Okay. And then, I think one of the last things you said is, there's also an appeals process at the end. Are you involved in that appeal process at all?

A. Other than passing the information along to whoever the appellate officer is, no.

Q. All right. Well, now that we've talked just in general about the Title IX process, investigative hearings,

I want to talk now about this specific case. Okay?
A. Of course.
Q. So specifically talking about the plaintiff and Jane Roe's Title IX hearing in this case, did it follow TCU's Title IX procedures?
A. Yes.
Q. Were there any irregularities?
A. No.
Q. Were both students -- and this is kind of going back to the investigation process -- were both students interviewed?
A. Yes.
Q. During those interviews were both students given the opportunity to answer questions, submit evidence, that sort of thing?
A. Yes.
Q. Did they do so?
A. So she, Jane Roe, did. She provided text messages and Snapchat messages as part of the evidence that she submitted.
Mr. Doe, however, decided not to answer questions during the investigative interview at the advice of his advisor.
Q. Earlier you said that Jane Roe or, I guess, Mr. Roark said she was not cooperating during the interview

process. Do you know what that was about?

A. My understanding is that she went through the initial interview, through the initial investigation process, did that once, and did not want to go through it again because she found it traumatizing.

Q. So even though she may have not been cooperating, according to you she still submitted some evidence?

A. She absolutely did, yes. Very early on. I believe it was around September 24th. Somewhere in that range.

Q. Okay. And then did both students then receive the preliminary investigative report?

A. Yes, sir.

Q. Do you know when that was?

A. So it was submitted early -- or excuse me, it was added to the box folder that was shared with both parties. It was shared with Jane Roe on November 16th, as she had already submitted her review of electronic materials agreement back on November 12th.

It was shared with John Doe on the next day, November 17th, after he submitted his review of electronic materials agreement. In fact, as soon as he did that, it was shared with him.

Q. Okay. So on November 16th and 17th --

A. Correct.

Q. -- both parties had access to the preliminary investigative report?

A. And all the other materials as well.

Q. And the other materials as well.

Would that have included the text messages that Jane Roe submitted?

A. Yes, sir.

Q. Okay. And then, at that point, did both students then have the opportunity to provide comments and submit additional evidence?

A. Yes. They both had 10 days from the date they received access. As I stated with Mr. Roark, because of the timeline with the Thanksgiving holiday, that was actually extended all the way to the 30th of November.

Q. Okay. When you say "10 days," do you mean 10 calendar days or 10 academic days?

A. That's a great question. So OIE uses calendar days. Dean of Students office, because we are under the rights and responsibilities of students, we have to use academic days. So ours is academic, theirs is calendar.

Q. This would have been under --

A. Calendar, yes, and under OIE.

Q. Got it.

And so you just said they had 10 days, until November 30th, to provide additional evidence and comments.

Did the parties do that?

A. So they did, in the sense that Jane Roe, she submitted a letter that gave additional information about the allegations. She also resubmitted the same text messages that she had already submitted.

Mr. Doe, in this case, submitted a letter where he asked for the case to be dismissed and resubmitted -- or maybe it was the first time. I don't remember -- the polygraph results that we've already discussed.

Q. During this process and during the comment and evidence period, did John Doe submit any text messages?

A. No.

Q. Okay. So they responded to the preliminary investigative report. What happened after that?

A. So after the preliminary investigative report was posted and they submitted comments, both parties, as we just discussed, at that point, the information was gathered, the investigator then took that information and completed their final investigation report to close the investigation.

They were -- then the parties were notified, as was the Dean of Students' office, on December 7th that the case had been officially transferred to the Dean of Students' office for the resolution through the hearing process.

Q. And Mr. Roark talked a little bit about, or I

guess a lot, about the exculpatory text messages and evidence. When was that submitted?

A. So the students were given access to a shared box folder on January 7th by our office. It included all the material we've already discussed. However, not the preliminary investigative report, because now they had access to the final investigation report, as well as whatever responses were submitted to the Office of Institutional Equity during the preliminary investigation report review. So that was all allowed in that box folder for those students to respond and review it.

The responses were all due on January 24th. On January 24th, both parties provided responses. Mr. Doe's included, as I stated before, about 150 pages worth of text messages and screen shots. It was about, I think, 1,500 different texts.

Q. Was that the first time that he was submitting that evidence?

A. Yes, sir.

Q. What about Jane Roe, did she also submit new evidence or additional evidence that wasn't already available?

A. No, she submitted a comment. It was a letter or just a statement, but there was no new evidence that she submitted at that time.

Q. Okay. So what happened with the additional evidence that was submitted after the investigation was closed?

A. So we're obligated to then share those responses with the other party. So John Doe's text messages and his response was shared with Jane Roe.

At that point, they felt the need to respond, which is what we were just discussing with the ongoing 10 day, 10 day, 10 day issue.

So she submitted, on January 26th, additional evidence, more screen shots of text messages, a letter by an expert that they wished to bring into evidence as well.

Q. Was this evidence, the new evidence that she submitted, and the text messages that he submitted, was that excluded from the investigator or from the hearing?

A. All of it was excluded, both party's.

Q. And why was it excluded?

A. Because it was evidence that was available at the time of the investigation; it was not new evidence.

In addition, as I stated before, the prejudicial value outweighed the probative value based on what the panel chair determined.

Q. In your experience sitting in Title IX hearings and participating in investigations, have other panel chairs done similar things in the past?

Have they excluded evidence that was submitted after the investigation was closed for these same reasons?

A. Yes, sir, they have. We have another panel chair that we've worked with, even more frequently than Judge Ruvolo in this case, and she, actually fairly recently, had a similar circumstance where both parties submitted evidence that was deemed to be not new evidence and was available at the time of the investigation, and it was excluded for both parties from the panel.

Q. Okay. And we talked a little bit about the panel members in this case. Will you tell us again who those panel members were?

A. Sure. Dr. Clark Jones, Reece Harty, and Laura Shaw.

Q. And were all three of them affiliated with TCU?

A. Yes. They're all faculty and staff members.

Q. What about the panel chair?

A. Not affiliated with TCU, works for an external contract source that we utilize called JAMS that is a retired judge. Judge Ruvolo is out of California and not on faculty or staff at TCU, but he's also a non-voting member of the panel.

Q. Got it.

And we talked a little -- or Mr. Roark said that you were really good friends with one of the panelists. He

kind of insinuated that you had conversations with him.

Can you tell us more about that?

Did you speak to a panel member before the hearing?

A. So I frequently speak to panel members before we have hearings, because my role is to facilitate the process. That means that I need to ensure that they have access to the materials in order to be informed panelists.

So I frequently send emails to talk about scheduling, to make sure that they have access to the materials. I answer procedural questions. So I do talk with panelists before. That's my job. That's to make sure we have a prompt, fair process.

For example, Mr. Harty's and I's lunch is actually a good example of that. I had a previously scheduled lunch with him that had been on my calendar for weeks, and it happened to fall the morning or the day after the 24th deadline, response deadline, by both of the parties.

And so we got all of that material, 150 pages of additional text messages. I was very concerned about making sure that they had ample time to be able to review all the material.

So that evening, instead of spending time with my family, I actually sat down and shared all of that material from both parties with all the panelists, with the panel

chair, at about 9:30 that Monday evening the 24th.

So when I saw Mr. Harty the next day at lunch, which was previously scheduled, not because of this hearing, I just naturally asked him, could have done it by phone call, could have it done it by email, I just asked him, "Did you get my email? It's important."

And he said, "Yes, I did." And then we had a regular lunch.

Q. So other than asking him if he received your email, did you talk about the case --

A. No.

Q. -- with Mr. Harty?

A. Absolutely not.

And if I would have, would I have disclosed that during our prehearing to one of the advisors and the parties? That wouldn't make any sense. I absolutely had no conversation. That's totally inappropriate behavior.

Q. Did you tell Mr. Harty -- did you make a comment on what the new evidence was?

A. No.

Q. Did you talk about anything about the substance?

A. No. I said it was posted. There was a substantial amount of materials. So I wanted to make sure he had access to it.

Q. Now, we also talked a little bit about the recross

and redirect and how you made a comment, either at the beginning of the hearing or prehearing, about that TCU was not going to allow that.

Can you explain again what your rationale for that was?

A. Yeah, absolutely. As I stated before to Mr. Roark, we're always very concerned about trauma when we talk about these sort of circumstances. Let's be honest, having anyone dive into your intimate sexual history can be traumatizing.

So the goal is to make this as fair as possible and as sensitive as possible. That's part of the reason we do the prehearing is the judge assures them that we are going to keep this as sensitive and fair as he possibly can or she -- and they will jump in and prevent any sort of harassing behavior. So there's proper decorum in the hearing.

So my statement was in reference to all parties. We're concerned about retraumatization of both complainants and respondents. I've seen, in these hearings, when a respondent is dealing with the difficulty of being accused of one of these types of actions. It's hard on both parties. So my comment was simply so that they understood the process and to protect both parties.

Q. And so when you were making a comment that you

wouldn't allow redirect, recross, was that applied equally to both parties?

A. Absolutely.

Q. And then, in this case, were the parties actually allowed to do recross and redirect?

A. Yes. It's honestly been a bit of a problem with a couple of our panel chairs. When they see that there's complexity of the case and that either of the advisors continues to have questions, they will often allow them to ask questions until they've exhausted them and that's what happened in this case.

Q. Okay. So despite your comment, was Mr. Roark still allowed to recross Jane Roe?

A. Yes. That's why that hearing lasted about 17 hours.

Q. All right. Dr. Ledbetter, what was the outcome of the hearing in this case?

A. So it was actually a split outcome. John Doe was found in violation of one of the allegations, allegation one, which was sexual assault on campus in Colby Hall.

He was found not in violation as to the second allegation, which was sexual assault in Austin.

Q. And I want to talk really quick about the consolidation case.

What was the reason that these were consolidated?

A. It would have been incredibly complicated to have two hearings that would be totally separate and apart from one another, because these were intimately connected facts and circumstances.

They were in this ongoing relationship, one related to another. The text messages were related, one to another. We had a similar witness that would have had to have been called in both cases. It made sense to consolidate it. It was a way for it to be fair, as well as prompt. To do two cases, you've seen how long these cases could take, it would have been unfair to the parties.

Q. And you sat through the whole hearing, correct?

A. I did, yes.

Q. And you also said that you watched the panel deliberate?

A. I did.

Q. During the hearing and during the deliberation, did you witness any sort of signs of discrimination or gender bias?

A. Absolutely not.

Q. Did you influence the panel's decision at all?

A. No.

Q. What happened after you said John Doe was found in violation of one allegation and then not responsible for one? What happened after that?

A. So once the determination by the panel is made, whether they're in violation or not, it's time to move into the outcome phase. And that's pretty much the only part that we participate in.

And our only participation is to let the panelists know if the student has some sort of status with the university. So are they on conduct probation? Have they been suspended previously? What is their status?

In this case, there was no status. John Doe was in good standing with the university. So we informed the panelists of that. And then, again, step back to the mute position that we're in, and let them deliberate what that outcome will be.

Q. And so what was the outcome here?

A. The outcome was that he was suspended until the May 2023 Maymester. So a little over a year with some additional stipulations. For example, he needed to undergo Title IX training before he could reenroll, as well as attend counseling for, I believe it was for anger management and interpersonal communication.

Q. Okay. And when a respondent is found in violation of a policy is that a typical outcome remedy that happens?

A. So it's a bit of a range. We've had some that have been put on conduct probation. We've also had some that have been expelled. So this was pretty much somewhere

in between those two.

Q. Okay. You said he was suspended for about a year?

A. That's correct.

Q. Okay. I want to talk now just about your experience, in general, with Title IX hearings and investigations and sitting as the procedural chair and observing them.

Is it a typical result in a Title IX hearing at TCU that a male student is found in violation of the policy?

A. I think that's a really hard question to answer in the way you've said it, because we don't keep records based on a party's gender.

I can tell you what I've seen in terms of cases, but we don't categorize a party based on gender. It's not typical to find one way or the other. It's about what was fair based on the evidence that's presented.

Q. Okay. So I'll try and ask it a different way. Are male students always found in violation --

A. No.

Q. -- of TCU's policy?

A. No, they're not.

Q. Does TCU always find in favor of the accuser or complainant in Title IX cases --

A. No. Absolutely not.

THE COURT REPORTER: Can you just let him finish,

please?

THE WITNESS: Sure. I'm sorry.

THE COURT REPORTER: Thank you.

MR. RAJARATNAM: I'm sorry, we will try to make your job as easy as possible.

(BY MR. RAJARATNAM:)

Q. Do you know what results you've had just this past year in Title IX investigations and hearings, as far as whether the respondent gets the favorable outcome, or whether the complainant does?

A. Yeah, it's about 50/50. So 50 percent of the time in favor of the complainant and 50 percent of time in favor of the respondent.

Q. Do you always deal with female complainants bringing complaints against male respondents?

A. No. As I mentioned with Mr. Roark previously, we had a couple of different cases. We had a male on male sexual assault hearing last -- it was either August or September. We had a female on male sexual assault case. We had a female on male false complaint case that we did as a hearing.

And we just, through an informal mediation, closed a case that should have been at hearing today in fact that was male on male dating violence.

Q. Are the results of TCU's Title IX hearings based

on gender?

A. No.

Q. Was the result of this case based on Jane Roe's gender?

A. No.

Q. What was it based on?

A. So the panel determined as to allegation one, which would be the sexual assault at Colby Hall, that it was based on the contemporaneous text messages and Snapchat messages between Jane Doe or -- sorry, John Doe and Jane Roe, in this particular instance.

And those text messages stated -- she stated specifically that she had never once said yes. That she had said no. And that he stated that he was profusely, like, apologetic. He was a bad guy. He was a rapist. In addition, there was a text message between the witness, the one witness --

MR. ROARK: I would object at this stage. If she didn't decide this, why is she explaining why they did decide --

THE COURT: Sustained. The report outlines it.

MR. RAJARATNAM: We will move on.

(BY MR. RAJARATNAM:)

Q. I think you mentioned earlier there was an appeal process. Did the students appeal this case?

A. Yes, both appealed.

Q. And what happened to those appeals?

A. The appeal was heard by an appellate officer and the determination by the panel was upheld.

Q. So was both John Doe and Jane Roe's appeals denied?

A. Yes.

Q. And does the plaintiff remain suspended as of today?

A. Yes.

MR. RAJARATNAM: I'll pass the witness, your Honor.

MR. ROARK: Very briefly, your Honor.

REDIRECT EXAMINATION

(BY MR. ROARK:)

Q. Dr. Ledbetter, I didn't have this in front of me before, but I'm looking at Exhibit 13, which is the initial investigative report.

A. So you have, let me clarify, the preliminary investigation report?

Q. Yes, the preliminary.

A. Thank you.

Q. To be clear, both sides have the -- get to respond to that, and they both have the same deadline of the 30th, correct?

A. Yes.

Q. And so in this particular case, those footnotes that I was referring to by the investigator -- and you tell me if you think this is accurate -- Roe declined the initial investigative interview with the investigator; do you recall that?

A. I recall reading it, yes.

Q. Okay. Roe also declined to give detailed information as it relates to both alleged incidents during her follow-up interview, correct?

A. I recall reading that, yes.

Q. Okay. So if she refused to give details, both sides have the same deadline of the 30th, she ended up giving more details, that Mr. Doe is forever precluded from responding to with evidence at that point, according to TCU's rules, correct?

A. He actually got to respond to that when he submitted his response on January 24th. As I stated, it was shared in the box folder.

Q. That evidence was not allowed to be introduced at the hearing though, correct?

A. He's allowed to comment.

Q. The evidence was not allowed to be introduced at the hearing, correct?

A. That's correct.

Q. Okay. You're a lawyer, aren't you?
A. I am, yes. Not practicing, but yes.
Q. You complained earlier that I was not reading from the rules but from the guidance.
The actual rules say that a recipient is not supposed to restrict the ability of either party to discuss the allegations or to gather or present relevant evidence, correct?
A. Yes.
Q. You restricted Mr. Doe from presenting relevant evidence at the hearing in the form of the text messages that he attempted to introduce four days prior to the hearing, correct?
A. The investigation was closed.
Q. That's not my question.
You restricted his ability to present evidence at the hearing, did you not?
A. It was the panel chair's decision, not mine.
Q. Well, your opinion -- I agree with that -- but you gave me the same opinion in that letter, that email January 12th, did you not?
A. I did, based on our rules.
Q. Okay. Now, you stated something earlier which was perplexing to me. The text message in which Jane Roe says, "You didn't rape me, Doe," how could that ever be more

prejudicial than it is probative?

MR. RAJARATNAM: Objection, your Honor. That's not what the text message says. He's mischaracterizing the evidence.

THE COURT: Overruled.

(BY MR. ROARK:)

Q. Proceed.

A. Can you ask the question again, please?

Q. The text message that we attempted to introduce that says, "I don't think you raped me, Doe," how could that ever be more prejudicial than it is probative?

A. Because it was provided with 1,500 other text messages with really no context.

Q. It was provided in the context of their whole text string that she provided, was it not?

A. I can't answer that question. I don't know.

Q. Well, then, how do you know it's out of context?

A. Because I looked and they were cherry-picked text messages.

Q. Well, let's talk about being cherry-picked.

She did not actually turn that in, did she?

A. That text message? No.

Q. So who's cherry-picking here?

A. She also provided context by stating when those text messages were with the dates. If recollection serves,

I don't believe all of the text messages you submitted had dates.

Q. Why are you defending Jane Roe here if you are not biased?

A. I'm simply trying to provide information about the process and answer your questions, sir.

Q. Right.

What the judge -- answer the question -- what's more prejudicial about that particular text than it is probative?

The allegation is, "You raped me," and I've got a text that says, "I don't think you raped me" from the same person. How could that ever be more prejudicial than it is probative?

A. Sir, I don't know the answer to that question.

Q. That's what you've been arguing this whole hearing.

THE COURT: Well, did you believe it is more prejudicial?

THE WITNESS: I would say it's not.

THE COURT: As you see it now?

THE WITNESS: But that's not my decision. That's the decision of the panel chair.

(BY MR. ROARK:)

Q. You stated on direct that you thought that the

texts that we submitted were more prejudicial than probative, did you not?

A. I did, because there were 1,500 of them.

Q. Okay. The judge could have selectively admitted the texts, could he not have?

A. He could have. However, again, it gets at the issue of new evidence.

Q. And if you are restricting Mr. Doe's ability to present relevant evidence, you are in violation of, not just the guidance, but the actual -- the federal regulations, correct?

A. According to your interpretation, yes.

MR. ROARK: Pass the witness, your Honor.

MR. RAJARATNAM: Very brief redirect [sic], your Honor.

RECROSS-EXAMINATION

(BY MR. RAJARATNAM:)

Q. Dr. Ledbetter, we talked about how the parties had a deadline of November 30th to respond to the preliminary investigative report, correct?

A. That's correct, yes.

Q. And you told us that John Doe --

When did John Doe receive access to the text messages that Jane Roe submitted?

A. On November 17th.

Q. Okay. So how long did John Doe have where he was able to view those text messages and then submit his own text messages?

A. So between November 17th and November 30th.

Q. Could John Doe have submitted those text messages at that time?

A. Absolutely.

Q. Did he do so?

A. No.

MR. RAJARATNAM: Pass the witness, your Honor.

THE COURT: Okay. You may step down. Thank you.

THE WITNESS: Thank you.

MR. ROARK: Judge, we call John Doe.

May I run out and grab some water real quick?

THE COURT: Come have a seat.

MR. ROARK: May I proceed, your Honor? Thank you.

DIRECT EXAMINATION

(BY MR. ROARK:)

Q. Mr. Doe, did you rape Jane Roe on August 19, 2020, in her dorm at Colby hall?

A. No.

Q. Did you rape Jane Roe in Austin on October 3rd or 4th of 2020?

A. No.

Q. During the hearing, in addition to those two

allegations, she also claimed you had actually raped her hundreds or possibly over a thousand times, correct?

A. Yes.

Q. What was her explanation for that?

A. Her explanation for that was that looking back, over half the times that we had sex, she actually didn't want to, even though she never told me in the moment or expressed it to me.

Q. And she was describing those as rapes, correct?

A. Yes.

Q. When this was all kind of coming to a head, her father was contacting your father about this, you contemplated actually leaving TCU to go to another school; is that correct?

A. Yes.

Q. One of the reasons that you couldn't do that at the time was that TCU's rules were such that --

MR. SCHNEIDER: Objection, your Honor; leading.

THE COURT: Overruled.

(BY MR. ROARK:)

Q. Why isn't it that you couldn't do that at the time?

A. Why I couldn't switch schools?

Q. Right.

A. Because of the pending Title IX investigation.

Q. Right.
And specifically, what did you need or what would you have needed from TCU to go to another school?
A. A letter of good standing.
Q. And did TCU's rules allow for that, even though you had not been found responsible at that time?
A. No.
Q. You initially chose to not enroll for the fall 2020 semester, correct?
A. Yes.
Q. But did you decide to enroll for the spring or winter 2021 semester?
A. Yes.
Q. That would have been the semester that you were currently in prior to several weeks ago, correct?
A. Yes.
Q. Was there someone at the school --
Well, when you were initially trying to reenroll, when was that?
A. That would have been just the beginning of the semester. I don't have the exact date.
Q. Okay. Someone at the school told you initially that you could not reenroll because this process was ongoing, even though you had not yet been found responsible; is that correct?

A. Yes.
Q. Who was that individual?
A. Dean Steidl.
Q. How did that happen?
A. My dad and I went in for an interview -- or not an interview -- I guess just went in for a meeting to see how I could get enrolled. They ended up directing us towards meeting with Dean Steidl and he told us that it wasn't possible.
Q. To enroll?
A. To enroll.
Q. Okay. That turned out to be false, didn't it?
A. Yes.
Q. And you had to get a lawyer involved to overcome that?
A. Yes.
Q. How did that happen?
A. So immediately after we left the meeting with Dean Steidl, our lawyer had prepared for that, and sent an email that kind of went right over his head to people that were above him.
And then he ended up calling me about 45 minutes later after our interview with a completely different tone, saying he could get it done for me.
Q. When you say "he," who are you talking about?

A. Dean Steidl called me on my phone.
Q. Let me say -- well, let me back up.
There's actually a section of their rules that you didn't know about at the time, were you aware of that?
A. Yes.
Q. That's what your lawyer pointed out, I guess, to Dean Steidl's supervisor?
A. Yes.
Q. And you were subsequently allowed to reenroll; is that accurate?
A. Yes.
Q. Miss Roe's first allegation is alleged to have occurred on August 19th, 2020, correct?
A. Yes.
Q. And that was on TCU's campus where that allegation occurred?
A. Yes.
Q. And the second allegation would have been approximately six months -- six weeks later in Austin, Texas; is that accurate?
A. Yes.
Q. And were either of those, other than the fact that both of you were the common parties, were those incidents related in any other way?
A. No.

Q. Did you ask that those two allegations be bifurcated or heard in separate hearings?
A. Yes.
Q. And by asking, I mean you asked in writing for TCU to do those in separate hearings; is that correct?
A. Yes.
Q. Why is that?
A. Because I didn't want them to --
Well, first off, they weren't related, and I didn't want them ending up splitting the baby, which they ended up doing with the hearing.
Q. Okay. That's your opinion about that, would you agree with that?
A. Yes.
Q. You attempted to introduce evidence prior to the hearing, correct?
A. Yes.
Q. And that was for the deadline on January 24th to respond to the final investigative report; is that correct?
A. Yes.
Q. And that included text messages, from your perspective, that provided context to your relationship?
A. Yes, as well as pictures of us together.
Q. Okay. When were those pictures taken?
A. All of them were taken after the two alleged -- or

after the alleged assaults.

Q. They were all after the second one, correct?

A. Yes.

Q. Okay. So all those photos would have been of you two together in some way as a couple or socializing or something like that?

A. Yes.

Q. Some of those photos where she was sending you photos just unsolicited of herself and those kind of things?

A. Yes.

Q. One of those text messages was -- let me back up.

The text messages that she gave TCU for, what I will refer to as the Colby Hall incident, was that the entirety of your text stream for that particular day?

A. No.

Q. Specifically she had not included a text message in which she said, "I don't think it was rape, Doe," is that correct?

A. Yes.

Q. Among others, right?

A. Yes.

Q. And so, the other text messages specifically in between those, there was a couple pages' worth where she was actually more concerned with whether you had given her COVID than anything that happened in the room an hour earlier; is

that right?

A. Yes.

Q. And so she submits texts, you submit a text later that says, "I don't think it was rape," when she had been accusing you of rape and that was excluded?

Did you think that was fair to you?

A. No, I do not think that was fair.

Q. Was it disturbing to you when Judge Ruvolo excluded those text messages and described them as unfairly prejudicial?

A. Yes.

Q. Could there have been anything else that they were prejudicial to you, other than her claim that she had raped you [sic]?

A. No.

Q. That you had raped her? Sorry.

A. No, there was nothing else.

Q. You received correspondence from TCU in the form of emails almost exclusively; is that accurate?

A. Yes.

Q. And you got a copy of the preliminary investigative report, that I've read from, where it states she was not cooperating with the investigation, essentially?

A. Yes.

Q. And it gave you a deadline to respond to that

investigative report; is that accurate?

A. Yes.

Q. Did it say anything, such as, this is your final deadline, you won't be able to submit evidence after this?

A. No.

Q. After reading it would you have had any idea that that this was going to be the final deadline for submitting evidence?

A. No.

Q. And when your deadline was to submit evidence, you had not yet been able to see what she was going to respond to that report with either, correct?

A. No, I didn't.

Q. In other words, y'all's deadline was on the same day, correct?

A. Yes.

Q. And so the way that works out is that you wouldn't be able to rebut anything she was saying after that; is that correct?

A. Yes.

MR. SCHNEIDER: Your Honor, I'm going to object. I've given -- Mr. Roark, at this point, is testifying. These are leading questions and I will object on that basis.

THE COURT: Overruled.

///

(BY MR. ROARK:)

Q. And she provided a substantial amount of more details and information in her response to the preliminary investigative report; is that accurate?

A. Yes.

Q. Were you prevented by TCU from providing evidence in response to that additional information?

A. Yes.

Q. You attempted to do that in response to the final investigative report; is that accurate?

A. Yes.

Q. And Dr. Ledbetter had stated, well, that was only four days prior to the hearing.

Who set the hearing four days after the deadline to respond to the final investigative report?

A. I'm not sure. Could you ask that again?

Q. Well, you didn't set it for the 28th, did you?

A. No.

Q. Did anyone ever send out a notice to you saying, hey, we're thinking about hearing dates in this time frame. What dates are you available?

A. No.

Q. And, in fact, you attempted to get the final hearing date pushed off a little bit because you were supposed to be attending a family vacation, correct?

A. Yes.
Q. And that was denied, was it not?
A. Yes.
Q. There were text messages that she turned in that she referred to, and I think TCU has to some extent, as admissions on your part; is that correct?
A. Yes.
Q. And specifically related to the 19th, for instance, text messages where you say, "I'm sorry for being touchy and handsy" and things like that, correct?
A. Yes.
Q. Could you explain what those text messages were about?
A. Yes. So, essentially, I was doing what I used most of the time with her whenever she was -- whenever she would say that I was doing something wrong, I would go overboard and apologize, and then it would diffuse the situation. Even if it was for something that I didn't do, it would diffuse the situation. And we would go back to talking like normal, like nothing had ever happened.
Q. Okay. And how long had that been going on?
A. For maybe -- pretty much since the beginning of our relationship, I would say.
Q. Okay. And you submitted -- you know, she complained about 150 pages' worth of text messages.

You submitted those to try to provide context for y'all's relationship in those particular text messages; is that accurate?

A. Yes.

Q. And TCU prevented the hearing panel from being able to consider those text messages, did they not?

A. Yeah, they prevented it.

Q. Now, included in those text messages were times where you had taken blame for something and gone overboard in taking responsibility, and she had even said, stop doing that. This is not your fault. It's mine. Is that accurate?

A. Yes.

Q. Okay. And with that particular text where you're talking about being handsy, I don't want to get too far into this, but just to provide context, y'all had had a sexual encounter three days prior to this; is that accurate?

A. Yes.

Q. That would have been inconsistent with her statements in her response to the initial investigative report that she was afraid to be alone in a room with you, right?

A. Yes.

Q. That's the way she was initially spinning that story, isn't it?

A. Yes.
Q. And y'all had had sex three days prior and you had told her, prior to having sex with her that day, that you didn't want to kiss her because that would be too emotional for you; is that correct?
A. Yes.
Q. And despite that, she continued to want to have sex with you?
A. Yes.
Q. And, in fact, she picked you up and took you to her house to be able to do that?
A. Yes.
Q. And she complained, despite knowing what she was getting into there, she complained about that afterwards that there wasn't enough foreplay and those types of things; is that correct?
A. Yes.
Q. And did you feel guilty about those things?
A. Yes.
Q. And at this time, y'all were together, y'all had broken up, and you actually wanted to get back together with her, didn't you?
A. Yes, at some point around then.
Q. Okay. And so you were angry about some things that had happened over the summer but, at the same time, you

certainly thought you might want to get back together with her; is that correct?

A. Yes.

Q. And not wanting to kiss her was -- what was that about?

A. Me poorly navigating that I was trying to think of the right word, like, upset that she had been with other people.

Q. Okay.

THE COURT: When is this we're talking about?

MR. ROARK: Three days prior to the August 19th allegation.

THE COURT: Allegation one?

MR. ROARK: Yes, sir.

THE COURT: Okay.

(BY MR. ROARK:)

Q. And so after that sexual encounter on the 16th, so between the 16th and the 19th, she complained about your -- about disrespecting her during that encounter, did she not?

A. Yes.

Q. What was her definition of disrespect in that context?

A. Essentially, that I wasn't engaging in, like, kissing her, pretty much.

Q. And generally, foreplay?

A. Yeah, generally just foreplay.

Q. I'm not defending that strategy by the way, but that's what she was complaining about, right?

A. Yes.

Q. And so you go over there on the 19th and what happened?

A. I go over on the 19th and she starts or she informs me that her and her roommate -- her roommate had been practicing sex positions on each other and that she wanted to act them out on me.

Q. Okay. And so she proceeds to grind on you and flirt heavily; is that accurate?

A. Yes.

Q. Did that make you think she might want to have sex with you that day?

A. Yes.

Q. What did you do in response to that?

A. I assumed that we were going to have sex.

Q. And did you try to initiate sex?

A. Yes.

Q. And by touching her hips and back when she was grinding on you?

A. Yes.

Q. And at some point she informs you, look it's really just not going to happen today; is that correct?

A. Yes.
Q. And at that point, did you stop?
A. Yes.
Q. And you subsequently left?
The first email [sic] after that actually was from you, was it not?
A. Yes.
Q. In other words, she didn't send an email -- text to you saying, I can't believe you just did that or anything like that, did she?
A. No.
Q. Your first text messages talk about what?
A. Basically, I think she was upset that I wouldn't kiss her.
Q. And so did you apologize for being what?
A. Basically, horny.
Q. And handsy?
A. And handsy.
Q. And what was her first response to that?
A. I do not specifically remember.
Q. Was it about you possibly giving her COVID?
A. Oh, yes. It actually completely transitioned into her thinking she was going to die because she had just gotten COVID and she was going to kill her roommate because of it.

Q. So when you say, "I'm sorry for being handsy," she didn't even respond to that initially, did she?
A. No.
Q. A couple pages go by, you continue to apologize for being handsy, correct?
A. Yes.
Q. And she eventually says, that sounds like something a rapist would say, right?
A. Yes.
Q. And you went on, and at some point you're going on so far she says, paraphrasing, relax. I don't think it was rape, Doe, correct?
A. Yes.
Q. All those text messages in context, where you were prevented from presenting to the panel in evidentiary form; is that correct?
A. Yes.
Q. Subsequent to that she, Ms. Roe, had other sexual encounters with you, correct?
A. Yes.
Q. And one of those was October 3rd or 4th in Austin, correct?
A. Yes.
Q. And one of those, several times after that, up until early December; is that right?

A. Yes.

Q. Did TCU's -- did their preventing you from introducing those exhibits and having the panel rely on that hearing, in your opinion, prevent you from being able to prevail on allegation one at that hearing?

A. Yes.

Q. Do you think if the hearing had been bifurcated in two different hearings that you would have won both of them?

A. Yes. I think I would have had a significantly better shot than combining them.

Q. In fact, they compare both of these incidents in their deliberative report, do they not?

A. Yes.

Q. How have you been harmed by TCU's flawed and bias process which found you responsible for rape?

A. In short, I've been branded by a rapist and it's pretty much put my entire life on hold. It's ruined friendships, taken away my college experience.

If I go out in public and her friends are around, they harass me. And they also harass my girlfriend, even though she has absolutely nothing to do with this.

They will pour drinks at her. They will shout "Rapist" at her. And basically everyone is affected in that. It's just a negative sentiment that I have to continue to deal with because of the unfair trial.

Q. And how has it specifically affected your educational opportunities?

A. It's completely taken a year out of my life and wasted it, as far as not being able to go to school, whether it's at TCU or another institution.

Q. Okay. And you can't go to another school without a transcript or letter of good standing; is that correct?

A. Yes.

Q. And you can't get those during this suspension; is that right?

A. No.

Q. When I was your age, I remember thinking life starts when I get out of college.

What is the college experience to you?

Why is that important?

A. The college experience to me is a lot of things. It's, first of all, getting my education, which is what I'm directly not able to do. And then also being able to enjoy my time with the new friends that I have, the community -- the greater TCU community, and my smaller circles within that, and I pretty much can't do any of it.

Q. And so if this suspension stood it would be just a delay in what you consider your progression in life, at least for the next year, right?

A. Yes, and it would go beyond that. For the rest of

my life she would be able to run around and just tell everyone that I'm a rapist when that's not true.

Q. Well, and more importantly, that TCU had found that?

A. Yes, exactly. She would be able to do that because of what TCU did.

Q. Okay.

MR. ROARK: Pass the witness, your Honor.

THE COURT: Okay. We're going to break here and we will start back up at 12:30.

THE CHIEF SECURITY OFFICER: All rise.

(A recess was had at 11:22 a.m.)

(Court reconvened at 12:29 p.m.)

THE COURT: Please be seated.

Go ahead.

CROSS-EXAMINATION

(BY MR. SCHNEIDER:)

Q. I'm going to try my best on the "Doe" and not use your name and "Roe." I might slip into complainant or respondent as well. So if I slip up, just call me on it. It's not intentional. Okay?

A. Okay.

Q. All right. Let me walk through -- I just want to make sure on the time line. I want to walk through some issues that are a little unclear to me having sat here

today.

My understanding is, and let's start with kind of basics, you were involved in an investigation at TCU because a report was filed by your former girlfriend that you sexually assaulted her, correct?

A. Yes.

Q. Okay. One of the allegations was about an incident in August of 2020, correct?

A. Yes.

Q. Okay. And that's the incident that allegedly occurred on campus, I think, at Colby Hall?

A. Yes.

Q. And just so that I am aware, Colby Hall is a residence hall on TCU's campus, correct?

A. Correct.

Q. Where Jane Roe at that point lived, correct?

A. Yes, correct.

Q. And the other one was about an incident that occurred in October of 2020. So two months later in Austin, Texas, correct?

A. Yes.

Q. The first allegation that Jane Roe made, the August 2020 allegation, was that you had sexually assaulted her in her residence hall room.

And specifically what she alleged was that you had

digitally penetrated her vagina without her consent?
A. Yes.
Q. When was the first time that you were put on notice that that was the allegation she was making about you?
A. I do not specifically remember the first time.
Q. All right. Was it prior to the initiation of the investigation at TCU?
A. If I understand right, no, I don't believe so.
Q. Okay. There was some conversation, I think, about -- if I've gotten any of this wrong, let me know -- you possibly not reenrolling at TCU for, I think it was for that semester? Is that the fall semester?
A. It would have been the fall. Like I said, that was during the fall semester; it would have been like the whole next year, fall semester. So I continued through that spring.
Q. Okay. So, at that point, was the decision not to reenroll, at least preliminarily, based on the fact that your former girlfriend was making these allegations against you?
A. Yes.
Q. So you were on notice, roughly, around what time? August?
A. I knew -- so the decision not to enroll happened

later. I would say, in August. But we knew something was happening because of her father's responses to -- or the way they contacted my dad.

Q. Okay. Tell me about that.

A. Okay. So he originally said --

Q. Who is "he"?

A. I'm sorry, Jane Roe's father.

Q. Jane Roe's father. Okay.

A. Jane Roe's father called my dad and said that he would like me to stay away from Jane Roe.

Q. Okay. Do you recall when that was?

A. Yes. I remember an event that occurred the night before, but I don't remember specifically what date that was. It was early -- early 2021.

Q. Okay. It was early 2021?

A. Yes.

Q. January, February of 2021?

A. Yes.

Q. Okay. At that point, when you were put on notice, you were thinking about withdrawing from the university, correct?

A. It wasn't until later and the threats got more -- like, there were more of them. I believe it wasn't until later in the summer that I considered withdrawing from TCU.

Q. Okay. And I want to be really careful, nothing

more important, at least for a lawyer, than communications between attorneys. This one straddles the line.

I will be really careful, your Honor.

But at that point, in January of 2021, did you retain an attorney?

A. Around that time, yes. I would say within, like, the next month or so.

Q. Okay. Was it at that point there was some sort of threat of criminal prosecution or a civil lawsuit, or what was going on?

A. I don't specifically remember if there was any -- I think it was all kind of implied. I don't remember if it specifically said criminal or civil or through TCU. I think it was just in general.

Q. All right. But there was some conversation during that period of time, we're talking about January of '21, where her father was contacting your father, saying, "Stay away," right?

A. Yes.

Q. At that point also was there any conversation about Jane Roe said that you had sexually assaulted her?

A. Yes.

Q. Okay. And at that point you retained an attorney?

A. Yes.

Q. Okay. In your counsel's briefing, he makes -- I

don't want to overstate it. I was going to say, I don't want you to -- but he discusses the issue of, she didn't bring her formal complaint to TCU's Office of Institutional Equity until, I think, a year and a month after the incident happened; do you recall that in the briefing?

A. Yes.

Q. But you were on notice about this way before that, correct?

A. Yes.

Q. And the reason she brought the complaint was she thought you weren't going to come back, which is what she wanted, and you came back?

A. No. I didn't enroll.

Q. You didn't for that semester?

A. I guess I never technically came back, but --

Q. Okay. Why did she file the report, if you know?

A. I would assume --

THE COURT: No. No.

(BY MR. SCHNEIDER:)

Q. Don't assume. If you know?

THE COURT: If you don't know or if you have to guess, say, "I have to guess or I assume," but only if you know.

THE WITNESS: No, I don't know for sure.

///

(BY MR. SCHNEIDER:)

Q. That's a perfectly acceptable answer. That's fine.

Let's go back. Who was the attorney that your family engaged to represent you in that proceeding?

A. Originally it was Dusty Hill.

Q. Got it.

And Dusty Hill --

I was going to do a ZZ Top joke. I won't do it, but he was the bass player for ZZ Top, but that's a different Dusty Hill.

-- he's a lawyer here in Fort Worth?

A. Yes.

Q. Pretty darn good attorney, right?

A. Yes.

Q. All right. When the OIE process was initiated, when was that?

A. That would have been, I believe, around September of that fall semester of 2021.

Q. September of 2021.

At that point, you're represented by a lawyer, right?

I'm not going to be mean, not one of the folks on TCU's campus or an administrator, your advisor in the process is literally Dusty Hill, right?

A. Yes.
Q. Fort Worth lawyer?
A. Yes.
Q. Did he tell you -- I need to be careful.
Are you aware of whether or not Dusty Hill had represented other students in TCU's process before?
A. I guess I wasn't expressly, but I kind of assumed. I thought that he was kind of the guy that you go to for that, if that makes sense.
Q. All right. Did he give you any indication that he was very familiar with TCU's process?
A. Yes.
Q. All right. In terms of -- and I am really bad with dates. That's why I write them down -- you received a notice of investigation from the Office of Institutional Equity, it looks like on October 5th of 2021; does that sound correct?
A. Yes.
Q. All right. At that point Dusty Hill, lawyer, was your advisor?
A. Yes.
Q. All right. What do you recall about what was in that notice of investigation?
A. I don't specifically remember right now.
Q. Okay.

A. I believe it said that just I was under investigation for Title IX.

Q. Okay. Did they name who the person that was making the complaint against you was?

A. I do not remember. I believe so.

Q. Did you have some idea what the allegations were?

A. Yes.

Q. All right. You were then invited by the Office of Institutional Equity to come in and sit for an interview, correct?

A. On Zoom, I believe, yes.

Q. It was on Zoom, at the height of -- it's all a blur -- but at the height of the pandemic, correct?

A. Yes.

Q. All right. You were invited to give an interview. Tell me what you can recall about that conversation.

A. I was advised by my attorney --

Q. All right.

A. -- to just provide no comment.

MR. SCHNEIDER: And Judge, I'm straddling the line here about -- I want to ask him if he had provided any explanation about why he shouldn't provide any information to TCU's Title IX investigator. I will leave it at that.

I'm concerned that that is potentially privileged. I just want to give you --

MR. ROARK: I think it obviously is, Judge, in my judgment.

THE COURT: What is the question you had?

MR. SCHNEIDER: The question is whether or not Mr. Hill gave him any explanation for why he shouldn't provide any information to TCU during the investigation.

THE COURT: Okay. I'm going to sustain that question.

MR. SCHNEIDER: Fair. All right. Move on.

(BY MR. SCHNEIDER:)

Q. It's enough to say that, during that investigatory interview by TCU, that you didn't provide any answers to any questions that the investigator provided you?

A. Yes, that's correct.

Q. All right. You, at that point, because I've now seen them subsequently, apparently had an extensive texting history with Jane Roe; is that correct?

A. Yes.

Q. Okay. Did you provide the Office of Institutional Equity, during that first meeting, with any of that text messaging?

A. No.

Q. All right. Why not?

A. I really hadn't thought about it. I didn't really know how to go about, like, proving something that I didn't

do. So it really never crossed my mind to just want to go back and look at -- it ended up being between 14- and 1,500 messages between us.

Q. It's a lot of messages?

A. It is.

Q. When I printed it out it was 214 pages of messages. Does that sound about right?

A. I believe, just of the ones we submitted.

Q. Say again?

A. I think, of the ones we submitted, yes. I think in total, between all of the ones we had submitted, it's around like 900.

Q. So even the ones that you submitted were 214 pages, that's cherry-picked from the entire corpus of possible text messages between you and Jane Roe, correct?

A. Yes.

Q. Do you know what "subpoena power" is?

A. No.

Q. Does TCU have any ability to subpoena those records from you?

A. I don't know.

Q. The only way TCU can get records from you is how?

A. By me submitting them.

Q. Yes.

And they invited you, in the investigation

process, to do just that; is that correct?

A. Yes.

Q. And you decided not to?

A. I -- yes.

Q. I want to fast-forward. At some point in the investigatory process -- and, look, this is a very bureaucratic process. It's not necessarily because TCU wants it that way, it's because they have to comply with Title IX regulations.

There is an initial investigation that is done. And then what the Title IX regulations require is for TCU's investigator to put a report together, send it to the parties with what the investigator has learned during the course, in this case of her investigation, and afford you the opportunity, once again, to review, comment, and add additional evidence; is that your understanding?

A. There was a lot there, but I believe, yes.

Q. It was a long question, but let me put it this way.

On October 12th of 2021, did the OIE investigator provide you with a preliminary investigative report?

A. Yes.

Q. All right. In addition to the investigation report, there are exhibits in the report, correct?

A. Yes.

Q. Did you have any problem accessing either the investigation report or the exhibits?
A. No, I don't believe so.
Q. All right. Your counsel has made the argument that Jane Roe wasn't cooperative in the investigation.
I'm going to flip it to you. Were you cooperative in the investigation?
A. I believe I was.
Q. Did you answer any interview questions?
A. No.
Q. Did you provide any evidence?
A. No.
Q. When you got the draft back of the preliminary investigation report, it included a number of exhibits, correct?
A. Yes.
Q. These were the text messages that Jane Roe submitted to TCU, because they're going out there, saying, hey, give me the evidence that we need in this case, and that's what she gave them, correct?
A. Yes.
Q. Did you think at that point, I should submit the full corpus of texts, 1,500 texts, whatever the case may be, at that point?
A. No. I never -- again once, it never crossed my

mind, much less that they were all stored on my laptop.
Q. It never crossed your mind to provide evidence to TCU's investigator?
A. Not -- no.
Q. Did the investigator ever tell you, I don't want you to provide me with evidence?
A. No.
Q. Did they restrict you in any way from providing evidence?
A. Not until the very end of the hearing.
Q. At the hearing stage, right?
A. At the hearing stage.
Q. Which four days prior to what ended up being a 17 and a half hour hearing, you, for the first time, provided TCU with about 220 pages of texts, right?
A. Yes.
Q. All right. Of those 220 pages of texts, I want to ask you, how many were relevant?
A. I would say all of them.
Q. You think all of the text messages in that 220 pages were relevant to which claim?
A. Generally, I think so. I think just the trial in general, whether it was pointing out things that she had said that weren't true, or like you said, or how I notice this word thrown around a lot of "cherry-picked."

When, in reality, all of her text messages in the claim, we would submit text messages from -- sorry for doing my hands -- like above here (indicating), and then, like, pretend this is a small snippet of her text messages, we would send that and then continue down. So it was the full context of before, during, and after, way more information than she just provided.

Q. All right. You made the decision, wow, this is relevant. When did you make that decision?

A. After I gained new, I guess, members of my -- new lawyers.

Q. Okay. Is it safe to say Dusty Hill, who is a pretty good lawyer, had one view of what the strategy for you should be and you brought another lawyer in and he had a different view?

A. Yes.

Q. All right. Let me back up, because I want to make sure I understand a couple of things.

And just in terms of timeline, when you were given the preliminary investigation report and access to the materials that Jane Roe had submitted, weren't you specifically told, here is your opportunity to provide us with any sort of evidence that you think is relevant in this matter?

A. I do not remember what time frame that was around

with my lawyers.

Q. Did anyone in the investigation process discourage you, who wasn't your own attorney, your own advisor, from submitting evidence to TCU?

A. No.

Q. Okay. I want to talk about the texts. You've told me now, as I understand it, I've seen 214 pages, apparently, there's a lot more than that. Let's just stick with the 214 pages.

Do those go to the charge that happened at Colby Hall, or are they relevant for that?

Are they relevant for Austin, or are they relevant for both?

A. I think it depends on the messages. Depending on, like, what pages.

Q. All right. Are there some that are relevant for both?

A. There's probably some that are just relevant to one of the two cases, and then also some are relevant to both as well.

Q. Well, I have listened to the 17 and a half hours of hearing testimony.

First off, is that correct?

You were given a hearing that went 17 hours; is that correct?

A. Yeah, it sounds right.

Q. Your attorney, Mr. Roark, at this point was there as your advisor, correct?

A. Yes.

Q. Was given the opportunity to cross-examine Jane Roe, correct?

A. Yes.

Q. And we had this whole conversation with Jessica Steidl [sic], and I think you were here for it, about you weren't going to permit redirect and all that sort of stuff.

There was redirect examination in that hearing, correct?

A. Yes.

Q. Seventeen and a half hours.

During that 17 and half hours, roughly, in your estimation, how much of the testimony was dedicated to discussing the dynamics of the relationship between you and Jane Roe?

A. How much of the testimony?

Q. Yes.

A. Of mine or hers?

Q. Both.

A. I would say a good amount to both.

Q. All right. And that testimony is relevant to both charges, right?

A. Yes.

Q. There are some shared circumstances, are there not, between the two charges?

A. Yes.

Q. And the best evidence of that is, what the heck happened at the 17 and a half hour hearing, correct?

A. Yes.

Q. Okay. I want to talk about the text messages. Is that okay?

A. Yes.

Q. I'm going to do the computer thing, because I didn't print anything out. Is that okay?

A. Yes.

MR. SCHNEIDER: Do you want to go to Exhibit 7?

(BY MR. SCHNEIDER:)

Q. Before I go here, let me ask you a question.

After the preliminary investigation report, you were given access to it and the opportunity to comment on it. Your advisor, Dusty Hill, did submit evidence, correct?

A. He did submit evidence?

Q. Yes.

A. I do not remember.

Q. Well, let me try to refresh your recollection.

Did, at that point, he submit polygraph evidence?

A. Oh, yes, I believe so.

Q. And he also submitted -- you tell me if this is correct or not -- a one-page letter from him asking TCU to dismiss the claim?

A. Yes.

Q. Do you know, under the Title IX regulations, at that point, whether or not TCU even had the authority to dismiss the claim?

A. No.

Q. You don't know?

A. No, I personally don't know.

Q. Okay. Got it.

But he didn't submit the text messages?

A. No.

Q. All right. I want to pull up the text messages. Is that okay?

Can you scroll down?

This is in, I think, Exhibit 7. I want to get to the exchange between you and Jane Roe, where she says, "I never said, yes, once that whole time. And how many times did you do it? I realize I don't push you off, but I said, no, loudly, and I never said once yes."

Can you find that? I'm getting old. I can't read.

Okay. There it is right at the top. Do you see that?

A. Yeah.
Q. What was she referring to there?
A. So I believe this was referring to our time in Colby on August -- the Colby alleged incident.
Q. Okay. What specifically -- "I realize I don't push you off, but I said no loudly," what was she saying "no" about?
A. She was probably referring here to her playfully -- yeah, playfully saying no to no touching. And then whenever she wanted it, she changed her mind later on.
Q. Let me back up. I may have misunderstood your testimony earlier, but my recollection was she was complaining that you didn't kiss her beforehand?
A. Yes.
Q. There's no mention of that in these text messages; is that correct?
A. There's no specific mentioning, no, I don't believe.
Q. She says, "I said no loudly." What did she say no loudly to?
A. I assumed that was her just trying to change the story to fit whatever she was saying --
Q. When was this text message exchange in relation to the incident in Colby Hall?
A. I believe it was the same day.

Q. Same day?

A. Uh-huh.

Q. So already she's trying to change the story; is that your testimony?

A. Yes.

Q. All right. And so, if somebody in a text message is saying, wow, this happened, and you were there and it didn't happen. One would think that the next text message from you would be what?

"That didn't happen. You didn't say no loudly." Do you say that anywhere?

A. That wasn't really how our dynamic was in our relationship.

Q. Tell me about your dynamic in the relationship.

A. Our dynamic in my relationship was me taking the blame for anything, real or perceived. And I'm going overboard by saying that -- in this case, that I feel really bad and I'm disgusted in myself.

And in other cases, I'm a bad, evil person. And that ranged from me not texting her that I went to a football game while she was there.

Q. And you would do that with her, right?

A. Yes.

Q. And the only reason you would lie about -- and I'm just going to borrow your word -- that you "raped" or

sexually assaulted her was to make her feel better; is that the testimony?

A. To diffuse the situation.

Q. Instead of saying, hey, this didn't happen, because she's making a fairly serious, detailed allegation, you say, "I'm so sorry, XXXX," correct?

A. Yes.

Q. So one possible explanation is the one you offered, which is, I was just saying, "I'm so sorry, XXXX," right? Because that was the dynamic of our relationship and I wanted to make her feel good.

That's your testimony, right?

A. I'm very sorry, I believe so.

If you could repeat yourself?

Q. Well, let me back up.

A. You meant to say Jane Roe.

Q. Did I screw up? Thank you for catching me.

One explanation is what you've offered, right?

A. Yes, sir.

Q. And you explored that for hours over the course of the hearing, correct?

A. Yes.

Q. Let me ask you about another plausible explanation. The one she proffers, which is, he's saying he's sorry because he sexually assaulted me, and he's

admitting to sexually assaulting me.

That was her position, correct?

A. Yes.

Q. If you were on -- this is a jury panel right here -- if you were on a jury panel and you heard those two explanations, are both equally plausible?

Do you think one is better than the other?

What do you think?

A. I think, in a vacuum, there's one that's more plausible. But then, after everything else that we provided, and how it wasn't consistent with her actions and the dynamics of our relationship and more detailed, that my explanation is more plausible.

Q. Let's keep walking through this a little bit.

"I feel really bad about how I behaved and I'm really sorry."

How did you behave that day?

A. Well, I'm making myself out to say, I behaved really bad and I'm really sorry.

Q. Okay. What did you do?

A. In short, just didn't kiss her.

Q. That's your testimony?

A. That's part of this, yeah.

Q. What did she say again?

A. She says that -- so this is Colby Hall -- so she

says I penetrated her vagina without her consent.

Q. All right. I want to go with the kissing explanation you just gave. All right?

This is her now, "I mean self-control? Like rapists say the same thing."

"Oh, my God. I'm one of those, aren't I?"

Was that your text?

A. Yes.

Q. Well, let's talk about that for a second. All right?

What you just testified to, as I understand it, is what you were apologizing for was not kissing her, right?

A. Yes.

Q. Is that what a rapist does?

A rapist doesn't kiss someone?

A. No. I think I might have misunderstood. Obviously, I'm apologizing for what you're saying. I'm just not believing it at the time. I'm just saying it to diffuse the situation with her.

Q. There's a lot of ways to diffuse a situation, right?

A. And this one works the best for her.

Q. Really? Because when I went through the text history, I didn't see a lot of evidence of you admitting to raping her.

A. Admitting for things that I didn't do or things that weren't a big deal that she blew out of proportion, there's a fair amount of evidence that we tried to submit, I believe.

Q. Okay. I understand your testimony.

XXXX, and then it goes -- I'm sorry, "Jane Roe, I don't mean that. I'm so sorry for ruining your night. I'm so sorry, Jane Roe. Jane Roe, are you okay?"

And then she says, "I'm okay." Right?

A. Yes.

Q. Can I flip one of your arguments on you?

THE COURT: Just ask the question, please.

MR. SCHNEIDER: Yeah.

(BY MR. SCHNEIDER:)

Q. The way I read the text messages is she's diffusing the situation.

THE COURT: Don't argue with him. Just ask him a question.

(BY MR. SCHNEIDER:)

Q. How do you feel about that?

THE COURT: Well, hold on. Hold on. Just ask him a pertinent question. I don't care how he feels about it.

MR. SCHNEIDER: I will move on.

(BY MR. SCHNEIDER:)

Q. Can you go to Exhibit 15? I'm looking for page

147.

I do a lot of this work. Snapchat is the worst thing in the world and somebody ought to ban it.

But absent that, can you explain to the judge what Snapchat is?

A. Snapchat is a social media. It's like Instant Messaging.

Q. Right.

And one of the features of Snapchat is, once you send a message, in theory, it's gone?

A. Yes.

Q. Right?

All right. Do you know where this came from?

A. Could you be more specific?

Q. Do you know how this was captured?

A. Screen shot.

Q. All right. Did you have any Snapchat screen shots?

A. Of?

Do I have any Snapchat screen shots?

Q. Between you and Jane Roe?

A. No -- or yes. Yes.

Q. Okay. Well, did you try to provide those?

A. Yes.

Q. Is that part of the packet?

A. Part of what packet?

Q. There was some mention -- let me just back up.

There was some mention in your counsel's brief about trying to get deleted Snapchat messages off your phone. I'm just curious if any of that was successful?

A. No, that part wasn't successful.

I meant Snapchats, like, of us out together after both alleged incidents.

Q. You're talking about the pictures?

A. Yes, pictures.

Q. All right. Do you have any text that was in Snapchat?

A. No.

Q. All right. This was provided by Jane Roe, correct?

A. Yes.

Q. And it looks like -- and first off, this highlighting, that wasn't me. Do you know who highlighted this?

A. Oh, no.

Q. Okay. I think it may have been counsel, but it wasn't me, but this is the way I got the document.

"I'm sorry for responding at first the way I did, and I did because it was difficult for me hearing that I am a rapist again, but it is true." Do you see that?

A. Yes.

Q. What's the context there?

A. Sounds like I'm also diffusing the situation and just trying to get her to stop talking about it. It looks like it was successful.

Q. Okay. "I am very sorry for the pain that it has caused you."

At that point, did you think she had experienced pain?

A. I don't remember. I don't know for sure, but I know that she probably loved hearing that.

Q. Okay. So you were lying to her when you said you were sorry for -- very sorry for the pain you caused the complainant?

A. Yes, I guess.

Q. Okay. There's no doubt that you did, in fact, though send these messages to Jane Roe, correct?

A. Yes.

Q. You don't think you sent these?

A. Oh, sorry. No, I'm saying I think I did send them.

Q. You did send them. Sorry.

And she submitted them to TCU's Office of Institutional Equity, correct?

A. Yes.

Q. Let me back up.
Do you know what the TCU box is?
A. Yes.
Q. It's a shared drive where people can have access to documents, correct?
A. Yes.
Q. The Snapchat messages were on that TCU box as well, correct?
A. Yes.
Q. Can you pull up Exhibit 11?
All right. First off, again, do you know who highlighted these?
A. Oh, no. I think this was on her side.
Q. Okay. These are some text messages that, I think, are part of --
Well, you tell me. Were these ever introduced at the hearing?
A. I don't remember. No, I don't think so.
Q. Okay. These were part of your packet that your new attorney tried to have admitted, at the last minute, in the hearing, correct?
A. Yes.
Q. All right. Let's talk about this series of texts. Do you see it?
A. Yes.

Q. So what I'll represent to you is, you're on the right. She's on the left.
A. Yes.
Q. All right. I'll just read.
"Understand your emotions are probably really high right now. But, please, XXXX, just subjectively look at how our conversation has gone today and you have to see why I'm confused. XXXX, I'm really in shock because I legitimately can't believe that you just blocked me, if you did."
Okay. Blocked you on what, like, a Snapchat?
A. Yes, I think so.
Q. Do you recall why she did that?
A. She clearly didn't or I don't think she did. I was saying, I can't believe you just blocked me after I said that, but it looks like she didn't because she responded.
Q. Do you know why her emotions were really high at this point?
A. No.
Q. All right. Let me read. And I think this is her, "Like, that's me. I can't figure out why I do it. But also, I have to take responsibility for, like, still hooking up with you and texting you. You think Austin makes you sad." Let me stop it there.
When she says "Austin" there, is she referring to the incident in Austin?

A. Yes.
Q. "The guy that comforted me about the first time someone took advantage of me had sex with me while I was half asleep and saying no."
Who is the guy that she's accusing of taking advantage of her, having sex with her while she's half asleep and saying no?
A. Me.
Q. Yes.
All right. You, right?
A. Yes.
Q. Yeah. In your response to her saying that, do you say, "No, that didn't happen"?
A. No, I don't say that.
Q. You didn't say that. What did you say?
A. I'm disgusted.
Q. "I'm disgusted at what I did to you, XXXX, and I'm so sorry. It's unforgivable and want to do whatever I can do to make you feel at peace about it, but I can't ever make myself feel that way." Do you see that?
A. Yes.
Q. Your counsel has referred to these excluded texts as it's exculpatory evidence. It frees you of the charges; it exonerates you.
Here is a text though that was not included in the

hearing materials, because you didn't submit the evidence on time, that is incriminating for you on the second charge, isn't it?

A. Yes.

Q. Yes.

You were found not responsible on the second charge, right?

A. Yes, I was found not responsible.

Q. The Austin incident, correct?

A. Yes.

Q. Yes.

And you said earlier one of the things I was concerned about of joining these two charges, despite the fact that they share a lot of common facts, was they were going to split the baby; do you recall that testimony?

A. Yes.

Q. Your counsel, Mr. Roark, submitted a letter to TCU about this very issue.

Does he ever raise that specific argument there?

A. I don't remember.

Q. This is something you've come up with after the fact, correct?

A. No.

Q. Is it possible you were found responsible for the first charge because someone looked at your text messages,

heard your explanation for what the text messages supposedly didn't mean, and didn't credit your testimony but credited the text messages?

A. I think I understand. Yes, I believe that's possible.

Q. And that's exactly, if you read the deliberative report, which summarizes what the hearing panel found, that's exactly what they say, right?

A. Yes, I think so.

Q. And thankfully for you, these exhibits didn't come into that hearing because, had they come in, maybe that would have been evidence to support the finding against you in the Austin case; is that correct?

A. If you look at it that way, yes.

Q. Yeah.

One of the things I want to make sure I understand, you were in the prehearing conference?

A. The prehearing?

Q. There was a prehearing conference with a former federal judge, Counsel makes a big deal about it, he's from California.

A. Yes.

Q. Californians are all over Austin. I get that.

You were there?

A. Yes.

Q. Did the judge explain to you why he wasn't going to allow your text messages, that 250 pages of text messages in?

A. No, he didn't explain that until we got to the trial, like, the hearing.

Q. All right.

A. So that --

Q. What was his explanation?

A. That they were more prejudicial than probative, I believe.

Q. There was another statement, was there not?

A. Yes.

Q. That the parties had failed to introduce the text messages during the course of the investigation prior to it being closed, correct?

A. Yes.

Q. Now, let me ask you this, of the 250 pages of text messages that you tried to submit four days before the hearing began, were all of them relevant?

A. I cannot say for sure all of them, I believe so. Looking back, I believe so, to my memory.

Q. All right. So some of them are irrelevant, right?

A. I'm saying, like, looking back, I remember going through all of them and thinking they're relevant. I don't remember all 214 pages right now, though.

Q. Right.

Your former attorney apparently didn't think they were relevant, right?

A. No, he never -- he never saw them or had the idea to pull all the text messages.

Q. All right. What is clear though is that 214 pages, or whatever it is, of text messages was never introduced to TCU during the investigation stage of the complaint filed against you, correct?

A. Yes. Correct.

Q. Despite the fact TCU, on multiple occasions, invited you to provide evidence, correct?

A. Yes.

Q. Fair enough.

There is a letter in the record. I don't know the exhibit number offhand. I think it's Exhibit 17. Can you pull that up?

Do you see this letter?

A. Yes.

Q. All right. And if you go to the last page, do you see the signature at the bottom of that?

A. Yes.

Q. All right. So this is January 11th. It's a letter from your advisor, at that point, in the student conduct process, Mr. Roark, correct?

A. Yes.

Q. All right. This is January 11th. How many days before the hearing is scheduled -- let me help you.

This is January 11th. The hearing is scheduled for January 28th, correct?

A. Yes.

Q. All right. In this letter on January 11th, does your advisor, who's serving as your advisor, does he, at that point, say, "Holy Moly, I found all these text messages. I want to introduce them into the record"?

A. No.

Q. No.

Why not, if you know?

A. I don't know. I'm not sure. It might not have been relevant to this --

THE COURT: Hold on. Hold on. If you don't know --

THE WITNESS: Oh, sorry. I do not.

(BY MR. SCHNEIDER:)

Q. I don't know is a perfectly acceptable answer, if you don't know.

All right. Are you aware of anything in the Title IX regulations, which When we get new evidence, because they're very concerned with fairness, we need to make sure that we share it with the other side, and then give them an

opportunity to comment on that new evidence.

Are you aware of anything in the regulations that talks about that?

A. Yes.

Q. Okay. there's a provision in the regs that basically says that, right?

A. I don't know.

Q. Okay. I don't know is a fine answer.

Who is Grayson?

A. Best friend, like, Jane Roe on that.

Q. So Grayson is Jane Doe's [sic] best friend?

A. Yes.

Q. Right.

Is Grayson female?

A. Yeah. Yes.

Q. Okay. Grayson was a witness in the hearing process; is that correct?

A. Yes.

Q. All right. I want to pull up the Grayson text message. I'm going to read it to you. I will find it and pull it up. I'm going to read it to you.

A. Okay.

Q. Let me ask you this, do you recall texting with Grayson at some point?

A. Yes. I don't remember any context of the

situation or when it was.

Q. Do you recall Grayson's texts being a part of the investigation report?

A. Yes.

Q. I want to read this.

"Grayson, this is" -- I caught myself -- "John Doe, And I understand you don't want to talk to me, but this has nothing to do with Jane Roe, and I would prefer if you left her out of this.

"I need to talk to her about Alex Jerson (phonetic), and I would like to do something about it. I have been talking to a lot of people about it, and a lot of things are going around, but I was told she only talked about the situation to you. And Jane Roe, obviously, I can't talk to Jane Roe. I am trying to help."

What was going on with Alex Jerson?

A. I don't remember what it was.

Q. Okay. You respond -- and we just pulled it up. What exhibit number is this? Exhibit No. 15.

You respond, "The only thing I'm going to respond to this" -- I apologize, Grayson responds, "The only thing I'm going to respond to this is, I don't think you're one to talk. If she is in trouble, I will help her and figure it out."

Does that refresh your recollection as to what was

going on?

A. No. This is the same or my same answers in the trial. I didn't remember during that either.

Q. Okay. When you say here, "Grayson, I understand I am a bad person and that statement is 100 percent correct."

First off, when you say, "You're a bad person," what are you referring to there?

A. Probably just speaking like how Grayson's kind of like a buffer to XXXX, and how I know it will get back to her. And so it's me just again admitting my faults.

Q. Was Alex -- I need to be careful. I'll strike that and move on.

When you say, "That statement is 100 percent correct," what are you referring to there?

A. I don't remember.

Q. Let's keep walking down it. You ready?

A. Yes.

Q. "Grayson, I understand I'm a bad person and that statement is 100 percent correct, but from what I have heard from other people is that she's doing all right and that is what is important.

"I know I can never undo what I have done, and I will" -- it looks like "love," but I think should be "live" -- "and I will live the rest of my" -- oh, I've got a bad copy -- "I will live the rest of my life like that, but what

I can do right now is, I can have a conversation with Alex Jerson so that nothing like this will ever happen again, because he could do it again and it could be a lot worse for the girl."

Does that refresh your recollection of what was going on with Jerson?

A. No.

Q. All right. When you say in this text, "I know I can never undo what I have done," were you talking about the fact that you didn't try to kiss Jane Roe prior to initiating sexual contact at that point?

A. No.

Q. What are you referring to?

A. I don't remember.

Q. "I will live with this the rest of my life like that."

What is that referring to?

A. I don't know.

Q. All right. "I really understand you hate me, and I have made irredeemable mistakes with Jane Roe, but that is me trying to help prevent the very things that I have done."

Does that refresh your recollection as to what this conversation is about?

A. No.

Q. All right. When you say, "I have made

irredeemable mistakes with Jane Roe," what are you referring to there?

A. I don't know.

Q. Was it when your counsel was talking about that you didn't kiss her prior to initiating sexual contact?

A. No, I don't believe so.

Q. Your counsel framed, when he was doing his direct examination of you, the text messages where you say you're a rapist. I think he used the phrase you were "handsy, touchy" and "handsy."

Do those words come up anywhere in any of these text messages?

A. No.

Q. All right. "But this is me trying to help prevent the very things that I have done."

What were you referring to there?

A. I do not know.

Q. All right. Let's move on.

I want to talk just briefly about, we go through the university's investigation process. We've talked about that. There's back and forth. You get a new advisor. Mr. Roark gets involved. He's submitting letters.

At what point did you know your hearing, the Title IX or the student conduct hearing, was set for January 28th?

A. I don't know. I don't remember.

Q. Is it true that, after you were notified about the setting of the Title IX hearing, that you made plans to try to travel out of state at that point?

A. No.

Q. I think there was some reference to you having an event to go to?

A. I think I would have -- I'm pretty sure we thought we were going to Nashville because we thought my sister was going to get engaged.

Q. Okay. When did you make those plans to go to Nashville?

A. I don't remember.

Q. It was after -- well, let me ask it this way. Do you know if it was before or after you were notified that your student conduct hearing was going to be January 28th?

A. I remember it being before.

Q. Okay. Your testimony is you made the plans before?

A. I believe so, yes.

Q. All right. And we haven't been --

Anyway, I will move on.

The hearing went over two days, correct?

A. For two days, yes.

Q. Covered this 17 and a half hours?

A. Yes.

Q. Your attorney asked a lot of questions?
A. Yes.
Q. Their attorney asked a lot of questions?
A. Yes.
Q. The panelists asked questions as well?
A. Yes.
Q. Miss Steidl, [sic] you saw her testimony here this morning?
A. Right. Ledbetter.
Q. I apologize. I'm getting my names -- it's what happens when you get older.
Miss Ledbetter, you saw her testimony here this morning, right?
A. Yes.
Q. Was she a panelist?
A. No.
Q. Do you recall her saying anything substantive during the course of the hearing?
A. No.
Q. All right. Of the panelists -- 17 and a half hours, I've listened to the whole thing, Judge, can too. I'm assuming you have as well -- is there any sort of statement on the record where anybody, in your opinion, evinces any sort of bias against you because you are a male?
A. Any specific statement?

Q. Yes.
A. No, I don't believe so.
Q. All right. We have one of the panelists here today. The other two panel members, one's male, one's female, correct?
A. Yes.
Q. So the panel was two men, one woman, correct?
A. Yes.
Q. All right. What about Jeremy Steidl, was he part of the hearing?
A. He was present, but no, he wasn't a panelist.
Q. Okay. Did he make any sort of statements during the course of the hearing?
A. No. He, like, set up the break-out rooms.
Q. Okay. I want to talk about, there's some testimony -- I don't know that it's all that important -- but at some point, you tried to reenroll at TCU. Jeremy Steidl said, "Hey, you got a hold on your enrollment; you can't enroll."
Do you recall that testimony?
A. Yes.
Q. What was the date of that?
When did that happen?
A. I believe -- I do not specifically remember. I know it was -- we were short on time to enroll, because the

deadline was, I believe, either that day or the following day.

Q. Okay. And so you go in --

Do you go in to see him physically?

I mean, are you in his office?

A. Yes.

Q. And at that point, he said, "Hey, look, I just pulled up your record. You have a hold on your record"?

A. Yes.

Q. All right. And he said that that was somehow connected to the pending investigation, student conduct proceeding against you, correct?

A. Yes. He said that because of it I couldn't enroll.

Q. Because of that, you couldn't enroll?

And at some point that very day -- was it Dusty Hill?

A. Yes.

Q. -- sends a letter to TCU. TCU takes a look at it. They say, "We've made a mistake and you enroll," correct?

A. Yes.

Q. All of this happens over the course of an afternoon, correct?

A. Yes.

Q. There was a problem. Somebody said, "There's a

problem." TCU immediately fixes it for you so you can enroll, correct?

A. Yes.

Q. Got all the classes that you wanted, even though you enrolled late, correct?

A. Not exactly, but sure.

Q. What class didn't you get?

A. It was hard to find the timing of certain classes that I wanted. It all worked out. It was good.

Q. All right. I want to talk about, so you go through the 17 and a half, we've got the investigation, you're invited to bring in evidence, evidence is submitted, exchanged. Both parties get an opportunity to comment on the evidence.

We then go to the hearing process, right?

Seventeen and a half, two-day hearing, we don't stop there.

What happens next, after you get the result?

Under TCU's policy of process?

A. After I get the result of the hearing?

Q. Yes.

A. I become suspended.

Q. All right. You get an opportunity though to do what?

A. To appeal.

Q. And you file an appeal, correct?
A. Yes.
Q. Represented by Mr. Roark, correct?
A. Yes.
Q. Who decides the appeal?
A. I don't know, but I should. I do know, but I can't remember.
Q. Right.
Jane Roe wasn't happy with the result either, right?
A. No.
Q. No. She filed an appeal as well, didn't she?
A. Yes.
Q. She thought you should be expelled from the university, correct?
A. Yes.
Q. What was your sanction?
A. I'm suspended for, like, a little over a year, and then have to do some courses or something.
Q. Okay. The appeal goes to someone in the university and Michael Russel. Sorry. It goes go to Michael Russel.
Had you had any dealings with him before?
A. Not directly, no.
Q. Michael Russel is a guy, yes?

A. Yes.
Q. Older than me?
A. I have no idea.
Q. Oh, that hurt my feelings.
All right. Did you have any direct interaction with Michael Russel?
A. No.
Q. All right. You submitted some paperwork. Michael Russel, at some point, comes back with a decision, correct?
A. Yes.
Q. Under TCU's policy, how long do they have to make a ruling on the appeal?
A. I think it was a month. Around a month.
Q. And they complied with that, correct?
A. Yes.
Q. And ultimately, what he did, and the document speaks for itself, is he denied your appeal and he denied Jane Roe's appeal, correct?
A. Yes.
Q. Okay. You disagree with that?
A. With what?
Q. Did you disagree with the denial of your appeal?
A. Was I happy with it?
Q. Did you disagree with it?
A. I think so.

Q. Did you think he was right in denying Jane Roe's appeal?

A. Yes, I believe so.

Q. All right. So he got it halfway, in your opinion?

You filed this lawsuit against TCU, correct?

A. Yes.

Q. Did you ever indicate to TCU, prior to even a decision being made, that you were going to file a lawsuit to try to enjoin the university from moving forward with this conduct process?

A. I don't know.

Q. You don't know. And that's fine.

I'm going to ask you what was -- in your opinion, during the hearing process, how were you discriminated against on the basis of your sex?

A. During the actual hearing process?

Q. Yes.

A. I think it goes around all -- just the system I was thrown into in the first place. And so during that hearing it felt like I had a stacked deck against me going into it. And especially after hearing today, to hear how the panel is selected and the whole process.

Q. All right.

A. And especially Ledbetter being involved in all steps of the way and knowing how she feels. And I guess,

more specifically, how about men in general.
Q. The other panel members that were on your panel, do you know if they've ever been on any other Title IX panels?
A. No.
Q. Do you know if they've ever made rulings that supported, other than you, a male student in a Title IX process?
A. No.
Q. Do you have any statistical evidence that TCU, whenever -- it's in the pleading -- whenever someone comes forward with a report of sex assault that TCU always believes the victim?
Do you have any evidence of that?
A. No statistics, no.
Q. You're currently suspended from TCU?
A. Yes.
Q. Are you aware that the semester literally ends tomorrow?
A. Yes. Finals start next week, but yes.
Q. Okay. Finals start next week?
A. Uh-huh.
Q. At this point you've been withdrawn from your classes?
A. Not officially, no.

Q. Okay.
A. I haven't been going.
Q. When you say "not officially," what do you mean?
A. Like I haven't filled out the withdrawal. I was hoping to be able to get back.
Q. Okay. Do you know if administratively TCU has withdrawn you from your classes?
A. I do not believe they have.
Q. Okay. Do you know for sure?
A. No, I do not know for sure.
Q. Stop right there.
All right. There was a lot of discussion in your direct examination about your application to another private religiously -- not religiously affiliated anymore, but religious institution in Texas SMU, correct?
A. Yes.
Q. And you said one of the things SMU requires is a letter of good standing, correct?
A. Yes.
Q. And they have a form, don't they?
A. Yes.
Q. And when you were requesting the letter of good standing from TCU, they could have filled it out, and they would have checked, "There is a pending disciplinary investigation going on," correct?

A. I don't know.
Q. Let me ask it this way. Did you complete your application to SMU?
A. Yes.
Q. Did they reject you?
A. No, I was accepted.
Q. You were accepted to SMU?
A. I wasn't able to enroll until I got a letter of good standing.
Q. Did you try to get that letter of good standing?
A. Yes.
Q. From whom?
A. I don't specifically know.
Q. When were you accepted?
A. I was accepted -- I was accepted -- that's a good question. I'm not sure off the top of my head.
Q. Okay. And you're saying you couldn't enroll unless someone at TCU filled out SMU's form, which is a letter of good standing form, correct?
A. Yes.
Q. All right. Did you give that form to anyone at TCU?
A. No. I do not believe so, no.
Q. All right. Outside of SMU, have you applied to any other school?

A. No.

Q. All right. Dallas Baptist? Good little client down the street.

A. No.

Q. Did you apply with them?

A. No.

Q. Why not?

A. Because I don't want to go to Dallas Baptist.

Q. University of Houston, you apply there?

A. Don't want to go to University of Houston.

Q. University of Texas at Dallas?

A. No, I have not applied there either.

Q. All right. You haven't applied anywhere other than SMU?

A. Yes.

Q. And they're saying, "You're in, if you can get us this form"?

A. Yes.

Q. And you didn't submit that form to anybody?

A. No.

Q. All right. There was some discussion in the pleadings, and I just want to ask you about this that, at one point, you requested a transcript to go and apply to SMU.

TCU said, "Hey, we can't give you a transcript."

And your counsel said, "That's evidence of sex discrimination"; do you recall that?

A. Yes.

Q. All right. You knew a little bit about Title IX. I'm going to ask you about the Texas law.

Do you know if there's a Texas law which specifically precludes schools like TCU, when there's a pending disciplinary action against a student, from issuing a transcript under that set of circumstances?

A. What was your question?

Q. All right. Are you aware of whether or not there is a Texas state law?

A. I'm not.

Q. You're not?

A. I'm not aware, no.

Q. All right.

MR. SCHNEIDER: Those are all the questions I have. Thank you.

REDIRECT EXAMINATION

(BY MR. ROARK:)

Q. Mr. Doe, Jane Roe had roommates; is that correct?

A. Yes.

Q. And on the 19th, you could only be over there for a certain time because she was going to have roommates that were going to come back; is that right?

A. Yes.

Q. Do you recall that 12-, 1,300 pages worth of text messages that you downloaded off your computer, you didn't download those until late December?

Do you think that's accurate?

A. Yes.

Q. I want to talk about these text messages regarding December 19th.

And you described this a little bit on direct and at the hearing, but when you went over there -- back up real quick.

Three days before y'all had sex she was irritated with you, told you you were disrespectful, because all you wanted to do was have sex, or some version of that, as opposed to kissing, foreplay; is that a fair assessment?

A. Yes.

Q. You go over there on the 19th, and as soon as you get in, what does she start doing to you?

A. Grinding on me.

Q. Okay. And what were you doing in response to that?

A. I was attempting to touch, like, her hips and her back.

Q. Okay. And did you think that was an appropriate response to what she was doing?

A. Yes.

Q. And what did she do every time you tried to touch her?

A. She would playfully say, like, "No touching."

Q. All right. And the text message that you sent to her, the very first one after you left, it's Exhibit 7, appendix page 79, you apologized for just that.

"I'm sorry I get super touchy," correct?

A. Yes.

Q. Now, and then those text messages address you keep worrying about being touchy. She says, "No, it's fine. Don't freak out."

And then you say, "XXXX, I can't stop myself from being a terrible person," is that correct?

A. Yes.

Q. What was that in response to?

A. What was I saying that was in response to?

Q. What was that related to?

A. Just the whole relationship. I was always the bad guy.

Q. And being touchy when you had gone over there, correct?

A. Huh?

Q. And being touchy when you had gone over there?

A. Yes.

Q. And that's when, in response to that, she said, "I don't think it's rape, Doe," correct?

A. Yes.

Q. And "I just think it's disrespectful and you don't listen," right?

A. Yes.

Q. Would you agree that just being touchy when someone is grinding on you that wouldn't make you a terrible person, would it?

A. No.

Q. But that's the kind of things you said in this context, isn't it?

A. Yes.

Q. And that's why you introduced all this stuff to begin with was to provide context for these allegations?

A. Yes.

MR. SCHNEIDER: Objection, your Honor; leading.

THE COURT: Overruled.

(BY MR. ROARK:)

Q. Mr. Schneider said there were text messages in which you admitted sexual assault. The text messages that we just went over, the August 19th, 2020, ones, none of those actually mention the word "sexual assault."

You say "touchy." And she says, "That's something a rapist would say," correct?

A. Yes.
Q. Prior to that, in fact, she had never, in this text message string, had never accused you of doing anything inappropriate, had she?
A. No, she hadn't.
Q. In fact, what she was concerned about was whether you had given her COVID, correct?
A. Yes.
Q. Those Snapchat screen shots, we sent -- your phone was sent off to a lab to try to recover those Snapchats, all the Snapchats you had, correct?
A. Yes.
Q. Were they able to get anything?
A. No.
Q. The text about being a rapist and everything and with Grayson, the texts with Grayson were introduced into evidence, correct?
A. Yes.
Q. Those were one of the very first, that's the very first batch of things that she produced back in September when this first came up, right?
A. Yes.
Q. So the panel would have been able to consider those texts in their deliberative report, correct?
A. Yes.

Q. And those text messages with Grayson were well after the second incident, correct?

A. Yes.

Q. When one of you commented about, "Your emotions running high," one of the reasons that you turned in all those text messages was to show that, quite frankly, both of your emotions were running high pretty regularly; would you agree with that?

A. Yes.

Q. Okay. The texts talking about sex, being half asleep, that was related to the Austin incident where she says that, right?

A. Yes.

Q. When she testified at that hearing, she didn't testify that you had sex with her when she was half asleep, did she?

A. No.

Q. She testified to a rather violent assault, did she not?

A. Yes. A violent assault with her crying, trying to run away, in the corner screaming.

Q. With you pounding your fist on the pillow?

A. Me, yeah, pounding my fist.

Q. Despite the fact that there were nine other people just outside the room?

A. Yes.

Q. You were asked why you didn't turn in the texts initially.

Just to be transparent here, you were leaving this up to your advisors, correct?

A. Yes.

Q. Did you read TCU's rules and proffer any opinions about when things should be turned in or when they shouldn't?

A. No.

Q. He asked you about feeling discriminated during the hearing.

We went over this on direct, but just to reaffirm, did you think that TCU prohibiting you from introducing text messages that you attempted to introduce prior to the hearing was discrimination on your gender?

A. Yes.

Q. Well, you heard today that's a violation of federal law, correct?

A. Yes.

Q. And you were asked if you had any statistical evidence?

Now, the discovery has not been conducted in this case yet, has it?

A. No, I think Ledbetter even said they don't keep

statistics.

Q. And what we learned today is TCU doesn't have statistical evidence, because they don't keep statistics on gender. Why do you think that is?

A. I don't know. They would probably be pretty skewed.

THE COURT: Hold on. If you don't know, you don't know.

THE WITNESS: Sorry. I don't know.

(BY MR. ROARK:)

Q. With regards to you being -- you can't go back on campus right now since this decision came out; is that correct?

A. Yes.

Q. You couldn't go to class if you wanted to, right?

A. No.

Q. With regards to the form that Mr. Schneider referenced, I will admit, in our pleadings we said you were trying to get a transcript when, in fact, you were trying to get a letter of good standing, correct?

A. Yes.

Q. You were told by one of your advisors, at the time that TCU would not give you a letter of good standing while this was pending; is that accurate?

A. Yes.

MR. ROARK: Pass the witness, your Honor.

RECROSS-EXAMINATION

(BY MR. SCHNEIDER:)

Q. Just one question. Who told you TCU wouldn't give you a letter of good standing that complied with SMU's letter of good standing requirement?

A. I'm not sure what I'm supposed to say. I don't know.

Q. You don't know?

A. I don't know.

Q. Okay. You don't know.

A. I don't specifically know.

MR. SCHNEIDER: All right. That was the only question I had, your Honor. Thank you.

MR. ROARK: Nothing further.

THE COURT: Okay. You may step down. Thank you.

MR. ROARK: Judge, we call Jeremy Steidl.

THE COURT: You've been sworn in; is that right?

THE WITNESS: Yes, sir.

DIRECT EXAMINATION

(BY MR. ROARK:)

Q. Dean Steidl, is that correct?

A. You can call me Jeremy if you need to.

Q. My name is Brian Roark. It's my job to ask you some questions right now.

A. Sure.
Q. If you don't understand a question, it's probably because I did a poor job asking it. So if you will tell me, I will rephrase. Is that fair enough?
A. Certainly.
Q. Do you believe men are morally inferior to women?
A. No.
Q. Have you ever read Dean Ledbetter's dissertation?
A. No, I haven't.
Q. And what is your role in the Title IX process?
A. So once the Office of Institutional Equity hands the case over to us, we handle planning, scheduling, talking with any student that is involved in it.
Think of this as a conduit of information where they're simply there to make sure everybody understands what the process is and that everyone is being treated fairly.
Q. So you're acting, to some extent, hand-in-hand with Dean Ledbetter regarding student conduct investigations and hearings; is that correct?
A. For the investigations, no. The OIE handles the investigation side.
Q. You get to handle the investigations when they're going to a hearing at some point?
A. Uh-huh.
Q. Did Mr. Doe or his father reach out to you

sometime early this year to ask how he would reenroll for this semester?

A. On January 14th, yes.

Q. Okay. And they came down to your office to have a face-to-face meeting, correct?

A. That's correct.

Q. And you told them that -- you told Mr. Doe, John Doe, that he was not allowed to reenroll because this process was ongoing; is that correct?

A. Based on the hold that was on his account at that point, yes.

Q. And that turned out to be incorrect advice though, did it not?

A. The hold that was placed by the investigator from OIE, it should have stopped him from being able to get a transcript, not to be able to reenroll.

Q. Right.

A. We were able to take care of that fairly quickly for him.

Q. So is it accurate to say that, when you told him he could not reenroll, that was incorrect advice?

A. Based on the information that I had at the time, that was all I could report to him.

Q. That was what?

A. That was all I could report to him was that

another office had placed a hold on his account that prohibited enrollment. I also let him know I would be happy to look into it. We got it resolved fairly quickly.

Q. Right.

Well, there's a rule specifically that says you are ineligible to enroll if you've already been suspended or expelled, correct?

A. Yes, there is a hold.

Q. That's Rule 1.29?

A. Rephrase that, sorry.

Q. Sure.

There's a rule, a TCU rule, that I presume you would be familiar with, that tells you you're ineligible to reenroll if you've been suspended or expelled?

A. During the term of the suspension.

Q. Correct. Absolutely.

A. Correct.

Q. Is that right?

A. That's correct.

Q. There's no rule that says you can't reenroll if a Title IX or student conduct process is ongoing, but you haven't yet been suspended or even had a hearing, correct?

A. That is correct. As I mentioned, the wrong hold was placed on the account.

Q. Regardless, if there's a hold on a transcript,

that has nothing to do whether he can actually reenroll, does it?

A. That's true.

Q. So back to my question. When you told him he could not reenroll, that was incorrect advice, was it not?

A. That was informing him of the hold status that someone else had placed.

Q. You told him he could not reenroll, correct?

A. At that point. I also mentioned to him that I would be happy to look into it as soon as I could, which I did.

Q. Do you just not want to admit that you made a mistake here? This is not a trick question.

A. I'm in no way saying that there wasn't a mistake. The wrong hold was certainly placed.

Q. Okay. Are you saying that there wasn't supposed to be a hold on it?

A. Oh, no. There was supposed to be a hold.

Q. Okay. And so your interpretation of that hold was inaccurate though, correct?

A. Based on the information that I had, it was the hold that was placed by another office. I was merely, again, as I mentioned --

Q. A hold on your transcript does not prevent you from reenrolling, though, correct?

A. Certain holds do.

As I mentioned, I was relaying to him information that another office had placed that hold on his account.

Q. Okay. What is a "no-contact directive"?

A. A no-contact?

Q. Directive?

A. Order?

Q. Yes.

A. A no-contact order is something that the university has at its disposal to cease communication from one student to another. It's intended to help a situation simmer down.

Q. Okay. And so, for instance, when Jane Roe files a complaint against John Doe, whether it be this case or any other, there's no-contact directives going back and forth for both of those individuals, correct?

A. Those were placed after John Doe reenrolled.

Q. Right.

But, I mean, generally speaking, if I go down -- if I'm a student at TCU and I go down to make a complaint about another student, it's a Title IX complaint, or something like that, is it the standard operating procedure to put a no-contact -- I called them "directive." I forgot what term you used -- in place at that time?

A. Most of the time it's if there's a request that's

intended.

Q. Okay.

A. We don't automatically do it.

Q. And so are there restrictions on your ability to do it?

I mean, if a student walks in there and says, hey, I'm tired of -- I just don't want to talk to John anymore, but he hasn't done anything to me. Are you allowed, at that point, to ask John to sign a no-contact order?

A. If it's something that's frivolous, then, no, we wouldn't automatically place a no-contact order.

Q. Okay. As part of this process, one of John Doe's friends told Jane Roe that she could not come over to his house for a party, correct?

A. That's what was reported to us, yes.

Q. That was conveyed to you, you called that friend, did you not?

A. Yes.

Q. And you proceeded to cross-examine him about why he had told Jane Roe that he couldn't come to his own house, did you not?

A. I don't know if I would classify it as cross-examination. We had a good conversation.

Q. You asked him why he did that, did you not?

A. I did. I asked him to explain the situation from

his point of view.
Q. You attempted to get him to sign a no-contact order related to Jane Roe, did you not?
A. I directed him that one was going to be put in place.
Q. Well, he refused to sign it, didn't he?
A. You can't refuse to sign a no-contact order.
Q. Okay. So that's even better.
So you put one in place?
A. Yes.
Q. Okay. And what -- didn't he have a right to tell Jane Roe that she couldn't come over to his house?
A. The initial complaint came through that Miss Roe felt that Mr. Doe was violating his no-contact order.
So the initial communication with the other student was made to verify if Mr. Doe had directed this other student to disallow Ms. Roe from attending that function.
Q. And he said that did not happen, correct?
A. That was his story, yes.
Q. So he was acting on his own accord, which he has a right to do, which is tell someone else, you do not have the right to be on my private property, correct?
A. (Nods head.)
Q. And for that action you put a no-contact order on

him, correct?

A. I made him aware there was going to be a no-contact order put in place to, again, help keep the situation calm.

Q. Have you seen the OIE?

What does that stand for again?

A. The Office of Institutional Equity.

Q. You've seen their complainant's page, have you not?

A. Their complainant's page? Could you --

Q. Yeah. When you pull up their website, they've got a page for complainants and a page for respondents, correct?

A. To tell you the truth, I haven't looked at it.

Q. Okay. Fair enough.

MR. ROARK: Pass the witness, your Honor.

CROSS-EXAMINATION

(BY MR. RAJARATNAM:)

Q. Good afternoon, Mr. Steidl.

I just want to ask a few questions just basically relating to what you just talked about with Mr. Roark.

A. Sure.

Q. Give me one second here.

Okay. I want to talk about this hold issue. I think there was some confusion. So I just want you to clear this up for us.

Are there different types of holds that can be placed on a student's account?

A. Yes, there are.

Q. Is a transcript hold separate than an enrollment hold?

A. Yes.

Q. Which hold was placed on John Doe's account when he came into your office with his father on January 14th?

A. There was a reenrollment hold on there.

Q. There was a reenrollment hold?

A. Uh-huh.

Q. What hold should have been on this account?

A. A transcript hold.

Q. Okay. So when you told Mr. Doe and his father that you were looking at his account and this hold said he could not enroll in classes, what was that based on?

A. It was based on looking at the hold, seeing what type of hold it was, and then relaying that information to them.

Q. So you didn't see a transcript hold, and then say, "You can't enroll in classes," right?

A. No. It was basically saying, based on the hold that I'm looking at, that disallows you from enrolling.

Q. And you were looking at a reenrollment hold?

A. Yes.

Q. Did you place that hold on his account?
A. No, I didn't.
Q. Did you know that hold on his account before he came in?
A. No.
Q. And again, he came into your office on the last day that he could enroll in classes; is that right?
A. That's right.
Q. Did he bring this to your attention anytime before the last day?
A. No.
Q. Before the last day he could enroll, did you know that there was that hold was on his account?
A. No, sir.
Q. Do you know who placed the hold on his account?
A. It was the investigator that had handled the case in OIE.
Q. And -- well, let me back up.
Do you remember what time John Doe and his father came into your office requesting that, "Hey, I need to enroll in classes"?
A. It was earlier in the morning. I want to say 9:30 or 10:00, in that general area, but I do remember it was earlier in the day on that Friday.
Q. Okay. And then -- and so you testified that you

looked at his account, you saw the hold, you told him he couldn't enroll in classes. What happened after that?

A. So I promised him that I would look into it. They were -- Mr. Doe and his father were both there. They wanted the situation resolved to the point that he could enroll in his classes.

So I told him that, while I couldn't promise what the outcome would be, that I promised that I would immediately look into it.

Q. And then did you look into it?

A. Uh-huh.

Q. So what did you do?

A. So I contacted staff over in OIE, made them aware of what was going on. We got some pretty quick clarification that it was an incorrect hold.

So we had the hold removed by about -- I honestly think it was like 12:20, and I contacted Mr. Doe and made him aware that he could enroll.

Q. Okay. So is it your testimony that within two or three hours you resolved the issue?

A. Yes.

Q. Did you intentionally prevent John Doe from registering for classes?

A. No, sir.

Q. Did you misrepresent to John Doe that he was

ineligible to enroll in classes?

A. My representation to him initially was that, based on what I was seeing, that he was not allowed to enroll.

Q. Based on the hold you were seeing?

A. That's correct.

Q. Which you then fixed?

A. Yeah.

Q. How did John Doe react once you told him you fixed the problem and he could now enroll?

A. It was a fairly brief interaction. He seemed appreciative and he got enrolled.

Q. Now, I want to talk about the second part that Mr. Roark was talking about, the no-contact order issue.

A. Sure.

Q. Now, you said that Jane Roe filed a complaint; is that correct?

A. That's right.

Q. So did you talk to Jane Roe when she filed this complaint, or how did that happen?

A. So she communicated with us via email that she felt that Mr. Doe had violated the no-contact order and she wanted -- in effect, she wanted something done against Mr. Doe.

So merely reporting information like that doesn't automatically lead to a violation of the no-contact order.

It means that we have to look into it and figure out what actually happened. So that's what led to my conversation with the other student.

Q. So what did John Doe's friend have to do --

Did she mention his friend, or how did that happen?

A. She mentioned that his friend, that Mr. Doe's friend had told her that she couldn't come to a party that was happening at an off-campus residence and that she felt that that -- being told that from this other friend was done at the direction of Mr. Doe.

Q. And then you had a chance to talk to Mr. Doe's friend, right?

A. Correct.

Q. And what was that conversation like?

A. Again, it was a walk me through what happened with this particular situation. Walk me through why I might be getting this kind of a complaint from Ms. Roe. Talking through what the relationships were like, how they were connected with everything.

And in the midst of that conversation I made a determination that it was not a violation of the no-contact order that been placed on Mr. Doe.

However, again, looking at the point and the true meaning behind a no-contact order, it's meant to keep things

in as much stasis as is possible.

So in talking with that student, made him aware that we were going to put this in place, and that it would remain in place. He genuinely did not seem to have a problem with it. I remember it being a very good conversation.

Q. So you asked him to sign a no-contact order?

A. We forwarded documentation to him. I told him that the no-contact order was in place, period. And then we forwarded the document to him. He did not send back a signed copy. That doesn't disallow the no-contact order being put in place.

Q. Did Jane Roe request a no-contact order?

A. She did.

Q. Did you come up with the idea asking his friend to sign a no-contact order?

A. No.

Q. Did you make him sign or did you try to make him sign a no-contact order because he's a male?

A. No.

Q. Have you told females about no-contact orders before?

A. Yes, several times.

Q. Now, really quickly, I just want to talk briefly about the Title IX hearing.

What was your involvement in the Title IX hearing?

A. So again, as I mentioned before, we help to arrange things. We put it all together. The only -- think of us as scheduling and just making sure everything is in place.

The day of, we are there; both Dean Ledbetter and myself are present. We are muted and our videos are off. Think of us as the tech people. If we need to, we're in charge of recording.

We're in charge if we need to put somebody into a break-out room or somebody needs anything along those lines. We just make sure that everything runs smoothly.

The only time that we really pop in is if we get a request, you know, "I need a break." Okay. So we will chime in, and say, "We're going to take a five-minute break." The recording will stop. We will come back in five minutes. Same thing with lunches and things like that. That's the only real involvement that we have.

Q. Do you have any decision-making authority in a Title IX hearing?

A. No.

Q. Do you have any influence on the panelists when they're making their decisions?

A. No.

Q. When they're deliberating, do you talk at all?

A. The only time we talk is if a student is ever found in violation of what it is that they're looking at.

Once the panel makes that decision, we will then chime in. If there's any previous conduct record, we have to make them aware of that.

Or if there's any outcomes or any sanctions that they're going to be putting in place on the student, if they've been found in violation, they have to know what that is.

Even if it's just a matter of us saying, this is the status that the student may be on because of previous conduct records. That's the only time that we have real direct interaction with them.

Q. Okay. And we heard this earlier from Dr. Ledbetter, but I know you weren't in the room.

A. Sure.

Q. In this case with John Doe, did you speak up and say, hey, this is his history. These are whatever violations are on his record?

A. No. If I remember correctly, I don't think there was any previous issues.

Q. So did you, or was it Dr. Ledbetter, who spoke up and said there was no previous issues?

A. That would be me.

Q. And that would be you.

And you said that in this case?

A. Uh-huh.

Q. When you observed the hearing and deliberations, did you observe any signs of gender bias or discrimination?

A. No.

Q. And again, did you influence the panels' decision at all in this case?

A. Absolutely not.

MR. RAJARATNAM: Pass the witness.

REDIRECT-EXAMINATION

(BY MR. ROARK:)

Q. Hypothetically, if Doe had asked his friend to not invite Roe to his own house, how would that have violated the no-contact order?

A. So the no-contact order works both with direct interaction. I like to tell my students, if you can think of any form of communication with another human being, you're not allowed to do that. Also including communication from if it's from maybe a third party.

So the idea there could be that Mr. Doe was trying to have some kind of influence over Ms. Roe's interaction or communication that could have come from that third party. That's where her complaint originated from.

Q. If someone held the belief that men were somehow morally inferior to women, do you think that would be a bias

against men?

A. Help me understand what you're asking.

Q. I'm asking you, if someone believed that men were morally inferior to women, do you think that would constitute a bias against men?

A. I think you're going to have to ask that person.

Q. I'm asking you.

A. You're asking me if that's what I believe?

Q. I'm asking you, do you think that would be a bias against men?

A. With only that point of information, I wouldn't be able to give you an answer.

MR. ROARK: Pass the witness, Judge.

THE COURT: So this student who had the party, you learned that he did not contact the woman, Jane Roe, on behalf of John Doe?

THE WITNESS: Yes.

THE COURT: Okay. And so her belief that John Doe prompted this contact, you didn't find it to be the case --

THE WITNESS: No.

THE COURT: And the student said -- as I understand the briefing, the student said they didn't want -- we want to drink, and we don't want people here who are underage and that was the reason?

THE WITNESS: Right.

THE COURT: Did you find that credible?

THE WITNESS: To be cynical, in having worked with college students as long as I have, that being the cause, the only cause to say, we only want to make sure that we are -- of-age individuals are going to be there, I would love to believe that all of my students are that upstanding and forthright and honest with me.

There could have been the possibility. But again, there's no proveable evidence that it violated the no-contact order against Mr. Doe.

THE COURT: Okay.

THE WITNESS: Again, I hate to sound like a broken record, but I tell my students this all the time. Those things are meant to keep the temperature low. And sometimes, even if there's enough reason to have it there and you're telling a student, this is okay, this has been put forth, the no-contact order is in place, that helps to calm it down and keep it in a good place.

THE COURT: Do you think that there's any negative connotation to come from having been placed under a no-contact order?

That is, the student here --

THE WITNESS: Sure.

THE COURT: -- you concluded, didn't act on behalf of John Doe?

THE WITNESS: Sure.

THE COURT: If he's ever asked by someone, have you been placed under a no-contact order, do you think if he answered it truthfully, yes, my TCU dean put me on one to not contact a woman, do you think there would be a negative connotation drawn from that?

THE WITNESS: It would be hard to say it simply, because we always tell our students, the communication that we have with them never goes beyond the doors.

THE COURT: No, I'm just talking about, let's just say he applies for a job --

THE WITNESS: Sure.

THE COURT: -- at the DA's office.

THE WITNESS: Yeah.

THE COURT: And they say, okay, have you ever been convicted of a crime?

Have you been arrested?

Have you been arrested for domestic violence?

Have you been accused of domestic violence?

THE WITNESS: Right.

THE COURT: Have you ever been placed under a no-contact order?

I know you're saying he doesn't have to answer it that way because you kept it private. But if he wants to be truthful, he would have to say, yes, in fact, at TCU my dean

placed me under a no-contact order where I couldn't talk to Jane Roe.

Do you think that a negative connotation might result from that?

THE WITNESS: I have to rely on previous experience that, one, we tell them that we don't tell the world, and that we wouldn't report it.

And that kind of negative connotation has never been reported to me in any way, shape, or form. So I would have to rely on that previous experience.

THE COURT: And your previous experience being no one has ever told me that, in essence?

THE WITNESS: That's correct. We always make sure that they're informed that nothing is going to be reported out.

THE COURT: Right. But when you say that, you're basically telling me you're winking and nodding at this person, if someone asks you about that, they're not going to find out about it from us?

THE WITNESS: Sure.

THE COURT: Right?

Which means the person can lie or tell the truth?

THE WITNESS: Uh-huh.

THE COURT: And if he tells the truth, you don't know enough if he tells the truth, whether it be negatively

held against him in a negative way?

THE WITNESS: Yes, I wouldn't know.

THE COURT: Okay. All right.

MR. RAJARATNAM: No further questions, your Honor.

THE COURT: Okay. You may step down. Thank you.

MR. ROARK: I would like to call Michael Russel.

THE COURT: Why don't we do this, why don't we take about a 10-minute afternoon break?

THE CHIEF SECURITY OFFICER: All rise.

(Afternoon break was had at 2:06 p.m.)

(The proceedings resumed at 2:14 p.m..)

THE COURT: Please be seated.

MR. ROARK: Your Honor, Mr. Russel is not available, it turns out. And so we're going to spare your Honor the time to call him back and just move on to our last witness.

THE COURT: All right.

MR. ROARK: Reece Harty.

THE COURT: Okay. Have you been sworn in?

THE WITNESS: I have, yes.

THE COURT: Okay. Come have a seat.

DIRECT EXAMINATION

(BY MR. ROARK:)

Q. Mr. Harty, my name is Brian Roark, and we spent 17 and a half hours, I guess, together at that hearing. So

you're somewhat familiar with me, but I wasn't asking you questions then.

So during this process if I ask you something you don't understand, it's probably because I did a poor job of asking it. And so if you will tell me that, I will rephrase. Is that cool?

A. Sounds good.

Q. Do you believe that men are morally inferior to women?

A. No.

Q. Have you read Dean Ledbetter's dissertation, by chance?

A. No, I have not.

Q. Okay. What is your position at TCU?

A. I am a hall director. So I oversee our first-year community for our first-year students.

Q. Okay. And how long have you been there?

A. This is my third year.

Q. And how many times have you been a panel member on Title IX cases?

A. The case that -- this was the only case that I was a panel member on.

Q. This is the only case?

A. Correct.

Q. Okay. And so how is it that one gets to be in the

pool for potential panel members?

A. Sure. So we received an email notification asking if people were interested in being a panel member. And then, if people are interested, then we are given a training that is done by both our CARE office, as well as our Dean of Students' office.

And then after going through that training we are then asked if we're available on specific hearing dates. And then those who are available are then pulled as panelists.

Q. Okay. And you said part of the training is from your CARE office?

A. Uh-huh.

Q. What does CARE stand for?

A. That would be part of our counseling center which is a specific area focusing on victims of sexual assault.

Q. And so what's the CARE acronym? What is that?

A. I don't know the acronym specifically off the top of my head.

Q. Okay. But CARE, then, is a counseling center -- I'm sorry to repeat this. Just to make sure I get it right -- specifically for victims of sexual assault, correct?

A. So they provide resources to all parties involved in those situations, but that is usually what they are

primarily used for.

Q. Okay. And one of their, I guess, program directives that I've seen on their website and that was also included in the exhibit appendix was to believe survivors, correct?

A. I think it's about supporting all parties involved is my understanding.

Q. Well, their actual website says, "We believe you," correct?

A. I haven't seen their website specifically.

Q. Okay. But -- you haven't seen their website at all?

A. I have not looked at their website, no.

Q. And so how long is that training that you received?

A. So it's a virtual training that's done on a video. That's done like via a video recording site. I think it's about two, two and a half hours long.

Q. Does the term "trauma informed investigation techniques" ring a bell with you?

A. It rings a bell. I couldn't be able to, like, provide you with a definition.

Q. Okay. Do you think they use the word "trauma informed" at some point during that training?

A. They do, yes.

Q. And so you get two and a half hours of training, and then you're up, basically, right?

You can be a panel member at that point?

A. We are then asked if we are available on a specific date to make sure we do not have any connections to any of the parties involved.

Q. Okay. Circling back around real quick to the CARE thing.

A. Uh-huh.

Q. One of our exhibits is a photo of you, I think, at one of the CARE campaigns. It looks like there's -- what are those things called?

You're serving breakfast, I think; is that correct?

A. Pancake Palooza.

Q. Pancake Palooza. The older you get the less these words pop in your head.

What was that? What were you doing there for CARE?

A. So I had to actually do a weekly late-day breakfast called Pancake Palooza. I invite all the office partners. And so it's open to anyone who signs up for that day. So whether, if your office comes in on one day, we've also got TCU offices come in on one day.

THE COURT REPORTER: Can you slow down just a

little, please?

THE WITNESS: Slow down. I'm sorry.

We've also had fraternity and sorority life invited, as well as our first-year experience team come in. We've got the orientation team that comes in too. So it's open to any of our campus partners.

(BY MR. ROARK:)

Q. How would you describe your relationship with Dean Ledbetter?

A. We are both colleagues at TCU.

THE COURT: Will you remind me, what position do you hold?

THE WITNESS: Sure. I'm a hall director.

THE COURT: Hall director?

THE WITNESS: Yeah.

THE COURT: What does that mean?

THE WITNESS: That means that I run one of our first-year residence halls. So I've got about 234 first-year students.

(BY MR. ROARK:)

Q. I'm sorry, you all are colleagues and?

A. We're colleagues at TCU.

Q. Y'all friends as well?

A. Coworker, colleague, friends.

Q. Okay. She described you as a friend. I'm not

suggesting you are all inappropriately friendly.

I'm just asking if y'all are friends?

A. Yeah, as co-worker friends.

Q. Okay. You go to lunch occasionally, correct?

A. We do.

Q. And y'all went to lunch after you had been chosen as a panel member in this and it was actually the day that she had a pretrial on our hearing; is that correct?

A. I did not know that there was a pretrial information or meeting happening prior to the lunch.

Q. Okay. But you did know that after the lunch, right?

A. I knew when I was called in for it, yes, I did.

Q. Okay. Y'all -- what was discussed about the hearing or the proceedings all during lunch?

A. Sure. So, basically, the nature of our lunches are just more of a check-in and making kind of a conference and more of a professional mentorship as well.

She did ask me, she said, "Did you see that I sent an email regarding some updates to the case?"

I said, "I saw the email. I haven't read it."

She said, "Okay. Great."

And then I had been dealing with some personal family issues, specifically, my mother being diagnosed with cancer. So then we talked about that.

And then whether I should pursue a doctoral degree in either higher education or not in the field.

Q. Fair enough.

So it was just you two?

A. Uh-huh.

Q. And I noticed on your -- one of your, I think it might have been your LinkedIn page or something like that, it asked for interests. And you had yours as civil rights and social action.

What kind of social action are you interested in?

A. Bettering the world. I didn't have a specific cause.

Q. Sure. That's fair.

And you also mentioned human rights and politics.

Are you aware of Title IX generally?

Have you made yourself familiar with kind of the history of it and how it's developed specifically in regard to sexual assault cases over about the last 11 or 12 years?

A. I couldn't give you the specifics of that.

Q. Okay. So after the hearing how --

Did you deliberate immediately after the hearing?

Did y'all take a break?

Did you wait until the next day?

How did that go down?

A. No, we deliberated right after all parties were

dismissed. The panelists deliberated and decided on what the sanctions are and if the person should be found in violation or not in violation of the code.

Q. How long did that take?

A. I couldn't give you the exact time off the top of my head.

Q. Ballpark. Are we talking 30 minutes or four hours?

A. We're talking at least two to three hours.

Q. And who was present for those deliberations?

A. Myself, the two other panel members, our panel chair, as well as our two dean's office representatives.

Q. And who are those two individuals?

A. Dr. Jessica Ledbetter and Jeremy Steidl.

Q. All right. And so this is all over Zoom, correct?

A. Correct.

Q. And so the three panel members are kicking this around amongst yourselves, but Judge Ruvolo is there and Ledbetter and Steidl are also on Zoom listening to all this, correct?

A. Correct.

Q. And you are aware that they are doing that, correct?

A. Correct.

Q. So these aren't confidential deliberations, in

other words, just amongst yourselves, right?
A. It is confidential to the people who are in that Zoom space.
Q. Right. Amongst the six, but not amongst the three people that are actually the decision makers, right?
A. I don't understand your question.
Q. Yes. Just the three panel members are the only decision makers in this?
A. Correct.
Q. And who wrote the deliberative report?
A. The panel chair.
Q. So Ruvolo wrote that?
A. Correct.
Q. And you've read it, I presume?
A. I have not read the deliberative.
Q. You have not read the deliberative report?
A. That's not shared with panel members.
Q. Pardon?
A. That's not shared with panelists.
Q. The deliberative report is not shared with the panel members?
A. Correct.
Q. Okay. How would you know that they carried out what your decision was?
A. It's the process.

Q. Pardon?

A. That's just the process.

Q. Okay.

MR. ROARK: May I approach, your Honor?

(BY MR. ROARK:)

Q. I'm going to hand you what's been admitted into evidence and it is the deliberative report.

A. Okay. Thank you.

Q. Could you take a moment and read it, please?

A. Sure. Is there a specific portion you want me to look at or no?

Q. Well, the whole thing, unfortunately. I presumed incorrectly that you would have -- it was not intuitive to me that you would not have read it.

(The document was reviewed.)

THE WITNESS: Request I reference this if you have more questions?

(BY MR. ROARK:)

Q. Oh, absolutely. I'm going to leave that with you.

Does that accurately reflect y'all's decision?

A. It does.

Q. Does it accurately reflect the life of your decision?

A. It does.

Q. So I would like to chat about that.

So I want to talk about allegation two first.

A. You're talking about the Austin incident?

Q. Yes.

A. Okay.

Q. On page seven?

A. Uh-huh.

Q. So there's a short recitation of the facts and the panel gave two reasons that that allegations had not been proven?

A. Uh-huh.

Q. And those are on page eight; is that correct?

A. Uh-huh. Correct.

Q. One of those reasons was that, during the ride back to Fort Worth, nothing was said to her friends about what had happened the prior night and that the complainant had not asked for assistance of any kind, correct?

A. Correct.

Q. Does that reasoning accurately reflect what y'all talked about regarding allegation two?

A. This does, yes.

Q. And the second reason was that it said the hearing panel also gave weight to the statements of both parties that continued to reach out to one another and had continual -- consensual sex for some time thereafter?

A. Uh-huh.

Q. Correct?

A. Correct.

Q. And specifically, it mentioned sex on her birthday about a month later?

A. Correct.

Q. Does that accurately reflect y'all's reasoning for finding not in violation on allegation two?

A. Correct.

Q. And so in light of these facts, and those are two of them, the hearing panel could not find the evidence supported by the -- could not find by the evidence that the allegation was supported, correct?

A. Correct.

Q. I'm paraphrasing.

So I want to discuss those two lines of thoughts.

A. Okay.

Q. The first one seems to indicate a belief that, if someone was really sexually assaulted, they would have mentioned it to someone else contemporaneously.

Does that sound like an accurate summation of reason number one?

A. Can you rephrase what you're asking me?

I don't understand what you're asking me.

Q. Sure.

THE COURT: Let me just ask you. What was the

significance, in the panel's mind -- collectively, what was the significance of her not mentioning it to someone contemporaneously?

THE WITNESS: So -- so we heard both of these issues at the same time, because the history of their relationship was something that was really important in both of these incidents.

And then for us, when we looked specifically at the second incident, we did not have the text messages from -- that were submitted earlier after the initial incident. That was what the panel chose to really focus on heavily with that, because that was a lot of evidence of admittance of a wrongdoing in that case. There was no substantial claims or text messages afterwards that could then help support that.

THE COURT: And so the statement alone was insufficient. And there's another issue, as well, the second prong that he's going to get to. But on the first prong, the statement alone was insufficient, absent some information corroborating the statement?

THE WITNESS: Correct.

THE COURT: And here you had information contrary to it because they kept having sex and meeting up --

THE WITNESS: Correct.

THE COURT: -- and that sort of thing?

THE WITNESS: Correct.

(BY MR. ROARK:)

Q. So that kind of gets us into two, which is, they continued having sex, which seems unusual for someone who thought they had been raped, correct?

A. Correct.

Q. Okay. So let's circle back around to allegation one.

A. Sure.

Q. And this is on page four.

The two parties had very different stories about what happened initially when Mr. Doe walked in her dorm room, right?

A. Correct.

Q. And Roe said, "We got on the bed and we started talking and we were both sitting on the bed. I was with my back up against the wall, my legs straight out, and he just reached over and inserted his fingers into my vagina," correct?

A. That is what was shared, yes.

Q. Okay. And --

THE COURT: That was her testimony?

THE WITNESS: Yes.

(BY MR. ROARK:)

Q. And he said that, when he got there that she had

explained that her and her roommate had been kind of, in a fun way, practicing sexual positions, not with each other, but talking about it, et cetera.

And she was dancing sexy around him and grinding on him and those kind of things, correct?

A. Correct.

Q. The very first thing you say is that you accepted the respondent's narrative about what had happened when he first walked into the dorm, right?

That's what this says on page four.

A. Which part are you looking at specifically?

Q. Right under, "Incident one, alleged sexual assault in complainant's room in Colby Hall. The hearing panel accepted respondent's narrative that when he arrived in complainant's room, complainant started dancing sexually around him, including grinding on him." So is that accurate?

A. That is what the panel accepted, yes.

Q. So you accepted his narrative about that and rejected her narrative; is that fair?

A. I believe so.

Q. Okay. And one of the reasons for that was because she was unable to physically explain how that could have occurred. And, in fact, you asked her a question about that?

A. Uh-huh.
Q. Did you not?
A. I believe I did.
Q. And she was not able to ever explain how, physically, he could have just reached over and inserted his fingers in her vagina just from a physical logistics perspective; is that correct?
A. Correct.
Q. And so what I'm confused about, and it's puzzling to me is, that you reject her narrative because it's not believable, you accept his narrative. And yet, you still find him responsible. How do you reconcile that?
A. Based on the text messages that were sent afterwards.
Q. Got it. I appreciate that.
One thing you were not able to consider, and you were specifically instructed not to consider, was her text message in which she told him that he had not raped her. Correct?
A. The evidence that was submitted later?
Q. That's right.
A. Correct.
THE COURT: That was not admitted.
THE WITNESS: Correct, yes.
(BY MR. ROARK:)

Q. So you were not able --

You were unable to consider those text messages?

A. Correct.

Q. So you considered the ones that she provided but -- and where he says, I'm sorry for being touchy and all those things --

A. Uh-huh.

Q. -- but were not able to consider the ones that he provided, where she admits, "You didn't rape me," correct?

A. Correct.

Q. And there's something else that is perplexing to me. So I'm going to ask you about it.

The same two reasons that you rejected allegation two also happen to be present for allegation one. Correct?

A. Can you expand on what you're saying?

Q. Sure.

You rejected allegation two because she didn't tell her friends, basically, right afterwards or on the way home the next day, right?

A. Uh-huh.

Q. For allegation one, she testified she didn't tell anyone about that. She didn't tell her friends. She didn't tell her roommate, when her roommate arrived, hey, oh my gosh. Guess what happened just now? John Doe inserted his fingers into my vagina when I didn't want him to. She

didn't say anything like that, did she?

A. Based on the evidence that we were presented with, that was how we made our decision.

Q. I get that.

THE COURT: No. No. The question is, she didn't say anything contemporaneously on allegation number one? Report it --

THE WITNESS: She did not report it until that time period.

THE COURT: That's all.

(BY MR. ROARK:)

Q. And so in that sense, allegation one is entirely consistent with allegation two, right?

A. I disagree.

Q. Well, allegation two, she did not report it to anyone. Allegation one, she did not report it to anyone. Right?

A. Are you asking if she reported it?

THE COURT: Contemporaneously, yes.

THE WITNESS: In the same time frame? No, she did not report.

THE COURT: He's just saying that that fact alone, the lack of contemporaneous reporting of the allegation is similar to what happened in allegation two.

THE WITNESS: I can see how you can perceive that

that way, but based on the evidence of the text messages --

THE COURT: No. No, I understand the text messages.

THE WITNESS: Okay.

THE COURT: He sent a text message saying, I'm sorry. I have zero control, you know, those sorts of things.

THE WITNESS: Sure.

THE COURT: All he's asking you is, limited to that fact alone, those are consistent?

THE WITNESS: Sure.

THE COURT: Just limited to those facts alone. There are other facts involved.

THE WITNESS: Sure.

THE COURT: But let's just start with those facts. Those two.

THE WITNESS: Sure.

MR. ROARK: Thank you, Judge.

(BY MR. ROARK:)

Q. And on the second reason that you rejected allegation two, that they continued to have sex afterwards, and as you've stated, it doesn't make sense that you would continue to have sex with someone who had raped you before.

She continued to have sex with John Doe after allegation one, correct?

A. That is the panel's understanding.

Q. So we've got both reasons and the only reasons that you rejected allegation two that, at least are in the deliberative report, you also have present in allegation one, correct?

THE COURT: Can you state that again?

MR. ROARK: Sure.

THE COURT: You confused me.

MR. ROARK: Sure.

(BY MR. ROARK:)

Q. The only two reasons that you gave for not finding allegation two to be valid also were with -- both present, in an identical fashion for allegation one?

THE COURT: Well, and the text message. So really there are three.

MR. ROARK: Right.

THE COURT: Right? I mean, that's what I understand, correct?

THE WITNESS: Correct.

THE COURT: So in allegation two, she didn't contemporaneously report it?

THE WITNESS: Correct.

THE COURT: She continued to have sex with him?

THE WITNESS: Correct.

THE COURT: There was no other text message --

THE WITNESS: Correct.

THE COURT: -- analogous to what you concluded in allegation one?

THE WITNESS: Correct.

THE COURT: Number one, she didn't contemporaneously report it. She continued to have sex with him, but there's this text message?

THE WITNESS: Correct.

(BY MR. ROARK:)

Q. And so the contemporaneous text messages that you relied on for allegation one, he apologized for being handsy, correct? Do you remember that?

A. He apologized for not having self-control.

Q. Right.

A. I'm looking back just to make sure.

THE COURT: Yeah, take your time.

THE WITNESS: He said, "I'm sorry I get super touchy. I knew we weren't going to hook up, and I respect you. I have zero control. I'm really sorry. Are you lonely? Are your friends back?"

A little later, he says, "I feel so bad. I just have no self-control. I'm sorry. Like that's the problem. I need to work on that under control. I'm sorry that makes you feel disrespected."

(BY MR. ROARK:)

Q. Right.

And we spent a lot of time in the hearing talking about what the definition of disrespect was, didn't we?

A. I don't recall the specifics, but --

Q. Okay. And he explained those text messages, did he not?

A. There was an opportunity for that in the panel, yes.

Q. Right.

And so you accepted his story about what happened when he first walked in the door and rejected hers. But I guess you didn't accept his explanation for the text messages?

A. We considered all of their statements and evidence that was presented.

Q. Okay. And there was a text message, that you're aware of, where he says -- where she admits, you didn't rape me, and there's a bunch of other text messages that got excluded.

If those text messages, if you had been able to rely on, you would have found him not guilty of allegation one as well, correct?

A. That is not correct. I think what's important is that we looked at it from a very holistic picture. Based on the multiple text messages, not only from that night but

then later on in conversations with the witness that was called via text messages and Snapchat conversations, we looked at it from a very holistic picture.

Q. Let's talk about those text messages with the friend, Grayson.

A. Sure.

Q. Those were after allegation two, weren't they?

A. I don't believe they were after allegation two.

Q. They were. We went over those in great detail.

And you ignored those in finding him not guilty in allegation two, apparently?

A. I don't recall that.

Q. Okay. You mentioned earlier, when the Judge was asking you questions, that you considered these cases together.

How do you think that affected your deliberations?

A. I don't -- I don't understand your question.

Q. Well, you mentioned that y'all had -- that y'all had considered both of these allegations together and the entirety of their relationship and everything.

I'm asking you, what effect did the fact that you were listening to both of these allegations together have on your deliberations and your thinking about whether he was guilty of one or either?

A. Uh-huh. I think, with this case specifically, it

was really important that we had the full background. I think, I remember we spent a lot of hours talking about how they initially got together, their relationship, and their relationship history and everything. So I think having the history in both of those situations was really key in this case.

Q. How is a text message in which she admits that he didn't rape her not -- how can you still find him guilty if that's something that the panel had relied on?

A. That wasn't admitted into evidence.

Q. Yes. Precisely. Thank you.

MR. ROARK: Pass the witness, your Honor.

MR. SCHNEIDER: Thank you, your Honor.

CROSS-EXAMINATION

(BY MR. SCHNEIDER:)

Q. Reece, how are you doing?

A. Doing well. How are you?

Q. Good. Good.

Your service -- first, I just want to tell you your service on the Title IX panel of student conduct panel is appreciated.

It's a volunteer service?

A. Correct.

Q. Kind of like being a juror, right?

A. Correct.

Q. And the way you approach the resolution of the two claims brought in front of you, what was your approach?

A. Our approach was really to care for both sides. We know that the topic of sexual assault is something that's very complicated. We wanted to make sure we're caring for both the respondent and the complainant in both of these cases.

So when we were looking at how to approach this, we wanted to make sure we were being objective and keeping an open mind in how we can best support and listen to both sides equally.

Q. Did you go in with any sort of preconceptions about who you were going to side with in this case?

A. No.

Q. Kind of thrust into a bit of a complicated soap opera that had been going on for a long time?

A. Correct.

Q. You did your level best to listen to 17 and a half hours of testimony, correct?

A. Correct.

Q. You asked your own questions, correct?

A. Correct.

Q. Because you were paying attention and listening and had your own questions. And I think you're, frankly, one of the more busy of the members. So you're taking your

responsibility seriously, yes?

A. Correct.

Q. You talked about, at the close of the two-day hearing, you go back for two or three hours. Is that how long the deliberations took?

A. If I remember correctly. I could be not correct on times.

Q. And just like a jury would, you went back, took all the evidence --

A. Right.

Q. -- and tried to decide from a preponderance of the evidence standard --

A. Yes.

Q. -- whether or not there was enough evidence to support a finding of a misconduct violation, right?

A. Correct.

Q. And I just want to be clear on claim one, it seems like -- I don't want to misstate your testimony, you tell me -- the tipping point was text messages that John Doe submitted?

A. Correct.

Q. To her?

A. Correct.

Q. Which were contemporaneous?

A. Correct.

Q. As well as her comments in those text messages as well, correct?

A. Correct.

Q. All right. There was a lot of conversation about texts that weren't part of your deliberations. We have an explanation for why they weren't a part of your deliberations.

Bottom line is, the text that Mr. Roark has described, you didn't have in front of you, didn't factor into the deliberation?

A. Correct.

Q. There was some conversation about the difference between the second claim and the first claim. In the second claim, you didn't have a corroborating text?

A. Correct.

Q. Like you did in the first one?

A. Correct.

Q. All right. And on the second claim, let me change the facts a little bit. Let's say, hypothetically, there was a contemporaneous text from the respondent --

A. Uh-huh.

Q. -- where he argued or suggested to Jane Roe that he had engaged in misconduct in Austin.

Would that have changed the calculus potentially on that charge?

A. Possibly. Since we weighted -- since we weighted the information from the text messages so importantly that probably would have happened, so --

Q. You went with the evidence you had?

A. Correct.

Q. You were one of three panel members?

A. Correct.

Q. Was the decision unanimous among the three other panel members?

A. It was.

Q. All right. In terms of the other panel members, describe them for the judge. Who were they?

A. One was a middle-aged white faculty member. He is male. And then the other one is a white middle-aged female.

Q. Okay.

MR. SCHNEIDER: Can I take one break, your Honor? Just give me one sec.

Reece, thank you for coming to federal court for a volunteer responsibility. It was a big deal, and I appreciate your time. Thank you so much.

I have nothing further, your Honor.

MR. ROARK: Judge, I don't have any further questions.

THE COURT: Do you have any other witnesses?

MR. SCHNEIDER: Your Honor, we have no other

witnesses.

THE COURT: Okay. Then let me follow up here for a moment.

Do you agree that your client submitted the additional evidence late or untimely, according to the rules?

MR. ROARK: We do not. We contest that, your Honor.

THE COURT: Can you give me the rule, either the rule number or the DOE regulation text and section?

MR. ROARK: Well, TCU's own rule, which I believe provides the ability to provide the evidence is 5.7.10.

THE COURT: Uh-huh.

MR. ROARK: Section E.

THE COURT: Okay.

MR. ROARK: The federal regulations are --

THE COURT: Just keep those federal regulations in mind. Write them down. Don't forget them.

How do you believe 5.7.10, E and F, why does F focus on "new evidence," and why isn't it covered by E, or is it covered by E?

MR. ROARK: So E, first of all, is a standalone. And it simply says, any evidentiary responses made to the OIE or Dean of Students, when reviewing the final investigative report, will be considered by the panel chair

at the beginning of the Title IX conduct panel, and the admissibility of this disputed evidence will be resolved just as relevancy determinations are made.

And that term "just as relevancy determinations are made" refers back up to the definition of relevancy, essentially.

THE COURT: At the beginning?

MR. ROARK: That's correct.

THE COURT: So what's the purpose of F?

MR. ROARK: F, I believe, refers to -- it should refer to evidence that's brought about for the first time at the hearing.

So if I'm at the hearing and I try to introduce a piece of evidence that I had not turned in prior to the hearing, which is consistent with the federal regulations and the comments on them that we've gone over today.

THE COURT: Okay. So now let's go to the regs.

MR. ROARK: Right. So the most -- the general regulation of the actual rule says, "A respondent institution shall not restrict the ability of either party to discuss the allegation or investigation together or present relevant evidence."

That's just a single sentence. So it requires some explanation. And that is all done --

THE COURT: And what section is that?

MR. ROARK: That is Section 34, CFR 106.45.

THE COURT: 106. what?

MR. ROARK: 45.

THE COURT: 45.

MR. ROARK: And it's A2 -- I'm sorry, A4. I'm sorry, A5, part iii. So three small i's, I guess.

THE COURT: Okay. So the text of that is that the institution is not permitted to obstruct a party's presentation of?

MR. ROARK: Relevant evidence.

THE COURT: Relevant evidence.

MR. ROARK: They have a very expansive definition of relevant evidence. They're not supposed to restrict it based on, for instance, the kind of things we would do, like, is that unfairly prejudicial?

They specifically say in the regulations, not the regulations, but the guidance, that you cannot restrict evidence simply because it's unfairly prejudicial.

Their main repeated assertion is, you cannot restrict relevant evidence. And they specifically mention polygraphs, for example.

And they actually ask, it's part of the ones that I read earlier when Dean Ledbetter, commentators ask for clarification, such as: Can recipients, schools, limit the hearing to consideration only of evidence previously

included in the investigative report?

This is exactly on point. This is in our brief. It's 8A, fed regulations, page 30026 to 01 at 30357 and 30358.

And they say you cannot do that. And that recipients can only place restrictions on evidence that was not gathered and presented prior to the hearing.

So they can limit evidence that you tried to admit for the first time during the hearing, but they cannot limit evidence that you submitted prior to the hearing consistent with the general reg that you're not supposed to be preventing sides from introducing relevant evidence or presenting relevant evidence.

THE COURT: Let me ask you about the consolidation of allegation one or two. Is there any evidence that your client was prejudiced based on the consolidation? Let's assume it's improper.

MR. ROARK: Sure.

THE COURT: Is there any evidence that your client was prejudiced by consolidating?

MR. ROARK: I think there is, Judge. I think Mr. Harty exhibited that. I mean, the whole problem with consolidation of two separate incidents is prejudice.

And to me it's clear that they split the baby. I mean, that deliberative report is so odd and inconsistent,

which is -- by the way, cases have said, specifically can be used as evidence of gender bias.

But the two reasons that they claim that they rejected allegations two, no contemporaneous allegation report and they continued having sex, are the same as allegation number one. I mean, in fact, in spades.

Allegation -- or part of allegation two was the first time they had had sex after allegation one. I mean, if you read her testimony, she claims that she called someone in a panic attack because she was having a panic attack about being drugged and raped. And she calls her rapist to do that? But regardless --

THE COURT: Do you think it favored Roe, then?

In other words, I asked is your client prejudiced?

MR. ROARK: Right.

THE COURT: I guess, the flip side of that might be, do you feel like the consolidation favored Roe over Doe?

MR. ROARK: No. I think she had two weak cases and they split the baby. That's what we've alleged in the brief. We've argued that all along.

We asked them four times prior to the hearing to not consolidate. And we considered filing for injunction as he alluded to prior to that and decided to wait until afterwards.

But if you look at the inconsistency and the

illogical nature of their deliberations and how they came about finding him guilty of allegation one, to me, since it doesn't make sense in any other logical way, the answer is they split the baby.

THE COURT: Okay. The elements in the Fifth Circuit that you have to prove would be an erroneous outcome --

MR. ROARK: Correct.

THE COURT: -- and/or selective enforcement.

And evidence of -- at least evidence that the inference to be drawn would be gender bias.

MR. ROARK: That's correct.

THE COURT: So in this case you've made some assertions in your briefing about some Tweets and some re-Tweets. And then, of course, today you got into this thesis paper.

What is your evidence that gender bias infected whatever you believe happened erroneously in the process?

MR. ROARK: Sure. Sure. So it's certainly, I think, erroneous outcome is our strongest argument.

Can I address the first issue, which is, you know, procedural flaws, those kinds of things?

The procedural flaws that I believe were all present were, I don't think they should have consolidated these cases. They don't have a rule for consolidation. TCU

doesn't.

The federal rule for consolidation does not apply to the way they consolidated it. So it was flat-out against federal regulations to consolidate these two cases.

THE COURT: And what was the section of the federal rules on consolidation?

MR. ROARK: On consolidation? It is 34 CFR 106.45 (4).

THE COURT: 106.45 (4).

MR. ROARK: It's just prior to.

THE COURT: Okay. So procedural irregularity is consolidation?

MR. ROARK: Consolidation.

Most importantly, the exclusion of relevant evidence. I mean, to exclude, for any reason, quite frankly, when the allegation is "You raped me," to exclude the text that she kept out, "I don't think you raped me," to me, is just shocking. It's stunning and unfair. And I think, in and of itself, is evidence of gender bias, but certainly it's a procedural flaw. It was contrary to their own rules, and it's contrary to the federal rules.

THE COURT: And when you say, "It's evidence of gender bias," in what way?

What's the inference inferentially?

MR. ROARK: Sure. I think if you're the person

who's helping construct these rules -- well, I'll stay off Ledbetter for now -- but just on the straight and narrow, for someone in an informal proceeding like this, who is representing the university, who's supposed to be striving for truth, and you're putting a young man through this process where he's being accused of rape, and you're excluding a text message that says, "I don't think it was rape," without any other justification, or at least valid justification, I don't think there's any way you conclude that it was anything other than gender bias.

THE COURT: Okay. And then you said contrary to the rules. Does that take us back to 5.7.10?

MR. ROARK: Yes.

THE COURT: Okay.

MR. ROARK: Yes.

THE COURT: So excluded the evidence, that's evidence of gender bias?

They excluded it in violation of the rules?

MR. ROARK: Right. Those are the two big ones for procedural flaws.

The case law, of course, says that you look at everything, even the little itty-bitty ones, when they kind of all add up, can amount to something.

In this case, having panel members that are TCU community members, you know, their own rules contemplate

that it would be more fair to have panel members that aren't TCU community members.

We learned, just a little while ago, that Mr. Harty was trained by CARE. CARE is an organization primarily for the benefit of rape survivors. It's all in our brief and appendix. But, you know, the fact that their own community members are being trained by an organization like that who believes that you just believe survivors.

You call them "survivors" before it's even proved that it happened, I think is also evidence of gender bias. Also, I think it's just a procedural flaw and another way to introduce unfairness into the system.

Polygraphs not being admissible is another procedural flaw and against federal regulations. The strict application of confusing rules. If you look at the evidentiary rules, I don't think that they're clear.

The other side in this case was arguing the exact same thing. We were about the admissibility of evidence and about whether those rules apply to evidence that you turned in four days prior to the hearing in reply to the final report.

And why would you even -- why would you even be able to reply to the final report, if it wasn't going to be evidence that you could use?

It's nonsensical to think that that wasn't the

actual deadline to turn in evidence that you were going to use at the hearing.

THE COURT: You keep mentioning the commentary. And, of course, you had the dialogue with one of the witnesses. What is the nature of the commentary?

So you will have the regulations, which they're bound to follow. How persuasive is the commentary?

How authoritative is the commentary?

MR. ROARK: Well, I think it's persuasive in the sense that it's directly on point to the issue that we're talking about. Consolidation, relevancy of the evidence. And by "relevancy," I mean, you know, they consider relevancy to be restrictions on permitting evidence to be admissible.

And it specifically says, you cannot restrict evidence prior to the hearing. I mean, the whole point is to have -- is to be seeking for truth here, not to be getting gotcha -- playing "gotcha" with rules to try to keep out evidence.

THE COURT: I guess what I'm wondering is, if a rule says, you can do X, then that's clearly controlling?

MR. ROARK: Correct.

THE COURT: You must do X, that's clearly controlling?

MR. ROARK: Right.

THE COURT: You must do X.

So if a regulation said that, we would follow that to the letter.

What I'm asking you is, apart from regulations like that, what is the nature of the commentary?

How controlled am I by what I read the commentary to say or not say?

MR. ROARK: I think, Judge, to my knowledge, the only thing that I know that it is is persuasive.

THE COURT: Okay. All right.

And so anyway, I'm sorry to jump ahead, but you were talking about the procedural irregularities --

MR. ROARK: Right.

THE COURT: -- and you went through them.

But my question to you was that second element.

MR. ROARK: Right.

THE COURT: And so do you want to address that?

MR. ROARK: I do, Judge. The gender bias. There's a lot of little things, Judge, and some big things. All along the way, I can tell you, Mr. Doe at least has felt like she's been treated better than he has.

Mr. Dean Steidl told him he couldn't reenroll. And he's now describing that as a mistake on someone else's part. But it's consistent with gender bias in trying to keep him, in particular, off campus.

The whole thing about the friend and giving them a no-contact directive is just odd in all ways. And it seems like he was going to do her bidding whenever she wanted to, and I think that is evidence of gender bias.

The statements about CARE and the fact that these panel members are trained by an organization whose sole purpose is for the support of sexual assault survivors, I think, is evidence of gender bias.

THE COURT: How do you address that?

It would be one thing if they said support the women, but they're saying "survivors." So what is your take on that?

MR. ROARK: Judge, these cases are overwhelmingly women against men. And so the survivors -- I mean, she mentioned one or two cases where there was a man involved. So, statistically, they're overwhelmingly women.

It was interesting to me, and it's kind of funny, they don't keep statistics on that. Public schools are required to do that. Some institutions that are private, I guess, they don't. I'm guessing the reason they don't is because, if they did, I'd be up here using those numbers to argue.

I mean, if the case survives that far, of course, we will get discovery and tally those numbers ourselves, but it's interesting that they don't keep those numbers. Of

course, I think they're doing that for all the reasons we are sitting here talking about today.

Their Title IX coordinator opposed the new rules, you know, which guaranteed more rights for men in particular.

The logical deliberative report, you know, some of the case law suggests that if one of those reports in particular is so illogical that, in and of itself, could evidence gender bias. And, to me, that report makes no sense whatsoever.

I don't think there's any way someone logically could justify that. And in absence of any logical justification for finding him guilty of allegation one, when all the same factors are present as allegation two, and the fact that the school excluded his evidence, I think that's evidence of gender bias as well.

One thing we have in this case, which I'll probably never have again, is someone who is right in the middle of all this, Dean Ledbetter, who helped draft the rules, shepherded students through this process, is friends with panel members, is friends with the appellate officer.

He's one of her mentors, and he was listed in her dissertation, who sits in on the panel deliberations, whose presence in every single stage of this process, I will never again in my life have a case where there's such direct

evidence of gender bias as her description.

If that doesn't get us there, I don't know. A year ago she is writing about how men are morally inferior to women. How men need to be targeted by administrations and TCU's administration for reprogramming based on gender norms.

I don't know what -- there's no statement. There's no set of words I could put together in a better way to show gender bias.

THE COURT: On that issue, since I've not seen the dissertation until today, it sounds like -- and you're back and forth on that -- she was saying that some of the language that you focused on, she was quoting from other reports, that that language was not necessarily her conclusions.

What do you say to that?

MR. ROARK: Some of those she was quoting from other reports, but the conclusions about what you should do about that were all hers. The targeting part and the programming and everything like that that was all hers.

And as painful as it is to read that, it's very instructive as to how she thinks about men and women. That whole entire report is replete with characterizations of men as being simply less moral than women. It's just -- there's no other way to put that.

And to have someone like that infect this entire process, you know -- our request, obviously, is that the Court not countenance that. I think her gender bias helped get us to where we are. I mean, I think that's why we're standing here right now.

The judge, anyone could have exercised discretion at any time, including her, I think, but certainly the judge. And you know, she said, we all hang out together and they talk. The judge's interpretation of the rules was exactly the same as hers.

Anyone could have been the adult in the room at that point and said, hey, guys, look. There's a text message in here where she says, you didn't do it? I think we ought to let that thing in. I think that would be the fair thing to do here. That did not happen.

And the only explanation I could have for that is gender bias. He tried to claim, Mr. Harty, that that wouldn't have made a difference, but when I pressed him, how could that possibly not have made a difference? His first and only response was, well, that text wasn't admitted.

You've got someone that wrote a dissertation a year ago, I'm thinking now, of course, you know, there were interim rules that were not completed until, I think, about a year after the rules changed on August 14th and throughout 2020, I wonder if that's because she was busy writing her

dissertation during that time instead of busy helping them reformulate those rules at that time. I don't know.

But we've got someone with that kind of bias and willing to say that kind of thing about one of the genders. And you've got one of the panelists essentially admitting maybe we would have found differently if one of the texts exonerating John Doe had been admitted.

There's no case -- I can't imagine a set of facts that's going to get any stronger than this on a Title IX case.

THE COURT: Okay. I will let you make a final argument here in a minute.

So, Counsel, let me ask you, the Fifth Circuit has said that the status quo is the "Last uncontested status of the parties."

And that the purpose of the status quo is to "Preserve the Court's ability to render a meaningful decision on the merits."

How do you respond to their argument about the status quo?

MR. SCHNEIDER: Well, Judge, I think that -- I might not answer that directly. The status quo, as we stand now is, he hasn't been in class I think for, at this point, three weeks. We have literally one day of class. He gets suspended.

In terms of that's the status quo at this point. You could change the status quo and tell TCU, hey, despite what you found in your internal process, you need to send him back to class, presumably, for one day to maybe take an exam or something, but there has to be some demonstration that there was irreparable harm.

THE COURT: Right. Right. Set that aside for a minute.

What I'm wondering is, by me asking for briefing, me taking some time to get to this point, or by denying their request for an injunction, wouldn't that essentially moot their claim?

That is, he will not be in a position -- I mean, conceivably, I could say, let him go to class tomorrow. Let him take his final exam, hold his grades, because if I rule against you, then you can appeal me. And if I'm affirmed, you can put his grades in and he can go forward from this point.

But if I wait, if I do these other things, wouldn't I, in effect, be mooting the case by taking the time to do that?

MR. SCHNEIDER: No. I don't believe that at all. I mean, there are tons of cases, and Judge Rosenthal in the Southern District does a really good job of collecting them, that all of those damages, I mean, those were all

recoverable in damages.

THE COURT: And so him being labeled as a rapist, how do you put the money --

MR. SCHNEIDER: How?

THE COURT: Well, Jane Roe and her friends are running around calling him a rapist.

MR. SCHNEIDER: It happens. Unless you're going to enjoin them from saying that, I don't know how to prevent that.

THE COURT: Well, but they are now cloaked with TCU's pronouncement that he's committed sexual assault.

MR. SCHNEIDER: Sure. We've litigated tons of cases --

THE COURT: And if you are wrong on that, how do I compensate him for that?

MR. SCHNEIDER: Sure. We've litigated tons of cases in similar situations --

THE COURT: And what do you do?

MR. SCHNEIDER: -- where expert witnesses come in and say --

THE COURT: Tell me what they've done.

MR. SCHNEIDER: -- this was broadcast out. This is what was communicated. It's like a typical defamation case.

THE COURT: How have they compensated them for

that?

What have been the ranges? Help me understand the ranges.

MR. SCHNEIDER: Expert reports about, you know, who knew, what they knew, lost economic opportunities, real damage to reputation that is proven in some way, all that sort of stuff.

THE COURT: Well, but if you're called a rapist, is that real damage?

If you're incorrectly called a rapist, is that real damage to someone's reputation?

MR. SCHNEIDER: You're asking me?

THE COURT: Yeah.

MR. SCHNEIDER: My opinion is, if you're called a rapist and you're not a rapist, yeah, absolutely.

THE COURT: I'm just asking you. You're saying it's easy to compensate them.

MR. SCHNEIDER: I don't know if it's easy, but it is compensable.

THE COURT: I'm asking you, what has been the ranges that you have seen in these cases where that has occurred?

The dollar figures that you put on it to compensate someone?

MR. SCHNEIDER: So very few cases have gone to

trial, respondent cases. I think across the country we're talking about maybe two or three. Off the top of my head -- and I wasn't prepared, I didn't look at it -- I mean, I think in one of those cases there was a finding for the respondent. It was a component of, like, emotional distress. I don't remember what it was, but I want to say -- and I could be wrong about this -- we're talking about 300-, $400,000.

I mean, without divulging confidential settlements, that's been a component when I've negotiated in these cases some sort of resolution. So it's a range. It depends on all the factors that something like that would depend on.

Who knew about it?

How did it impact you?

What else was out in the public domain about this?

I mean, he, at some level, has put this -- you know, improperly given this a heck of a lot more publicity and legs than had the hearing been the end of it.

So it depends on a number of factors, but it's clearly compensable. There are clearly cases that compensate people for this.

THE COURT: Okay.

MR. SCHNEIDER: Your Honor, not to belabor the point, but there are clearly defamation claims where that's

the whole basis of the claim. "You damaged my reputation and I want damages." I know there are verdicts out there.

THE COURT: Are there defamation cases where courts have enjoined a party in advance of a final judgment?

MR. SCHNEIDER: Off the top of my head --

THE COURT: Because there are. There are. I mean, there's a big debate about it, of course.

MR. SCHNEIDER: Yeah.

THE COURT: This is a debate.

MR. SCHNEIDER: Yeah, I don't know off the top of my head.

THE COURT: Let me ask you this. On the text message where she said she didn't consider this rape, or whatever it says, why is that prejudicial and prejudicial to whom -- or unduly prejudicial, I should say?

MR. SCHNEIDER: Well, I'm not sure that that's what the -- I think, some context. Four days before the hearing --

THE COURT: No, I understand all that.

MR. SCHNEIDER: It wasn't just that one text in isolation.

THE COURT: But could the judge have said that is extremely probative? Substantially probative?

MR. SCHNEIDER: I think -- I'll just be honest with you. I think it's relevant, right?

THE COURT: Clearly, it's relevant.

MR. SCHNEIDER: But it was untimely.

THE COURT: Right.

But he said it's untimely and unduly prejudicial.

MR. SCHNEIDER: He says the entire packet of text messages. He offers those two rationales.

THE COURT: Okay.

MR. SCHNEIDER: He doesn't specifically address any one in particular text.

THE COURT: And that's my question. Why? Why?

And why is that the correct approach?

MR. SCHNEIDER: Well, I think the answer to that, as opposed to going through text after text --

THE COURT: So he did not do that?

MR. SCHNEIDER: No, there were 200 --

THE COURT: I understand that.

MR. SCHNEIDER: He didn't offer --

THE COURT: Did he go through all the text messages?

MR. SCHNEIDER: Yes.

THE COURT: Every individual text message?

MR. SCHNEIDER: Yes.

THE COURT: Okay.

MR. SCHNEIDER: He went through the full packet of the materials.

THE COURT: Okay. And so now my question to you is, and I understand the 200 or 1,500, whatever the number is on the printouts, but my question is, when he got to the text message that Jane Roe said what she said, that she didn't think it was, how could he make the conclusion that that particular text message, which arguably, and maybe not even arguably, is exculpatory? Should be excluded?

MR. SCHNEIDER: I don't think -- well, I don't think he said it was on that basis. There were two bases.

THE COURT: I'm asking you. I'm asking you how he can exclude that exculpatory, or arguably exculpatory, text message on whatever basis?

MR. SCHNEIDER: That it was untimely.

THE COURT: Right.

And is that, so on its own -- on its own that it was untimely, if they're wrong on their interpretation, that's enough to exclude an exculpatory text message?

MR. SCHNEIDER: Absolutely. And can I explain the why?

THE COURT: Yeah, go ahead.

MR. SCHNEIDER: Absolutely.

THE COURT: You don't have to go into the 10 days and 10 days and 10 days, I got it.

MR. SCHNEIDER: I want to a little bit.

THE COURT: You don't need to. I will give you a

chance to make final arguments. I don't need you to repeat what I've heard, but if I'm not picking up on something, I want you to address it with me.

MR. SCHNEIDER: The problem with counsel's approach is that it renders superfluous the regulatory requirements to have an investigation, which is a requirement under the regs, share the evidence, put a report together, allow the parties to see it, and then 10 days later comment again.

If counsel is correct that, no, no, no, if it's really important, relevant evidence, I don't have to provide it at all during the investigation process. I can dump it on somebody a day, two days, three days, four days before a hearing, why in the heck are we going through this mandated process?

And that process was motivated by the idea that we want to treat both parties fairly. The key component of that is the ability, very early on, to know what the evidence is and to respond to it.

His interpretation -- I'll flip it. I will change the hypothetical. What if he was representing Jane Roe in this case?

And one day before the hearing, John Doe provides all of this evidence, ultimately excluded, because it wasn't provided in the investigation, what would he be arguing?

He would be arguing exactly what I'm saying, which is, why go through this required investigation process, report sharing process, if it's completely meaningless?

And that's what his interpretation, in essence, does of the regs. I don't think that's a correct reading of the regs.

The regs contemplate a couple of things. Number one, there used to be -- and there was a lot of criticism post-2011 Dear Colleague letter -- a lot of schools who said, "Don't talk about this. You can't talk about it."

The Trump administration, Bessie DuBose said, we don't think that's good, because the only way people can figure out if people are witnesses, without subpoena power, is to be able to talk to people.

So, number one, you can't send any edicts out telling the parties, "Don't talk to other witnesses about the cases."

The second part was, you cannot restrict their ability to gather and introduce evidence. We didn't do that here. He made a strategic decision with another lawyer, and I understand why, if I were in that lawyer's shoes, I probably wouldn't have introduced the text messages here for all the reasons I alluded to during my cross of John Doe.

But long story short, yeah, he basically did not introduce the evidence in a timely fashion, but nobody

restricted him from providing that evidence. He was on notice of it at the very beginning of this.

But at some point we have to follow rules, because to not have that rule renders that whole initial process, which takes 45, 60 days, under the best of circumstances, completely meaningless.

THE COURT: Okay. Last question, and then I will let you make any final remarks if you've not been able to make them.

If I conclude that they're likely to succeed and he faces irreparable harm, then I have to balance the interests and the public interests, could I -- would the no-contact order appropriately balance the interests of allowing him to finish this semester and protecting Jane Roe and serving TCU's interests in keeping them separated?

MR. SCHNEIDER: Yeah. Well, I can give you my opinion. I suspect Jane Roe and Jane Roe's counsel also have an opinion on that. So I will fill in for them.

I mean, we've made an adjudication as a private institution, at this point, that one of our students has violated a serious part of our code of conduct.

And from a Title IX perspective, our obligation is to create an environment that is free from the effects of sex discrimination.

In this case, we made an institutional

determination that John Doe has violated our student conduct process. Jane Roe would then be compelled to go to classes with John Doe, if you issue such an order.

THE COURT: Are they in classes --

MR. SCHNEIDER: I take it their position would be --

THE COURT: Are they in classes together?

MR. SCHNEIDER: I don't know that. I don't know that. I've been on campus, not very long. We were roped into this case very recently, but it ain't that big of a campus. It sure isn't University of Texas. So is it likely that they see each other and things like that? Absolutely.

THE COURT: Okay. Why don't you make any remarks you want to make.

MR. SCHNEIDER: Your Honor, look, thank you so much for indulging us on this. A couple of things, look, this is a case not to survive a 12(b)(6) motion.

There has to be a clear demonstration of, number one, a likelihood of prevailing on the merits and irreparable harm.

We don't believe, especially on irreparable harm, and that's the low-hanging fruit here, that you've heard any evidence that, frankly, satisfies that. You've heard a lot of speculation, but not a lot of evidence that satisfies that standard.

And the case law -- and again, I would recommend Judge Rosenthal's decision on this -- I think is reasonably clear that delays in education is not irreparable harm. That's number one.

Number two, on the merits, look, the work of Title IX coordinators at institutions of higher education is the hardest work in the country for any college and university, without question.

We have -- no matter how we decided this case, there was going to be at least one person who was going to be upset with the end result. This might be -- he says, you split the baby and that's somehow brilliant. This might be the remarkable case where we get two upset people. And we already have that. We have the appeal process and two lawsuits.

What the university has tried to do is develop a fair process with good people behind it. There's no evidence here of any sort of meaningful gender discrimination, sex discrimination.

Far from showing an erroneous outcome, I think we've demonstrated that a reasonable panel, or even you or me, sitting on a jury would have reached maybe a very similar conclusion.

So I just don't think, as a federal judge, or -- I don't know that it is appropriate on this set of facts, no

constitutional issues in play, to go to a private Christian university and say, I'm going to intervene here and tell you -- great, you went through this process. There's some issues here. It's not perfect.

You went through it. There's not a clear showing that we got it wrong. There's no real hard evidence of any sort of discrimination on the basis of sex. The best evidence of that, by the way, is the ruling in this case which splits both ways.

Counsel, also makes mention of public schools, they have to disclose statistics. Google it. TCU has the same requirement under Texas SB 212; we post statistics. Dean Ledbetter testified to it. They're all over the place.

There's no presumption in favor of respondent to manifest itself in any real way. So short version is, it's a remarkable request for relief against a private university with no constitutional issues involved.

And they've fallen, in my opinion, well short of demonstrating an erroneous outcome, bias on the basis of sex and irreparable injury. Thank you, your Honor.

THE COURT: I'm sorry, I wanted you to end on your remarks, so I left out two questions that I have.

Is it true that, during the hearing on this case, Jane Roe testified that half the sexual encounters were nonconsensual? Yeah, nonconsensual or unwanted?

MR. SCHNEIDER: So on this one, your Honor, I've listened to, it's 17 and a half hours, and I don't recall -- I don't want to say anybody is lying -- I don't recall hearing that.

THE COURT: You don't?

MR. SCHNEIDER: I'll be honest, we've also been scrambling to prepare on short notice, but I've listened to it, I don't recall hearing that.

THE COURT: That's kind of drastic. Given the facts, it's kind of a drastic claim.

If she did say that, that would be a bit of a drastic claim, right, or not?

MR. SCHNEIDER: You want me to be honest? Yes, I would think so.

THE COURT: I'm sorry for -- again, last question here though. What is your take on this professor's dissertation paper?

MR. SCHNEIDER: Literally, the first time I've seen it. It was never raised in the briefs. We, you know, cooperated really well on exhibits, but literally, the first time I've seen it was at the start of this hearing, and I saw two pages of it.

THE COURT: Oh, I see. Okay.

MR. SCHNEIDER: I will be honest with you, Judge, in my life I've never read a Ph.D. dissertation. This will

be the first one.

THE COURT: Yeah.

Okay. Anything else?

MR. SCHNEIDER: I'm going to say no.

THE COURT: Okay. Very good.

MR. SCHNEIDER: Anything else you need from me, Judge?

THE COURT: No. Thank you very much.

MR. SCHNEIDER: Thank you, your Honor.

THE COURT: Any final remarks you want to make?

MR. ROARK: Briefly, Judge. To respond to your question, she did say that.

THE COURT: And tell me what she said?

And this is just -- I'm going to give you a chance to make your final remarks -- but just set the scene.

I was under the impression that lawyers didn't participate in these hearings. So you actually asked your client questions and asked Jane Roe questions?

MR. ROARK: That's correct.

THE COURT: Like we did today?

MR. ROARK: Absolutely.

THE COURT: Okay. So they let you do that?

MR. ROARK: Yes.

THE COURT: All right. And so tell me then, as it relates to her testimony about -- apart from allegations one

and two -- that there were other unconsensual -- nonconsensual, I should say, sex acts, what did she say?

MR. ROARK: She volunteered that in response to her own advisor's question. And she said that -- paraphrasing -- that she had not really wanted to have sex about half the times or more that they had had sex over the course of their relationship. And so, therefore, he had raped her hundreds and possibly over a thousand times.

THE COURT: And I guess, let me just follow up with you on that. That's my question. Was her testimony that these times were sexual assaults or rapes, or she just wasn't in the mood, but she went ahead and consented to it because of the nature of their relationship?

MR. ROARK: She didn't give any more details about that, Judge. I cannot answer that.

THE COURT: Okay. Any final remarks you want to make?

MR. ROARK: Yes. If I can give my perspective just briefly, just on the evidentiary issue?

And before that, Judge, thank you for indulging this long hearing on something like this. Whatever happens, I appreciate your consideration.

THE COURT: Uh-huh.

MR. ROARK: With regards to the evidentiary rules, Counsel acts like my position is that the rules would be

superfluous, if you interpret it my way. It's quite the opposite. All the other schools that I've ever practiced at, and that's probably been seven or eight, have done it exactly the way I'm describing, including the largest school in Texas, UT in Austin.

All the other schools allow you to provide evidence up until the final investigative report. And then there's simply a longer delay before the hearing. That's it.

I mean, this is all proscribed in the federal rules. The federal rules say that you have an investigative report and you've got ten days to respond to it.

And then, you've got a final investigative report, and you've got ten days to respond to that also. There's nothing in the rules that requires you to have any further period of response and no other school does.

The only reason it was four days, in this instance, is because TCU put themselves and everybody else in that position.

We asked them to delay the hearing for separate reasons. But, I mean, that's all their doing. So all they had to do was allow you to use the evidence. That's it. That was the solution that we asked for prior to going through this process. And they simply would not comply with that.

It's not making any superfluous -- it wouldn't cause another two-week delay. This is all my interpretation simply according to federal law. Those two 10-day time periods are proscribed by federal law and the rules that we already talked about. And so this is not a novel concept here.

And, you know, part of the change in the law, of course, was that the investigator, in the old days, you probably know this, but prior to August 14th of 2020, the investigator could actually make a decision.

And so it was more intuitive that, if you didn't want to have to go to a hearing, get evidence in prior to the investigator making a decision.

When the rules changed, the investigator doesn't make a decision about anything. They don't say, okay, we think you're guilty or we think you're not guilty.

All of these cases go to a hearing now. Every Title IX case goes to hearing now. Couple of exceptions, but all -- by far, 95 percent of them will.

So it's certainly not intuitive to someone like me that there would be any need to have a deadline prior to the response to file the investigative report to turn in evidence. It's not intuitive if you look at TCU's own rules.

You know, they act like this is an informal

process. We want the kids to be involved. Nowhere in any of their communications do they warn you, oh, by the way, dude, this is your deadline for evidence. If you have any exculpatory evidence, you better get it in before that deadline or we're not going to let you use it.

Of course, why would they have a rule like that anyway? I mean, you know, to share experiences of our practice, when you're talking to a 19 or 20-year-old kid and you're trying to vet what might be important about their case. I've had cases where I've talked to a kid for three months and asked him every different way, "Do you have texts? Snapchats," whatever? And maybe spend an hour with him and he walks out the door, and he's like, "Oh, hey. By the way, I found this text the other day where she said she had a really good time the morning after, after she's accusing me of sexually assaulting her, is that important?"

:Yeah, that is important."

So to expect these kids to know what's important and all those things is just fantasy.

So if you're going to be clear about your rules, fine, but be clear about them. That's all we ask. Be clear about your rules. Don't have confusing rules that you're then going to strictly enforce in a way that's extraordinarily unfair. And that's what we're asking you to enforce TCU to do.

With regards to your question about, would the no-contact order be an effective tool? I can tell you it has been so far. I mean, he was found responsible two months ago. And, you know, they don't kick you out until the appeal comes down. That came down two weeks ago.

So, you know, they've all been separated within the school for, really, the last two weeks. And there's nothing about that that would change going forward.

With regards to this semester, you know, this case is not going to be resolved by the time he goes to summer school, which I think would just be a couple weeks away, and he wants to go to summer school. So I think that's all very relevant to us.

He would like to go to summer school at TCU. And, of course, would comply with any rules that you thought were appropriate, or TCU did, as far as no contact or anything like that.

You know, we have just a very different view of the facts, as you can imagine. Our perception is not entirely different than what the panel's was. The panel did not believe her story on the first allegation about what happened when he came over.

They disregarded her assertion that she had made from the beginning that he just reached over and was able to insert his fingers into her vagina as she was sitting down.

They did not even find that credible.

So how they could then somehow manage to concoct a ruling in which he was found responsible for that is beyond me. The only explanation I can come up with is that they were splitting the baby and gender bias.

Both of those things, I think, inure to our benefit, as far as whether or not our request for an injunction is legitimate. It should not have been consolidated.

And they shouldn't be just believing victims and splitting the baby in that way, when they even admit, and Harty did, her story wasn't believable. It wasn't believable for all the right reasons, because it didn't happen.

She continued to have sex with him repeatedly all the way up and through December. None of this came up until he finally rejected her request. She sent him a Facebook that said, "I want to f- you," and he pushed back on that and refused. She saw him out with a different girl, several months later, and here we are.

So this is not a situation where we think it's -- you know, they think it's close. We don't even think it's a close call. I would ask the Court, and you have hit on it very well is, is excluding exculpatory evidence that's directly on point fair to do?

And in absence of anything else indicative of gender bias, I think you were right on point with asking those questions.

How could you possibly suggest that that evidence was unfairly prejudicial? He tried to argue that -- he was talking about all of them -- well, Ledbetter did, as she was up there advocating for Roe. She said it was unfairly prejudicial.

That kind of attitude has infected this proceeding and it affects the entire Title IX office at TCU. We ask that you enjoin them from having that infected process permanently mar John Doe's reputation.

As you know, there are many of those cases out there saying reputational damage alone, loss of time. There's certainly cases that say that it's not irreparable harm, it's just to make it say that it is. It obviously is, and we would ask that you cure that for us.

THE COURT: Is there a difference between loss of educational opportunity and loss of it because you have been found to have violated a sexual assault policy?

MR. ROARK: Sure if you are found to have violated it in a way that's unfair, absolutely.

Was that your question?

THE COURT: Well, in other words, if you don't graduate on time, for a host of reasons, then you will be

able to be compensated.

In other words, if you're an engineer, you don't get to start your engineering job four years after your graduation, only five years after your graduation --

MR. ROARK: Right.

THE COURT: -- because you've been suspended. Then there's a way, right, to compensate a year. And even prospectively with an expert, you know, you're going to be an engineer for 30 years, and you've lost out on a year of seniority, we can put a dollar figure on that.

So I'm asking you, is there a difference between simply not graduating on time because of an administrative act, versus not graduating on time because you've been found liable or responsible for violating a sexual assault policy?

MR. ROARK: Well, I think if you've been found -- if you've been found responsible as part of an unfair bias process --

THE COURT: Right. I'm assuming improper.

MR. ROARK: Yeah.

THE COURT: I'm just focusing on the irreparable harm issue, because your colleague is making a very strong point that money damages can take care of both the loss, professional time --

MR. ROARK: Right.

THE COURT: -- a year of delay, but he's also

making the point that, in his experience, money damages can also compensate the stigma that is placed on a person who is, in your scenario, being wrongfully accused by the institution, unlawfully accused by the institution of violating a sexual assault policy.

MR. ROARK: How much is your Honor's reputation worth?

How much is mine worth?

How much is Mr. Schneider's worth?

THE COURT: I think that's my question to you. Is there a difference between these two?

MR. ROARK: Absolutely there is. Is there any amount of money that can put you back in the spot that you were, when an institution, as you said, cloaks you with being righteously accused of something that you didn't do through a flawed, biased process? There's not.

And what happens in these cases is, and what I've seen happen, these women take these rulings, there's nothing to prevent her from putting that deliberative report on a billboard coming into town.

And what they will do is then use that, use the university's pronouncement that, "you're a rapist," to ruin the rest of your life.

And they will send that to the next school that you went to. They will send that to the next school's

fraternity council that you are trying to get into.

They will infect your peer group with that type of thing. They will send it to the first job that you get to. They will send it to the second job you get to. There is no way to cure that, your Honor.

THE COURT: And so, then, is it the case that you and your colleague here actually agree on money damages being sufficient if you're just out graduating a year?

Do you agree with that, just generically, you're out a year?

They suspend you for a year because of absenteeism. Would that then be compensable -- fairly compensable under the irreparable injury charge?

Because you're colleague here, Mr. Schneider, he thinks it would.

MR. ROARK: I think there's some law that states that, Judge, and there's some that doesn't.

THE COURT: Well, what do you say?

MR. ROARK: I think it does.

THE COURT: Absenteeism, not sexual assault.

MR. ROARK: Well, if you've been absent, and there's no legitimate argument about that, well, then, I don't know how you can be arguing about that anyway.

THE COURT: What about if it's a close call, that this professor didn't see you, but the panel agreed with the

professor, would that change it at all?

I'm just trying to wonder if a sexual assault finding, and the stigma that goes with that, as it relates to irreparable harm, is that different, head and shoulders above other flawed processes and reasons?

MR. ROARK: In our society, Judge, it is the number one head and shoulders issue above all others. There's been nothing else that we've talked about during the pandemic for the past three years, except for the "Me Too" movement, and everybody that's been taken down with it.

With the cancer culture and all those things, there's nothing more important -- that's why, when he first got wind of this, that that was possibly coming down the pike as a Title IX thing, you've got these kids, even though they think they're not guilty, willing to not go to school or go to some other school just to avoid that kind of stigma.

The first thing they do, if they're in a fraternity or sorority, the sorority president of the young lady calls the sorority president of the man, and says, he sexually assaulted her. We want you to kick him out or we're not going to mix with you anymore. There is nothing that can replace the dignity that you had before that process.

THE COURT: Okay. Very good.

MR. SCHNEIDER: Can I just --

THE COURT: Okay.

MR. SCHNEIDER: I think I hear where you're going and I just want to address it with the Court really quickly.

THE COURT: Yes.

MR. SCHNEIDER: There are schools -- I'm not going to sit here and pretend that sex assault and being found responsible for sex assault, a serious offense, private schools deal not just with sex assault, students will get suspended for hazing, students will get suspended for heroin use, students will get suspended for drug distribution, same sort of process, preponderance of the evidence standard.

If that sort of -- each time a student gets suspended at a private institution, somebody can come in, with not much evidence of irreparable harm, certainly it's a lot of speculation, asking a federal court to intervene and say, keep that student in, that is -- that's remarkable.

So, yes, being accused and found responsible of sex assault is a serious offense, but schools deal with these sorts of offenses all the time that are just as serious.

I would be very reluctant to open up the door for you to come in and be, ultimately, the appeal officer of appeal officers at Texas Christian University, telling them who they can have on campus and who they can't have on

campus.

THE COURT: You keep saying "private institutions," but that's throwing me a little bit. They're still obligated under Title IX to not discriminate on the basis of sex --

MR. SCHNEIDER: Without --

THE COURT: -- public or private?

MR. SCHNEIDER: Without question. If they receive federal financial funds, they cannot discriminate on the basis of sex.

But when you look at the injunction and -- first off, we didn't discriminate on the basis of sex. We receive federal financial funds. The cases where courts, I think -- So I will just leave it there. They're clearly covered by Title IX.

THE COURT: Okay. Very good. Then thank you all. I will take it all under advisement.

THE CHIEF SECURITY OFFICER: All rise. Court is in recess.

(The proceedings concluded at 3:51 p.m.)

REPORTER'S CERTIFICATE

I, ZOIE WILLIAMS, RMR, RDR, FCRR, certify that the foregoing is a true and correct transcript from the record of proceedings in the foregoing entitled matter to the best of my ability to hear.

Further, due to the COVID-19 pandemic, some participants are wearing masks, and/or appeared via videoconferencing, so proceedings were transcribed to the best of my ability.

I further certify that the transcript fees format comply with those prescribed by the Court and the Judicial Conference of the United States.

Signed this 10th day of May, 2022.

____/s/ Zoie Williams___________
Zoie Williams, RMR, RDR, FCRR
Official Court Reporter
Northern District of Texas
Fort Worth Division

Business Address: 501 W. 10th Street, Room 532
Fort Worth, Texas 76102
zwilliams.rmr@gmail.com
817.850.6630

**MR. BRUNER: [1]** 6/8
**MR. DOE SR: [3]** 7/23 8/3 8/7
**MR. DOE: [2]** 7/24 8/5
**MR. FILLMORE: [1]** 6/11
**MR. HARTY: [1]** 7/20
**MR. RAJARATNAM: [15]** 6/18 28/3 50/22 57/10 64/1 64/21 69/12 97/4 98/22 99/11 102/2 104/14 105/10 202/9 207/4
**MR. ROARK: [107]** 6/7 6/25 7/3 7/6 9/3 9/6 9/10 9/12 9/14 15/21 18/6 18/9 28/11 37/9 37/12 37/16 56/13 57/15 64/15 65/3 65/5 65/9 65/12 65/15 66/22 69/4 69/9 69/11 98/18 99/13 104/13 105/13 105/16 118/11 118/14 124/8 133/1 185/1 185/15 185/17 193/15 203/13 207/6 207/13 207/18 217/4 226/18 227/7 227/9 227/16 231/12 235/22 236/7 236/11 236/14 236/16 236/22 237/8 237/10 237/18 238/1 238/3 238/5 238/10 238/12 239/18 239/21 240/15 240/18 241/8 241/12 241/19 242/7 242/10 242/13 242/25 243/13 243/15 243/19 245/9 245/22 245/25 246/8 246/13 246/16 246/18 247/13 249/17 266/11 266/19 266/21 266/23 267/3 267/14 267/18 267/24 273/21 274/5 274/15 274/19 274/24 275/6 275/12 276/16 276/19 276/21 277/6
**MR. RUSSELL: [1]** 7/21
**MR. SCHNEIDER: [71]** 6/15 8/22 37/15 43/11 49/6 106/18 113/21 132/20 133/4 133/9 141/14 148/13 148/23 177/17 180/17 185/13 231/13 235/16 235/25 251/21 252/22 253/4 253/7 253/12 253/16 253/19 253/22 254/4 254/12 254/14 254/18 254/25 255/24 256/5 256/8 256/10 256/16 256/20 256/24 257/2 257/5 257/8 257/12 257/15 257/17 257/20 257/22 257/24 258/8 258/13 258/18 258/21 258/24 259/4 261/16 262/5 262/8 262/15 265/1 265/6 265/13 265/18 265/24 266/4 266/6 266/9 278/1 278/3 278/6 279/6 279/8
**MR. STEIDL: [1]** 7/16
**MS. DAVIS: [1]** 6/21
**MS. LEDBETTER: [2]** 7/19 9/2
**THE CHIEF SECURITY OFFICER: [3]** 124/11 207/9 279/18
**THE COURT REPORTER: [5]** 7/18 15/4 96/25 97/3 211/25
**THE COURT: [237]** 6/4 6/10 6/13 6/17 6/20 6/23 7/1 7/5 7/8 7/14 7/17 7/22 7/25 8/4 8/6 8/8 8/24 9/5 9/9 9/11 9/13 13/13 13/16 14/2 14/15 14/20 17/22 18/5 18/7 20/8 21/9 21/16 21/19 21/23 28/8 28/12 30/11 43/17 49/8 50/25 60/21 64/5 64/14 65/1 65/4 65/7 65/10 65/13 66/20 68/22 69/7 69/14 98/21 102/5 103/18 103/21 105/11 105/15 106/19 113/24 118/10 118/13 118/15 124/9 124/14 129/18 129/21 133/3 133/7 148/12 148/17 148/21 159/16 180/18 184/7 185/16 185/18 203/14 203/18 203/21 204/1 204/11 204/19 204/24 205/2 205/10 205/13 205/15 205/21 206/11 206/16 206/21 206/24 207/3 207/5 207/7 207/12 207/17 207/19 207/21 212/11 212/14 212/16 219/25 220/16 220/22 220/25 221/22 223/23 225/5 225/10 225/19 225/22 226/2 226/5 226/9 226/12 226/15 227/6 227/8 227/14 227/17 227/20 227/23 227/25 228/2 228/5 228/16 235/24 236/2 236/9 236/13 236/15 236/17 237/7 237/9 237/17 237/25 238/2 238/4 238/7 238/11 239/14 239/19 240/13 240/16 241/5 241/9 241/13 242/5 242/9 242/11 242/22 243/11 243/14 243/16 245/3 245/20 245/23 246/1 246/10

**THE COURT:... [76]** 246/14 246/17 247/9 249/10 251/11 252/7 253/2 253/5 253/10 253/14 253/18 253/21 253/25 254/8 254/13 254/16 254/20 255/23 256/3 256/6 256/9 256/12 256/19 256/22 257/1 257/3 257/7 257/10 257/14 257/16 257/18 257/21 257/23 258/1 258/10 258/14 258/20 258/22 258/25 261/7 262/4 262/7 262/13 264/21 265/5 265/9 265/15 265/23 266/2 266/5 266/8 266/10 266/13 266/20 266/22 266/24 267/9 267/16 267/23 273/18 273/24 274/6 274/18 274/20 274/25 275/10 276/6 276/18 276/20 276/24 277/25 278/2 278/5 279/2 279/7 279/16

**THE WITNESS: [74]** 13/15 14/4 14/22 15/22 17/24 20/13 21/12 21/18 21/21 21/24 28/9 28/18 30/12 37/10 37/17 43/19 49/9 51/3 57/13 60/22 66/23 68/23 69/10 97/2 103/20 103/22 105/12 129/24 159/18 184/9 185/19 203/17 203/20 203/25 204/2 204/12 204/23 205/1 205/7 205/12 205/14 205/20 206/5 206/13 206/20 206/23 207/2 207/20 212/2 212/13 212/15 212/17 217/16 220/4 220/21 220/24 221/1 221/23 223/24 225/8 225/20 225/25 226/4 226/8 226/11 226/14 226/17 227/19 227/22 227/24 228/1 228/4 228/8 228/17

**$**

**$400,000 [1]** 255/8

**'**

**'21 [1]** 128/16

**'they' [1]** 20/24

**/**

**/s [1]** 280/17

**0**

**01 [1]** 239/3

**1**

**1,300 [1]** 178/2

**1,500 [7]** 68/5 87/15 102/12 104/3 134/2 136/23 258/2

**1.008 [2]** 50/12 50/13

**1.009 [1]** 56/22

**1.19 [3]** 37/6 37/8 37/20

**1.29 [1]** 188/9

**10 [15]** 74/19 76/5 77/25 85/11 85/15 85/15 85/16 85/24 88/8 88/9 88/9 258/22 258/23 258/23 259/8

**10-day [4]** 77/14 77/15 77/17 269/3

**10-minute [1]** 207/8

**100 [3]** 162/5 162/13 162/19

**106 [1]** 238/2

**106.45 [4]** 47/2 238/1 242/7 242/9

**10:00 [1]** 195/23

**10th [2]** 280/15 280/20

**11 [2]** 152/10 214/18

**111 [1]** 3/4

**11:22 [1]** 124/12

**11th [6]** 41/3 41/4 158/23 159/2 159/4 159/7

**12 [3]** 178/2 214/18 262/17

**12:20 [1]** 196/17

**12:29 [1]** 124/13

**12:30 [1]** 124/10

**12th [3]** 41/11 84/19 101/21

**13 [1]** 99/17

**1307 [1]** 1/18

**14 [2]** 42/4 134/2

**1400 [1]** 3/4

**147 [1]** 149/1

**14th [3]** 187/3 194/8 250/24

**15 [2]** 148/25 161/19

**150 [4]** 68/5 87/14 90/19 115/25

**153 [1]** 16/14

**162 [3]** 19/6 19/11 19/19

**163 [2]** 21/6 23/23

**16th [3]** 84/17 84/24 118/17

**16th and [1]** 118/18

**17 [13]** 93/14 137/13 139/21 139/24 140/15 141/6 158/16 165/24 166/20 169/11 207/24 232/18 265/2

**17th [3]** 84/21 84/24 104/25

**19 [4]** 46/13 105/19 270/8 280/8

**19th [10]** 53/11 109/13 115/8 118/11 118/18 119/5

**1**

**19th... [4]** 177/23 178/8 178/17 180/22
**19th and [1]** 119/7

**2**

**2,000 [1]** 63/13
**20-year-old [2]** 55/25 270/8
**200 [5]** 19/13 19/16 70/5 257/15 258/2
**200 miles [1]** 52/15
**200-page [1]** 64/22
**201 [1]** 1/24
**2011 [8]** 12/5 17/16 25/15 25/19 25/20 26/5 26/17 260/9
**2020 [16]** 10/14 26/23 42/4 46/13 46/14 65/19 105/19 105/23 107/9 109/13 125/8 125/19 125/23 180/22 250/25 269/9
**2021 [10]** 30/5 107/12 127/14 127/15 127/17 128/4 130/19 130/20 131/16 135/20
**2022 [3]** 1/9 6/2 280/15
**2023 [1]** 95/16
**212 [1]** 264/12
**214 [6]** 134/6 134/13 139/7 139/9 157/25 158/6
**220 [3]** 137/15 137/17 137/20
**225 [1]** 70/7
**234 [1]** 212/18
**24th [5]** 53/25 84/9 87/12 91/1 100/18
**24th deadline [1]** 90/18
**250 [2]** 157/2 157/17
**26 [5]** 1/9 6/2 42/18 42/20 42/24
**26th [2]** 54/21 88/10
**281 [1]** 5/9
**28th [4]** 114/17 159/5 164/24 165/15
**297 [1]** 6/5
**2:06 p.m [1]** 207/10
**2:14 [1]** 207/11

**3**

**30 [2]** 215/7 274/9
**300 [1]** 255/8
**300-page [1]** 43/13
**30026 [1]** 239/3
**30357 [1]** 239/3
**30358 [1]** 239/4
**30th [5]** 54/15 85/25 99/24 100/13 105/4
**30th of [1]** 85/14
**34 [3]** 47/2 238/1 242/7
**35 [2]** 65/9 65/11
**3700 [1]** 1/21
**38 [4]** 5/4 65/14 65/16 69/24
**3:51 p.m [1]** 279/20
**3rd [2]** 55/19 121/21

**4**

**400 [1]** 20/4
**45 [4]** 108/22 238/3 238/4 261/5
**460 [1]** 71/4
**48 [1]** 80/21
**4:22-cv-00297-O [1]** 1/4
**4:22-cv-297 [1]** 6/5
**4th [3]** 46/14 55/19 105/23
**4th in [1]** 121/21

**5**

**5.3.10 [2]** 67/12 67/16
**5.3.14 [1]** 67/21
**5.7.10 [7]** 42/23 53/22 56/17 58/14 236/12 236/19 243/12
**50 [5]** 34/25 35/15 77/24 97/11 97/11
**50 percent [1]** 97/12
**50/50 [1]** 97/11
**501 [1]** 280/20
**512.476.8040 [1]** 1/19
**512.479.1101 [1]** 3/5
**532 [1]** 280/20
**5th [1]** 131/16

**6**

**60 [2]** 77/24 261/5

**7**

**7.10 [1]** 43/1
**76102 [2]** 1/24 280/20
**76107 [1]** 1/21
**78701 [2]** 1/18 3/4
**79 [1]** 179/7
**7th [2]** 1/21 55/18

**8**

**801 [1]** 1/24
**817.332.6633 [1]** 1/22
**817.850.6630 [1]** 280/21
**817.870.1859 [1]** 1/25
**8A [1]** 239/3

**9**

**900 [1]** 134/12
**95 percent [1]** 269/19
**9:30 [2]** 91/1 195/22

**:**

**:Yeah [1]** 270/17

**A**

**a.m [1]** 124/12
**A2 [1]** 238/5
**A4 [1]** 238/5
**A5 [1]** 238/6
**ability [16]** 59/2 61/2 63/3 63/25 101/6 101/16

**A**

**ability... [10]** 104/8 134/19 191/4 236/12 237/20 251/17 259/18 260/19 280/7 280/11

**able [49]** 20/20 31/24 34/22 35/1 40/24 41/14 41/16 46/5 54/7 55/20 55/21 56/5 61/20 62/9 74/7 79/10 81/1 90/21 105/2 113/4 113/11 113/18 116/6 117/11 122/4 123/4 123/18 123/18 124/1 124/5 174/5 175/8 181/13 181/23 187/15 187/16 187/18 203/12 210/21 223/4 223/16 224/1 224/8 229/20 244/23 260/14 261/8 271/24 274/1

**about [268]** 8/10 11/12 15/25 19/4 19/5 19/16 22/13 22/17 22/20 22/24 23/1 23/11 25/18 25/22 30/4 31/5 31/24 33/6 35/15 35/17 35/25 36/10 36/12 37/1 40/8 41/1 42/1 44/14 44/15 45/20 46/8 46/16 46/23 46/25 52/19 53/1 53/21 54/1 55/2 57/9 59/11 59/24 66/10 68/10 70/5 70/7 70/9 70/14 70/20 70/21 70/22 71/2 71/4 71/7 71/23 72/13 77/14 78/4 79/5 79/7 80/21 80/22 81/7 82/25 83/1 83/3 84/1 86/3 86/25 87/1 87/14 87/15 87/20 89/10 89/17 90/2 90/9 90/20 91/1 91/10 91/21 91/21 91/25 92/2 92/7 92/8 92/19 93/14 93/23 96/2 96/4 96/15 97/11 102/20 103/5 103/9 104/18 106/12 108/22 108/25 109/4 110/12 114/20 115/13 115/25 116/15 117/14 117/18 117/24 118/5 118/10 118/18 118/19 119/3 120/12 120/21 125/7 125/18 126/4 126/11 127/4 127/20 128/16 128/21 129/7 131/22 132/16 132/21 132/22 133/24 133/25 134/7 137/15 139/6 140/9 141/8 143/7 144/14 144/24 145/23 146/15 147/9 148/20 148/22 150/4 150/9 151/4 152/23 154/2 154/19 155/13 155/18 156/20 160/3 161/10 161/11 161/12 161/14 163/9 163/23 164/4 164/19 164/20 165/1 167/9 167/15 169/10 173/1 174/13 176/22 177/4 177/5 178/7 179/11 181/6 181/15 182/4 182/10 183/8 183/11 190/21 191/19 193/20 193/23 196/16 197/12 197/13 199/21 199/25 205/10 206/18 206/19 207/8 210/6 210/18 212/18 213/14 213/25 214/18 217/25 218/1 218/2 218/14 218/19 219/4 221/11 222/3 222/8 222/19 222/24 223/9 224/12 224/22 229/3 229/10 230/4 230/23 231/2 232/13 233/3 234/4 234/12 237/11 239/14 240/11 241/2 241/14 244/18 244/19 245/11 246/12 247/1 247/5 248/2 249/3 249/18 249/19 249/22 250/23 251/4 251/19 254/4 255/2 255/7 255/8 255/14 255/16 256/7 260/10 260/10 260/16 266/25 267/6 267/14 269/5 269/15 270/9 270/20 270/21 270/22 271/1 271/8 271/21 273/6 276/22 276/23 276/24 277/8

**above [4]** 108/21 138/3 277/5 277/7

**absence [2]** 248/12 273/1

**absent [4]** 8/15 149/4 220/19 276/21

**absenteeism [2]** 276/12 276/20

**absolutely [32]** 7/3 9/25 14/7 14/10 15/20 23/15 28/21 36/19 47/18 50/6 68/6 70/13 71/11 84/8 91/13 91/16 92/6 93/3 94/20 96/24 105/7 122/21 188/16 202/8 217/19 254/15 258/18 258/21 262/12 266/21 273/22 275/12

**academic [10]** 10/3 17/12 23/12 39/2 70/20 71/3 72/19 85/16 85/20 85/20

**academics [2]** 17/19 55/14

**accept [2]** 223/11 229/12

**acceptable [2]** 130/2 159/20

**accepted [10]** 175/6 175/7 175/14 175/15 175/15 222/7 222/14 222/18 222/19 229/10

**access [14]** 61/19 74/9 74/11 85/1 85/12 87/3 87/7 90/7 90/10 91/24 104/23 138/20 141/18

## A


**access... [1]** 152/4
**accessing [1]** 136/1
**accord [1]** 192/21
**according [6]** 17/5 84/7 100/15 104/12 236/5 269/3
**account [13]** 187/10 188/1 188/24 190/3 194/2 194/7 194/12 194/15 195/1 195/3 195/13 195/15 196/1
**accuracy [2]** 27/10 32/13
**accurate [24]** 11/8 27/6 42/8 42/9 46/22 49/21 49/24 64/18 100/4 109/10 109/20 112/19 113/1 114/4 114/10 116/3 116/12 116/17 119/12 178/5 184/24 187/20 219/20 222/17
**accurately [4]** 217/20 217/22 218/18 219/6
**accused [10]** 72/7 72/11 92/21 181/3 205/19 243/6 275/3 275/4 275/15 278/18
**accuser [1]** 96/22
**accusing [3]** 112/5 154/5 270/16
**acknowledgement [1]** 16/10
**acronym [2]** 209/17 209/18
**across [1]** 255/1
**act [7]** 26/21 39/1 66/18 119/10 204/24 269/25 274/13
**acting [3]** 66/13 186/17 192/21
**action [4]** 177/8 192/25 214/9 214/10
**actions [2]** 92/22 146/11
**activities [1]** 26/10
**activity [4]** 47/9 51/12 51/16 51/25
**acts [2]** 267/2 267/25
**actual [17]** 31/10 33/11 43/15 47/4 47/17 52/18 53/25 72/17 79/12 81/11 81/24 101/5 104/10 172/16 210/8 237/19 245/1
**actually [42]** 24/14 24/25 28/1 28/15 33/13 36/8 37/5 41/7 41/20 46/24 46/24 47/23 48/21 49/2 57/20 62/5 85/13 89/5 90/14 90/24 93/4 93/18 100/17 102/21 106/1 106/6 106/13 109/3 111/24 117/21 120/5 120/22 180/23 189/1 198/2 211/20 213/7 216/5 238/22 266/17 269/10 276/7
**add [3]** 38/23 135/15 243/23
**added [3]** 18/24 51/24 84/16
**addition [7]** 13/3 13/4 77/23 88/20 98/16 105/25 135/23
**additional [21]** 32/10 47/25 59/16 62/3 62/5 62/12 62/13 70/6 74/19 76/6 85/10 85/25 86/3 87/21 88/1 88/10 90/20 95/17 114/7 135/16 236/5
**Additionally [1]** 17/6
**address [12]** 47/11 52/2 69/19 78/23 179/10 241/21 246/17 247/9 257/8 259/3 278/4 280/20
**adhered [1]** 46/4
**adherence [1]** 45/25
**adjudication [1]** 261/19
**administration [4]** 25/15 25/24 249/5 260/11
**Administration's [1]** 65/18
**administrations [1]** 249/4
**administrative [1]** 274/12
**administratively [1]** 174/6
**administrator [1]** 130/24
**administrators [2]** 19/21 23/25
**admissibility [4]** 56/18 57/1 237/2 244/18
**admissible [2]** 244/13 245/14
**admissions [1]** 115/6
**admit [9]** 61/11 61/11 62/9 62/12 81/13 184/18 189/12 239/8 272/11
**admits [4]** 68/2 224/9 229/17 231/7
**admittance [1]** 220/13
**admitted [20]** 5/6 58/23 62/11 65/7 65/10 65/11 65/14 65/14 65/16 69/7 69/8 81/23 104/4 152/20 180/21 217/6 223/23 231/10 250/20 251/7
**admitting [5]** 146/1 147/24 148/1 162/10 251/5
**adopt [1]** 43/4
**adult [1]** 250/11
**adults [1]** 12/20
**advance [3]** 39/15 39/17 256/4
**advantage [2]** 154/3 154/6
**advice [4]** 83/22 187/12 187/21 189/5
**advised [1]** 132/17
**advisement [1]** 279/17
**advisor [17]** 11/7 11/11 11/16 11/23 78/17 79/4 81/15 83/23 130/24 131/20 139/3 140/3 141/19 158/24 159/8 159/8 164/21
**advisor's [1]** 267/4
**advisors [6]** 11/10 80/3

## A


**advisors... [4]** 91/15 93/8 183/5 184/22
**advocate [1]** 10/24
**advocated [1]** 39/16
**advocating [1]** 273/7
**affect [2]** 52/1 82/17
**affected [3]** 122/23 123/1 230/16
**affects [1]** 273/10
**affiliated [3]** 89/15 89/18 174/14
**affirmed [1]** 252/16
**afford [1]** 135/14
**afraid [1]** 116/21
**after [68]** 15/5 68/12 73/6 73/7 74/17 74/24 75/1 75/7 75/18 76/23 79/11 79/13 82/4 84/21 86/14 86/15 88/2 89/2 90/17 94/23 94/25 108/18 108/23 110/25 111/1 111/2 113/4 113/6 113/18 114/14 118/17 120/5 121/24 129/4 138/6 138/10 141/17 146/10 150/7 153/14 155/21 165/1 165/13 165/14 169/18 169/20 172/21 179/6 182/2 190/17 196/2 209/7 213/6 213/11 214/20 214/21 214/25 220/10 226/24 230/7 230/8 240/8 250/24 257/13 270/15 270/15 274/3 274/4
**afternoon [4]** 168/23 193/18 207/8 207/10
**afterwards [6]** 117/14 220/14 223/14 224/18 226/21 240/24
**again [39]** 23/11 63/2 63/6 64/3 67/17 76/5 82/9 84/5 89/11 92/4 95/11 102/8 104/6 114/16 134/9 135/15 136/25 146/24 150/25 152/11 162/10 163/2 163/3 189/23 193/3 193/6 195/6 198/16 198/24 200/2 202/6 204/8 204/12 227/6 248/18 248/25 259/9 263/1 265/15
**against [32]** 14/6 24/8 45/11 48/5 48/9 48/12 48/21 50/3 97/15 126/20 132/4 156/12 158/9 166/24 168/12 172/5 172/15 172/20 177/8 190/14 197/22 203/1 203/5 203/10 204/10 207/1 221/17 242/3 244/14 247/14 252/16 264/16
**age [2]** 123/12 204/5
**aged [2]** 235/13 235/14
**ago [6]** 107/15 244/3 249/3 250/22 271/4 271/5
**agree [20]** 13/1 16/8 24/21 26/18 36/17 39/14 40/21 44/3 46/10 52/22 59/17 59/22 66/4 101/19 110/13 180/7 182/8 236/4 276/7 276/9
**agreed [2]** 43/3 276/25
**agreement [2]** 84/19 84/22
**ahead [7]** 8/1 49/8 50/8 124/15 246/11 258/20 267/12
**ain't [1]** 262/10
**Alex [4]** 161/10 161/16 162/11 163/1
**all [239]** 5/5 6/4 6/6 6/17 6/24 7/8 7/9 7/10 7/11 7/12 8/24 18/14 21/3 21/23 24/7 26/21 27/13 28/25 34/24 41/16 45/6 61/17 67/12 68/6 69/1 69/3 69/23 72/2 73/16 73/18 73/21 74/11 75/3 75/11 76/3 80/12 81/12 82/10 82/21 82/24 85/3 85/14 87/4 87/10 87/12 88/16 89/15 89/16 90/19 90/21 90/24 90/25 92/18 93/16 94/21 103/1 106/11 110/25 111/2 111/4 121/14 123/17 124/11 124/23 126/7 128/12 128/15 130/16 131/10 131/13 131/19 131/22 132/8 132/12 132/15 132/18 133/9 133/15 133/23 134/11 135/23 136/4 137/1 137/17 137/19 137/20 138/1 138/8 138/17 139/16 140/10 140/24 142/14 144/6 147/2 147/3 147/9 149/13 149/17 150/11 150/14 152/11 152/23 153/4 153/19 154/10 156/23 157/6 157/19 157/20 157/22 157/24 157/25 158/5 158/6 158/20 158/23 159/2 159/7 159/9 159/22 160/19 162/20 163/8 163/19 163/25 164/14 164/18 165/20 166/20 167/3 167/9 167/16 168/10 168/22 169/4 169/9 169/10 169/23 171/5 171/8 172/4 172/18 172/23 172/24 174/12 175/21 175/24 176/2 176/13 176/21 177/4 177/11 177/16 177/17 178/13 179/5 180/14 181/10 182/5 185/13 187/23 187/25 200/3 200/25 202/7 204/6 204/13 207/3

## A

**all... [70]** 207/9 207/17 209/24 210/6 210/12 211/21 212/21 213/1 213/15 214/25 215/15 215/15 215/19 224/5 225/10 226/9 229/14 233/9 234/4 234/18 235/11 236/22 237/24 240/20 241/23 243/23 244/5 246/10 246/20 247/2 248/1 248/14 248/19 249/19 249/20 250/8 252/22 252/25 252/25 254/6 255/12 256/19 257/18 259/12 259/24 260/23 264/13 266/24 268/2 268/6 268/10 268/21 268/21 269/2 269/17 269/19 270/19 270/21 271/6 271/12 272/13 272/15 273/6 277/1 277/7 277/11 278/20 279/16 279/17 279/18

**allegation [58]** 61/16 66/11 93/19 93/22 94/24 98/7 103/11 109/12 109/15 109/18 118/12 118/13 122/5 125/22 125/23 126/4 145/5 218/1 218/19 219/7 219/12 221/7 224/13 224/14 224/17 224/21 225/6 225/12 225/13 225/15 225/16 225/23 225/24 226/21 226/25 227/3 227/4 227/12 227/13 227/20 228/3 228/11 229/21 230/7 230/8 230/11 237/21 239/15 240/4 240/6 240/7 240/7 240/8 241/2 242/16 248/13 248/14 271/21

**allegations [23]** 46/12 47/21 48/5 48/17 48/22 48/25 49/25 50/12 52/10 86/4 93/19 101/7 106/1 110/1 125/7 126/20 132/6 180/15 218/8 230/19 230/22 240/4 266/25

**alleged [9]** 100/9 109/12 110/25 111/1 125/25 143/4 150/8 222/12 240/19

**allegedly [1]** 125/10

**allow [19]** 28/15 31/17 31/20 38/9 38/21 47/5 55/13 59/8 68/3 74/3 77/16 92/3 93/1 93/9 107/5 157/2 259/8 268/6 268/22

**allowed [20]** 52/2 62/3 62/12 72/4 74/20 76/2 76/11 76/24 77/12 87/10 93/5 93/13 100/20 100/22 100/23 109/9 187/8 191/8 197/3 202/18

**allowing [2]** 67/25 261/14

**alluded [3]** 78/10 240/23 260/23

**alluding [1]** 41/14

**almost [1]** 112/19

**alone [10]** 36/23 58/6 58/7 116/21 220/16 220/19 225/22 226/10 226/12 273/14

**along [4]** 82/22 200/11 240/20 246/20

**already [15]** 43/3 59/5 59/11 61/12 68/18 76/16 84/18 86/5 86/9 87/5 87/21 144/3 188/6 263/14 269/5

**also [81]** 6/19 6/21 7/6 10/9 10/20 11/11 11/14 11/23 12/18 12/24 13/3 13/18 16/12 18/19 20/24 29/4 30/21 30/22 32/11 33/5 36/22 38/23 39/18 43/2 44/11 45/12 50/4 50/11 51/17 53/19 59/13 59/19 63/15 69/22 74/1 75/25 76/14 76/24 77/23 78/22 79/7 81/10 81/18 81/22 82/20 86/4 87/20 89/21 91/25 94/14 95/24 100/8 102/24 106/1 122/20 123/18 128/20 139/19 142/1 151/3 153/21 188/2 189/9 202/18 210/3 211/24 212/3 214/14 215/19 218/22 224/14 227/4 227/12 244/10 244/11 261/17 264/10 265/6 268/14 274/25 275/2

**Although [1]** 18/2

**always [13]** 27/12 35/7 38/18 47/11 80/19 92/7 96/18 96/22 97/14 173/12 179/19 205/8 206/13

**am [15]** 6/25 10/16 16/14 26/21 43/14 57/9 101/2 125/13 131/13 150/24 151/6 161/15 162/5 208/15 246/6

**among [2]** 111/20 235/8

**amongst [4]** 215/18 216/1 216/4 216/4

**amount [9]** 32/18 66/5 68/8 91/23 114/2 140/23 148/3 243/23 275/13

**ample [1]** 90/21

**analogous [1]** 228/2

**anger [1]** 95/19

**angry [1]** 117/24

**another [39]** 16/22 19/7 20/10 32/3 32/11 32/12 46/13 47/18 50/6 52/15 76/12 77/15 77/17 77/18

# A


**another...** **[25]** 77/18 89/3 94/3 94/6 94/7 106/13 107/3 123/5 123/6 138/14 145/23 157/11 174/13 188/1 189/22 190/3 190/11 190/21 202/17 218/23 220/17 244/11 244/13 260/20 269/2

**answer** **[30]** 13/13 14/20 20/21 28/8 43/18 49/7 49/8 57/12 60/3 63/12 78/23 80/8 83/14 83/21 90/11 96/10 102/16 103/6 103/8 103/15 130/2 136/9 159/20 160/8 203/12 205/23 241/3 251/22 257/12 267/15

**answered** **[3]** 17/1 63/18 205/4

**answers** **[2]** 133/12 162/2

**any** **[123]** 9/7 14/1 18/15 18/16 30/11 32/5 32/10 33/22 34/5 35/8 35/20 43/14 43/14 50/18 51/25 55/14 56/20 58/22 59/9 59/10 71/12 71/14 71/16 71/18 71/20 75/25 76/12 78/23 78/23 79/7 82/14 83/7 86/11 91/16 92/15 94/18 109/24 113/6 123/21 126/11 128/11 128/20 131/10 132/21 132/22 133/5 133/6 133/12 133/12 133/20 134/19 136/1 136/9 136/11 137/8 138/23 149/17 149/20 150/5 150/11 160/25 164/11 166/22 166/24 166/25 167/12 170/23 171/5 173/3 173/10 173/14 175/25 183/7 183/21 186/13 190/14 200/19 200/22 201/4 201/6 201/6 201/21 202/4 202/17 204/19 206/9 211/5 211/6 212/6 218/16 232/12 235/22 235/24 236/23 239/15 239/19 241/3 242/15 243/8 243/9 248/11 248/12 250/7 251/9 257/9 260/15 261/8 262/13 262/22 263/7 263/18 264/6 264/15 266/10 267/14 267/16 268/15 269/1 269/21 270/1 270/3 271/15 275/12

**anybody** **[3]** 166/23 176/19 265/3

**anymore** **[3]** 174/14 191/7 277/22

**anyone** **[12]** 8/10 61/1 92/9 114/19 139/2 175/21 211/22 224/22 225/16 225/16 250/6 250/11

**anything** **[27]** 19/8 24/12 58/17 82/1 91/21 111/25 112/12 113/3 113/18 120/9 141/12 144/16 159/22 160/2 166/17 181/3 181/13 191/8 200/11 225/1 225/6 243/10 266/3 266/6 269/15 271/16 273/1

**anytime** **[1]** 195/9

**anyway** **[4]** 165/21 246/11 270/7 276/23

**anywhere** **[3]** 144/11 164/11 176/13

**apart** **[5]** 46/16 52/11 94/2 246/4 266/25

**apologetic** **[1]** 98/15

**apologize** **[9]** 15/7 18/6 18/9 49/11 115/17 120/15 121/4 161/21 166/10

**apologized** **[3]** 179/7 228/11 228/13

**apologizing** **[2]** 147/12 147/17

**apparently** **[4]** 133/16 139/8 158/2 230/11

**appeal** **[22]** 25/12 80/5 80/6 82/21 98/24 98/25 99/3 169/25 170/1 170/5 170/12 170/20 171/12 171/17 171/18 171/22 172/2 252/16 263/14 271/5 278/23 278/24

**appealed** **[1]** 99/1

**appeals** **[3]** 82/20 99/2 99/5

**appeared** **[1]** 280/9

**appears** **[1]** 58/7

**appellate** **[3]** 82/23 99/3 248/21

**appendix** **[6]** 5/5 69/6 69/8 179/7 210/4 244/6

**appendixes** **[1]** 70/6

**applicable** **[1]** 37/25

**application** **[3]** 174/13 175/3 244/15

**applied** **[6]** 72/8 72/10 93/1 175/24 176/12 176/13

**applies** **[2]** 32/14 205/11

**apply** **[7]** 67/14 67/19 176/5 176/9 176/23 242/2 244/19

**appointed** **[1]** 37/23

**appreciate** **[6]** 23/20 38/2 64/12 223/15 235/20 267/22

**appreciated** **[1]** 231/21

**appreciative** **[1]** 197/11

**approach** **[9]** 15/21 37/9 217/4 232/1 232/2 232/3 232/8 257/11 259/5

**appropriate** **[5]** 36/18

## A

**appropriate... [4]** 79/22 178/24 263/25 271/16
**appropriately [2]** 81/24 261/13
**approve [1]** 67/22
**approximately [2]** 34/25 109/19
**APRIL [2]** 1/9 6/2
**are [211]** 6/24 8/19 10/13 10/14 10/20 13/6 13/14 13/15 14/6 14/8 16/23 19/7 19/17 20/2 20/11 20/19 20/24 21/13 21/19 21/19 21/20 22/11 24/16 25/14 25/16 26/19 31/1 31/2 31/3 32/9 32/10 33/16 34/8 34/22 35/1 35/11 37/2 37/6 37/8 37/15 37/23 38/5 38/16 39/2 39/19 39/21 40/10 43/12 45/24 52/2 53/12 57/2 59/17 59/19 61/4 61/9 62/3 63/13 64/2 65/1 68/15 69/6 70/6 71/16 71/18 75/12 75/23 76/10 76/24 78/22 79/14 82/16 82/21 85/18 92/13 95/7 96/18 97/25 103/3 103/3 104/8 104/9 108/25 113/23 114/21 122/19 124/25 131/5 135/24 139/11 139/12 139/12 139/16 139/16 139/18 139/19 141/2 141/2 146/6 148/8 152/14 152/15 153/5 156/23 157/22 159/22 160/2 161/13 162/7 162/14 163/13 164/1 166/24 168/5 173/18 177/11 177/17 186/6 188/6 189/16 191/4 191/8 194/1 194/3 200/6 200/7 200/7 200/7 201/18 201/19 203/24 204/5 204/5 204/6 204/14 208/8 209/4 209/4 209/7 209/9 209/9 209/25 211/4 211/4 211/12 212/10 212/21 213/1 213/2 213/17 214/10 214/15 215/2 215/7 215/13 215/17 215/19 215/22 215/22 216/2 216/5 216/7 218/11 219/9 222/11 225/18 226/10 226/13 227/3 227/15 228/19 228/20 231/16 231/17 236/16 237/3 237/5 240/5 243/19 243/24 244/7 247/6 247/13 247/18 247/19 248/2 248/14 249/3 250/4 252/23 253/5 253/10 253/14 255/21 255/25 256/2 256/3 256/6 256/6 259/14 260/13 262/4 262/7 269/4 272/20 273/13 273/21 276/1 278/6 278/20 280/9
**area [2]** 195/23 209/16
**aren't [7]** 39/1 47/3 47/3 101/1 147/6 215/25 244/1
**arguably [3]** 258/6 258/7 258/11
**argue [3]** 148/17 247/22 273/5
**argued [3]** 62/19 234/22 240/20
**arguing [7]** 22/9 23/3 103/16 244/17 259/25 260/1 276/23
**argument [7]** 62/9 136/4 155/19 241/20 251/12 251/19 276/22
**arguments [2]** 148/11 259/1
**arise [3]** 48/23 48/25 50/1
**arose [1]** 52/19
**around [20]** 80/2 84/9 117/23 122/19 124/1 126/23 128/6 130/18 134/12 137/25 138/25 161/13 171/13 172/18 211/7 215/18 221/7 222/4 222/16 253/6
**arrange [1]** 200/3
**arrested [2]** 205/17 205/18
**arrived [2]** 222/14 224/23
**articles [1]** 66/1
**as [215]** 9/3 9/20 10/1 10/1 10/4 10/5 10/5 10/8 10/8 10/12 10/20 11/19 11/19 13/22 13/24 13/25 14/3 18/4 20/2 20/2 20/11 20/11 20/17 20/17 20/24 21/13 21/14 21/17 21/21 23/19 24/18 24/22 25/3 25/17 25/21 30/22 32/7 33/9 33/10 33/20 35/1 35/8 35/18 36/1 38/10 38/23 39/23 40/20 41/21 42/5 45/3 48/5 53/7 53/19 55/17 55/17 56/22 57/2 57/24 58/7 62/7 63/24 67/4 70/22 70/22 72/19 72/19 73/11 73/18 73/18 73/22 74/1 74/5 76/17 78/13 78/14 78/16 78/16 79/9 80/5 80/17 81/4 83/19 84/17 84/22 84/22 85/3 85/4 85/12 86/16 86/20 87/7 87/7 87/14 88/12 88/20 92/6 92/11 92/11 92/12 92/12 92/14 92/14 93/21 94/9 94/9 95/18 95/18 96/6

# A


**as... [106]** 97/5 97/5 97/8 97/8 97/16 97/20 98/7 99/8 100/9 100/18 103/21 106/9 110/23 110/23 111/5 111/13 112/9 113/3 115/5 123/4 123/4 124/20 139/7 139/20 140/3 147/11 152/7 154/23 159/8 161/25 163/22 166/5 166/22 170/12 178/14 178/17 178/17 186/14 188/23 189/10 189/10 189/23 190/2 191/12 191/22 199/1 199/1 200/2 200/4 200/8 203/21 204/3 204/3 209/5 209/5 209/9 212/4 212/4 212/23 212/25 213/3 213/7 213/18 214/8 215/12 215/12 220/17 226/22 229/22 234/1 234/1 234/1 237/3 237/4 238/24 240/2 240/5 240/22 246/23 248/14 248/16 249/1 249/21 249/21 249/22 249/24 250/10 251/22 253/2 257/13 261/19 263/24 266/24 271/16 271/16 271/19 271/25 272/7 272/7 273/6 273/13 274/16 275/14 277/3 277/14 278/20

**aside [1]** 252/7

**ask [44]** 21/12 32/17 64/14 66/20 67/17 69/19 77/8 93/10 96/17 102/8 110/1 114/16 132/21 137/18 141/16 145/23 148/12 148/17 148/21 157/17 160/23 165/13 172/13 175/2 176/22 177/5 185/24 187/1 191/9 193/19 203/6 208/3 213/19 219/25 224/12 238/22 238/23 239/14 251/13 256/12 270/21 272/23 273/10 273/17

**asked [32]** 36/14 50/24 54/22 63/8 86/7 91/4 91/5 110/4 166/1 166/3 166/5 183/2 183/11 183/21 191/24 191/25 199/7 202/12 205/2 209/8 211/4 214/8 218/16 222/24 232/21 240/14 240/21 266/17 266/18 268/20 268/23 270/11

**asking [42]** 25/1 29/25 31/15 34/3 45/20 54/2 54/3 55/2 57/14 64/4 66/17 91/9 110/4 142/2 186/3 199/15 203/2 203/3 203/7 203/8 203/9 208/1 208/5 209/2 213/2 219/22 219/23 225/18 226/9 230/14 230/21 246/4 252/9 254/12 254/16 254/20 258/10 258/10 270/24 273/2 274/11 278/16

**asks [1]** 206/18

**asleep [5]** 25/11 154/4 154/7 182/11 182/15

**assault [34]** 26/9 29/6 30/2 30/17 30/18 30/22 32/3 72/7 93/20 93/22 97/18 97/19 98/8 173/12 180/21 180/23 182/18 182/20 209/16 209/22 214/18 222/12 232/4 247/7 253/11 273/20 274/14 275/5 276/20 277/2 278/7 278/8 278/9 278/19

**assault-type [3]** 26/9 29/6 30/2

**assaulted [9]** 53/10 53/11 125/5 125/23 128/21 145/1 145/25 219/18 277/21

**assaulting [2]** 146/1 270/16

**assaults [2]** 111/1 267/11

**assertion [2]** 238/19 271/23

**assertions [1]** 241/14

**assessment [1]** 178/15

**assigned [1]** 73/9

**assistance [1]** 218/16

**Assistant [1]** 9/20

**assume [4]** 129/17 129/20 129/22 239/17

**assumed [3]** 119/18 131/7 143/21

**assuming [2]** 166/22 274/18

**assumption [1]** 66/19

**assures [1]** 92/13

**at [240]** 9/10 9/19 9/20 9/22 16/13 19/9 19/12 20/4 21/11 23/23 26/6 30/5 30/15 34/22 35/7 35/14 41/23 42/17 42/21 43/2 44/1 47/20 51/12 54/8 54/13 55/2 55/3 55/6 56/24 57/23 58/11 58/23 61/5 61/9 61/10 62/24 63/20 63/22 64/22 70/7 71/3 75/4 77/6 77/19 79/22 80/1 80/4 81/12 82/10 82/20 82/21 83/22 85/8 86/17 87/25 88/7 88/18 89/7 89/21 91/1 91/2 92/1 94/21 96/8 97/23 98/8 98/18 99/17 100/15 100/20 100/23 101/11 101/16 104/6 105/6

## A


**at... [165]** 105/20 106/16 106/21 107/6 107/17 107/22 109/4 113/22 117/20 117/23 117/25 119/24 120/2 121/10 122/5 122/22 122/23 123/5 123/23 124/10 124/12 124/13 125/3 125/11 125/16 126/8 126/12 126/18 126/19 127/19 128/1 128/4 128/8 128/20 128/23 130/21 131/19 132/12 132/13 132/23 133/15 134/2 135/5 136/22 136/24 137/11 137/12 139/10 140/2 141/6 141/24 142/5 142/24 147/18 150/23 151/8 152/16 152/20 153/6 153/16 154/17 154/19 155/25 156/14 158/21 158/24 159/8 160/24 163/11 164/23 165/3 167/17 167/17 168/7 168/16 168/19 171/9 173/23 175/18 175/21 176/11 176/22 178/10 182/14 184/22 186/23 187/10 187/22 189/9 190/10 190/20 190/24 191/8 193/13 194/15 194/17 194/23 194/24 196/1 198/9 198/11 198/24 200/25 201/2 202/7 205/13 205/25 206/17 207/10 207/11 207/25 208/14 210/11 210/13 210/24 211/3 211/10 212/10 212/22 215/9 217/11 220/5 220/8 222/11 227/3 229/24 230/3 232/8 233/3 237/1 237/7 237/11 237/13 239/3 240/25 241/10 243/8 243/21 244/15 245/2 246/20 250/7 250/11 251/2 251/23 252/1 252/22 255/3 255/17 259/12 261/2 261/3 261/20 263/6 263/10 265/21 268/3 269/23 271/14 273/10 277/1 278/14 278/24 279/11 279/20

**attack [2]** 240/10 240/11

**attempted [8]** 40/18 101/12 102/9 110/15 114/9 114/23 183/15 192/2

**attempting [2]** 66/15 178/22

**attend [2]** 25/10 95/19

**attending [2]** 114/25 192/17

**attention [2]** 195/9 232/23

**attitude [1]** 273/9

**attorney [11]** 128/5 128/23 130/4 130/14 132/17 139/3 140/2 152/20 158/2 166/1 166/3

**attorneys [2]** 8/20 128/2

**August [15]** 42/4 46/13 53/11 97/18 105/19 109/13 118/11 125/8 125/23 126/24 127/1 143/4 180/22 250/24 269/9

**August 14 [1]** 42/4

**August 14th [1]** 250/24

**August 14th of [1]** 269/9

**August 19th [2]** 53/11 118/11

**August 2020 [1]** 125/23

**auspices [1]** 52/5

**Austin [18]** 1/18 3/4 93/22 105/22 109/19 121/21 125/19 139/12 153/22 153/24 153/25 155/9 156/13 156/23 182/11 218/2 234/23 268/5

**authoritative [1]** 245/8

**authority [3]** 43/14 142/6 200/19

**automatically [3]** 191/3 191/11 197/25

**available [17]** 17/12 24/18 34/20 35/4 35/24 38/19 41/23 58/11 77/11 87/22 88/18 89/7 114/21 207/14 209/8 209/9 211/4

**Avenue [2]** 1/18 3/4

**avoid [3]** 31/17 69/12 277/16

**aware [19]** 26/19 32/8 43/14 109/4 125/13 131/5 159/22 160/2 173/18 177/11 177/15 193/2 196/13 196/18 199/2 201/5 214/15 215/22 229/17

**away [6]** 52/15 122/18 127/10 128/18 182/21 271/11


## B


**baby [8]** 110/10 155/15 239/24 240/19 241/4 263/12 272/5 272/11

**back [65]** 11/24 31/8 32/21 35/3 37/11 53/11 53/22 55/19 58/14 69/10 71/3 75/24 83/10 84/19 95/11 106/5 109/2 111/11 115/19 117/21 118/1 119/21 124/10 129/11 129/12 129/15 130/4 134/2 136/13 138/17 143/11 145/15 150/2 152/1 157/21 157/23 162/9 164/21 171/9 174/5 177/25 178/10 178/23 181/20 184/11

## B

**back... [20]** 189/4 190/15 195/18 199/10 200/16 207/15 211/7 218/14 221/7 221/17 228/15 228/20 233/4 233/8 237/5 243/12 249/11 252/4 272/18 275/13
**background [1]** 231/1
**bad [12]** 98/15 131/13 144/18 144/19 146/15 146/19 162/5 162/6 162/18 162/24 179/19 228/21
**balance [2]** 261/11 261/13
**Ballpark [1]** 215/7
**ban [1]** 149/3
**Baptist [2]** 176/2 176/8
**based [33]** 20/4 22/14 22/21 34/20 36/23 40/25 70/15 72/14 88/21 96/11 96/14 96/16 97/25 98/3 98/6 98/9 101/22 126/19 187/10 187/22 189/21 194/16 194/17 194/22 197/2 197/4 223/13 225/2 226/1 229/24 238/14 239/16 249/5
**bases [1]** 258/9
**basic [1]** 20/21
**basically [12]** 50/17 120/13 120/16 122/23 160/6 193/19 194/22 206/17 211/2 213/16 224/18 260/24
**basics [1]** 125/3
**basis [11]** 44/19 113/23 172/15 256/1 258/9 258/12 264/7 264/19 279/5 279/10 279/12
**bass [1]** 130/10
**batch [1]** 181/20
**be [245]** 6/4 7/12 8/11 8/16 9/9 10/24 12/11 12/16 14/24 15/2 15/8 18/20 19/5 19/21 20/20 21/3 21/11 21/21 21/22 23/17 24/2 27/9 27/10 27/13 27/23 28/9 28/17 28/23 29/19 31/4 31/11 31/23 33/23 34/10 35/12 36/17 36/18 36/22 38/21 38/25 40/13 40/24 41/14 41/16 45/24 45/25 47/10 51/7 51/25 54/4 54/7 54/8 54/10 54/11 54/13 55/6 55/20 55/21 55/24 56/5 56/9 56/24 57/1 57/21 58/2 58/3 58/4 58/11 59/2 60/14 61/1 61/10 62/12 65/7 65/9 65/10 65/13 65/14 66/7 66/9 68/3 68/7 69/1 69/7 71/1 71/8 71/8 72/8 75/9 75/14 77/2 77/5 77/12 79/9 80/21 81/1 82/5 82/10 86/7 89/7 90/8 90/21 92/8 92/9 94/2 94/9 95/13 98/8 99/23 100/20 100/23 101/25 102/11 103/13 108/12 110/1 113/4 113/7 113/18 114/25 116/21 117/4 117/11 123/22 124/1 124/5 124/14 127/25 128/3 130/23 131/4 136/23 138/14 144/9 149/14 162/11 162/23 163/3 165/15 170/14 174/5 177/23 183/4 183/8 184/5 187/12 187/16 188/2 188/13 189/10 189/17 189/18 190/14 192/4 192/23 193/2 194/1 196/8 198/17 201/7 201/11 201/24 201/25 202/20 202/25 203/9 203/11 203/19 204/2 204/5 205/5 205/7 205/24 206/14 206/25 207/12 208/25 209/15 210/21 211/3 215/2 224/14 227/12 233/6 233/17 236/25 237/2 239/11 240/1 240/17 241/6 241/11 241/11 243/4 244/1 244/22 244/23 245/13 245/13 245/17 245/17 247/10 247/21 249/4 250/14 252/5 252/13 252/20 255/7 256/24 258/7 259/25 260/1 260/8 260/14 262/2 262/6 262/18 263/10 263/11 263/11 263/12 265/6 265/11 265/13 265/24 266/1 267/25 269/21 270/1 270/9 270/20 270/21 270/21 271/2 271/10 271/11 272/10 273/25 274/1 274/8 276/12 276/23 278/22 278/23
**because [118]** 10/12 19/10 21/22 22/19 23/4 23/20 25/10 29/11 31/17 31/21 36/20 36/21 38/14 39/13 43/23 44/9 44/20 45/24 50/19 54/23 55/9 55/16 56/1 56/7 57/4 58/25 59/4 60/13 67/3 68/15 68/19 69/1 78/11 80/25 82/17 84/5 85/12 85/18 87/6 88/18 90/6 91/3 94/3 96/11 102/12 102/18 104/3 106/25 107/23 110/8 114/24 117/4 120/23 120/24 122/25 124/6 125/3 127/2 133/15 135/7 135/8 136/18 138/17 141/11

## B


**because... [54]** 145/5 145/10 145/25 147/23 150/24 153/8 153/15 155/1 155/25 156/11 159/23 163/3 165/8 166/24 167/25 168/13 168/15 176/8 177/24 178/13 184/3 186/3 187/8 199/19 201/11 205/8 205/24 208/4 220/5 220/12 220/23 222/22 223/10 224/17 232/23 238/18 240/10 247/21 250/25 252/15 256/6 259/24 260/12 261/3 267/13 268/18 272/13 273/19 274/6 274/12 274/13 274/21 276/11 276/14

**become [1]** 169/22

**bed [2]** 221/15 221/16

**been [116]** 8/9 13/10 13/20 17/19 17/23 30/17 34/1 34/17 36/15 37/3 41/24 49/16 49/19 57/4 61/12 68/18 69/5 72/10 73/18 74/18 75/14 75/23 84/6 85/21 86/22 90/16 93/6 94/1 94/8 94/11 95/8 95/24 95/25 97/23 103/16 107/6 107/14 107/20 107/24 109/18 111/4 112/4 112/12 113/11 115/21 116/19 118/7 119/9 122/7 122/14 122/16 126/14 126/15 130/18 150/21 156/12 159/15 161/12 165/20 173/3 173/23 174/2 181/23 183/23 185/18 188/6 188/14 188/22 194/12 198/23 201/8 204/8 204/16 204/20 205/3 205/15 205/17 205/18 205/19 205/21 206/9 207/19 208/17 208/19 213/6 213/23 214/7 217/6 218/8 221/5 222/1 229/20 232/16 246/21 250/11 251/7 251/23 254/2 254/20 255/10 255/19 261/8 262/9 265/6 268/3 271/3 271/6 272/8 273/19 274/6 274/13 274/15 274/16 276/21 277/8 277/10

**before [47]** 1/13 34/11 34/11 36/6 36/10 38/24 46/25 55/12 68/9 68/11 80/19 80/21 80/22 87/14 88/20 90/3 90/5 90/12 92/6 95/18 99/17 127/13 129/7 131/6 138/6 141/16 157/18 159/3 165/14 165/16 165/18 170/23 178/12 195/3 195/9 195/12 199/22 200/2 226/23 244/9 256/17 259/13 259/23 267/20 268/8 270/4 277/23

**beforehand [1]** 143/13

**began [1]** 157/19

**begin [1]** 180/15

**beginning [8]** 56/25 92/2 107/20 115/22 237/1 237/7 261/2 271/24

**begins [1]** 80/22

**behalf [5]** 6/15 6/19 6/21 203/16 204/24

**behave [1]** 146/17

**behaved [2]** 146/15 146/18

**behavior [13]** 14/18 16/4 17/7 20/25 22/3 23/25 24/22 25/4 29/6 30/2 70/15 91/17 92/16

**behavioral [3]** 18/25 22/4 23/21

**behind [3]** 77/9 198/25 263/17

**being [61]** 17/6 24/22 31/24 40/19 46/5 52/18 62/9 70/23 74/7 74/8 92/21 102/20 115/9 116/5 116/15 120/15 121/1 121/5 122/4 123/4 123/18 134/2 137/13 157/15 161/2 165/16 172/8 172/24 179/11 179/14 179/21 179/24 180/7 181/15 182/10 184/11 186/16 187/15 198/10 199/5 199/12 202/17 204/3 206/11 209/3 213/24 224/5 228/11 231/24 232/9 240/11 243/6 244/7 244/13 249/24 253/2 275/3 275/15 276/8 278/7 278/18

**belabor [1]** 255/24

**belief [4]** 24/21 202/24 203/18 219/17

**beliefs [3]** 16/8 24/7 70/16

**believable [3]** 223/11 272/12 272/13

**believe [64]** 14/8 14/11 14/17 14/21 14/24 15/2 15/8 29/15 66/9 69/24 70/5 84/9 95/19 103/1 103/18 120/9 126/9 127/23 130/18 132/1 132/5 132/11 134/8 135/17 136/3 136/8 141/25 143/3 143/18 143/25 145/13 148/4 153/9 153/14 156/4 157/10 157/20 157/21 164/6 165/19 167/2 167/24 168/1

## B


**believe... [21]** 172/3 174/8 175/23 186/6 203/8 204/6 208/8 210/4 210/8 222/21 223/3 230/8 236/11 236/19 237/10 241/18 241/23 244/8 252/22 262/21 271/21
**believed [1]** 203/3
**believer [1]** 66/6
**believes [2]** 173/13 244/8
**believing [2]** 147/18 272/10
**bell [2]** 210/20 210/21
**below [1]** 57/24
**benefit [3]** 22/5 244/5 272/7
**Bessie [1]** 260/11
**best [11]** 124/18 141/5 147/22 160/10 160/11 232/10 232/18 261/5 264/7 280/7 280/11
**better [13]** 22/11 25/1 27/10 38/5 38/15 71/1 122/10 145/1 146/7 192/8 246/21 249/8 270/4
**Bettering [1]** 214/11
**between [27]** 18/21 21/4 22/20 48/17 58/18 69/1 69/3 79/3 96/1 98/10 98/16 105/4 111/23 118/18 128/2 134/2 134/3 134/11 134/15 140/17 141/3 142/18 149/21 234/13 273/18 274/11 275/11
**beyond [4]** 30/25 123/25 205/9 272/3
**bias [33]** 36/22 36/25 37/2 94/19 122/14 166/24 202/4 202/25 203/5 203/9 240/2 241/11 241/17 242/19 242/23 243/10 243/17 244/10 246/18 246/24 247/4 247/8 248/9 248/16 249/1 249/9 250/3 250/17 251/3 264/19 272/5 273/2 274/16
**biased [5]** 14/6 24/8 24/23 103/4 275/16
**bidding [1]** 247/3
**bifurcated [2]** 110/2 122/7
**big [9]** 26/24 39/9 148/2 156/20 235/19 243/19 246/19 256/7 262/10
**billboard [1]** 275/20
**binary [2]** 21/4 21/10
**birthday [1]** 219/3
**bit [24]** 11/14 13/9 35/10 53/4 71/24 72/25 73/1 73/21 75/17 78/4 86/25 89/10 91/25 93/6 95/23 114/24 146/14 177/4 178/9 232/15 234/19 258/24 265/11 279/3
**bitty [1]** 243/22
**BLACKWELL [1]** 3/3
**blah [3]** 58/16 58/16 58/16
**blame [2]** 116/9 144/16
**blew [1]** 148/2
**blocked [3]** 153/9 153/10 153/14
**blur [1]** 132/13
**borrow [1]** 144/25
**BOSCHINI [1]** 1/8
**boss [1]** 13/20
**both [80]** 31/22 32/14 32/17 38/6 49/13 50/11 50/13 50/14 54/22 72/19 74/11 74/18 79/12 79/16 80/3 80/6 80/15 80/23 83/9 83/10 83/13 84/11 84/16 85/1 85/8 85/11 86/16 87/13 88/16 89/6 89/8 90/18 90/25 92/19 92/22 92/24 93/2 94/8 99/1 99/5 99/23 99/24 100/9 100/12 109/23 122/8 122/11 139/13 139/17 139/20 140/22 140/23 140/24 146/6 150/8 169/13 182/6 190/16 196/4 200/6 202/15 209/5 212/10 218/22 220/4 220/6 221/16 227/2 227/12 230/19 230/22 231/5 232/3 232/6 232/6 232/10 259/17 264/9 272/6 274/22
**BOTSFORD [1]** 1/17
**bottom [3]** 23/23 158/21 234/8
**bound [1]** 245/7
**box [9]** 36/15 75/24 76/16 84/16 87/3 87/10 100/19 152/2 152/7
**branded [1]** 122/16
**break [15]** 68/19 73/3 73/20 81/14 81/16 81/16 124/9 167/14 200/11 200/14 200/16 207/8 207/10 214/22 235/16
**break-out [4]** 81/14 81/16 167/14 200/11
**breakfast [2]** 211/13 211/21
**BRIAN [4]** 1/16 6/7 185/24 207/24
**brief [7]** 63/18 104/14 150/3 197/10 239/2 240/20 244/6
**briefing [5]** 128/25 129/5 203/22 241/14 252/9
**briefly [5]** 99/13 164/19 199/24 266/11 267/19
**briefs [1]** 265/19

## B


**brilliant [1]** 263/12
**bring [5]** 35/8 88/12 129/3 169/12 195/9
**bringing [1]** 97/15
**broadcast [1]** 253/22
**broken [2]** 117/21 204/12
**brought [4]** 129/10 138/14 232/2 237/11
**BRUNER [4]** 1/20 1/20 1/20 6/8
**BRYAN [2]** 1/20 6/8
**buffer [1]** 162/9
**build [1]** 22/3
**bunch [1]** 229/18
**burden [1]** 27/5
**bureaucratic [1]** 135/7
**Business [1]** 280/20
**busy [3]** 232/25 250/25 251/1
**but [169]** 8/13 12/6 12/20 12/25 13/11 14/13 15/25 21/16 23/3 26/19 27/19 28/14 32/12 32/18 32/20 34/2 38/3 39/25 42/5 47/13 47/16 47/17 48/4 52/5 54/10 56/14 58/10 61/23 63/24 67/1 69/5 72/21 75/18 77/1 77/11 81/11 87/24 89/21 96/14 99/17 101/2 101/4 101/19 103/22 104/10 107/11 116/16 117/25 119/2 127/1 127/13 128/4 128/15 129/2 129/7 129/15 129/22 130/10 130/10 131/7 132/13 135/17 135/18 142/12 142/20 143/6 143/12 146/10 149/4 150/21 150/22 150/25 151/10 153/6 153/15 153/20 154/19 156/2 161/7 161/13 162/19 162/23 162/25 163/20 164/14 167/11 167/17 169/6 170/6 170/6 173/20 174/14 178/10 180/11 183/13 188/21 190/19 191/8 195/23 201/15 204/8 204/13 205/24 206/16 208/1 209/20 209/25 210/11 213/11 215/18 216/4 220/18 222/3 224/5 224/8 226/1 226/15 228/7 229/4 229/11 229/25 238/17 239/9 240/3 240/12 240/25 242/19 243/2 244/6 246/11 246/15 246/24 247/11 247/24 249/18 250/7 250/18 251/3 252/5 252/19 253/10 254/8 254/18 255/6 255/20 255/25 256/22 257/2 257/4 258/3 259/2 260/24 260/25 261/3 262/10 262/24 265/7 265/20 266/15 267/12 268/21 269/9 269/19 270/21 274/25 276/25 278/19 279/3 279/11


## C


**CAIDI [2]** 3/3 6/21
**calculus [1]** 234/24
**calendar [5]** 85/16 85/17 85/20 85/22 90/16
**California [2]** 89/20 156/21
**Californians [1]** 156/23
**call [15]** 7/1 7/4 50/19 74/4 81/10 91/5 105/13 124/20 185/17 185/23 207/6 207/15 244/9 272/23 276/24
**called [15]** 52/6 89/19 94/8 109/1 127/9 190/23 191/16 211/12 211/21 213/13 230/2 240/9 254/8 254/10 254/14
**calling [2]** 108/22 253/6
**calls [2]** 240/11 277/20
**calm [2]** 193/4 204/18
**came [17]** 12/5 60/12 129/12 129/15 149/13 181/21 184/12 187/4 192/13 194/8 195/4 195/6 195/20 241/1 271/5 271/22 272/16
**camera [1]** 81/12
**campaigns [1]** 211/11
**campus [24]** 47/8 47/12 50/18 51/8 51/11 51/15 51/18 51/21 52/13 52/13 75/12 93/20 109/15 125/11 125/14 130/24 184/12 198/9 212/6 246/25 262/9 262/11 278/25 279/1
**can [116]** 7/11 8/1 8/12 8/20 16/13 24/24 28/8 28/9 30/15 32/17 34/2 34/4 39/10 41/1 43/11 43/18 43/18 47/11 47/19 47/23 47/24 50/2 50/17 51/7 54/9 57/5 57/8 57/12 57/17 58/7 61/11 63/8 63/23 66/16 67/5 67/6 67/6 67/17 69/13 72/14 76/14 76/20 77/1 78/7 81/15 81/19 90/2 92/4 92/9 92/14 96/13 96/25 102/8 132/16 134/22 142/16 142/22 148/11 148/25 149/4 152/4 152/10 154/18 158/16 162/22 163/1 163/1 163/9 166/21 169/1 176/16 185/23 189/1 194/1 202/16 206/22 211/3

## C


**can... [39]** 211/25 219/22 224/15 225/25 225/25 227/6 231/8 232/10 235/16 236/9 238/24 239/6 239/8 240/1 241/21 243/23 245/21 246/20 252/16 252/17 252/17 258/11 258/18 259/12 260/12 261/16 267/18 271/2 271/19 272/4 274/10 274/22 275/1 275/13 276/23 277/23 278/1 278/14 278/25

**can't [29]** 32/21 32/24 50/19 55/19 60/3 61/11 102/16 120/9 123/6 123/9 123/21 142/22 153/9 153/14 153/20 154/19 161/15 167/19 170/7 176/25 179/13 184/11 188/20 192/7 194/21 251/8 260/10 260/15 278/25

**cancer [2]** 213/25 277/11

**cannot [13]** 8/10 8/10 63/24 64/4 157/20 238/17 238/19 239/5 239/9 245/15 260/18 267/15 279/9

**capacity [1]** 1/8

**captured [1]** 149/15

**care [19]** 10/1 10/5 32/7 32/9 148/22 187/18 209/5 209/12 209/14 209/17 209/20 211/7 211/11 211/19 232/3 244/4 244/4 247/5 274/22

**careful [4]** 127/25 128/3 131/4 162/11

**caring [1]** 232/5

**Carnahan [1]** 65/22

**carried [1]** 216/23

**case [111]** 1/4 6/5 10/22 11/19 12/22 13/8 13/12 30/22 30/24 31/10 33/11 33/22 33/25 34/6 34/9 35/22 36/1 36/12 36/13 36/18 40/21 45/10 46/9 46/18 47/8 49/14 50/19 51/8 51/16 51/22 52/10 53/17 53/24 55/3 55/9 55/20 57/21 59/25 60/1 61/21 67/10 68/25 72/3 73/15 75/13 83/1 83/4 86/6 86/7 86/22 89/5 89/11 91/10 93/4 93/8 93/11 93/17 93/24 95/9 97/19 97/20 97/23 98/3 98/25 100/2 135/14 136/19 136/23 144/17 156/13 183/24 186/12 190/14 195/16 201/17 202/1 202/7 203/19 208/21 208/21 208/23 213/20 220/13 230/25 231/6 232/13 241/13 243/21 243/24 244/17 247/23 248/7 248/17 248/25 251/8 251/10 252/20 253/24 259/22 261/25 262/10 262/17 263/1 263/9 263/13 264/8 264/23 269/18 270/10 271/9 276/6

**cases [53]** 9/23 9/24 12/19 12/20 28/2 28/5 30/16 30/19 31/2 37/4 37/21 46/21 47/8 47/21 50/18 70/23 70/23 77/22 94/8 94/10 94/10 96/13 96/23 97/17 139/19 144/19 208/20 214/18 230/14 232/7 240/1 240/18 241/25 242/4 247/13 247/15 252/23 253/13 253/17 254/21 254/25 255/1 255/4 255/11 255/21 256/3 260/17 269/17 270/10 273/13 273/15 275/17 279/13

**catching [1]** 145/17

**categorize [1]** 96/14

**categorized [1]** 21/21

**category [1]** 16/17

**caught [1]** 161/6

**cause [4]** 204/3 204/4 214/12 269/2

**caused [2]** 151/7 151/13

**causing [1]** 71/1

**cease [1]** 190/10

**center [2]** 209/15 209/20

**certain [4]** 11/7 169/8 177/24 190/1

**certainly [10]** 23/17 118/1 186/5 189/15 241/19 242/20 250/7 269/20 273/15 278/15

**CERTIFICATE [1]** 280/2

**Certificate.............................280 [1]** 5/8

**certify [2]** 280/4 280/12

**cetera [3]** 31/20 70/7 222/3

**CFR [4]** 43/16 47/2 238/1 242/7

**chair [22]** 37/23 40/1 56/24 71/18 78/16 78/17 78/20 78/25 79/4 79/10 79/24 80/20 81/2 88/22 89/3 89/17 91/1 96/6 103/23 215/12 216/11 236/25

**chair's [2]** 40/21 101/18

**chairs [8]** 35/18 38/10 38/21 40/5 81/4 81/4 88/24 93/7

C

challenging [1] 35/10
chance [5] 75/19 198/12 208/12 259/1 266/14
chances [1] 28/1
change [12] 23/24 24/4 38/19 38/20 143/21 144/3 234/18 252/2 259/20 269/7 271/8 277/1
changed [5] 26/23 143/10 234/24 250/24 269/14
changes [3] 10/10 42/3 65/19
changing [1] 25/3
chapter [2] 70/18 70/19
Characteristics [1] 16/5
characterization [5] 52/21 52/22 61/7 63/6 64/12
characterizations [1] 249/23
charge [9] 13/5 139/10 155/2 155/7 155/25 200/9 200/10 234/25 276/13
charged [1] 30/5
charges [4] 140/25 141/3 154/23 155/13
charts [1] 70/6
chat [2] 42/1 217/25
check [1] 213/17
check-in [1] 213/17
checked [1] 174/24
cherry [5] 102/18 102/20 102/23 134/14 137/25
cherry-picked [4] 102/18 102/20 134/14 137/25
cherry-picking [1] 102/23
children [2] 24/13 71/9
chime [2] 200/15 201/4
choices [3] 18/25 23/21 27/4
choose [2] 27/25 80/6
choosing [1] 27/5
chose [3] 20/7 107/8 220/11
chosen [1] 213/6
CHRISTIAN [5] 1/7 6/5 6/16 264/1 278/24
circle [1] 221/7
circles [3] 72/19 72/19 123/20
Circling [1] 211/7
Circuit [3] 27/9 241/6 251/13
circumstance [2] 32/12 89/6
circumstances [11] 48/23 49/1 50/1 52/20 53/7 53/13 92/8 94/4 141/2 177/9 261/5
cited [1] 19/4
citizens [1] 12/12
civil [5] 28/23 29/2 128/9 128/13 214/8
claim [16] 112/13 137/21 138/2 142/3 142/7 233/17 234/13 234/13 234/14 234/18 240/3 250/17 252/12 256/1 265/10 265/12
claimed [1] 106/1
claims [4] 220/14 232/2 240/9 255/25
clarification [3] 25/21 196/15 238/24
clarifies [1] 57/24
clarify [3] 11/14 53/3 99/19
Clark [1] 89/13
class [6] 169/7 184/15 251/23 251/24 252/4 252/14
classes [16] 55/13 169/4 169/8 173/24 174/7 194/16 194/21 195/7 195/21 196/2 196/6 196/23 197/1 262/2 262/4 262/7
classify [1] 191/22
clear [24] 27/5 27/9 27/11 27/15 28/5 29/16 29/22 54/2 55/24 57/11 59/9 73/3 99/23 158/6 193/24 233/17 239/24 244/16 262/18 263/3 264/5 270/20 270/21 270/21
clearly [9] 56/2 153/13 245/21 245/23 255/21 255/21 255/25 257/1 279/14
client [6] 176/2 236/4 239/16 239/19 240/14 266/18
cloaked [1] 253/10
cloaks [1] 275/14
close [6] 70/2 86/19 233/3 272/22 272/23 276/24
closed [12] 75/5 75/7 76/9 76/10 76/24 77/2 77/20 88/3 89/2 97/22 101/14 157/15
closes [2] 54/10 55/17
closing [1] 79/16
co [1] 213/3
co-worker [1] 213/3
code [12] 10/8 10/10 21/14 38/19 38/20 41/21 47/24 47/25 51/1 52/2 215/3 261/21
Colby [12] 93/20 98/8 105/20 111/13 125/11 125/13 139/10 143/4 143/4 143/24 146/25 222/13
colleague [9] 12/4 25/14 25/17 26/2 212/24 260/9 274/21 276/7 276/14
colleagues [3] 212/10 212/21 212/22

## C

**collecting [1]** 252/24
**collectively [1]** 220/1
**college [7]** 18/22 122/18 123/13 123/14 123/16 204/3 263/7
**colleges [1]** 26/8
**combine [2]** 53/13 69/13
**combined [1]** 80/23
**combining [1]** 122/10
**come [27]** 7/9 7/10 9/1 53/11 105/15 129/11 132/9 155/21 156/10 156/11 164/11 177/25 191/13 191/20 192/12 198/8 199/15 200/16 202/22 204/20 207/21 211/24 212/4 253/19 272/4 278/14 278/23
**comes [5]** 171/9 173/11 211/23 212/5 271/5
**comfortable [2]** 78/13 81/1
**comforted [1]** 154/2
**coming [4]** 106/11 235/18 275/20 277/13
**comment [16]** 59/8 71/7 86/10 87/23 91/18 92/1 92/23 92/25 93/12 100/22 132/19 135/15 141/18 160/1 169/13 259/9
**commentary [7]** 17/11 245/3 245/5 245/7 245/8 246/5 246/6
**commentators [1]** 238/23
**commented [2]** 60/10 182/4
**comments [13]** 59/14 63/13 66/1 74/21 74/24 76/11 76/21 76/22 85/9 85/25 86/16 234/1 237/16
**committed [1]** 253/11
**committee [1]** 10/9
**common [3]** 18/11 109/23 155/14
**communicate [3]** 10/25 11/16 11/25
**communicated [2]** 197/20 253/23
**communication [10]** 11/18 11/22 11/24 95/20 190/10 192/15 202/17 202/18 202/22 205/8
**communications [2]** 128/1 270/2
**community [14]** 37/24 38/5 38/17 38/25 39/2 39/3 39/15 39/22 123/19 123/20 208/16 243/25 244/2 244/7
**compare [1]** 122/11
**compared [1]** 24/22
**comparison [1]** 18/15
**compelled [1]** 262/2
**compensable [4]** 254/19 255/21 276/12 276/13
**compensate [6]** 253/15 254/17 254/24 255/22 274/7 275/2
**compensated [2]** 253/25 274/1
**complainant [13]** 31/25 37/24 48/9 68/2 80/24 96/23 97/10 97/12 124/19 151/14 218/15 222/15 232/6
**complainant's [4]** 193/8 193/10 222/13 222/15
**complainants [3]** 92/19 97/14 193/12
**complained [5]** 101/3 115/25 117/13 117/14 118/18
**complaining [2]** 119/3 143/13
**complaint [18]** 30/17 47/9 53/16 73/6 73/8 97/20 129/3 129/10 132/4 158/9 190/14 190/20 190/21 192/13 197/15 197/19 198/18 202/23
**complaints [6]** 47/6 48/4 50/3 53/8 53/12 97/15
**complete [1]** 175/2
**completed [2]** 86/18 250/23
**completely [5]** 108/23 120/22 123/3 260/3 261/6
**complexity [1]** 93/8
**compliance [1]** 37/25
**compliant [1]** 10/14
**complicated [3]** 94/1 232/5 232/15
**complied [3]** 42/3 171/14 185/5
**comply [7]** 42/7 43/15 50/16 135/8 268/24 271/15 280/13
**component [3]** 255/5 255/10 259/17
**comprehension [1]** 22/4
**computer [2]** 141/11 178/3
**conceivably [1]** 252/14
**concept [1]** 269/5
**concern [1]** 10/1
**concerned [8]** 90/20 92/7 92/19 111/24 132/24 155/13 159/24 181/6
**concerns [1]** 78/23
**conclude [2]** 243/9 261/10
**concluded [4]** 79/14 204/24 228/2 279/20
**conclusion [4]** 79/22 80/4 258/5 263/23
**conclusions [3]** 19/4 249/15 249/18
**concoct [1]** 272/2

## C


**conduct [45]** 9/23 10/1 10/5 10/9 10/10 12/9 12/12 13/6 16/5 18/16 24/16 27/13 28/24 28/25 37/7 37/21 37/21 45/6 52/3 55/15 56/25 66/7 67/13 67/21 70/23 70/23 72/2 72/3 75/11 82/14 95/7 95/24 158/25 164/24 165/15 168/11 172/10 186/18 188/21 201/4 201/12 231/20 237/1 261/21 262/1
**conducted [2]** 74/8 183/23
**conducting [1]** 73/13
**conduit [1]** 186/14
**conference [4]** 156/17 156/19 213/17 280/14
**confident [1]** 81/1
**confidential [3]** 215/25 216/2 255/9
**confused [4]** 57/11 153/8 223/9 227/8
**confusing [4]** 59/18 66/14 244/15 270/22
**confusion [1]** 193/24
**Congress [1]** 3/4
**connected [4]** 16/4 94/3 168/11 198/20
**connections [1]** 211/5
**connotation [4]** 204/20 205/6 206/3 206/8
**consciousness [1]** 17/9
**consensual [1]** 218/24
**consent [2]** 126/1 147/1
**consented [1]** 267/12
**consequences [4]** 14/18 18/25 22/4 23/21
**consider [12]** 27/22 43/17 80/22 116/6 123/23 181/23 223/16 223/17 224/2 224/8 245/12 256/13
**considerable [1]** 61/21
**considerably [1]** 61/24
**consideration [3]** 63/9 238/25 267/22
**considered [11]** 54/11 56/24 58/2 77/2 127/24 224/4 229/14 230/14 230/19 236/25 240/22
**consistent [6]** 146/11 225/13 226/10 237/15 239/10 246/24
**consolidate [6]** 47/5 48/4 50/2 94/9 240/22 242/4
**consolidated [5]** 52/23 93/25 241/24 242/3 272/9
**consolidates [1]** 50/13
**consolidating [1]** 239/20
**consolidation [17]** 46/9 46/20 47/20 48/1 48/3 93/24 239/14 239/16 239/23 240/17 241/25 242/2 242/6 242/7 242/12 242/13 245/11
**constitute [1]** 203/5
**constitutional [2]** 264/1 264/17
**construct [1]** 243/1
**construe [2]** 66/14 67/1
**contact [43]** 10/21 11/11 163/11 164/5 190/4 190/5 190/9 190/15 190/23 191/9 191/11 192/2 192/7 192/14 192/25 193/3 197/13 197/21 197/25 198/22 198/25 199/7 199/9 199/11 199/13 199/16 199/19 199/21 202/14 202/15 203/15 203/19 204/10 204/17 204/21 205/3 205/5 205/22 206/1 247/2 261/13 271/2 271/16
**contacted [3]** 127/3 196/13 196/17
**contacting [2]** 106/12 128/17
**contemplate [3]** 45/12 243/25 260/7
**contemplated [1]** 106/13
**contemporaneous [7]** 16/8 98/9 225/23 228/10 233/24 234/20 240/4
**contemporaneously [6]** 219/19 220/3 225/6 225/19 227/21 228/6
**contest [1]** 236/7
**context [21]** 19/9 26/19 57/23 58/6 70/1 71/5 102/13 102/14 102/17 102/24 110/22 116/1 116/16 118/22 121/14 138/6 151/2 160/25 180/12 180/15 256/17
**continual [1]** 218/24
**continue [6]** 22/6 77/16 121/4 122/25 138/5 226/23
**continued [10]** 117/7 126/16 218/23 221/4 226/21 226/24 227/23 228/6 240/5 272/15
**continues [1]** 93/9
**continuing [1]** 22/9
**contract [1]** 89/19
**contracted [1]** 34/14
**contrary [5]** 63/4 220/22 242/20 242/21 243/11
**contravention [1]** 52/23
**control [7]** 51/17 147/4 226/6 228/13 228/19 228/22 228/23
**controlled [1]** 246/6
**controlling [2]** 245/21 245/24

**C**

**controls [1]** 18/15
**conversation [23]** 8/15 35/25 36/16 78/19 79/2 79/3 79/9 91/17 126/10 128/15 128/20 132/16 140/8 153/7 163/1 163/23 191/23 198/2 198/15 198/21 199/6 234/4 234/12
**conversations [4]** 33/20 90/1 230/1 230/2
**conveyed [1]** 191/16
**convicted [1]** 205/16
**convincing [7]** 27/6 27/9 27/11 27/16 28/6 29/16 29/23
**cool [1]** 208/6
**Cooper [1]** 33/20
**cooperate [4]** 60/2 60/11 60/17 60/25
**cooperated [1]** 265/20
**cooperating [3]** 83/25 84/6 112/23
**cooperative [2]** 136/5 136/6
**coordinator [1]** 248/3
**coordinators [1]** 263/6
**copies [1]** 64/18
**copy [3]** 112/21 162/25 199/11
**corner [1]** 182/21
**corpus [2]** 134/14 136/23
**correct [383]**
**correctly [3]** 70/8 201/20 233/6
**correspond [1]** 11/12
**correspondence [1]** 112/18
**corroborating [2]** 220/20 234/14
**could [71]** 27/1 29/9 54/4 54/8 54/13 77/18 81/10 91/4 91/5 94/11 95/18 101/25 102/10 103/13 104/4 104/5 104/6 105/5 107/23 108/7 108/24 112/12 114/16 115/12 145/14 149/14 163/3 163/3 174/23 177/23 187/21 187/23 187/25 189/5 189/8 189/10 191/13 193/10 194/16 195/7 195/12 196/5 196/18 197/9 202/20 202/22 204/8 217/9 219/10 219/11 220/14 222/23 223/5 233/6 244/24 248/8 248/12 249/8 250/6 250/11 250/16 250/19 252/2 252/14 255/7 256/22 258/5 261/12 269/10 272/2 273/4
**couldn't [21]** 15/17 30/7 30/10 78/2 106/16 106/21 106/23 168/13 168/15 175/17 184/15 191/20 192/12 196/2 196/7 198/8 206/1 210/21 214/19 215/5 246/22
**council [1]** 276/1
**counsel [17]** 6/8 6/11 8/23 11/20 136/4 150/21 154/22 155/17 156/20 164/4 164/7 177/1 251/13 259/10 261/17 264/10 267/25
**counsel's [3]** 128/25 150/3 259/4
**counseling [4]** 65/25 95/19 209/15 209/20
**countenance [1]** 250/3
**country [2]** 255/1 263/7
**couple [12]** 34/16 54/24 93/7 97/17 111/5 111/23 121/4 138/18 260/7 262/16 269/18 271/11
**course [21]** 11/12 33/2 69/21 83/2 135/14 145/20 157/14 166/18 167/13 168/22 241/15 243/21 245/4 247/23 248/1 250/22 256/7 267/7 269/8 270/6 271/15
**courses [1]** 170/19
**court [18]** 1/1 1/13 7/11 9/6 12/16 28/23 29/2 66/8 73/4 124/13 235/18 250/3 272/23 278/4 278/16 279/18 280/13 280/18
**Court's [1]** 251/17
**court-like [1]** 66/8
**courtroom [3]** 8/11 8/19 12/6
**courts [2]** 256/4 279/13
**covered [4]** 165/24 236/20 236/21 279/14
**COVID [5]** 111/24 120/21 120/24 181/7 280/8
**COVID-19 [1]** 280/8
**Coworker [1]** 212/24
**craft [1]** 79/24
**crazy [1]** 57/4
**create [1]** 261/23
**created [1]** 66/6
**creating [1]** 66/7
**credible [2]** 204/1 272/1
**credit [1]** 156/2
**credited [1]** 156/2
**crime [1]** 205/16
**criminal [2]** 128/9 128/13
**crises [2]** 10/2 10/3
**criticism [2]** 18/2 260/8
**criticized [2]** 17/19 17/23
**cross [17]** 4/7 4/12 4/17 4/22 31/15 32/19 53/8 53/12 53/16 69/15 124/16 140/5 191/19 191/23 193/16

**C**

**cross... [2]** 231/14 260/23
**cross-complaint [1]** 53/16
**cross-complaints [2]** 53/8 53/12
**cross-examination [9]** 4/7 4/12 4/17 4/22 69/15 124/16 191/23 193/16 231/14
**cross-examine [2]** 140/5 191/19
**crossed [3]** 134/1 136/25 137/2
**crucial [1]** 22/5
**crying [1]** 182/20
**cultural [1]** 18/21
**culture [1]** 277/11
**cure [2]** 273/17 276/5
**curious [2]** 66/10 150/5
**currently [3]** 22/11 107/15 173/16
**cv [2]** 1/4 6/5
**cynical [1]** 204/2

**D**

**DA's [1]** 205/13
**dad [4]** 7/23 108/5 127/3 127/9
**Dallas [3]** 176/2 176/8 176/11
**damage [4]** 254/6 254/9 254/11 273/14
**damaged [1]** 256/1
**damages [6]** 252/25 253/1 256/2 274/22 275/1 276/7
**dancing [2]** 222/4 222/15
**danger [2]** 42/12 43/6
**darn [1]** 130/14
**date [8]** 34/23 55/10 85/11 107/21 114/24 127/13 167/22 211/5
**dates [6]** 102/25 103/2 114/20 114/21 131/14 209/8
**dating [2]** 36/24 97/24
**DAVIS [2]** 3/3 6/21
**day [48]** 36/6 36/8 36/9 41/15 55/12 55/12 55/20 77/14 77/15 77/17 80/17 84/20 88/9 88/9 88/9 90/17 91/2 111/14 113/15 117/3 119/15 143/25 144/1 146/17 168/1 168/2 168/16 169/16 195/7 195/10 195/12 195/24 200/6 211/20 211/23 211/23 211/24 213/7 214/23 224/19 233/3 251/24 252/4 259/13 259/23 269/3 270/14 280/15
**days [50]** 54/25 55/12 55/15 55/15 68/9 68/10 68/12 68/20 74/19 76/5 77/25 79/13 79/24 80/1 80/2 80/5 80/19 85/11 85/15 85/16 85/16 85/18 85/20 85/24 101/12 114/13 114/14 116/17 117/2 118/11 137/13 157/18 159/2 165/22 165/23 178/12 244/20 256/17 258/22 258/23 258/23 259/8 259/13 259/13 259/13 261/5 268/12 268/14 268/17 269/8
**deadline [30]** 46/4 53/23 53/25 54/3 54/7 54/12 55/5 55/7 55/25 56/4 59/22 61/3 68/12 90/18 90/18 99/24 100/13 104/19 110/18 112/25 113/4 113/7 113/10 113/14 114/14 168/1 245/1 269/21 270/3 270/5
**deal [8]** 10/2 97/14 122/25 148/2 156/20 235/19 278/9 278/19
**dealing [4]** 12/18 12/19 92/21 213/23
**dealings [1]** 170/23
**dean [33]** 9/20 9/21 33/19 33/19 33/20 55/10 56/23 75/10 75/15 78/18 79/1 85/18 86/21 86/22 108/3 108/8 108/18 109/1 109/7 185/22 186/8 186/18 200/6 205/4 205/25 208/11 209/5 212/8 236/24 238/23 246/22 248/19 264/13
**dean's [1]** 215/12
**deans [1]** 35/24
**Dear [5]** 12/4 25/14 25/17 26/2 260/9
**debate [2]** 256/7 256/9
**December [6]** 55/18 86/21 121/25 178/4 178/8 272/16
**December 19th [1]** 178/8
**December 7th [1]** 55/18
**December 7th that [1]** 86/21
**decide [6]** 33/23 63/19 98/19 98/20 107/11 233/11
**decided [6]** 25/12 83/21 135/3 215/1 240/23 263/9
**decides [1]** 170/5
**deciding [1]** 13/7
**decision [31]** 33/14 39/24 44/9 81/8 94/21 101/18 103/22 103/23 126/18 126/25 138/8 138/9 171/9 172/8 184/12 200/19 201/3 202/6 216/5 216/8 216/24 217/20 217/23 225/3 235/8 251/18 260/20 263/2 269/10 269/13 269/15
**decision-making [1]** 200/19

## D


**decisions [3]** 39/4 71/20 200/23
**deck [1]** 172/20
**declined [2]** 100/4 100/8
**decorum [1]** 92/16
**dedicated [1]** 140/16
**deemed [2]** 75/5 89/7
**defamation [3]** 253/23 255/25 256/3
**defend [3]** 63/3 66/11 66/15
**defendant [2]** 6/19 6/22
**Defendants [2]** 1/9 3/2
**DEFENDANTS' [1]** 4/24
**defending [2]** 103/3 119/2
**defense [1]** 25/11
**define [2]** 53/6 53/19
**defined [2]** 50/10 53/7
**definitely [1]** 29/2
**definition [12]** 20/20 23/12 29/22 39/12 42/10 49/21 49/24 118/21 210/22 229/3 237/5 238/12
**degree [1]** 214/1
**delay [5]** 123/23 268/8 268/20 269/2 274/25
**delayed [1]** 68/18
**delays [1]** 263/3
**deleted [1]** 150/4
**deliberate [4]** 79/19 94/15 95/12 214/21
**deliberated [2]** 214/25 215/1
**deliberating [1]** 200/25
**deliberation [6]** 79/18 79/24 82/5 82/7 94/17 234/10
**deliberations [11]** 79/23 202/3 215/10 215/25 230/16 230/23 233/5 234/5 234/7 241/1 248/23
**deliberative [12]** 122/12 156/6 181/24 216/10 216/15 216/16 216/20 217/7 227/4 239/25 248/6 275/19
**demonstrated [1]** 263/21
**demonstrating [1]** 264/19
**demonstration [2]** 252/5 262/18
**denial [1]** 171/22
**denied [4]** 99/6 115/2 171/17 171/17
**denying [2]** 172/1 252/10
**department [2]** 65/22 65/23
**depend [1]** 255/13
**Depending [1]** 139/14
**depends [3]** 139/14 255/12 255/20
**describe [4]** 13/24 78/7 212/8 235/12
**described [8]** 13/22 13/25 14/3 39/7 112/9 178/9 212/25 234/9
**describing [3]** 106/9 246/23 268/4
**description [1]** 249/1
**designs [1]** 18/14
**despite [9]** 13/4 46/3 93/12 117/7 117/13 155/13 158/11 182/24 252/2
**detail [4]** 61/22 61/24 62/1 230/9
**detailed [3]** 100/8 145/5 146/12
**details [9]** 34/1 60/17 61/1 61/4 61/16 100/12 100/14 114/3 267/14
**determination [4]** 95/1 99/4 198/22 262/1
**determinations [4]** 40/12 57/2 237/3 237/4
**determine [3]** 28/16 34/20 79/19
**determined [4]** 58/3 68/7 88/22 98/7
**determines [1]** 33/16
**determining [1]** 79/22
**develop [3]** 12/10 12/11 263/16
**developed [1]** 214/17
**Developing [1]** 23/16
**development [3]** 21/7 22/2 22/7
**deviations [1]** 67/22
**diagnosed [1]** 213/24
**dialogue [1]** 245/4
**did [235]** 7/17 15/13 25/13 26/16 27/1 27/11 28/12 33/25 47/1 48/25 49/1 54/16 57/21 60/1 60/11 62/4 62/6 62/7 62/16 62/16 62/25 63/11 65/18 66/4 66/25 68/14 68/14 68/21 68/23 70/3 70/11 70/14 71/4 77/11 83/4 83/17 83/18 84/4 84/4 84/8 84/11 84/22 85/8 86/1 86/2 86/11 87/20 90/3 91/5 91/7 91/10 91/18 91/18 91/21 94/13 94/16 94/18 94/21 97/20 98/19 98/25 101/17 101/21 101/22 102/21 102/21 103/18 104/2 104/3 104/23 105/1 105/8 105/19 105/22 107/2 107/5 107/11 108/4 108/17 110/1 112/6 113/3 114/17 114/19 116/6 117/18 118/19 119/14 119/17 119/19 120/2 120/9 120/10 120/15 121/2 122/2 122/2 124/6 128/4 129/16 131/4 131/10 132/3 132/6 133/19 135/20 136/1

## D

**did... [128]** 136/9 136/11 136/22 137/5 137/8 138/9 139/2 141/19 141/20 141/24 142/20 143/19 145/17 146/17 146/20 146/24 149/17 149/23 150/23 150/24 151/8 151/16 151/20 151/22 153/9 153/12 153/13 154/15 154/17 157/1 164/23 165/10 167/12 167/23 171/5 171/16 171/22 171/24 172/1 172/7 175/2 175/5 175/10 175/21 176/5 178/24 179/2 182/16 182/18 183/7 183/14 186/3 186/25 187/13 189/11 191/17 191/21 191/24 191/24 191/25 192/3 192/19 195/1 195/3 195/9 195/12 196/10 196/12 196/22 196/25 197/8 197/18 197/19 198/4 198/5 198/5 199/4 199/10 199/13 199/14 199/15 199/18 199/18 201/17 201/22 202/4 202/6 203/15 204/1 208/4 213/9 213/11 213/13 213/19 213/19 214/21 214/22 214/23 214/24 215/4 220/9 223/2 223/3 225/1 225/8 225/15 225/16 225/20 229/5 230/21 232/12 232/18 234/16 247/21 250/15 255/15 257/14 257/18 260/24 265/11 266/12 266/20 267/2 271/16 271/20 272/1 272/12 273/6

**didn't [100]** 15/4 22/25 27/15 31/19 39/8 41/15 56/10 60/13 60/14 61/16 66/5 68/2 98/19 99/16 101/25 106/6 108/12 109/4 110/8 110/10 113/13 114/17 115/18 117/4 117/22 120/8 121/2 129/2 129/13 129/14 133/12 133/24 133/25 141/12 142/12 143/13 144/8 144/10 144/10 145/4 146/21 147/24 148/1 153/13 153/15 154/13 154/15 155/1 156/2 156/2 156/10 157/4 158/2 162/3 163/10 164/5 169/7 170/12 176/19 178/3 182/14 183/2 192/6 192/11 194/20 195/2 203/19 203/22 204/24 214/11 224/9 224/17 224/21 224/22 224/22 224/25 225/1 225/5 227/20 228/5 229/3 229/12 229/17 231/8 234/9 234/9 234/14 250/13 255/3 256/13 257/17 258/5 260/19 266/16 267/14 269/11 272/13 275/15 276/25 279/12

**die [1]** 120/23

**difference [9]** 22/21 39/9 50/6 234/12 250/18 250/19 273/18 274/11 275/11

**different [25]** 9/23 13/4 20/14 21/5 22/20 23/8 23/8 39/12 49/20 67/6 73/2 87/16 96/17 97/17 108/23 122/8 130/11 138/15 194/1 221/11 270/11 271/18 271/20 272/19 277/4

**differentiate [1]** 72/15

**differently [1]** 251/6

**differing [1]** 18/21

**difficult [2]** 78/12 150/24

**difficulty [1]** 92/21

**diffuse [5]** 115/17 115/19 145/3 147/18 147/20

**diffusing [2]** 148/16 151/3

**digitally [1]** 126/1

**dignity [1]** 277/23

**direct [19]** 4/6 4/11 4/16 4/21 9/15 32/19 69/13 103/25 105/17 164/7 171/5 174/13 178/9 183/13 185/20 201/13 202/15 207/22 248/25

**directed [2]** 192/4 192/16

**directing [1]** 108/7

**direction [1]** 198/11

**directive [4]** 190/4 190/6 190/23 247/2

**directives [2]** 190/15 210/3

**directly [10]** 11/17 11/21 12/1 12/18 74/22 123/18 170/24 245/10 251/22 272/25

**director [3]** 208/15 212/13 212/14

**disagree [13]** 29/7 29/9 42/16 52/21 53/2 60/21 63/6 64/10 65/18 171/20 171/22 171/24 225/14

**disallow [2]** 192/17 199/11

**disallows [1]** 194/23

**disciplinary [2]** 174/24 177/8

**discipline [1]** 71/14

**disciplining [2]** 24/13 71/8

**disclose [2]** 82/14 264/11

**disclosed [1]** 91/14

**discourage [1]** 139/2

**discovery [2]** 183/23

## D


**discovery... [1]** 247/24
**discredit [2]** 44/4 44/7
**discretion [3]** 67/6 67/9 250/6
**discriminate [3]** 279/4 279/9 279/12
**discriminated [2]** 172/14 183/11
**discrimination [8]** 94/18 177/2 183/16 202/4 261/24 263/19 263/19 264/7
**discuss [3]** 101/6 219/15 237/21
**discussed [6]** 49/17 70/12 86/9 86/17 87/5 213/14
**discusses [1]** 129/2
**discussing [2]** 88/8 140/17
**discussion [4]** 8/18 72/18 174/12 176/21
**disgusted [3]** 144/18 154/16 154/17
**dismiss [2]** 142/3 142/7
**dismissed [3]** 47/10 86/7 215/1
**disposal [1]** 190/10
**disputed [2]** 57/1 237/2
**disregarded [1]** 271/23
**disrespect [2]** 118/21 229/3
**disrespected [1]** 228/24
**disrespectful [2]** 178/13 180/4
**disrespecting [1]** 118/19
**dissertation [33]** 14/19 15/11 15/16 18/19 19/13 20/7 23/7 25/7 25/11 39/7 64/11 64/13 64/17 64/19 64/22 64/24 65/4 69/23 69/25 70/1 70/3 70/9 70/11 70/18 70/25 186/8 208/11 248/23 249/11 250/21 251/1 265/17 265/25
**Dissertation.................65 [1]** 5/4
**distinction [2]** 58/17 58/19
**distress [1]** 255/6
**distribution [1]** 278/11
**DISTRICT [5]** 1/1 1/2 1/13 252/24 280/18
**disturbing [1]** 112/8
**dive [1]** 92/9
**diverse [1]** 35/5
**diversity [1]** 35/9
**DIVISION [2]** 1/3 280/19
**divulging [1]** 255/9
**do [260]** 6/14 7/1 9/7 9/10 9/11 14/8 14/11 14/17 14/21 14/24 15/2 15/8 16/18 18/12 18/17 20/7 21/17 22/18 23/20 24/10 24/12 24/17 25/1 25/9 26/7 27/1 30/4 30/9 30/11 30/25 34/7 35/13 35/20 37/3 42/15 42/15 44/2 44/5 44/24 44/24 45/19 46/11 47/13 48/5 49/2 53/4 55/14 55/23 56/4 57/22 60/13 60/21 62/3 64/4 67/2 67/14 67/25 68/3 71/10 71/12 71/14 71/20 74/1 74/3 75/19 75/21 77/4 77/17 81/18 81/21 82/1 82/7 82/11 82/13 83/17 84/1 84/14 85/15 86/1 90/11 92/13 93/5 94/10 97/7 97/14 100/5 102/17 105/8 106/16 106/21 110/5 112/7 114/9 115/18 117/11 119/17 120/20 122/7 122/12 122/21 123/18 123/21 124/5 126/6 127/11 129/5 130/9 130/9 131/22 132/5 134/1 134/17 135/1 138/25 139/10 141/11 141/14 141/22 142/5 142/20 142/24 144/11 144/22 146/7 146/8 146/20 148/1 148/20 149/2 149/13 149/15 149/20 150/11 150/18 150/25 152/2 152/11 152/24 153/12 153/16 153/20 154/12 154/18 154/19 154/20 155/15 158/18 158/20 159/18 160/23 161/2 161/8 161/11 163/1 163/3 164/11 164/17 165/13 166/17 167/20 167/24 168/4 169/23 170/6 170/19 171/11 173/3 173/6 173/10 173/14 174/3 174/6 174/8 174/9 174/10 175/23 177/2 177/6 178/2 178/5 178/14 179/2 184/4 186/6 189/1 189/12 190/1 191/3 191/5 192/22 192/22 195/15 195/19 195/23 196/12 198/4 200/19 200/22 200/25 202/18 202/25 203/4 203/9 204/19 205/3 205/5 206/3 207/7 208/8 210/23 210/25 211/5 211/20 212/11 213/5 223/12 228/12 230/16 235/24 236/4 236/7 236/19 238/14 239/5 240/12 240/13 240/17 245/21 245/23 246/1 246/17 246/18 247/3 247/9 247/19 249/16 249/18 250/13 250/15 251/19 252/19 252/21 253/3 253/14

D

**do... [16]** 253/18 253/18 257/14 260/19 263/16 266/22 268/22 270/2 270/11 270/25 272/25 275/15 275/21 276/9 276/18 277/18
**doctoral [1]** 214/1
**document [5]** 16/15 150/22 171/16 199/10 217/15
**documentation [1]** 199/8
**documents [1]** 152/5
**DOE [87]** 1/4 4/10 6/5 6/7 7/24 10/22 11/6 11/11 13/25 31/12 40/15 40/17 46/5 48/8 48/8 53/23 54/7 54/12 61/1 61/18 62/11 62/16 69/1 69/3 83/21 84/20 86/6 86/11 93/18 94/23 95/9 98/10 98/10 99/5 100/14 101/10 101/25 102/10 104/22 104/23 105/1 105/5 105/13 105/19 111/17 121/12 124/18 161/7 177/21 180/2 186/25 187/7 187/8 190/14 190/17 192/14 192/16 194/14 195/19 196/4 196/17 196/22 196/25 197/8 197/21 197/23 198/11 198/23 201/17 202/12 202/20 203/16 203/18 204/10 204/25 221/12 224/24 226/24 233/19 236/10 240/17 246/20 251/7 259/23 260/23 262/1 262/3
**Doe's [19]** 7/23 12/22 25/12 31/10 33/25 35/21 36/13 45/8 67/9 87/13 88/5 104/8 160/11 191/12 194/7 198/4 198/7 198/12 273/12
**does [59]** 9/22 15/25 29/15 31/17 33/17 37/20 43/7 43/7 44/19 45/5 45/15 45/17 45/18 46/24 46/24 48/15 48/20 50/21 51/2 56/3 56/3 56/15 72/1 80/17 96/22 97/10 99/8 131/16 134/7 134/19 147/14 155/19 159/7 159/8 161/25 163/5 163/22 178/18 189/2 189/24 193/6 209/14 210/19 212/16 217/20 217/21 217/22 217/24 218/18 218/20 219/6 219/20 236/19 242/2 243/12 252/24 260/5 268/16 276/19
**doesn't [20]** 45/18 46/22 46/23 48/15 48/20 58/17 60/16 66/8 147/15 184/2 197/24 199/11 205/23 226/22 241/3 242/1 249/2 257/8 269/14 276/17
**doing [20]** 19/21 44/9 73/14 110/11 115/14 115/16 116/10 138/2 162/20 164/7 178/18 178/20 178/25 181/3 211/18 215/22 231/16 231/17 248/1 268/21
**dollar [2]** 254/23 274/10
**domain [1]** 255/16
**domestic [2]** 205/18 205/19
**don't [208]** 7/8 7/14 13/25 14/1 14/22 15/1 15/10 19/10 19/10 19/13 20/8 22/17 23/6 24/7 24/15 25/18 26/5 28/14 29/15 31/20 32/1 32/9 34/1 35/9 35/19 37/5 40/4 40/12 42/7 44/4 44/7 50/16 50/21 55/14 56/4 56/7 56/7 56/13 57/11 59/19 60/22 60/22 61/7 62/17 62/22 63/13 63/14 64/12 66/13 67/15 81/7 82/1 86/8 96/11 96/14 102/10 102/16 103/1 103/12 103/15 107/21 111/17 112/4 116/15 121/11 126/9 127/13 128/11 128/12 129/1 129/1 129/20 129/21 129/24 131/24 134/21 136/3 137/5 142/9 142/10 142/20 143/5 143/17 148/7 148/17 148/22 151/10 151/10 151/19 152/18 152/18 153/13 154/14 155/20 157/24 158/15 159/14 159/16 159/20 159/21 160/7 160/8 160/25 161/7 161/17 161/22 162/15 163/14 163/18 164/3 164/6 164/25 164/25 165/12 167/2 167/16 169/16 170/6 172/11 172/12 174/20 175/1 175/13 176/8 176/10 179/12 180/2 180/4 183/25 184/3 184/5 184/7 184/7 184/9 185/7 185/9 185/10 185/11 185/12 186/2 191/3 191/7 191/22 201/20 203/23 206/6 206/24 207/7 207/7 208/4 209/18 216/6 219/23 229/4 230/8 230/12 230/17 230/17 233/18 235/22 236/18 241/24 241/25 242/17 243/7 243/9 244/16 247/18 247/20 247/20 247/25 248/11 249/2 249/7 251/2 252/22 253/8 254/18 255/6 256/10

D

**don't... [28]** 258/8 258/8 258/22 258/25 259/1 259/11 260/5 260/10 260/12 260/16 262/8 262/8 262/13 262/21 263/24 263/25 265/2 265/3 265/3 265/5 265/8 269/15 270/22 271/4 272/22 273/24 274/2 276/23
**done [24]** 19/5 34/10 50/15 79/11 80/19 81/25 88/25 91/4 91/5 108/24 135/10 162/22 163/9 163/21 164/15 191/8 197/22 198/10 209/5 210/16 210/17 237/24 253/21 268/3
**door [3]** 229/11 270/13 278/22
**doors [1]** 205/9
**dorm [3]** 105/20 221/12 222/9
**doubt [1]** 151/16
**down [27]** 18/8 56/20 73/3 73/20 90/24 105/11 131/14 138/5 142/16 162/16 176/3 185/16 187/4 190/12 190/19 190/20 204/18 207/5 211/25 212/2 214/24 236/18 271/5 271/5 271/25 277/10 277/13
**download [1]** 178/4
**downloaded [1]** 178/3
**DR [13]** 4/5 5/4 9/18 9/19 13/20 15/11 64/17 69/17 76/7 93/16 99/16 104/18 114/12
**Dr. [9]** 13/19 14/6 16/11 25/6 25/12 89/13 201/15 201/22 215/14
**Dr. Clark [1]** 89/13
**Dr. Jessica [1]** 215/14
**Dr. Ledbetter [3]** 14/6 201/15 201/22
**Dr. Russel [3]** 13/19 16/11 25/12
**Dr. Sullivan [1]** 25/6
**draft [2]** 136/13 248/19
**drafting [1]** 10/13
**drastic [3]** 265/9 265/10 265/12
**drawn [2]** 205/6 241/11
**drink [1]** 203/23
**drinks [1]** 122/22
**drive [1]** 152/4
**drug [1]** 278/11
**drugged [1]** 240/11
**DuBose [1]** 260/11
**dude [1]** 270/3
**due [3]** 18/20 87/12 280/8
**dump [1]** 259/12
**during [59]** 8/12 47/9 55/15 56/21 60/14 74/9 76/25 77/7 77/11 78/2 78/10 79/15 81/9 81/10 81/19 82/2 82/7 82/8 83/13 83/22 83/25 86/10 86/10 87/9 91/15 94/17 94/17 100/9 105/25 118/19 123/9 126/15 128/15 133/6 133/11 133/20 135/13 138/6 140/15 157/14 158/8 162/3 166/18 167/12 172/14 172/16 172/19 183/11 188/15 208/3 210/24 213/15 218/13 239/9 251/1 259/12 260/23 264/23 277/8
**DUSTIN [1]** 1/23
**Dusty [10]** 6/11 130/6 130/8 130/11 130/25 131/5 131/19 138/12 141/19 168/16
**dynamic [4]** 144/12 144/14 144/15 145/10
**dynamics [2]** 140/17 146/12

E

**each [6]** 20/9 49/15 119/9 222/2 262/12 278/13
**earlier [17]** 37/1 40/6 64/18 81/7 83/24 98/24 101/3 101/23 111/25 143/12 155/12 195/22 195/24 201/14 220/10 230/13 238/23
**early [8]** 84/8 84/15 121/25 127/14 127/14 127/15 187/1 259/18
**easier [5]** 29/5 29/14 29/22 29/23 30/1
**easy [3]** 97/5 254/17 254/18
**economic [1]** 254/5
**edicts [1]** 260/15
**educate [1]** 12/10
**education [7]** 12/9 27/23 51/1 123/17 214/2 263/3 263/6
**educational [8]** 12/6 29/3 38/24 39/1 66/7 66/9 123/2 273/19
**effect [5]** 29/4 42/4 197/22 230/21 252/20
**effective [2]** 23/16 271/2
**effects [2]** 18/16 261/23
**effort [1]** 33/22
**eight [4]** 65/12 65/13 218/11 268/3
**either [22]** 8/12 17/24 21/17 30/10 39/23 45/18 64/12 92/1 93/8 97/18 101/6 109/22 113/12 136/1

Case 4:22-cv-00297-O Document 44 Filed 05/10/22 Page 307 of 370 PageID 1628

# E


either... [8] 162/3 168/1 170/9 176/12 214/2 230/24 236/9 237/20
electronic [2] 84/18 84/21
element [1] 246/15
elements [1] 241/5
eliminated [1] 44/20
else [23] 8/11 8/13 8/18 32/21 52/19 61/1 62/24 65/21 73/14 81/17 112/12 112/17 146/10 189/7 192/22 219/19 224/11 255/16 266/3 266/6 268/18 273/1 277/8
else's [1] 246/23
email [22] 11/7 11/12 34/24 36/14 40/14 40/23 41/1 41/3 41/10 41/12 41/13 91/5 91/6 91/10 101/20 108/19 120/5 120/8 197/20 209/2 213/20 213/21
emails [4] 11/5 41/2 90/9 112/19
emotional [2] 117/4 255/5
emotions [4] 153/5 153/16 182/4 182/7
enacted [1] 12/4
encounter [3] 116/17 118/17 118/19
encounters [2] 121/19 264/24
end [9] 23/19 54/9 54/17 70/23 82/20 137/10 255/19 263/11 264/21
ended [9] 13/7 40/18 70/7 100/13 108/7 108/22 110/11 134/2 137/13
ending [1] 110/10
ends [1] 173/18
enforce [2] 270/23 270/25
enforcement [1] 241/9
engage [1] 24/17
engaged [3] 130/5 165/9 234/23
engaging [2] 24/16 118/23
engineer [2] 274/2 274/9
engineering [1] 274/3
enjoin [3] 172/9 253/8 273/11
enjoined [1] 256/4
enjoy [1] 123/18
enough [16] 28/23 29/2 29/2 55/1 57/15 60/22 117/15 133/11 158/14 186/4 193/14 204/15 206/25 214/3 233/14 258/17
enroll [26] 107/8 107/11 108/10 108/11 126/25 129/13 167/19 167/25 168/14 168/15 168/20 169/2 175/8 175/17 188/6 194/16 194/21 195/7 195/12 195/21 196/2 196/5 196/18 197/1 197/3 197/9
enrolled [3] 108/7 169/5 197/11
enrolling [1] 194/23
enrollment [3] 167/18 188/2 194/4
ensure [5] 27/10 32/6 37/24 38/6 90/7
entire [9] 15/17 19/12 70/18 122/17 134/14 249/23 250/1 257/5 273/10
entirely [4] 46/22 65/20 225/12 271/20
entirety [2] 111/14 230/20
entitled [1] 280/6
environment [2] 18/22 261/23
equal [3] 20/11 21/19 21/20
equally [3] 93/1 146/6 232/11
equitable [2] 67/22 68/3
Equity [20] 34/9 52/7 54/6 54/24 56/21 58/24 73/10 73/22 73/25 74/22 75/13 76/2 87/9 129/4 131/16 132/9 133/20 151/24 186/11 193/7
equivalent [1] 27/14
erroneous [4] 241/6 241/20 263/20 264/19
erroneously [1] 241/18
errors [2] 59/10 76/13
especially [4] 81/16 172/21 172/24 262/21
essence [2] 206/12 260/4
essentially [12] 28/12 32/24 34/16 40/23 55/12 74/19 112/23 115/14 118/23 237/6 251/5 252/11
establish [1] 35/5
estimation [1] 140/16
et [3] 31/20 70/6 222/3
ethical [1] 12/11
even [39] 15/17 45/22 45/22 47/9 53/1 55/18 55/20 55/22 63/14 70/2 84/6 89/4 106/7 107/5 107/24 115/18 116/10 121/2 122/20 134/13 142/6 169/4 172/7 183/25 188/22 192/8 201/10 204/15 243/22 244/9 244/22 244/22 258/7 263/21 272/1 272/11 272/22 274/7 277/14
evening [2] 90/23 91/1
event [2] 127/12 165/6
eventually [2] 74/11 121/7

E


**ever [23]** 13/25 22/5 101/25 102/11 103/13 114/19 115/20 137/5 152/16 154/19 155/19 163/2 172/7 173/3 173/6 186/8 201/1 205/2 205/15 205/21 206/12 223/4 268/2
**every [9]** 67/2 69/5 69/8 72/3 179/2 248/24 257/21 269/17 270/11
**everybody [3]** 186/15 268/18 277/10
**everyone [4]** 11/1 122/23 124/2 186/16
**everything [11]** 12/5 47/16 146/10 181/15 198/20 200/4 200/12 230/20 231/4 243/22 249/20
**evidence [247]** 27/6 28/4 28/13 29/17 33/3 40/18 40/25 41/17 41/22 41/22 41/23 41/23 42/11 43/4 43/8 43/9 43/22 44/4 44/7 44/12 44/13 44/18 44/20 46/1 46/6 53/22 54/4 54/8 54/9 54/10 54/13 54/15 55/6 55/7 56/4 56/5 56/18 57/1 57/5 57/8 57/18 57/25 58/1 58/2 58/4 58/4 58/7 58/11 58/11 58/13 58/14 58/15 58/15 58/16 58/18 58/18 58/22 59/6 59/11 59/16 61/5 61/10 61/11 61/12 61/15 62/4 62/5 62/10 62/12 62/13 62/20 63/3 63/9 63/20 63/23 63/24 63/25 65/11 65/16 66/14 67/14 67/19 71/24 72/1 72/4 73/12 74/8 74/9 74/20 74/24 76/15 76/24 77/1 77/3 77/4 77/5 77/10 77/17 78/2 79/8 81/19 83/14 83/19 84/7 85/10 85/25 86/11 87/2 87/18 87/21 87/21 87/24 88/2 88/11 88/12 88/13 88/13 88/18 88/19 89/1 89/6 89/7 91/19 96/16 100/15 100/20 100/23 101/7 101/11 101/16 102/4 104/7 104/9 110/15 113/4 113/8 113/10 114/6 135/16 136/11 136/19 137/2 137/6 137/9 138/23 139/4 141/5 141/19 141/20 141/24 147/24 148/3 154/23 155/1 156/12 158/12 159/23 160/1 169/12 169/12 169/14 173/10 173/14 177/1 181/17 183/22 184/3 204/9 217/7 219/10 219/11 220/12 223/20 225/2 226/1 229/14 231/10 233/9 233/12 233/14 235/4 236/5 236/12 236/20 237/2 237/11 237/14 237/22 238/10 238/11 238/13 238/18 238/20 238/25 239/6 239/8 239/10 239/12 239/13 239/15 239/19 240/2 241/10 241/10 241/17 242/15 242/19 242/22 243/16 243/17 244/10 244/18 244/19 244/24 245/1 245/11 245/13 245/16 245/19 247/4 247/8 248/9 248/15 248/16 249/1 259/7 259/11 259/19 259/24 260/19 260/25 261/1 262/23 262/24 263/18 264/6 264/8 268/7 268/22 269/12 269/23 270/3 270/4 272/24 273/4 278/12 278/15
**evidentiary [7]** 46/4 56/20 121/15 236/23 244/16 267/19 267/24
**evil [1]** 144/19
**evinces [1]** 166/24
**exact [6]** 62/15 62/19 63/11 107/21 215/5 244/17
**exactly [13]** 49/5 50/21 55/20 57/19 66/17 124/5 156/6 156/8 169/6 239/2 250/10 260/1 268/4
**exam [3]** 55/15 252/5 252/15
**examination [30]** 4/6 4/7 4/8 4/9 4/11 4/12 4/13 4/14 4/16 4/17 4/18 4/21 4/22 9/15 69/15 99/14 104/16 105/17 124/16 140/11 164/8 174/13 177/19 185/2 185/20 191/23 193/16 202/10 207/22 231/14
**examine [3]** 31/24 140/5 191/19
**examiner [2]** 39/23 67/6
**example [5]** 77/10 90/14 90/15 95/17 238/21
**excellent [1]** 32/1
**except [1]** 277/9
**exceptions [1]** 269/18
**excerpts [2]** 64/17 65/5
**exchange [2]** 142/18 143/23
**exchanged [2]** 41/2 169/13
**exclude [6]** 43/22 44/18 242/15 242/16 258/11 258/17
**excluded [20]** 8/19 40/19

## E


**excluded... [18]** 44/8 45/8 58/4 62/7 88/15 88/16 88/17 89/1 89/8 112/5 112/9 154/22 229/19 243/16 243/18 248/15 258/7 259/24
**excluding [4]** 43/4 43/23 243/7 272/24
**exclusion [2]** 53/21 242/14
**exclusively [1]** 112/19
**exculpatory [11]** 40/18 44/8 46/5 87/1 154/23 258/7 258/11 258/11 258/17 270/4 272/24
**excuse [2]** 34/11 84/15
**exercised [2]** 67/9 250/6
**exhausted [1]** 93/10
**exhibit [24]** 37/15 37/16 37/19 42/17 42/19 42/20 65/8 65/9 65/11 65/16 69/6 69/8 69/24 99/17 141/14 142/17 148/25 152/10 158/16 158/16 161/19 161/19 179/6 210/4
**Exhibit 11 [1]** 152/10
**Exhibit 13 [1]** 99/17
**Exhibit 15 [1]** 148/25
**Exhibit 17 [1]** 158/16
**Exhibit 35 [1]** 65/9
**Exhibit 38 [1]** 69/24
**Exhibit 4 [3]** 37/16 37/19 42/20
**Exhibit 7 [3]** 141/14 142/17 179/6
**exhibited [1]** 239/22
**exhibits [10]** 5/3 5/5 56/15 122/3 135/24 136/2 136/14 156/10 211/10 265/20
**exist [1]** 59/10
**exonerates [1]** 154/24
**exonerating [1]** 251/7
**expand [1]** 224/15
**expansive [1]** 238/12
**expect [3]** 78/21 79/17 270/18
**expectations [1]** 18/21
**expelled [4]** 95/25 170/14 188/7 188/14
**experience [11]** 32/3 88/23 96/5 122/18 123/14 123/16 206/6 206/10 206/11 212/4 275/1
**experienced [1]** 151/8
**experiences [1]** 270/7
**experimental [1]** 18/14
**expert [4]** 88/12 253/19 254/4 274/8
**explain [10]** 20/21 92/4 115/12 149/4 157/1 157/4 191/25 222/23 223/4 258/18
**explained [2]** 222/1 229/5
**explaining [1]** 98/19
**explanation [16]** 106/4 106/5 132/22 133/5 145/8 145/18 145/24 146/13 147/3 156/1 157/8 229/12 234/6 237/24 250/16 272/4
**explanations [1]** 146/6
**explicit [1]** 22/5
**explored [1]** 145/20
**expressed [1]** 106/8
**expressly [1]** 131/7
**extended [2]** 54/22 85/14
**extension [1]** 54/23
**extensive [1]** 133/16
**extensively [1]** 70/20
**extent [3]** 36/16 115/5 186/17
**external [3]** 34/14 38/25 89/18
**extra [2]** 54/24 68/18
**extraneous [1]** 31/20
**extraordinarily [3]** 24/25 66/12 270/24
**extraordinary [1]** 55/9
**extremely [2]** 17/18 256/23


## F


**face [2]** 187/5 187/5
**Facebook [1]** 272/17
**faces [1]** 261/11
**facilitate [2]** 81/22 90/6
**facilitated [1]** 75/15
**facilitator [2]** 10/25 36/21
**fact [39]** 13/4 13/5 24/12 26/14 29/11 42/7 43/9 52/15 66/25 67/12 70/22 71/8 71/12 80/20 84/22 97/23 109/22 114/23 117/10 122/11 126/19 151/16 155/14 155/22 158/11 163/10 181/2 181/6 182/24 184/19 205/25 222/24 225/22 226/10 230/21 240/6 244/6 247/5 248/15
**fact-finding [2]** 24/12 71/8
**factor [1]** 234/9
**factors [3]** 248/14 255/12 255/20
**facts [21]** 48/23 49/1 49/17 50/1 52/20 53/6 53/13 60/23 73/15 94/3 155/14 218/7 219/9 226/12 226/13 226/15 234/19 251/8 263/25 265/10 271/19
**faculty [11]** 35/1 35/5 35/8 35/10 38/10 38/11 38/22 39/22 89/16 89/21 235/13

# F


**fail [1]** 18/15
**failed [2]** 60/17 157/13
**fair [29]** 11/3 13/15 28/7 32/8 55/1 57/15 61/7 64/9 68/15 90/13 92/11 92/14 94/9 96/16 112/6 112/7 133/9 148/3 158/14 178/15 186/4 193/14 214/3 214/13 222/20 244/1 250/15 263/17 272/25
**fairly [10]** 77/22 78/18 89/5 145/5 186/16 187/18 188/3 197/10 259/17 276/12
**fairness [3]** 37/24 38/6 159/24
**fall [7]** 90/17 107/8 126/13 126/14 126/15 126/16 130/19
**fallen [1]** 264/18
**false [3]** 30/17 97/20 108/12
**familiar [9]** 10/15 10/17 25/14 37/6 40/7 131/11 188/13 208/1 214/16
**family [5]** 10/3 90/24 114/25 130/5 213/24
**fan [1]** 7/10
**fancy [1]** 20/1
**fantasy [1]** 270/19
**far [13]** 12/15 31/2 57/5 97/8 116/15 121/11 123/4 247/23 263/20 269/19 271/3 271/16 272/7
**fashion [2]** 227/13 260/25
**fast [2]** 18/7 135/5
**fast-forward [1]** 135/5
**father [12]** 106/12 106/12 127/7 127/8 127/9 128/17 128/17 186/25 194/8 194/14 195/19 196/4
**father's [1]** 127/2
**fault [1]** 116/11
**faults [1]** 162/10
**favor [4]** 96/22 97/12 97/12 264/14
**favorable [1]** 97/9
**favored [2]** 240/13 240/17
**FCRR [2]** 280/4 280/17
**feat [1]** 23/17
**features [1]** 149/9
**February [1]** 127/17
**fed [1]** 239/3
**federal [48]** 9/6 10/11 10/14 10/15 26/10 27/2 27/4 42/3 42/8 44/1 44/23 45/12 46/20 47/5 47/7 48/3 50/16 50/17 50/23 51/7 52/24 63/4 63/7 63/12 63/15 63/17 77/21 79/25 104/10 156/20 183/19 235/18 236/16 236/17 237/15 242/2 242/4 242/6 242/21 244/14 263/24 268/10 268/11 269/3 269/4 278/16 279/9 279/13
**feel [13]** 78/13 81/1 117/18 144/17 145/1 145/11 146/15 148/20 154/19 154/20 228/21 228/24 240/17
**feeling [1]** 183/11
**feelings [1]** 171/4
**feels [2]** 148/22 172/25
**fees [1]** 280/12
**fell [2]** 25/11 55/10
**felt [6]** 88/7 172/20 192/14 197/21 198/9 246/20
**female [15]** 20/1 21/4 21/14 21/21 30/16 31/1 70/24 72/7 72/10 97/14 97/19 97/20 160/14 167/5 235/14
**female's [1]** 20/17
**females [13]** 14/9 14/12 16/23 20/2 20/12 21/1 21/3 22/16 22/18 22/25 23/1 24/22 199/21
**few [6]** 18/13 64/22 69/19 80/19 193/19 254/25
**fewer [1]** 32/17
**field [1]** 214/2
**Fifth [3]** 27/8 241/5 251/13
**figure [5]** 153/20 161/23 198/1 260/13 274/10
**figures [1]** 254/23
**file [5]** 56/14 129/16 170/1 172/8 269/22
**filed [9]** 40/16 50/3 73/8 125/4 158/9 170/12 172/5 197/15 197/18
**files [2]** 73/6 190/13
**filing [1]** 240/22
**fill [1]** 261/18
**filled [3]** 174/4 174/23 175/18
**FILLMORE [3]** 1/23 1/23 6/11
**final [41]** 55/15 56/23 57/5 57/18 58/8 59/3 59/4 59/9 61/24 62/6 62/20 75/3 75/5 75/18 75/22 76/4 76/8 76/14 76/23 79/6 86/19 87/7 110/19 113/3 113/7 114/9 114/15 114/23 236/24 244/20 244/23 251/11 252/15 256/4 259/1 261/8 266/10 266/15 267/16 268/7 268/13
**finally [4]** 23/23 48/12 76/18 272/17
**Finals [2]** 173/20 173/21

## F


**financial [2]** 279/9 279/13
**find [16]** 29/5 29/23 30/1 96/15 96/22 142/22 160/20 169/8 203/19 204/1 206/19 219/10 219/11 223/12 231/8 272/1
**finding [12]** 24/12 71/8 71/12 156/12 219/7 227/11 230/10 233/15 241/2 248/13 255/4 277/3
**findings [3]** 17/5 21/7 22/2
**fine [6]** 9/9 130/3 160/8 172/12 179/11 270/21
**fingers [4]** 221/18 223/6 224/25 271/25
**finish [3]** 49/8 96/25 261/14
**finished [4]** 49/7 49/9 50/7 50/9
**firm [2]** 1/23 66/6
**first [61]** 16/16 16/19 19/19 43/8 69/23 73/5 73/21 80/13 86/8 87/17 109/12 110/9 120/5 120/12 120/19 123/17 125/22 126/3 126/6 133/20 137/14 139/23 150/17 150/23 152/11 154/2 155/25 162/6 172/19 179/6 181/19 181/20 181/21 208/15 208/16 212/4 212/18 212/19 218/1 219/17 220/18 222/7 222/9 229/11 231/19 234/13 234/16 236/22 237/11 239/9 240/8 241/21 250/19 265/18 265/20 266/1 271/21 276/3 277/12 277/18 279/11
**first-year [5]** 208/15 208/16 212/4 212/18 212/19
**fist [2]** 182/22 182/23
**fit [1]** 143/22
**five [5]** 43/1 65/10 200/15 200/16 274/4
**five-minute [1]** 200/15
**Five-point [1]** 43/1
**fixed [3]** 35/11 197/6 197/8
**fixes [1]** 169/1
**flat [1]** 242/3
**flat-out [1]** 242/3
**flaw [3]** 242/20 244/11 244/14
**flawed [3]** 122/14 275/16 277/5
**flaws [3]** 241/22 241/23 243/20
**flip [4]** 136/6 148/11 240/16 259/20
**flirt [1]** 119/12
**flowchart [1]** 59/21
**focus [3]** 55/14 220/11 236/20
**focused [1]** 249/13
**focusing [2]** 209/16 274/20
**folder [9]** 36/15 75/23 75/24 75/25 76/16 84/16 87/4 87/10 100/19
**folks [3]** 33/23 40/7 130/23
**follow [10]** 45/18 67/3 72/23 83/4 100/10 236/2 245/7 246/2 261/3 267/9
**follow-up [1]** 100/10
**following [2]** 65/1 168/1
**football [1]** 144/21
**footnotes [1]** 100/2
**foregoing [2]** 280/5 280/6
**foreplay [4]** 117/15 118/25 119/1 178/15
**foreshadowing [1]** 33/2
**forever [4]** 61/4 61/9 77/18 100/14
**forget [1]** 236/18
**forgot [1]** 190/23
**form [13]** 32/4 101/11 112/18 121/15 174/20 175/18 175/19 175/21 176/17 176/19 184/17 202/17 206/9
**formal [10]** 47/6 47/9 48/4 50/3 67/1 67/13 67/18 73/6 73/8 129/3
**formality [1]** 66/13
**formalization [1]** 66/5
**format [1]** 280/12
**former [4]** 125/4 126/20 156/19 158/2
**FORT [9]** 1/3 1/6 1/21 1/24 130/12 131/2 218/14 280/19 280/20
**forth [5]** 11/24 164/21 190/15 204/17 249/12
**forthright [1]** 204/7
**forward [8]** 8/17 55/21 77/22 135/5 172/9 173/12 252/17 271/8
**forwarded [2]** 199/8 199/10
**found [39]** 22/19 23/22 24/19 79/20 79/21 82/12 82/13 84/5 93/19 93/21 94/23 95/21 96/9 96/18 107/6 107/24 122/15 124/3 155/6 155/8 155/24 156/7 159/9 201/2 201/8 215/2 229/21 251/6 252/3 270/14 271/3 272/3 273/20 273/21 274/13 274/15 274/16 278/7 278/18
**four [19]** 35/17 68/9

## F


**four... [17]** 68/10 68/12 68/20 101/12 114/13 114/14 137/13 157/18 215/7 221/10 222/10 240/21 244/20 256/17 259/13 268/17 274/3
**frame [3]** 114/20 138/25 225/20
**framed [1]** 164/7
**FRANCISCO [2]** 1/17 9/4
**frankly [5]** 60/14 182/6 232/24 242/16 262/23
**fraternity [3]** 212/3 276/1 277/19
**freak [1]** 179/12
**free [1]** 261/23
**frees [1]** 154/23
**frequent [1]** 23/19
**frequently [3]** 89/4 90/5 90/9
**Friday [1]** 195/24
**friend [20]** 13/22 13/24 14/1 14/3 16/12 36/2 160/10 160/11 191/16 198/4 198/5 198/7 198/8 198/10 198/13 199/15 202/12 212/25 230/5 247/1
**friendly [1]** 213/1
**friends [21]** 13/6 13/10 13/14 13/15 13/18 39/18 89/25 122/19 123/19 191/13 212/23 212/24 213/2 213/3 218/14 224/18 224/22 228/20 248/20 248/21 253/5
**friendships [1]** 122/18
**frivolous [1]** 191/10
**front [4]** 7/11 99/16 232/2 234/9
**fruit [1]** 262/22
**fulfillment [1]** 22/10
**full [7]** 35/4 64/23 70/1 136/23 138/5 231/1 257/24
**fun [1]** 222/2
**function [1]** 192/18
**funding [2]** 26/10 27/2
**funds [2]** 279/9 279/13
**funny [1]** 247/17
**further [8]** 53/19 185/15 207/4 235/21 235/22 268/15 280/8 280/12


## G


**gained [1]** 138/10
**gains [1]** 18/4
**game [1]** 144/21
**gather [2]** 101/7 260/19
**gathered [5]** 35/23 63/20 73/19 86/17 239/7
**gathering [1]** 73/12
**gave [11]** 64/18 86/3 101/20 111/12 112/25 133/5 136/20 147/3 218/8 218/22 227/11
**gender [36]** 15/3 15/5 15/9 18/21 24/2 24/5 94/19 96/12 96/14 98/1 98/4 183/16 184/4 202/4 240/2 241/11 241/17 242/19 242/23 243/10 243/17 244/10 246/18 246/24 247/4 247/8 248/9 248/16 249/1 249/5 249/9 250/3 250/17 263/18 272/5 273/2
**genders [1]** 251/4
**general [9]** 8/23 82/25 96/5 128/14 137/23 173/1 195/23 237/18 239/11
**generally [7]** 26/7 36/23 118/25 119/1 137/22 190/19 214/15
**generated [1]** 72/18
**generically [1]** 276/9
**genitalia [2]** 21/11 21/16
**genuinely [1]** 199/4
**get [68]** 6/24 7/17 31/24 34/15 40/24 41/14 41/16 71/2 79/7 91/6 99/23 108/7 108/14 108/24 114/23 116/15 117/21 118/1 123/9 123/13 134/22 142/17 150/4 151/4 156/23 159/23 162/9 164/21 165/9 166/11 169/7 169/13 169/18 169/20 169/23 174/5 175/10 176/16 178/18 179/8 181/13 184/19 184/20 186/22 187/15 192/2 200/13 209/21 211/1 211/16 220/18 225/4 228/17 247/24 249/2 250/4 251/9 252/10 263/13 269/12 270/4 274/3 276/1 276/3 276/4 278/9 278/10 278/11
**gets [7]** 97/9 104/6 164/22 208/25 221/3 251/24 278/13
**getting [8]** 28/1 53/22 117/14 123/17 142/22 166/10 198/18 245/18
**girl [2]** 163/4 272/19
**girlfriend [3]** 122/20 125/4 126/20
**give [27]** 8/1 15/17 27/4 60/25 61/4 100/8 100/12 131/10 132/15 132/25 136/19 159/25 175/21 176/25 184/23 185/4 193/22 203/12 214/19 215/5 235/17 236/9 258/25 261/16 266/14 267/14 267/18
**given [15]** 17/12 74/19

## G


**given... [13]** 76/5 83/13 87/3 111/24 113/22 138/19 139/24 140/5 141/18 181/7 209/4 255/18 265/9
**gives [1]** 79/4
**giving [3]** 100/14 120/21 247/1
**glad [2]** 24/20 39/13
**gmail.com [1]** 280/21
**go [70]** 8/1 27/11 27/15 30/24 32/7 32/21 40/11 49/8 50/8 69/22 77/18 78/12 84/4 106/13 107/3 115/16 115/19 119/5 119/7 121/4 122/19 123/4 123/6 123/25 124/15 130/4 131/8 133/25 134/1 139/10 141/14 141/16 147/2 148/25 158/20 164/19 165/6 165/10 168/3 168/4 169/10 169/15 170/21 176/8 176/10 176/23 178/17 184/11 184/15 190/19 190/20 213/4 214/24 232/12 233/4 237/17 252/14 252/17 257/18 258/20 258/22 260/2 262/2 264/1 269/12 269/17 271/12 271/14 277/15 277/16
**goal [6]** 12/9 12/11 12/17 32/6 35/7 92/11
**goals [1]** 26/23
**God [1]** 147/6
**goes [13]** 33/7 48/21 53/3 58/14 79/1 148/6 170/20 170/21 172/18 205/9 269/18 271/10 277/3
**going [108]** 9/7 10/20 10/22 11/24 14/13 18/7 26/8 28/3 31/11 33/10 34/9 40/24 41/14 41/16 56/17 56/20 77/2 83/9 92/3 92/14 113/7 113/11 113/21 115/21 119/18 119/25 120/23 120/24 121/10 124/9 124/18 128/10 129/1 129/11 130/9 130/23 133/7 136/6 136/18 140/10 141/11 144/16 144/25 155/15 157/1 157/23 160/20 160/21 161/13 161/16 161/20 161/22 162/1 163/6 165/8 165/9 165/15 172/8 172/13 172/20 174/2 174/25 177/5 177/24 177/25 186/23 190/15 192/4 193/2 196/14 199/3 200/15 201/7 203/6 204/5 206/14 206/18 207/14 209/7 217/6 217/19 220/18 224/12 228/18 232/13 232/16 244/23 245/1 247/3 251/9 253/7 257/13 259/14 263/10 263/10 264/2 266/4 266/14 268/23 270/5 270/20 270/23 271/8 271/10 274/8 277/22 278/3 278/6
**gone [9]** 30/16 36/5 116/9 149/10 153/7 179/21 179/24 237/16 254/25
**good [61]** 6/10 6/13 6/20 6/23 7/5 7/25 8/8 8/24 13/6 13/14 13/18 13/22 14/1 14/3 16/12 21/24 28/22 28/23 29/2 29/2 29/11 29/13 69/17 69/18 70/17 82/16 89/25 90/15 95/10 107/4 123/7 130/14 138/13 140/23 145/11 169/9 174/18 174/22 175/9 175/10 175/15 175/19 176/2 184/20 184/23 185/5 185/6 191/23 193/18 199/5 204/18 208/7 231/18 231/18 252/24 260/12 263/17 266/5 270/15 277/25 279/16
**Google [1]** 264/11
**gosh [1]** 224/24
**got [46]** 65/6 66/10 75/17 85/23 89/23 90/19 100/17 103/11 112/21 127/22 130/7 136/13 142/11 150/22 157/4 162/24 167/18 169/4 169/11 172/4 175/8 188/3 193/11 196/14 197/11 211/24 212/5 212/18 221/15 221/25 223/15 227/2 229/18 231/3 241/15 250/21 251/3 251/5 258/3 258/23 264/6 268/12 268/13 268/14 277/13 277/14
**gotcha [3]** 8/8 245/18 245/18
**gotten [3]** 76/13 120/24 126/11
**govern [1]** 56/17
**grab [1]** 105/14
**grades [2]** 252/15 252/17
**graduate [1]** 273/25
**graduating [3]** 274/12 274/13 276/8
**graduation [2]** 274/4 274/4
**granted [1]** 54/24
**graphs [1]** 70/6
**Grayson [14]** 160/9 160/11 160/14 160/16 160/19 160/24 161/6 161/21 162/4 162/18 181/16 181/16 182/1 230/5

## G


**Grayson's [2]** 161/2 162/8
**great [6]** 21/12 74/5 85/17 213/22 230/9 264/3
**greater [1]** 123/20
**grind [1]** 119/11
**grinding [5]** 119/22 178/19 180/8 222/4 222/16
**group [3]** 33/22 34/25 276/2
**guaranteed [1]** 248/4
**guard [1]** 78/22
**guess [22]** 8/6 66/17 83/24 87/1 108/6 109/6 129/15 129/22 129/22 131/7 138/10 151/15 172/25 207/25 210/2 224/24 229/12 238/6 240/16 245/20 247/20 267/9
**guessing [2]** 16/13 247/20
**guidance [9]** 45/18 47/3 53/3 63/7 64/3 72/16 101/4 104/10 238/17
**guidelines [1]** 47/7
**guilty [12]** 29/23 30/1 117/18 229/21 230/10 230/24 231/8 241/2 248/13 269/16 269/16 277/15
**guy [6]** 98/15 131/8 154/2 154/5 170/25 179/20
**guys [1]** 250/12


## H


**had [188]** 11/6 11/10 12/25 21/10 22/22 26/12 26/14 26/24 30/15 30/21 31/9 35/20 35/24 36/5 36/5 36/10 36/12 36/14 36/15 49/16 49/16 49/25 54/21 54/22 59/5 61/19 62/11 62/15 62/24 68/18 69/6 78/9 78/9 84/17 85/1 85/11 85/24 86/5 86/22 87/6 89/5 90/1 90/15 90/16 90/21 91/7 91/16 91/24 94/7 94/7 95/23 95/24 97/7 97/17 97/17 97/19 97/20 98/13 98/13 103/1 104/18 106/1 106/6 107/6 107/24 108/14 108/19 111/16 111/24 112/4 112/13 112/16 113/6 113/11 114/12 115/20 115/21 116/9 116/10 116/16 116/16 117/2 117/2 117/2 117/20 117/25 118/7 119/8 120/23 121/18 122/7 122/9 124/3 124/12 125/23 125/25 128/21 131/5 132/21 133/3 133/16 134/11 137/23 138/13 138/14 138/21 140/8 142/6 151/8 154/3 156/11 157/13 158/4 170/23 170/23 172/20 177/21 178/12 179/21 179/24 181/2 181/3 181/4 181/7 181/11 182/15 183/21 185/14 187/22 188/1 188/22 189/7 189/21 190/3 191/20 191/23 192/16 195/16 196/16 197/21 198/8 198/12 202/12 203/14 207/10 211/20 212/3 213/6 213/8 213/23 214/8 218/8 218/15 218/16 218/23 220/22 221/5 221/11 221/25 222/1 222/8 223/18 226/23 229/20 230/18 230/19 231/1 231/9 232/16 232/24 234/23 235/4 237/14 240/8 240/8 240/18 245/4 251/7 255/19 267/5 267/6 267/6 267/7 268/22 270/10 270/15 271/23 277/23
**hadn't [2]** 133/24 181/5
**half [22]** 49/23 106/6 137/14 139/21 140/14 140/15 141/6 154/4 154/6 165/24 166/20 169/11 169/16 182/10 182/15 207/25 210/18 211/1 232/18 264/24 265/2 267/6
**halfway [1]** 172/4
**hall [16]** 8/25 93/20 98/8 105/20 111/13 125/11 125/13 125/14 125/24 139/11 143/24 146/25 208/15 212/13 212/14 222/13
**halls [1]** 212/18
**hand [4]** 7/12 186/17 186/17 217/6
**hand-in-hand [1]** 186/17
**handle [2]** 186/12 186/22
**handled [2]** 12/23 195/16
**handles [2]** 75/11 186/20
**hands [2]** 138/3 186/11
**handsy [9]** 115/10 116/15 120/17 120/18 121/1 121/5 164/9 164/10 228/12
**hang [1]** 250/8
**hanging [1]** 262/22
**happen [19]** 47/23 57/25 80/17 108/4 108/17 119/25 144/8 144/10 145/4 154/13 163/2 167/23 192/19 197/19 198/6 224/14 250/15 272/14 275/18
**happened [30]** 59/24 86/14 88/1 90/17 93/11 94/23 94/25 99/2 111/25 115/20 117/25 119/6 126/25 129/5 139/10 141/6

## H

**happened... [14]** 144/7 196/2 198/2 198/16 218/15 221/12 222/8 224/24 225/24 229/10 235/3 241/18 244/10 271/22

**happening [3]** 127/2 198/9 213/10

**happens [12]** 34/8 73/6 73/7 74/17 75/1 95/22 166/11 168/22 169/18 253/7 267/21 275/17

**happy [5]** 28/9 170/9 171/23 188/2 189/10

**harass [2]** 122/20 122/20

**harassing [1]** 92/16

**harassment [3]** 48/5 48/22 49/25

**hard [5]** 92/22 96/10 169/8 205/7 264/6

**harder [1]** 29/19

**hardest [1]** 263/7

**hardly [1]** 82/10

**harm [9]** 252/6 261/11 262/20 262/21 263/3 273/16 274/21 277/4 278/15

**harmed [1]** 122/14

**harmful [1]** 24/22

**HARTY [16]** 4/20 7/20 13/10 36/2 36/6 37/3 89/13 91/2 91/12 91/18 207/18 207/24 239/22 244/4 250/17 272/12

**Harty's [1]** 90/14

**has [53]** 8/9 11/1 13/20 25/6 27/12 29/4 30/17 37/3 51/24 54/10 55/13 72/10 72/12 74/9 74/18 75/13 79/24 80/21 82/14 95/6 115/5 122/21 123/1 135/13 136/4 151/6 153/7 154/22 161/8 174/6 183/23 183/24 189/1 190/10 192/21 204/16 206/8 206/12 234/8 246/20 246/21 251/13 252/5 254/20 254/21 255/17 261/20 262/1 262/18 263/16 264/11 271/3 273/9

**hasn't [3]** 50/24 191/8 251/23

**hate [2]** 163/19 204/12

**have [339]**

**haven't [11]** 59/15 165/20 174/2 174/4 176/13 186/9 188/22 193/13 210/10 210/11 213/21

**having [23]** 11/6 11/18 19/25 35/10 38/4 38/5 69/12 92/9 117/3 122/3 124/25 154/6 165/5 204/2 204/20 220/23 221/4 228/13 231/4 240/5 240/10 243/24 273/11

**hazing [1]** 278/10

**he [205]** 9/6 9/8 11/10 12/25 25/11 25/13 36/14 44/8 44/8 44/9 44/11 44/20 50/24 50/25 57/7 57/10 61/19 61/20 64/3 71/6 71/10 84/21 84/22 86/6 87/17 88/14 89/25 91/7 91/9 91/24 92/14 93/21 95/15 95/17 95/18 96/2 98/14 98/14 98/15 98/15 100/17 100/17 101/12 104/5 104/6 105/1 105/8 108/8 108/22 108/24 108/25 127/5 127/6 127/9 128/25 129/2 130/10 131/4 131/8 131/10 131/10 132/21 132/22 133/5 138/14 141/20 141/24 142/1 142/12 145/25 148/22 155/19 157/1 157/4 158/4 158/4 159/8 163/3 164/7 164/9 167/9 167/11 167/11 167/12 167/14 168/7 168/10 168/13 171/16 171/17 171/17 172/1 172/4 183/11 187/1 187/8 187/21 189/1 189/4 189/8 191/8 191/20 191/20 191/24 192/6 192/6 192/11 192/19 192/21 192/21 194/8 194/15 195/3 195/6 195/7 195/9 195/12 196/1 196/5 196/18 196/25 197/3 197/9 197/10 197/11 199/4 199/10 203/15 205/3 205/11 205/23 205/24 205/25 206/24 206/25 221/17 221/25 221/25 222/8 222/14 223/5 223/18 224/5 224/8 226/5 228/11 228/13 228/17 228/21 229/5 229/6 229/11 229/17 230/23 231/7 234/22 234/23 235/13 240/23 246/21 246/22 247/3 248/22 250/17 251/23 251/24 252/13 252/17 255/17 257/4 257/5 257/6 257/8 257/14 257/17 257/18 257/24 258/3 258/5 258/9 258/10 259/21 259/25 260/1 260/20 260/24 261/1 261/11 263/11 267/7 270/13 271/3 271/10 271/12 271/14 271/22 271/24 272/3 272/17 272/18 273/5 273/5 276/14 277/12 277/20

# H


**he's [25]** 9/7 20/10 28/12 50/22 64/1 89/21 100/22 102/3 130/12 145/24 145/25 145/25 156/20 164/22 199/19 205/2 220/18 225/22 226/9 243/6 246/23 248/22 253/11 270/13 274/25
**head [14]** 30/7 56/14 106/11 108/20 175/16 192/24 209/19 211/17 215/6 255/2 256/5 256/11 277/4 277/7
**headings [1]** 19/10
**hear [7]** 7/11 8/18 15/4 79/10 172/21 278/3 280/7
**heard [11]** 99/3 110/2 146/5 156/1 162/19 183/18 201/14 220/4 259/2 262/22 262/23
**hearing [179]** 1/12 12/23 30/16 30/19 30/22 30/25 31/5 31/9 31/10 31/12 33/6 33/8 33/9 33/10 34/11 34/21 34/23 36/6 39/23 41/15 47/17 53/14 54/8 54/14 55/6 55/8 55/11 56/6 56/25 57/8 57/19 58/9 58/23 60/8 61/10 63/4 63/9 63/20 63/21 63/24 63/25 68/1 68/9 68/11 68/12 68/20 75/15 77/20 78/5 78/7 78/8 78/14 78/21 79/13 79/15 79/23 80/17 80/20 80/22 81/3 81/9 81/11 81/24 82/2 82/4 83/4 86/23 88/15 90/4 91/3 92/2 92/17 93/14 93/17 94/12 94/17 96/8 97/18 97/21 97/23 100/21 100/24 101/11 101/13 101/17 103/17 105/25 110/11 110/16 114/13 114/14 114/20 114/24 116/5 122/4 122/5 122/7 137/10 137/11 137/12 137/14 139/22 139/24 140/11 141/6 145/21 150/24 151/11 152/17 152/21 155/1 156/7 156/11 157/5 157/19 159/3 159/4 160/16 164/23 164/24 165/2 165/15 165/22 166/18 167/10 167/13 169/15 169/16 169/20 172/14 172/16 172/20 172/21 178/10 182/14 183/12 183/16 186/23 188/22 199/25 200/1 200/20 202/3 207/25 209/8 213/8 213/15 214/20 214/21 218/21 219/10 222/13 229/2 233/4 237/12 237/13 237/15 238/25 239/7 239/9 239/10 240/21 244/20 245/2 245/16 255/19 256/18 259/14 259/23 264/23 265/4 265/8 265/21 267/21 268/8 268/20 269/12 269/17 269/18
**hearings [25]** 32/13 45/14 49/16 56/18 67/6 71/12 71/15 71/16 71/18 71/21 80/25 81/8 82/25 88/23 90/6 92/20 94/2 96/5 97/8 97/25 110/2 110/5 122/8 186/19 266/17
**heavily [2]** 119/12 220/12
**heck [3]** 141/5 255/18 259/14
**height [2]** 132/12 132/13
**held [2]** 202/24 207/1
**help [20]** 9/25 10/2 10/4 12/9 12/11 18/15 59/20 72/20 81/22 159/3 161/15 161/23 163/21 164/14 190/11 193/3 200/2 203/2 220/15 254/2
**helped [5]** 10/7 10/9 38/14 248/19 250/3
**helping [2]** 243/1 251/1
**helps [1]** 204/17
**her [143]** 49/7 50/24 60/12 62/9 64/23 68/3 69/13 84/18 100/10 105/20 106/1 106/4 106/5 106/11 111/24 112/13 112/16 114/3 115/15 116/19 116/20 117/3 117/3 117/4 117/11 117/22 118/2 118/4 118/19 118/21 118/24 119/8 119/8 119/8 119/21 120/14 120/19 120/21 120/23 120/24 122/19 122/22 122/23 125/5 125/24 125/24 126/1 126/1 127/2 128/17 128/21 129/3 135/14 138/1 138/4 143/8 143/10 143/13 143/21 144/20 144/22 145/1 145/1 145/11 146/2 146/11 146/21 147/1 147/1 147/4 147/12 147/19 147/22 147/25 151/4 151/12 152/13 153/16 153/19 154/6 154/6 154/12 161/9 161/10 161/23 162/10 164/5 166/7 166/12 166/17 178/22 178/22 179/3 179/6 181/7 182/15 182/20 198/8 202/23 203/18 218/14 219/3 220/2 221/12 221/22 222/1 222/1 222/20 222/24 223/6 223/10 223/17 223/18

## H

**her... [30]** 224/18 224/22 224/23 224/23 231/8 233/22 234/1 240/9 240/11 247/3 248/22 248/22 249/1 249/14 250/3 250/7 250/25 253/5 266/25 267/4 267/8 267/10 270/16 271/21 271/23 271/25 272/12 272/17 275/19 277/21

**here [63]** 6/6 6/14 7/9 7/10 8/20 8/21 9/8 19/5 21/2 22/9 22/17 22/24 26/4 29/25 37/19 48/8 63/11 66/10 75/18 95/14 102/23 103/3 124/9 124/25 130/12 132/21 138/3 138/22 140/9 141/16 143/8 146/5 154/25 162/4 166/7 166/12 167/3 183/4 189/13 193/22 203/23 204/22 220/22 236/2 245/17 247/21 248/2 250/5 250/13 250/15 251/12 260/20 260/22 262/22 263/18 264/2 264/4 265/16 269/6 272/20 276/7 276/14 278/7

**heroin [1]** 278/10

**hers [5]** 140/21 229/11 249/19 249/20 250/10

**herself [1]** 111/9

**hey [13]** 114/20 136/19 145/4 167/18 168/7 176/25 191/6 195/20 201/18 224/23 250/12 252/2 270/13

**high [5]** 20/17 153/5 153/16 182/5 182/7

**higher [5]** 14/25 27/22 29/16 214/2 263/6

**highlighted [2]** 150/18 152/12

**highlighting [1]** 150/18

**Hill [10]** 130/6 130/8 130/11 130/25 131/5 131/19 133/5 138/12 141/19 168/17

**him [89]** 11/7 13/22 13/24 13/25 14/3 25/10 36/14 64/3 66/15 84/23 90/1 90/16 91/4 91/5 91/9 96/25 108/21 132/21 133/5 142/2 148/17 148/17 148/21 168/4 170/23 187/15 187/19 187/20 187/23 187/25 188/2 189/4 189/6 189/8 189/9 190/2 191/19 191/24 191/25 192/2 192/4 193/1 193/2 196/1 196/3 196/7 196/18 197/2 197/8 199/2 199/7 199/8 199/8 199/10 199/18 199/18 207/1 207/15 222/4 222/5 222/16 222/16 223/12 223/18 224/25 227/23 228/7 229/21 230/10 231/8 241/2 246/22 246/25 248/13 250/18 252/4 252/14 252/15 253/2 253/6 253/15 261/1 261/14 270/11 270/13 272/15 272/17 272/19 277/21

**himself [2]** 66/11 66/15

**hips [2]** 119/21 178/22

**his [64]** 1/8 12/24 13/13 28/14 28/14 28/17 44/11 46/4 61/2 83/22 84/21 88/5 100/18 101/16 105/2 108/20 157/8 164/7 168/5 186/25 187/10 188/1 190/3 191/13 191/20 192/1 192/12 192/14 192/20 192/21 194/8 194/14 194/15 195/1 195/3 195/13 195/15 195/19 196/1 196/4 196/6 198/5 198/7 199/15 201/18 201/19 202/12 202/13 221/18 222/19 223/5 223/11 224/24 229/10 229/12 248/15 250/19 252/15 252/15 252/17 259/20 260/4 271/25 275/1

**history [10]** 32/2 49/19 92/9 133/17 147/24 201/18 214/17 220/5 231/4 231/5

**hit [1]** 272/23

**hold [62]** 13/13 13/13 14/2 14/15 14/20 18/5 18/5 20/8 20/8 21/9 21/9 66/20 68/22 68/22 78/15 78/18 122/17 148/21 148/21 159/16 159/16 167/18 168/8 184/7 187/10 187/14 188/1 188/8 188/23 188/25 189/6 189/15 189/17 189/18 189/19 189/22 189/24 190/3 193/23 194/4 194/5 194/7 194/9 194/10 194/12 194/13 194/15 194/17 194/18 194/20 194/22 194/24 195/1 195/3 195/13 195/15 196/1 196/15 196/16 197/4 212/12 252/15

**holds [2]** 190/1 194/1

**holiday [3]** 54/23 55/16 85/13

**holistic [2]** 229/24 230/3

**Holy [1]** 159/9

**home [1]** 224/19

**honest [6]** 92/8 204/7

## H

**honest... [4]** 256/24 265/6 265/13 265/24
**honestly [4]** 19/9 56/7 93/6 196/16
**Honor [50]** 6/7 6/19 6/25 8/23 9/12 9/14 15/21 28/3 37/9 43/11 49/6 50/22 57/10 64/1 64/21 65/3 65/5 65/12 69/9 99/12 99/13 102/2 104/13 104/15 105/10 105/16 106/18 113/21 124/8 128/3 180/17 185/1 185/14 193/15 207/4 207/13 207/15 217/4 231/12 231/13 235/16 235/21 235/25 236/8 255/24 262/15 264/20 265/1 266/9 276/5
**Honor's [1]** 275/6
**HONORABLE [1]** 1/13
**hook [1]** 228/18
**hooking [1]** 153/21
**hoping [1]** 174/5
**horny [1]** 120/16
**host [1]** 273/25
**hour [5]** 36/10 111/25 137/14 141/6 270/12
**hours [19]** 80/21 93/15 139/21 139/24 140/14 140/15 145/20 165/24 166/21 196/20 207/25 210/18 211/1 215/8 215/9 231/2 232/19 233/4 265/2
**house [5]** 117/11 191/14 191/20 192/12 202/13
**Houston [2]** 176/9 176/10
**how [127]** 19/16 25/9 29/8 29/9 30/4 30/9 30/14 30/19 31/15 31/23 33/25 34/2 34/5 35/13 37/3 38/13 40/3 40/13 49/3 57/9 57/21 57/22 61/8 61/15 63/11 63/19 66/16 68/13 70/3 71/7 73/4 77/14 78/4 81/7 92/1 94/10 101/25 102/10 102/17 103/13 104/18 105/1 108/4 108/6 108/17 115/21 122/14 123/1 133/25 134/22 137/18 137/24 140/16 140/19 142/19 144/12 146/11 146/15 146/17 148/20 148/22 149/15 153/6 159/2 162/8 162/9 171/11 172/14 172/21 172/25 173/1 187/1 197/8 197/19 198/5 198/19 202/13 208/17 208/19 208/25 210/14 212/8 214/17 214/20 214/24 215/4 216/23 222/23 223/4 223/12 225/3 225/25 230/16 231/2 231/7 231/8 231/16 231/17 232/8 232/10 233/4 236/19 241/1 245/7 245/8 246/6 247/9 249/3 249/4 249/22 250/18 251/19 253/3 253/4 253/8 253/14 253/25 255/15 258/5 258/10 263/9 272/2 273/4 275/6 275/8 275/9 276/23
**however [6]** 35/9 58/19 83/21 87/5 104/6 198/24
**HTI [1]** 19/20
**hub [2]** 10/21 13/3
**huh [25]** 16/18 21/18 74/16 144/2 173/22 179/23 186/24 194/11 196/11 202/2 206/23 209/13 211/9 214/5 218/6 218/10 218/12 218/25 223/1 224/7 224/20 230/25 234/21 236/13 267/23
**human [2]** 202/17 214/14
**hundreds [2]** 106/2 267/8
**hurt [1]** 171/4
**HUSCH [1]** 3/3
**hypothetical [1]** 259/21
**hypothetically [2]** 202/12 234/19

## I

**I'd [2]** 38/23 247/21
**I'll [11]** 53/20 96/17 99/11 153/1 153/4 162/11 243/1 248/17 256/24 259/20 265/6
**I'm [168]** 10/20 16/13 18/13 19/5 19/5 19/9 19/10 19/11 19/12 24/20 24/24 28/3 29/25 32/7 33/10 35/23 36/21 37/14 37/19 38/12 39/13 43/2 44/13 44/15 45/20 47/2 48/1 52/1 53/1 54/2 54/3 56/8 56/11 57/13 58/5 58/6 58/24 63/22 64/13 65/1 65/3 66/6 66/17 81/11 81/11 82/9 97/2 97/4 99/17 103/5 113/21 114/16 115/9 119/2 121/1 123/17 124/2 124/18 127/7 130/23 132/20 132/24 133/7 136/6 141/11 142/22 144/16 144/18 144/19 144/24 145/6 145/9 145/13 146/15 146/18 146/19 147/6 147/17 147/17 147/18 148/6 148/7 148/9 148/25 150/5 150/23 151/3 151/20 153/7 153/8 154/16 154/17 154/17 157/23 159/14 160/20 160/21 161/20 161/22 162/18

**I**

**I'm... [67]** 165/7 166/10 166/22 170/18 172/13 175/16 177/5 177/13 177/15 179/8 185/7 185/7 189/14 190/20 191/7 194/23 203/3 203/7 203/9 205/10 209/21 212/2 212/13 212/21 212/25 213/2 217/6 217/19 219/14 223/9 224/5 224/12 226/5 228/15 228/17 228/19 228/22 228/23 230/21 237/13 238/5 238/5 245/20 246/4 246/11 247/20 250/22 252/9 252/16 254/16 254/20 256/16 258/10 258/10 259/2 260/1 264/2 264/21 265/15 266/4 266/14 268/4 274/11 274/18 274/20 277/2 278/6

**i's [2]** 90/14 238/6

**I've [30]** 10/7 18/13 18/13 63/14 92/20 96/13 103/11 112/22 113/22 122/16 126/11 133/15 139/7 162/24 166/21 210/3 212/18 249/10 255/10 259/2 262/9 265/1 265/7 265/18 265/21 265/25 268/2 270/10 270/10 275/17

**idea [8]** 30/19 113/6 132/6 158/4 171/3 199/15 202/20 259/16

**identical [1]** 227/13

**identify [4]** 21/4 21/5 21/13 21/17

**identity [13]** 14/11 14/25 16/3 16/20 16/25 17/3 19/22 19/25 20/14 20/18 20/22 22/22 70/21

**if [226]** 7/12 8/24 9/8 11/6 13/25 14/19 18/8 21/1 21/6 21/10 21/16 24/4 27/1 28/14 28/22 29/1 30/11 34/3 35/20 36/14 42/17 43/18 44/6 47/7 47/18 48/16 49/15 49/21 49/24 51/8 51/11 51/11 51/15 51/17 52/22 53/1 53/10 54/15 56/4 57/23 57/25 58/2 58/3 58/3 58/6 58/7 58/10 61/15 62/22 63/14 63/22 70/8 72/7 73/8 74/3 74/8 76/10 76/14 76/19 77/2 77/10 77/16 79/8 79/21 80/6 81/14 81/16 81/18 82/12 82/13 82/14 91/9 91/14 95/6 98/18 100/4 100/12 102/25 103/3 104/8 115/18 122/7 122/19 123/22 124/20 126/9 126/11 128/11 128/12 129/16 129/20 129/21 129/21 129/22 131/9 132/21 142/1 144/6 145/14 146/4 146/5 150/5 153/9 156/6 156/14 158/20 159/13 159/16 159/20 161/8 161/23 165/14 173/3 173/6 174/6 176/16 177/6 183/21 184/7 184/15 185/23 186/2 186/3 188/6 188/14 188/20 188/25 190/19 190/20 190/25 191/6 191/10 191/22 192/16 200/8 200/10 200/13 201/1 201/4 201/6 201/7 201/10 201/20 202/12 202/16 202/19 202/24 203/3 203/8 204/15 205/2 205/3 205/24 206/18 206/24 206/25 208/3 208/5 209/3 209/4 209/8 211/4 211/23 213/2 215/2 217/16 219/17 225/18 229/20 229/20 231/8 233/6 237/13 240/9 240/25 242/25 244/15 244/23 245/20 246/2 247/10 247/21 247/23 248/7 249/2 250/25 251/6 252/15 252/16 252/19 252/19 253/14 254/8 254/10 254/14 254/18 258/16 259/2 259/10 259/10 259/21 260/3 260/13 260/21 261/8 261/10 262/3 265/11 267/18 268/1 269/11 269/23 270/3 270/20 273/21 273/24 274/2 274/15 274/16 276/8 276/21 276/24 277/2 277/18 278/13 279/8

**ignored [1]** 230/10

**iii [2]** 1/23 238/6

**illogical [2]** 241/1 248/8

**imagine [2]** 251/8 271/19

**immediately [4]** 108/18 169/1 196/9 214/21

**impact [1]** 255/15

**Impacting [1]** 19/19

**implement [1]** 71/14

**implication [1]** 52/3

**Implicit [1]** 16/3

**implied [1]** 128/12

**important [15]** 77/23 91/6 123/15 128/1 162/21 167/16 220/6 229/23 231/1 259/11 270/9 270/16 270/17 270/18 277/12

**importantly [3]** 124/3 235/2 242/14

**I**


**impression [1]** 266/16
**improper [3]** 64/23 239/17 274/18
**improperly [1]** 255/18
**in [658]**
**inability [1]** 33/3
**inaccurate [1]** 189/20
**inadvertently [1]** 76/13
**inappropriate [2]** 91/17 181/4
**inappropriately [1]** 213/1
**incident [16]** 49/15 111/13 125/8 125/10 125/18 129/4 143/4 143/24 153/25 155/9 182/2 182/11 218/2 220/9 220/11 222/12
**incidents [8]** 49/13 50/11 100/9 109/23 122/11 150/8 220/7 239/23
**include [5]** 18/15 37/22 37/22 48/17 73/12
**included [15]** 28/15 58/23 61/17 63/10 75/25 85/5 87/4 87/14 110/21 111/16 116/8 136/14 154/25 210/4 239/1
**includes [2]** 43/9 58/15
**including [6]** 59/20 74/12 202/18 222/16 250/7 268/4
**inconsistency [1]** 240/25
**inconsistent [2]** 116/19 239/25
**incorrect [4]** 187/12 187/21 189/5 196/15
**incorrectly [2]** 217/13 254/10
**incredibly [1]** 94/1
**incriminating [1]** 155/2
**Index [1]** 5/9
**indicate [2]** 172/7 219/17
**indicating [1]** 138/3
**indication [1]** 131/10
**indicative [1]** 273/1
**individual [4]** 10/21 80/25 108/2 257/21
**individuals [7]** 24/15 48/18 52/19 81/13 190/16 204/5 215/13
**indulging [2]** 262/16 267/20
**ineligible [3]** 188/6 188/13 197/1
**infect [2]** 250/1 276/2
**infected [3]** 241/17 273/9 273/11
**inference [3]** 36/22 241/11 242/24
**inferentially [1]** 242/24
**inferior [11]** 14/8 16/23 19/17 21/20 23/4 23/6 186/6 202/25 203/4 208/8 249/3
**inferiority [1]** 70/9
**influence [4]** 94/21 200/22 202/6 202/21
**informal [7]** 12/15 30/23 45/25 78/18 97/22 243/3 269/25
**information [26]** 35/23 56/2 68/9 73/16 82/22 86/3 86/17 86/18 100/9 103/5 114/3 114/7 132/22 133/6 138/6 186/14 187/22 189/21 190/2 194/18 197/24 203/11 213/10 220/20 220/22 235/2
**informed [9]** 15/3 15/9 24/2 75/12 90/8 95/10 206/14 210/19 210/24
**informing [1]** 189/6
**informs [2]** 119/8 119/24
**initial [16]** 60/2 60/5 60/11 60/12 60/16 61/3 84/3 84/3 99/17 100/4 116/20 135/10 192/13 192/15 220/10 261/4
**initially [10]** 32/19 107/8 107/18 107/22 116/24 121/2 183/3 197/2 221/12 231/3
**initiate [1]** 119/19
**initiated [1]** 130/16
**initiating [2]** 163/11 164/5
**initiation [1]** 126/7
**injunction [4]** 240/22 252/11 272/8 279/11
**injury [2]** 264/20 276/13
**insert [1]** 271/25
**inserted [3]** 221/18 223/5 224/24
**insinuated [1]** 90/1
**insinuating [1]** 31/1
**insists [1]** 80/20
**instance [6]** 11/5 98/11 115/9 190/13 238/14 268/18
**Instant [1]** 149/6
**instead [3]** 90/23 145/4 251/1
**institution [13]** 27/22 43/15 52/4 72/22 123/5 174/15 237/20 238/8 261/20 275/4 275/4 275/14 278/14
**institutional [27]** 12/10 22/6 22/10 34/9 39/3 39/6 39/17 52/7 54/5 54/24 56/21 58/24 73/9 73/22 73/25 74/22 75/13 76/2 87/9 129/3 131/15 132/9 133/19 151/24 186/11 193/7 261/25
**institutions [4]** 45/19 247/19 263/6 279/3

**I**

**instructed [2]** 26/8 223/17
**instructions [1]** 8/25
**instructive [1]** 249/22
**insufficient [2]** 220/17 220/19
**intended [3]** 51/25 190/11 191/1
**intentional [1]** 124/21
**intentionality [2]** 17/9 20/25
**intentionally [1]** 196/22
**interaction [5]** 171/5 197/10 201/13 202/16 202/21
**interested [3]** 209/3 209/4 214/10
**interesting [2]** 247/17 247/25
**interests [5]** 214/8 261/12 261/12 261/13 261/15
**interim [1]** 250/23
**interject [1]** 43/11
**internal [2]** 10/7 252/3
**internalization [7]** 16/25 17/3 19/22 19/25 20/19 22/23 24/1
**internalize [1]** 23/20
**Internet [1]** 24/18
**interpersonal [1]** 95/20
**interpret [2]** 57/22 268/1
**interpretation [16]** 40/15 40/20 40/25 41/19 44/3 46/4 53/2 62/15 62/25 104/12 189/19 250/9 258/16 259/20 260/4 269/2
**interpretations [1]** 40/8
**intervene [2]** 264/2 278/16
**interview [15]** 60/12 60/13 60/15 83/22 83/25 84/3 100/5 100/10 108/5 108/6 108/23 132/9 132/15 133/12 136/9
**interviewed [1]** 83/11
**interviews [3]** 73/13 74/8 83/13
**interwoven [1]** 49/15
**intimate [1]** 92/9
**intimately [1]** 94/3
**into [48]** 51/4 53/13 65/11 65/16 69/22 75/17 75/22 76/13 79/12 79/18 79/21 88/12 92/9 95/2 116/15 117/14 120/22 124/19 156/11 159/10 172/19 172/21 181/16 188/3 189/10 194/8 195/6 195/20 196/3 196/9 196/10 198/1 200/10 217/6 221/3 221/18 222/9 224/25 231/10 232/15 234/10 241/15 244/12 258/22 262/10 271/25 275/20 276/1
**introduce [13]** 46/5 62/20 67/25 101/12 102/9 110/15 157/13 159/10 183/15 237/13 244/12 260/19 260/25
**introduced [10]** 63/20 68/1 68/9 100/20 100/23 152/16 158/8 180/14 181/16 260/22
**introducing [6]** 61/5 61/10 65/2 122/3 183/14 239/12
**intuitive [4]** 217/13 269/11 269/20 269/23
**inure [1]** 272/6
**investigate [3]** 26/9 50/18 73/11
**investigated [1]** 50/14
**investigation [90]** 33/8 41/24 52/6 54/10 54/18 56/22 58/12 58/24 59/1 59/5 59/7 59/9 59/14 60/2 60/4 60/5 60/7 60/11 60/16 60/18 61/22 62/2 73/2 74/12 74/21 75/4 75/4 75/5 75/7 75/22 76/1 76/4 76/9 76/10 76/14 76/19 76/23 77/2 77/6 77/7 77/11 77/19 77/24 78/1 79/6 83/10 84/3 86/19 86/19 87/7 87/9 88/2 88/19 89/2 89/8 99/20 101/14 106/25 112/23 125/3 126/8 131/15 131/23 132/2 133/6 134/25 135/10 135/14 135/23 136/2 136/5 136/7 136/14 138/20 139/2 141/17 157/14 158/8 161/3 164/20 168/11 169/11 174/25 186/21 210/19 237/21 259/6 259/12 259/25 260/2
**investigations [6]** 88/24 96/6 97/8 186/18 186/20 186/22
**investigative [40]** 56/23 57/6 57/18 58/8 59/3 61/19 61/25 62/6 62/21 63/10 73/17 74/15 74/25 75/18 76/8 76/23 82/25 83/22 84/12 85/2 86/14 86/15 87/6 99/18 100/5 104/20 110/19 112/22 113/1 114/4 114/10 114/15 116/20 135/21 236/25 239/1 268/7 268/11 268/13 269/22
**investigator [25]** 54/20 56/8 60/19 61/13 73/9 73/10 74/23 75/2 86/18 88/15 100/3 100/5 132/23

## I


**investigator... [12]** 133/13 135/12 135/13 135/20 137/3 137/5 187/14 195/16 269/8 269/10 269/13 269/14
**investigators [2]** 8/13 8/14
**investigatory [2]** 133/11 135/6
**invite [2]** 202/13 211/21
**invited [6]** 132/8 132/15 134/25 158/12 169/12 212/4
**invoke [1]** 7/7
**invoked [1]** 8/9
**involved [17]** 11/10 33/20 52/19 55/3 82/21 108/14 125/3 164/22 172/24 186/13 209/24 210/6 211/6 226/13 247/15 264/17 270/1
**involvement [3]** 35/20 200/1 200/18
**irredeemable [2]** 163/20 164/1
**irregularities [2]** 83/7 246/12
**irregularity [1]** 242/11
**irrelevant [1]** 157/22
**irreparable [11]** 252/6 261/11 262/20 262/21 263/3 264/20 273/15 274/20 276/13 277/4 278/15
**Irrespective [1]** 36/25
**irritated [1]** 178/12
**is [633]**
**isn't [7]** 78/22 106/21 116/25 155/3 180/12 236/20 262/11
**isolate [1]** 18/16
**isolation [1]** 256/21
**issue [18]** 46/8 47/12 72/17 88/9 104/7 129/2 155/18 193/23 196/20 197/13 220/17 241/21 245/10 249/10 262/3 267/19 274/21 277/7
**issued [2]** 75/19 76/8
**issues [12]** 10/2 36/25 37/2 72/2 124/25 201/21 201/23 213/24 220/5 264/1 264/4 264/17
**issuing [1]** 177/8
**it [590]**
**it's [189]** 9/18 16/7 17/22 17/22 19/13 19/16 20/13 20/21 21/1 21/1 21/12 22/13 22/15 22/15 22/19 24/18 27/5 28/7 28/22 28/24 29/1 29/2 29/12 29/13 29/13 29/14 29/22 32/2 32/12 33/19 34/1 34/10 35/15 35/17 37/16 38/19 42/20 43/23 43/23 44/6 44/6 44/15 45/11 47/9 50/10 50/15 50/20 51/11 51/12 51/15 51/17 52/6 55/16 56/15 58/2 58/3 58/3 58/4 61/23 63/15 63/18 64/2 64/3 64/23 64/24 64/24 69/5 71/4 72/18 72/21 72/21 73/10 75/10 75/21 77/2 77/3 77/23 78/11 79/3 80/11 80/19 91/6 92/22 93/6 95/2 95/23 96/14 96/15 97/11 102/17 103/20 116/11 119/24 122/16 122/17 122/24 123/3 123/5 123/17 124/21 132/12 133/11 134/4 134/11 135/7 135/8 149/6 149/10 152/4 154/18 154/23 158/16 158/23 162/10 166/10 167/16 173/11 179/6 179/11 180/2 180/4 185/24 186/2 190/11 190/21 190/25 191/10 198/25 201/10 202/19 208/4 210/6 210/16 210/17 211/22 212/5 214/17 216/25 223/9 223/10 231/22 238/5 238/18 238/22 239/3 239/17 239/24 241/19 242/10 242/18 242/20 242/21 242/22 244/5 244/9 244/11 244/25 245/9 245/10 246/24 247/17 247/25 249/21 249/24 253/23 254/17 254/18 255/11 255/20 256/25 257/1 257/4 259/10 260/3 264/4 264/15 265/2 265/10 268/1 269/1 269/20 269/23 272/21 272/22 272/22 273/15 273/16 276/24 278/15
**its [6]** 27/12 55/10 72/2 190/10 258/15 258/15
**itself [7]** 72/21 79/15 81/11 171/17 242/19 248/8 264/15
**itty [1]** 243/22
**itty-bitty [1]** 243/22
**IX [85]** 9/23 10/4 10/7 10/11 26/4 26/19 28/5 28/25 30/5 31/5 33/6 36/18 37/21 43/3 45/6 46/18 47/8 47/13 50/5 50/13 50/13 50/19 51/7 51/8 51/16 51/22 52/5 56/25 65/19 65/21 65/23 71/12 71/15 71/16 71/18 71/20 72/5 72/13 72/16

**I**

**IX... [46]** 72/18 73/7 73/22 73/24 81/9 82/25 83/4 83/5 88/23 95/18 96/5 96/8 96/23 97/8 97/25 106/25 132/2 132/23 135/9 135/11 142/5 159/23 164/24 165/2 173/3 173/7 177/4 186/10 188/21 190/21 199/25 200/1 200/20 208/20 214/15 231/20 237/1 248/3 251/9 261/22 263/6 269/18 273/10 277/14 279/4 279/15

**J**

**JAMS [2]** 34/14 89/19
**Jane [75]** 11/19 60/1 60/17 83/4 83/18 83/24 84/17 85/6 86/2 87/20 88/6 93/13 98/3 98/10 98/10 99/5 101/24 103/3 104/24 105/19 105/22 125/16 125/22 127/7 127/8 127/9 127/10 128/21 133/17 134/15 136/5 136/17 138/21 140/5 140/18 142/18 145/16 148/6 148/8 148/8 149/21 150/14 151/17 160/10 160/11 161/8 161/14 161/15 163/10 163/20 164/1 170/9 171/18 172/1 177/21 190/13 191/13 191/20 192/3 192/12 197/15 197/18 199/13 203/15 206/2 234/22 253/5 258/4 259/21 261/14 261/17 261/17 262/2 264/24 266/18
**January [25]** 41/3 41/4 41/6 41/11 53/25 55/19 87/4 87/12 87/13 88/10 100/18 101/21 110/18 127/17 128/4 128/16 158/23 159/2 159/4 159/5 159/7 164/24 165/15 187/3 194/8
**January 11th [6]** 41/3 41/4 158/23 159/2 159/4 159/7
**January 12th [2]** 41/11 101/21
**January 12th that [1]** 41/6
**January 14th [2]** 187/3 194/8
**January 24th [2]** 53/25 100/18
**January 24th to [1]** 110/18
**January 24th, both [1]** 87/13
**January 26th [1]** 88/10
**January 28th [3]** 159/5 164/24 165/15
**January 3rd [1]** 55/19
**January 7th by [1]** 87/4
**Jasonik [1]** 17/16
**JEREMY [8]** 4/15 7/16 7/18 167/9 167/17 185/17 185/23 215/14
**Jerson [4]** 161/10 161/16 163/2 163/6
**JESSICA [6]** 4/5 7/4 7/19 9/18 140/8 215/14
**job [14]** 25/1 42/2 42/5 81/13 90/12 97/5 185/24 186/3 205/11 208/4 252/24 274/3 276/3 276/4
**JOHN [46]** 1/4 4/10 6/7 7/23 7/24 48/8 48/8 84/20 86/11 88/5 93/18 94/23 95/9 98/10 99/5 104/22 104/23 105/1 105/5 105/13 161/6 187/7 190/14 190/17 191/7 191/9 191/12 194/7 195/19 196/22 196/25 197/8 198/4 201/17 203/16 203/18 204/25 224/24 226/24 233/19 251/7 259/23 260/23 262/1 262/3 273/12
**joining [1]** 155/13
**joke [1]** 130/9
**Jones [1]** 89/13
**JR [1]** 1/8
**judge [57]** 1/13 7/4 7/6 9/3 9/10 31/11 33/10 33/11 34/22 45/8 46/3 53/20 56/13 57/6 64/15 69/4 78/16 89/4 89/20 89/20 92/13 103/8 104/4 105/13 112/8 132/20 133/1 149/4 156/20 157/1 166/21 185/17 203/13 215/18 226/18 230/13 235/12 235/22 239/21 246/8 246/18 246/19 247/13 250/6 250/8 251/21 252/23 256/22 263/2 263/24 265/24 266/7 266/11 267/15 267/20 276/17 277/6
**judge's [1]** 250/9
**judges [5]** 34/15 35/18 40/12 40/13 45/13
**judgment [5]** 23/9 23/13 23/14 133/2 256/4
**Judicial [1]** 280/13
**jump [2]** 92/15 246/11
**Junior [1]** 8/6
**juror [1]** 231/24
**jury [4]** 146/4 146/5 233/8 263/22

## J


**just [199]** 7/10 7/10 7/11 11/4 13/13 14/20 14/20 15/11 16/7 20/21 21/9 30/22 30/25 36/6 36/14 36/22 37/14 38/12 40/16 42/5 42/20 43/11 47/3 47/3 48/16 49/22 50/2 50/19 50/22 51/15 53/2 57/2 57/7 58/6 62/22 64/13 64/24 66/20 69/5 69/12 69/13 69/20 70/12 72/13 73/3 73/5 74/4 76/7 77/11 78/7 78/20 79/5 80/10 80/12 82/24 85/24 86/16 87/24 88/8 91/4 91/5 96/4 96/25 97/7 97/22 104/9 107/20 108/6 111/9 116/16 119/1 119/25 120/9 120/23 122/24 123/22 124/1 124/20 124/23 125/13 128/14 132/1 132/19 132/25 134/1 134/8 135/1 137/22 138/7 138/19 139/8 139/18 143/21 144/25 145/9 146/21 147/3 147/11 147/17 147/18 148/12 148/17 148/21 150/2 150/5 151/4 153/4 153/6 153/9 153/14 161/18 162/8 162/10 164/19 168/7 172/18 176/22 179/7 179/19 180/4 180/7 180/22 182/25 183/4 183/13 185/4 189/12 191/7 193/19 193/19 193/20 193/24 199/24 200/4 200/12 201/10 205/10 205/10 207/15 209/21 211/25 213/2 213/17 214/4 216/1 216/7 217/2 219/25 221/17 223/5 223/6 224/24 225/22 226/12 226/15 228/15 228/21 231/19 233/8 233/17 235/17 236/17 237/3 237/4 237/23 242/10 242/18 243/2 244/3 244/8 244/11 247/2 249/24 254/16 256/20 256/24 263/24 266/14 266/15 267/9 267/11 267/19 267/19 270/19 271/11 271/18 271/24 272/10 273/16 274/20 276/8 276/9 277/2 277/16 278/1 278/4 278/9 278/20 279/14

**justice [1]** 27/8

**justification [3]** 243/8 243/9 248/13

**justify [2]** 66/16 248/12


## K


**keenly [1]** 32/7

**keep [19]** 92/14 96/11 146/14 162/16 179/10 183/25 184/3 193/3 198/25 204/14 204/18 236/17 245/3 245/18 246/25 247/18 247/25 278/17 279/2

**keeping [2]** 232/9 261/15

**kept [3]** 205/24 220/23 242/17

**key [2]** 231/5 259/17

**kick [2]** 271/4 277/21

**kicking [1]** 215/17

**kid [4]** 55/25 66/10 270/8 270/10

**kids [3]** 270/1 270/18 277/14

**kill [1]** 120/24

**kind [43]** 10/20 13/5 31/16 32/5 33/10 40/9 72/25 73/3 73/20 78/20 80/10 83/9 90/1 106/11 108/20 111/9 125/2 128/12 131/7 131/8 162/8 180/11 198/18 202/21 206/8 213/17 214/10 214/16 218/16 221/3 222/1 222/5 231/24 232/15 238/14 243/22 247/17 251/3 251/4 265/9 265/10 273/9 277/16

**kinds [2]** 33/12 241/22

**kiss [8]** 117/4 118/4 120/14 143/13 146/21 147/15 163/10 164/5

**kissing [4]** 118/24 147/2 147/12 178/15

**knew [8]** 126/25 127/1 177/4 213/13 228/18 254/5 254/5 255/14

**know [150]** 13/25 14/13 19/10 19/13 25/9 28/14 30/4 30/9 30/11 30/21 32/1 34/18 35/13 38/13 38/15 40/4 56/7 56/11 60/10 60/22 61/15 63/14 64/11 67/4 67/15 73/1 78/11 84/1 84/14 95/6 97/7 102/16 102/17 103/15 109/4 115/24 126/11 129/16 129/20 129/21 129/23 129/24 133/25 134/17 134/21 142/5 142/9 142/10 149/13 149/15 150/18 151/10 151/11 152/2 152/11 153/16 158/15 159/13 159/14 159/17 159/20 159/21 160/7 160/8 162/9 162/22 163/8 163/18 164/3 164/17 164/23 164/25 165/14 167/16 167/25 170/6 170/6 172/11 172/12 173/3 173/6 174/6 174/9 174/10 175/1 175/13 177/6

## K

**know... [63]** 184/5 184/7 184/8 184/9 185/8 185/9 185/10 185/11 185/12 188/2 191/22 195/3 195/12 195/15 200/14 201/8 201/15 205/23 206/25 207/2 209/18 213/9 213/11 216/23 226/6 232/4 241/21 243/25 244/6 245/12 246/9 248/4 248/6 249/2 249/7 250/2 250/8 250/22 251/2 253/8 254/4 254/18 255/18 256/2 256/10 259/18 262/8 262/8 263/25 265/19 269/7 269/9 269/25 270/7 270/18 271/4 271/6 271/9 271/18 272/22 273/13 274/8 276/23
**knowing [2]** 117/13 172/25
**knowledge [1]** 246/8

## L

**lab [1]** 181/10
**labeled [1]** 253/2
**lack [3]** 18/14 33/2 225/23
**lady [1]** 277/20
**land [1]** 28/13
**language [2]** 249/13 249/14
**laptop [1]** 137/1
**large [1]** 35/13
**largest [1]** 268/4
**last [22]** 13/11 15/4 15/12 16/7 16/11 25/10 30/20 30/23 55/12 82/19 97/18 152/20 158/20 195/6 195/10 195/12 207/15 214/18 251/14 261/7 265/15 271/7
**lasted [1]** 93/14
**late [4]** 169/5 178/4 211/20 256/5
**late-day [1]** 211/20
**later [16]** 54/8 61/22 108/23 109/19 112/3 125/19 127/1 127/22 127/24 143/10 219/4 223/20 228/21 230/1 259/9 272/20
**Laura [1]** 89/13
**law [19]** 1/23 12/16 38/1 50/16 50/17 63/4 72/17 72/21 177/5 177/6 177/12 183/19 243/21 248/7 263/1 269/3 269/4 269/7 276/16
**lawsuit [3]** 128/9 172/5 172/8
**lawsuits [1]** 263/15
**lawyer [13]** 67/4 101/1 108/14 108/19 109/6 128/1 130/12 130/21 131/2 131/19 138/13 138/14 260/20
**lawyer's [1]** 260/21
**lawyers [6]** 8/12 8/14 45/13 138/11 139/1 266/16
**laypersons [1]** 45/13
**lead [2]** 51/4 197/25
**leaders [1]** 12/12
**leading [4]** 13/5 106/18 113/23 180/17
**learn [1]** 56/9
**learned [4]** 135/13 184/2 203/15 244/3
**learning [1]** 18/4
**least [15]** 9/23 30/15 35/7 35/14 44/1 62/24 123/24 126/19 128/1 215/9 227/3 241/10 243/8 246/20 263/10
**leave [4]** 81/24 132/23 217/19 279/14
**leaving [2]** 106/13 183/4
**led [1]** 198/2
**LEDBETTER [30]** 4/5 7/4 7/19 9/18 9/19 14/6 15/11 64/17 69/17 76/7 93/16 99/16 104/18 114/12 166/9 166/12 172/24 183/25 186/18 200/6 201/15 201/22 212/9 215/14 215/19 238/23 243/2 248/19 264/13 273/6
**Ledbetter's [3]** 5/4 186/8 208/11
**Lee [1]** 8/22
**left [6]** 108/18 120/4 153/2 161/9 179/6 264/22
**legal [2]** 12/25 28/5
**legitimate [2]** 272/8 276/22
**legitimately [1]** 153/8
**legs [2]** 221/17 255/19
**less [4]** 28/1 137/1 211/16 249/24
**lesser [1]** 27/19
**let [44]** 31/8 47/6 77/8 95/5 95/12 96/25 99/19 109/2 109/2 111/11 124/23 126/11 135/18 138/17 141/16 141/23 143/11 145/15 145/23 150/2 152/1 153/19 153/23 157/17 159/3 160/23 165/13 175/2 188/2 195/18 219/25 234/18 236/2 239/14 250/14 251/11 251/13 252/14 252/14 256/12 261/8 266/22 267/9 270/5
**let's [25]** 30/4 33/6 42/1 55/24 59/24 68/10 69/23 73/5 92/8 102/20 125/2 130/4 139/8 146/14 147/9 152/23 162/16 164/18

## L


**let's... [7]** 205/10 221/7 226/15 230/4 234/19 237/17 239/16
**letter [37]** 12/4 25/14 25/17 25/23 26/6 26/11 54/21 56/2 56/3 56/8 56/14 75/12 86/3 86/6 87/23 88/11 101/20 107/4 123/7 142/2 155/17 158/15 158/18 158/24 159/7 168/19 174/18 174/22 175/8 175/10 175/19 184/20 184/23 185/5 185/6 246/3 260/9
**letters [2]** 26/2 164/22
**level [4]** 21/11 35/8 232/18 255/17
**liable [1]** 274/14
**licensed [1]** 9/6
**lie [2]** 144/24 206/22
**life [12]** 122/17 123/3 123/12 123/23 124/1 162/25 163/15 212/3 217/22 248/25 265/25 275/23
**light [2]** 71/3 219/9
**like [119]** 7/6 15/22 19/8 23/25 24/11 25/21 37/10 37/11 43/19 46/8 51/12 53/21 57/7 58/22 64/2 64/3 66/5 66/8 66/13 66/13 66/18 66/25 69/10 71/7 74/4 80/13 81/14 98/14 111/6 115/10 115/20 115/20 118/7 118/23 120/10 121/7 126/14 126/15 127/10 127/23 128/6 131/16 133/25 134/12 137/24 138/3 138/3 139/15 147/4 149/6 150/7 150/17 151/3 151/5 153/10 153/15 153/20 153/21 157/5 157/23 160/10 161/11 162/8 162/9 162/23 162/25 163/2 163/15 167/14 170/18 172/20 174/4 177/7 178/22 179/4 190/22 196/17 197/24 198/15 198/19 200/17 202/16 204/12 207/6 210/17 210/21 211/11 214/7 217/25 219/20 225/1 228/22 231/24 233/8 233/18 234/16 238/15 240/17 243/3 244/8 246/5 246/21 247/3 249/11 249/20 250/1 253/23 255/5 255/12 262/12 266/20 267/21 267/25 269/20 269/25 270/6 270/13 271/14 271/17
**likelihood [2]** 41/16 262/19
**likely [3]** 20/25 261/10 262/11
**likewise [1]** 24/1
**limit [8]** 48/20 63/2 63/9 63/23 63/24 238/24 239/8 239/9
**limited [3]** 61/2 226/9 226/12
**Limiting [1]** 32/11
**limitless [1]** 32/18
**limits [2]** 32/13 63/19
**line [4]** 124/24 128/2 132/20 234/8
**lines [2]** 200/11 219/15
**LinkedIn [1]** 214/7
**list [2]** 35/3 35/4
**listed [1]** 248/22
**listen [3]** 180/5 232/10 232/18
**listened [4]** 139/21 166/21 265/2 265/7
**listening [3]** 215/19 230/22 232/23
**literally [5]** 130/25 173/18 251/24 265/18 265/20
**literature [6]** 17/13 17/15 70/19 70/19 70/20 70/20
**litigated [2]** 253/12 253/16
**little [31]** 11/14 13/9 16/11 31/9 53/4 57/11 71/24 72/25 73/20 75/17 78/4 86/25 89/10 89/24 91/25 95/16 114/24 124/25 146/14 170/18 176/2 177/4 178/9 212/1 228/21 234/19 243/22 244/3 246/19 258/24 279/3
**live [4]** 162/23 162/24 162/25 163/15
**lived [1]** 125/16
**LLP [2]** 1/23 3/3
**loaded [2]** 36/15 75/22
**local [2]** 6/8 6/11
**log [1]** 79/23
**logical [3]** 241/3 248/6 248/12
**logically [1]** 248/11
**logistics [2]** 11/4 223/6
**lonely [1]** 228/20
**long [21]** 49/23 51/4 63/13 77/25 80/8 80/11 94/10 105/1 115/21 135/18 171/11 204/3 208/17 210/14 210/18 215/4 232/16 233/5 260/24 262/9 267/21
**longer [1]** 268/8
**longitudinal [1]** 18/14
**look [28]** 16/13 42/17 42/18 57/23 119/24 134/2 135/6 153/6 156/14 168/7 168/19 188/3 189/10 196/3

## L


**look... [14]** 196/9 196/10 198/1 217/11 240/25 243/21 244/15 250/12 255/3 262/15 262/16 263/5 269/23 279/11

**looked [9]** 64/22 102/18 155/25 193/13 196/1 210/13 220/8 229/24 230/3

**looking [23]** 16/14 19/5 19/9 19/10 19/12 42/21 43/2 63/22 71/3 99/17 106/5 148/25 157/21 157/23 194/15 194/17 194/23 194/24 198/24 201/2 222/11 228/15 232/8

**looks [6]** 131/16 150/17 151/4 153/15 162/23 211/11

**lose [1]** 27/2

**loss [4]** 273/14 273/18 273/19 274/22

**lost [2]** 254/5 274/9

**lot [31]** 40/6 62/1 72/18 72/18 87/1 123/16 134/4 135/17 137/25 139/8 147/20 147/24 149/2 155/14 161/12 161/12 163/3 166/1 166/3 174/12 220/12 229/2 231/2 234/4 246/19 255/18 260/8 260/9 262/23 262/24 278/16

**lots [1]** 26/2

**loud [1]** 15/24

**loudly [5]** 142/21 143/6 143/19 143/20 144/10

**love [2]** 162/23 204/6

**loved [1]** 151/11

**low [3]** 18/7 204/14 262/22

**low-hanging [1]** 262/22

**lower [12]** 14/11 16/20 17/3 17/7 19/22 19/25 20/25 21/1 21/1 22/22 23/9 23/13

**lunch [11]** 36/5 81/17 90/14 90/15 91/2 91/8 213/4 213/6 213/10 213/11 213/15

**lunches [2]** 200/17 213/16

**lying [2]** 151/12 265/3


## M


**ma'am [2]** 9/1 17/1

**made [39]** 19/4 27/13 56/21 57/2 58/19 67/1 71/6 92/1 94/8 95/1 125/22 136/4 138/8 163/20 163/25 165/2 165/17 168/20 172/8 173/6 189/12 192/16 193/2 196/13 196/17 198/21 199/2 214/16 225/3 236/23 237/3 237/5 241/13 250/18 250/19 260/20 261/19 261/25 271/23

**main [2]** 1/24 238/19

**majority [1]** 70/23

**make [69]** 11/1 11/2 11/23 12/5 19/20 24/7 33/14 38/24 39/3 40/11 41/9 42/2 45/15 69/5 71/12 71/20 73/3 74/20 80/12 80/21 90/10 90/12 91/16 91/18 91/23 92/11 97/4 119/14 124/24 138/9 138/17 145/1 145/11 154/19 154/19 156/16 159/24 165/10 167/12 171/11 180/8 186/15 190/20 199/18 199/18 200/12 201/5 204/4 206/13 209/21 211/5 226/22 228/15 232/5 232/9 241/3 251/11 258/5 259/1 261/8 261/9 262/13 262/14 266/10 266/15 267/17 269/10 269/15 273/16

**makers [2]** 216/5 216/8

**makes [12]** 29/14 29/23 30/1 39/23 128/25 131/9 153/22 156/20 201/3 228/23 248/9 264/10

**making [23]** 10/13 22/10 29/5 32/8 66/19 71/8 81/8 81/23 90/20 92/25 126/4 126/20 132/4 145/5 146/18 200/4 200/19 200/23 213/17 269/1 269/13 274/21 275/1

**male [46]** 16/19 17/2 17/6 18/20 19/20 19/21 21/4 21/10 21/13 21/15 21/15 21/16 21/20 21/20 21/22 22/3 22/4 22/6 23/24 24/10 25/4 30/16 30/19 30/21 30/21 30/24 30/24 31/1 70/9 70/15 70/21 70/24 96/9 96/18 97/15 97/17 97/17 97/19 97/20 97/24 97/24 166/24 167/4 173/7 199/19 235/14

**males [21]** 14/6 14/8 14/11 14/17 14/24 16/17 16/22 20/2 20/11 20/23 20/24 22/10 22/15 22/16 22/21 22/22 23/4 23/19 24/8 31/3 70/14

**males' [1]** 24/21

**man [3]** 243/5 247/15 277/20

**manage [1]** 272/2

**managed [1]** 32/9

**management [1]** 95/19

**mandated [1]** 259/14

## M


**manifest [1]** 264/15
**many [13]** 30/4 30/9 30/14 30/19 37/3 41/2 42/8 70/3 137/18 142/19 159/2 208/19 273/13
**mar [1]** 273/12
**MARTINEZ [2]** 1/17 9/4
**masks [1]** 280/9
**massive [1]** 68/8
**material [12]** 36/15 43/9 54/19 61/17 73/18 74/12 75/3 76/3 87/5 90/19 90/22 90/24
**materially [1]** 23/24
**materials [12]** 11/2 74/10 84/18 84/22 85/3 85/4 90/8 90/11 91/23 138/21 155/1 257/25
**matter [12]** 9/3 9/22 11/19 13/12 28/16 29/13 29/14 50/5 138/24 201/10 263/9 280/7
**matters [8]** 10/1 12/25 27/13 28/25 45/6 49/17 50/14 55/15
**may [26]** 8/17 9/12 15/19 15/21 18/20 37/22 38/2 43/4 48/4 48/4 53/13 63/19 67/21 84/6 95/16 105/11 105/14 105/16 136/23 143/11 150/21 185/16 201/11 207/5 217/4 280/15
**May 2023 [1]** 95/16
**maybe [10]** 86/8 115/22 156/11 202/19 251/6 252/4 255/2 258/6 263/22 270/12
**Maymester [1]** 95/16
**me [162]** 7/22 8/1 9/10 15/22 16/18 20/20 23/9 31/8 33/19 34/4 34/11 41/1 47/6 53/12 54/2 57/3 57/4 62/18 63/1 74/3 77/8 81/10 84/15 99/16 99/19 100/4 101/20 101/24 101/25 102/10 103/11 103/12 106/7 106/8 108/22 108/24 109/1 109/2 109/2 111/11 118/6 119/8 119/10 122/20 123/16 124/20 124/23 124/25 126/11 127/4 127/10 132/16 134/23 135/18 136/19 137/6 138/17 139/7 141/16 141/23 142/1 143/11 144/14 144/15 144/20 145/15 145/17 145/23 145/25 146/1 150/2 150/18 150/22 150/24 152/1 152/16 153/9 153/14 153/19 153/20 153/23 154/2 154/3 154/3 154/8 157/17 159/3 160/23 161/7 162/10 163/19 163/21 164/14 165/13 171/2 172/20 175/2 178/19 182/23 185/23 186/3 191/8 193/22 195/18 198/16 198/17 201/24 203/2 203/8 204/7 205/4 206/1 206/9 206/12 206/17 208/1 208/5 212/11 213/19 217/10 217/14 219/22 219/23 219/25 223/10 224/9 224/12 227/8 229/18 233/19 234/18 235/17 236/2 236/9 239/14 239/24 241/2 242/16 242/17 242/18 247/17 248/9 251/13 252/9 252/10 252/16 253/21 254/2 254/12 256/12 259/3 263/22 265/13 266/6 266/13 266/24 267/9 269/20 270/16 272/4 277/9 279/3
**mean [37]** 9/22 20/20 77/4 85/15 110/4 130/23 147/4 148/7 156/2 168/5 174/3 190/19 191/6 212/16 227/17 239/22 239/25 240/6 240/8 242/15 245/12 245/16 247/14 247/23 250/4 252/13 252/23 252/25 255/3 255/9 255/17 256/7 261/19 268/10 268/21 270/7 271/3
**meaning [2]** 47/8 198/25
**meaningful [3]** 18/16 251/17 263/18
**meaningless [2]** 260/3 261/6
**means [7]** 8/9 63/23 76/8 90/7 198/1 206/22 212/17
**meant [6]** 66/7 72/20 145/16 150/7 198/25 204/14
**media [1]** 149/6
**mediation [1]** 97/22
**meet [2]** 51/13 66/8
**meeting [13]** 36/4 36/5 36/11 78/15 79/12 81/19 108/6 108/8 108/18 133/20 187/5 213/10 220/23
**meetings [2]** 78/9 79/14
**member [13]** 35/8 35/11 36/18 37/4 71/16 89/21 90/3 208/19 208/22 209/3 211/3 213/7 235/13
**members [45]** 13/7 31/6 33/7 33/13 35/1 35/2 35/6 35/9 35/10 35/14 35/21 37/23 38/4 38/5 38/16 38/22 38/25 39/14 39/19

## M


**members... [26]** 39/22 39/22 89/11 89/12 89/16 90/5 138/10 167/4 173/2 209/1 215/11 215/17 216/7 216/17 216/21 232/25 235/6 235/9 235/11 243/24 243/25 244/1 244/2 244/7 247/6 248/21
**memory [5]** 15/18 15/19 15/25 37/17 157/21
**men [25]** 18/21 18/24 19/16 24/4 29/5 29/23 29/24 30/1 30/4 39/10 167/7 173/1 186/6 202/24 203/1 203/3 203/5 203/10 208/8 247/14 248/4 249/3 249/4 249/22 249/23
**mention [7]** 143/15 150/2 150/3 180/23 198/5 238/20 264/10
**mentioned [22]** 16/11 31/16 39/13 40/6 71/6 73/21 74/7 74/14 97/16 98/24 188/23 189/9 189/23 190/2 198/7 200/2 214/14 219/3 219/19 230/13 230/18 247/15
**mentioning [3]** 143/17 220/2 245/3
**mentors [1]** 248/22
**mentorship [1]** 213/18
**merely [3]** 71/3 189/22 197/24
**merits [3]** 251/18 262/19 263/5
**message [30]** 68/1 68/4 98/16 101/24 102/3 102/9 102/22 111/16 143/23 144/6 144/8 149/10 160/20 179/5 181/3 223/18 226/5 227/14 227/25 228/7 229/16 231/7 243/7 250/13 256/13 257/21 258/4 258/6 258/12 258/17
**messages [102]** 49/18 61/18 61/18 68/5 68/25 83/18 83/19 85/5 86/5 86/11 87/1 87/15 88/5 88/11 88/14 90/20 94/6 98/9 98/10 98/12 101/11 102/13 102/19 102/25 103/1 104/24 105/2 105/3 105/5 110/21 111/11 111/12 111/22 112/9 115/4 115/9 115/12 115/25 116/2 116/6 116/8 120/12 121/14 134/3 134/4 134/7 134/15 136/17 137/20 138/1 138/2 138/4 139/14 141/8 142/12 142/14 143/15 148/15 150/4 151/17 152/7 152/14 155/25 156/1 156/3 157/2 157/2 157/14 157/18 158/5 158/7 159/10 164/8 164/12 178/3 178/7 179/10 180/20 180/21 182/1 182/6 183/15 220/9 220/14 223/13 224/2 226/1 226/3 228/10 229/5 229/13 229/18 229/20 229/25 230/2 230/4 233/19 234/1 235/2 257/6 257/19 260/22
**messaging [2]** 133/21 149/7
**Michael [7]** 7/21 170/21 170/22 170/25 171/6 171/8 207/6
**middle [3]** 235/13 235/14 248/19
**middle-aged [2]** 235/13 235/14
**midst [2]** 68/5 198/21
**might [20]** 45/24 51/25 59/10 71/1 74/20 76/13 78/24 118/1 119/14 124/19 147/16 159/14 198/17 206/3 214/7 240/16 251/22 263/11 263/12 270/9
**miles [1]** 52/15
**mind [10]** 9/8 21/7 22/2 134/1 137/1 137/2 143/10 220/1 232/10 236/18
**mine [6]** 13/24 25/11 101/18 116/11 140/21 275/8
**minor [1]** 59/9
**minority [1]** 39/25
**minute [5]** 152/20 200/15 207/8 251/12 252/8
**minutes [4]** 36/10 108/22 200/17 215/7
**mischaracterization [1]** 28/6
**mischaracterizing [1]** 102/3
**misconduct [3]** 46/13 233/15 234/23
**misleading [1]** 64/4
**misrepresent [1]** 196/25
**Miss [4]** 109/12 166/7 166/12 192/13
**Miss Ledbetter [1]** 166/12
**Miss Roe [1]** 192/13
**Miss Steidl [1]** 166/7
**mission [7]** 12/11 22/7 22/10 39/3 39/6 39/16 39/17
**misspoke [1]** 27/15
**misstate [1]** 233/18
**mistake [4]** 168/20 189/13 189/14 246/23
**mistakes [2]** 163/20 164/1
**misunderstood [2]** 143/11 147/16

# M


**mix [1]** 277/22
**moderate [1]** 18/4
**Moly [1]** 159/9
**moment [3]** 106/7 217/9 236/3
**Monday [1]** 91/1
**money [5]** 253/3 274/22 275/1 275/13 276/7
**month [7]** 55/21 68/18 128/7 129/4 171/13 171/13 219/4
**months [6]** 55/7 109/19 125/19 270/11 271/4 272/20
**mood [1]** 267/12
**moot [1]** 252/12
**mooting [1]** 252/20
**moral [21]** 14/11 14/25 16/3 16/4 16/20 16/25 17/3 17/7 19/22 19/25 20/14 20/18 20/21 20/25 22/3 22/22 23/24 23/25 25/4 70/21 249/24
**morally [10]** 14/8 16/22 19/17 20/2 22/11 186/6 202/25 203/4 208/8 249/3
**morals [1]** 39/11
**more [64]** 12/15 19/21 20/21 20/24 22/5 23/19 26/8 31/2 35/10 35/11 43/9 43/23 44/6 44/6 44/10 44/15 44/21 48/6 48/9 48/10 50/16 56/5 58/15 61/22 61/24 62/1 67/1 68/7 80/4 88/11 89/4 90/2 100/14 101/25 102/11 103/9 103/13 103/18 104/1 111/24 114/2 124/3 127/22 127/23 128/1 138/6 139/8 146/9 146/12 146/13 149/14 157/9 173/1 213/17 213/18 217/17 232/25 244/1 248/4 255/18 267/6 267/14 269/11 277/12
**Morgan [1]** 33/19
**morning [7]** 69/17 69/18 90/17 166/8 166/13 195/22 270/15
**most [6]** 24/10 70/22 115/15 190/25 237/18 242/14
**mother [1]** 213/24
**motion [2]** 1/12 262/17
**motivated [1]** 259/16
**move [15]** 21/6 55/21 77/20 77/22 79/12 79/18 79/21 95/2 98/22 133/9 148/23 162/12 164/18 165/21 207/15
**movement [1]** 277/10
**moves [1]** 78/5
**moving [1]** 172/9
**Mr [48]** 4/6 4/7 4/8 4/9 4/11 4/12 4/13 4/14 4/16 4/17 4/18 4/21 4/22 13/10 13/25 36/2 36/6 37/3 37/10 38/23 69/10 71/6 71/24 75/17 78/9 90/14 91/2 91/12 91/18 140/2 155/17 158/25 177/21 180/20 186/25 187/7 192/16 196/4 197/21 198/7 198/11 198/12 202/20 204/10 207/24 221/12 246/20 246/22
**Mr. [55]** 10/22 11/6 11/11 12/22 13/19 25/12 31/10 31/12 33/25 35/21 36/13 40/15 40/17 45/8 46/5 54/12 61/1 61/18 62/11 62/16 67/9 83/21 83/25 85/12 86/6 86/25 87/13 89/24 92/7 93/12 97/16 100/14 101/10 104/8 105/19 113/22 133/5 164/22 170/3 184/17 192/14 193/18 193/20 194/14 196/17 197/13 197/23 198/23 207/13 234/8 239/22 244/4 250/17 275/9 276/14
**Mr. Doe [22]** 10/22 11/6 11/11 31/12 40/15 40/17 46/5 54/12 61/1 61/18 62/11 62/16 83/21 86/6 100/14 101/10 105/19 192/14 194/14 196/17 197/23 198/23
**Mr. Doe's [10]** 12/22 25/12 31/10 33/25 35/21 36/13 45/8 67/9 87/13 104/8
**Mr. Harty [3]** 239/22 244/4 250/17
**Mr. Hill [1]** 133/5
**Mr. Roark [13]** 83/25 85/12 86/25 89/24 92/7 93/12 97/16 113/22 164/22 170/3 193/20 197/13 234/8
**Mr. Russel [2]** 13/19 207/13
**Mr. Schneider [2]** 184/17 276/14
**Mr. Schneider's [1]** 275/9
**Mr. Steidl [1]** 193/18
**Ms. [4]** 121/18 192/17 198/18 202/21
**Ms. Roe [3]** 121/18 192/17 198/18
**Ms. Roe's [1]** 202/21
**much [22]** 20/21 35/11 40/3 55/17 79/2 95/3 95/25 115/22 118/24

## M

**much... [13]** 122/17 123/21 137/1 140/16 140/19 199/1 235/20 262/16 266/8 275/6 275/8 275/9 278/15
**multiple [4]** 47/21 47/21 158/11 229/25
**must [5]** 23/25 24/2 47/10 245/23 246/1
**mute [4]** 79/1 81/11 82/9 95/11
**muted [1]** 200/7
**my [110]** 9/25 10/24 13/20 14/19 30/7 32/6 36/14 37/17 42/5 52/22 54/12 56/14 57/3 57/17 68/17 70/25 81/13 82/10 84/2 90/6 90/12 90/16 90/23 91/6 92/18 92/23 101/15 103/22 108/5 109/1 122/17 122/18 122/20 123/3 123/17 123/19 123/20 124/1 124/18 125/2 127/3 127/9 132/17 133/1 134/1 136/25 137/1 138/3 138/10 139/1 143/12 144/15 146/12 147/6 157/21 162/2 162/10 162/24 162/25 163/15 165/8 166/10 171/4 175/16 182/23 185/24 185/24 189/4 192/23 197/2 198/2 202/16 204/6 204/13 205/4 205/25 207/24 208/18 209/19 210/7 213/24 215/6 221/16 221/17 221/18 224/23 224/25 246/8 246/15 248/25 254/14 255/2 256/1 256/5 256/11 257/10 258/1 258/3 260/23 261/16 264/18 265/25 267/10 267/18 267/25 268/1 269/2 275/10 280/7 280/11
**myself [10]** 11/11 31/12 33/19 144/18 146/18 154/20 161/6 179/13 200/7 215/11

## N

**name [8]** 7/15 7/22 8/1 9/17 124/19 132/3 185/24 207/24
**names [1]** 166/10
**narrative [6]** 222/8 222/14 222/19 222/20 223/10 223/11
**narrow [1]** 243/2
**Nashville [2]** 165/8 165/11
**naturally [1]** 91/4
**nature [5]** 213/16 241/1 245/5 246/5 267/13
**navigating [1]** 118/6
**nearly [1]** 66/8
**necessarily [2]** 135/7 249/14
**necessary [2]** 66/9 73/14
**need [29]** 8/14 11/2 14/24 19/21 34/21 40/12 51/3 81/16 81/18 88/7 90/7 107/2 131/4 136/19 159/24 161/10 162/11 185/23 195/20 200/8 200/10 200/14 228/23 249/4 252/3 258/25 259/1 266/6 269/21
**needed [2]** 95/17 107/3
**needs [4]** 8/16 22/14 57/10 200/11
**negative [7]** 52/3 122/24 204/19 205/5 206/3 206/8 207/1
**negatively [1]** 206/25
**negotiated [1]** 255/10
**neither [1]** 45/19
**never [22]** 98/13 106/7 129/15 134/1 136/25 136/25 137/2 142/19 142/21 158/4 158/4 158/7 162/22 163/9 181/2 181/3 205/9 206/8 248/18 248/24 265/19 265/25
**new [37]** 10/14 27/4 36/15 41/22 41/23 44/12 44/13 54/10 54/15 57/25 58/2 58/3 58/18 58/22 59/16 61/11 63/24 76/4 77/3 77/4 77/16 87/20 87/24 88/13 88/19 89/7 91/19 104/7 123/19 138/10 138/10 152/20 159/23 160/1 164/21 236/20 248/3
**next [19]** 17/6 20/23 21/6 64/14 75/8 75/9 84/20 91/2 123/24 126/16 128/7 144/8 169/18 173/20 173/21 214/23 224/19 275/24 275/25
**night [4]** 127/12 148/7 218/15 229/25
**nine [1]** 182/24
**no [282]**
**no-contact [35]** 190/4 190/5 190/9 190/15 190/23 191/9 191/11 192/2 192/7 192/14 192/25 193/3 197/13 197/21 197/25 198/22 198/25 199/7 199/9 199/11 199/13 199/16 199/19 199/21 202/14 202/15 204/10 204/17 204/21 205/3 205/22 206/1 247/2 261/13 271/2
**No. [1]** 161/19
**No. 15 [1]** 161/19

# N

nobody [2] 55/22 260/25
nodding [1] 206/17
Nods [1] 192/24
non [9] 28/25 38/4 38/10 38/22 39/22 39/22 47/13 50/13 89/21
non-community [1] 39/22
non-faculty [1] 39/22
non-TCU [3] 38/4 38/10 38/22
non-Title [3] 28/25 47/13 50/13
non-voting [1] 89/21
nonconsensual [3] 264/25 264/25 267/2
none [3] 4/25 180/22 272/16
nonsensical [1] 244/25
normal [1] 115/20
norms [4] 15/9 24/2 24/5 249/6
NORTHERN [2] 1/2 280/18
not [386]
note [4] 56/13 59/10 76/12 76/14
nothing [18] 52/19 112/17 115/20 122/21 127/25 161/8 163/2 185/15 189/1 206/14 218/14 235/21 268/15 271/8 275/18 277/8 277/12 277/22
notice [10] 114/19 126/4 126/23 127/19 129/7 131/15 131/23 137/24 261/2 265/7
noticed [2] 40/14 214/6
notices [1] 11/7
notification [2] 34/13 209/2
notified [4] 34/8 86/20 165/1 165/14
notify [1] 24/15
novel [1] 269/5
November [14] 54/15 54/16 54/17 55/5 84/17 84/19 84/21 84/24 85/14 85/25 104/19 104/25 105/4 105/4
November 12th [1] 84/19
November 16th [2] 84/17 84/24
November 17th [2] 84/21 104/25
November 17th and [1] 105/4
November 30th [3] 54/15 85/25 105/4
November 30th signify [1] 54/16
November 30th to [1] 104/19
November 30th was [2] 54/17 55/5
now [48] 13/24 14/4 16/14 19/3 19/7 21/1 24/7 38/2 59/24 63/2 69/24 77/13 78/4 82/24 83/1 87/6 91/25 96/4 101/23 103/21 116/8 131/24 133/15 139/7 147/4 153/6 157/17 157/25 163/1 179/10 183/23 184/12 185/25 197/9 197/12 197/15 199/24 224/24 237/17 243/2 246/23 250/5 250/22 251/23 253/10 258/1 269/17 269/18
Nowhere [1] 270/1
number [22] 6/5 13/20 18/3 49/13 59/19 65/8 136/14 158/16 161/19 219/21 225/6 228/5 236/10 240/6 255/20 258/2 260/7 260/15 262/18 263/4 263/5 277/7
numbers [3] 247/21 247/24 247/25

# O

O'CONNOR [1] 1/13
Obama [2] 25/15 25/23
object [4] 28/3 98/18 113/21 113/23
objection [9] 49/6 50/22 57/10 64/1 64/21 76/15 102/2 106/18 180/17
objections [3] 12/25 59/10 79/7
objective [1] 232/9
obligated [3] 43/15 88/4 279/4
obligation [1] 261/22
observe [1] 202/4
observed [1] 202/3
observing [1] 96/7
obstruct [1] 238/8
obviously [11] 10/17 12/18 49/7 53/12 75/2 79/15 133/1 147/17 161/14 250/2 273/16
occasionally [1] 213/4
occasions [1] 158/11
occur [1] 50/18
occurred [7] 109/13 109/16 125/11 125/19 127/12 222/24 254/22
occurs [2] 47/8 51/8
October [6] 46/13 105/22 121/21 125/19 131/16 135/20
October 12th of [1] 135/20
October 3rd [1] 121/21
October 3rd or [2] 46/13 105/22

## O


**odd [2]** 239/25 247/2
**off [34]** 19/16 30/7 47/12 50/18 51/11 51/15 51/18 51/21 52/13 56/14 78/22 81/15 110/9 114/24 139/23 142/20 143/6 150/4 150/17 152/11 162/6 175/16 178/3 181/10 198/9 200/7 209/18 215/5 243/1 246/25 255/2 256/5 256/10 279/12
**off-campus [1]** 198/9
**offenders [3]** 18/20 23/19 70/24
**offense [3]** 30/6 278/8 278/19
**offenses [1]** 278/20
**offer [3]** 39/8 39/10 257/17
**offered [2]** 145/9 145/18
**offering [3]** 65/3 69/4 69/6
**offers [1]** 257/6
**offhand [1]** 158/16
**office [63]** 9/21 13/6 33/17 33/18 34/9 52/7 54/5 54/5 54/24 55/11 55/18 55/19 55/22 56/21 58/24 65/25 73/7 73/9 73/21 73/23 73/24 73/24 74/1 74/22 75/10 75/11 75/13 75/16 75/21 76/2 77/16 78/18 79/1 80/2 80/6 85/18 86/21 86/23 87/4 87/8 129/3 131/15 132/8 133/19 151/23 168/5 186/11 187/4 188/1 189/22 190/3 193/7 194/8 195/6 195/20 205/13 209/5 209/6 209/12 211/21 211/23 215/12 273/10
**officer [6]** 31/12 67/21 82/23 99/3 248/21 278/23
**officers [1]** 278/24
**offices [1]** 211/24
**official [3]** 1/8 51/12 280/18
**officially [3]** 86/22 173/25 174/3
**often [1]** 93/9
**oh [15]** 120/22 141/25 147/6 150/20 151/20 152/13 159/18 162/24 171/4 189/18 217/19 224/23 265/23 270/2 270/13
**OIE [15]** 52/6 74/2 74/4 74/5 77/15 85/17 85/22 130/16 135/20 186/20 187/15 193/5 195/17 196/13 236/24
**okay [234]** 6/20 7/1 7/8 7/25 8/8 8/24 10/12 13/16 13/18 16/14 17/21 19/19 21/23 25/25 26/7 28/8 29/4 36/1 36/12 38/2 41/8 41/11 41/13 42/1 42/17 42/22 42/25 43/2 43/17 45/22 46/3 48/3 52/22 53/3 53/6 53/21 56/17 63/7 65/7 66/1 67/9 69/7 70/14 71/6 72/25 73/20 74/1 74/5 74/14 75/7 76/7 76/22 77/8 78/4 80/8 81/3 82/19 83/1 84/11 84/24 85/8 85/15 86/13 88/1 89/10 93/12 95/21 96/2 96/4 96/17 100/8 100/12 101/1 101/23 104/4 105/1 105/11 107/22 108/12 110/12 110/24 111/4 115/21 115/24 116/14 117/24 118/9 118/15 119/11 123/6 124/7 124/9 124/21 124/22 125/7 125/10 126/10 126/18 127/4 127/5 127/8 127/11 127/15 127/19 127/25 128/8 128/23 128/25 129/16 131/25 132/3 133/7 133/19 138/12 139/6 141/8 141/9 141/12 142/11 142/15 142/24 143/5 146/20 148/5 148/8 148/9 149/23 150/21 151/6 151/12 151/16 152/14 152/19 153/10 160/5 160/8 160/16 160/22 161/18 162/4 165/10 165/17 167/12 167/15 168/3 170/20 171/20 173/21 174/1 174/6 174/9 175/17 178/20 178/24 182/10 185/11 185/16 187/4 189/16 189/19 190/4 190/13 191/2 191/12 192/8 192/11 193/14 193/23 194/14 195/25 196/19 200/14 201/14 203/18 204/11 204/16 205/15 207/3 207/5 207/19 207/21 208/14 208/17 208/25 209/11 209/20 210/2 210/11 210/23 211/7 212/25 213/4 213/11 213/14 213/22 214/20 216/23 217/3 217/8 218/4 219/16 221/7 221/21 222/22 226/4 229/5 229/16 230/13 235/15 236/2 236/15 237/17 238/7 241/5 242/11 243/11 243/14 246/10 251/11 255/23 257/7 257/23 258/1 261/7 262/13 265/23 266/3 266/5 266/22 267/16 269/15 277/25 278/2 279/16

## O


**old [5]** 55/25 58/18 142/22 269/8 270/8
**older [3]** 166/11 171/2 211/16
**on [376]**
**once [17]** 11/10 35/4 54/10 63/2 74/18 75/21 84/4 95/1 98/13 135/15 136/25 142/19 142/21 149/9 186/11 197/8 201/3
**one [172]** 12/9 13/7 20/17 25/16 25/18 25/20 25/21 27/4 27/9 27/23 28/2 30/17 30/18 35/7 37/8 37/11 41/11 43/22 44/11 45/23 46/13 46/18 46/18 47/7 47/18 48/6 48/9 48/9 48/12 48/16 48/21 50/3 50/4 50/5 50/15 51/8 52/13 52/13 52/15 53/13 56/11 78/17 80/20 81/20 82/11 82/19 89/25 91/15 92/22 93/19 93/20 94/3 94/5 94/6 94/24 94/25 96/15 98/7 98/17 106/16 111/2 111/11 118/13 121/21 121/24 122/5 125/7 125/18 128/2 130/23 138/13 139/19 142/2 144/8 145/8 145/8 145/18 145/24 146/7 146/9 147/6 147/22 148/11 149/9 155/12 156/16 161/22 167/3 167/7 174/17 176/23 179/6 181/19 182/4 182/5 184/22 185/4 190/11 191/12 192/4 192/9 193/22 205/4 206/6 206/12 208/25 210/2 211/10 211/11 211/23 211/24 212/17 214/6 218/13 218/23 219/17 219/21 221/8 222/12 222/22 223/16 224/14 224/21 225/6 225/12 225/16 226/25 227/5 227/13 228/3 228/5 228/11 229/22 230/24 232/25 233/17 234/16 235/6 235/13 235/14 235/16 235/17 239/15 240/6 240/8 241/2 245/4 247/10 247/15 248/7 248/13 248/17 248/22 251/4 251/5 251/6 251/24 252/4 255/4 256/20 257/9 259/23 260/8 260/15 261/20 262/19 263/4 263/10 265/1 266/1 266/25 277/7
**one's [2]** 167/4 167/4
**one-page [1]** 142/2
**ones [11]** 30/15 134/8 134/10 134/11 134/13 180/22 224/4 224/8 238/22 243/19 243/22
**ongoing [6]** 49/4 88/8 94/5 107/24 187/9 188/21
**only [44]** 21/14 38/11 48/5 51/7 63/9 64/22 68/4 76/4 77/2 82/13 95/3 95/5 114/12 129/22 134/22 144/24 161/13 161/20 161/21 177/23 185/13 200/3 200/13 200/18 201/1 201/12 203/11 204/4 204/4 208/21 208/23 216/7 227/2 227/11 229/25 238/25 239/6 246/9 250/16 250/20 260/12 268/17 272/4 274/4
**oOo [1]** 6/3
**open [4]** 211/22 212/6 232/10 278/22
**opening [1]** 79/16
**openly [1]** 81/2
**opera [1]** 232/16
**operating [1]** 190/22
**opined [1]** 27/8
**opinion [13]** 24/23 60/23 101/19 101/20 110/12 122/4 166/23 172/4 172/13 254/14 261/17 261/18 264/18
**opinions [1]** 183/7
**opportunities [2]** 123/2 254/5
**opportunity [18]** 59/5 59/13 76/12 76/17 78/11 79/4 80/7 83/14 85/9 135/15 138/22 140/5 141/18 160/1 169/13 169/23 229/7 273/19
**opposed [4]** 18/4 178/15 248/3 257/13
**opposite [2]** 50/21 268/2
**option [1]** 47/15
**or [214]** 8/13 8/14 8/18 13/4 13/25 17/22 18/14 18/15 18/16 18/21 19/8 21/19 21/20 21/20 25/6 26/10 27/6 29/24 32/4 32/4 34/10 34/11 35/17 36/10 37/23 38/4 38/16 39/23 41/14 41/20 45/13 46/13 47/8 48/9 48/9 48/12 48/23 49/1 49/22 50/1 50/11 52/20 53/6 53/13 54/5 54/7 55/15 55/19 56/11 56/15 56/22 60/17 61/1 61/2 63/19 64/19 70/7 70/15 70/23 71/6 79/13 79/20 80/18 81/12 81/17 82/11 83/24 84/15 85/16 86/7 86/25 87/21 87/23 88/15 89/21

## O


**or... [139]** 89/24 90/17 92/2 92/15 94/18 95/2 96/15 96/22 97/9 97/18 98/10 101/7 101/7 105/22 106/2 106/7 107/2 107/11 108/5 110/2 110/25 111/5 111/5 119/7 120/9 121/21 123/5 123/7 124/19 127/2 128/7 128/9 128/9 128/13 128/13 129/21 129/22 130/24 131/5 133/4 136/2 137/24 137/24 139/11 139/12 140/21 142/2 142/6 144/16 144/25 148/1 149/22 153/13 158/4 158/7 161/1 162/2 164/24 165/14 168/1 170/19 177/11 178/14 183/8 186/25 188/6 188/14 188/21 188/22 190/14 190/21 195/23 196/19 197/19 198/5 199/18 200/11 201/6 201/6 201/22 202/4 202/21 206/9 206/22 213/10 213/15 214/2 214/7 214/18 215/3 215/7 217/11 220/14 224/18 230/24 233/4 233/14 234/22 236/5 236/10 236/20 236/24 237/21 237/21 239/12 239/15 240/7 241/9 243/8 246/7 247/15 252/5 252/10 255/2 256/13 256/15 258/2 258/11 263/21 263/21 263/24 264/25 265/12 267/6 267/11 267/11 268/3 269/16 270/5 270/8 271/16 271/16 272/7 274/14 277/16 277/19 277/21 279/7 280/9

**order [37]** 11/2 20/20 55/13 66/9 77/20 90/8 190/7 190/9 191/9 191/11 192/3 192/7 192/14 192/25 193/3 197/13 197/21 197/25 198/23 198/25 199/7 199/9 199/11 199/13 199/16 199/19 202/14 202/15 204/10 204/17 204/21 205/3 205/22 206/1 261/13 262/3 271/2

**orders [1]** 199/21

**organization [3]** 244/4 244/7 247/6

**orientation [1]** 212/5

**originally [3]** 12/4 127/5 130/6

**originated [1]** 202/23

**other [94]** 12/20 17/19 20/9 23/24 28/25 32/4 32/5 35/24 36/25 37/4 39/21 45/19 48/12 48/16 48/22 49/15 50/3 51/11 52/18 56/12 57/8 59/14 69/22 70/12 76/18 81/25 82/11 82/16 82/22 85/3 85/4 88/5 88/24 91/9 96/15 102/12 109/22 109/24 111/22 112/13 113/14 118/7 119/9 120/8 121/18 125/18 131/6 144/19 146/7 159/25 162/20 167/4 173/2 173/3 173/7 175/25 176/13 182/24 190/15 192/15 192/17 198/3 198/10 215/11 216/1 222/2 226/13 227/25 229/18 235/8 235/11 235/14 235/24 235/25 240/14 241/3 243/8 243/10 244/17 249/13 249/18 249/25 252/19 260/16 262/12 267/1 268/2 268/6 268/16 270/14 273/24 274/2 277/5 277/16

**others [5]** 21/3 30/25 42/5 111/20 277/7

**otherwise [3]** 45/7 51/15 77/6

**ought [2]** 149/3 250/14

**our [85]** 7/11 10/8 11/15 11/20 11/25 12/10 28/24 29/3 33/17 34/18 34/18 34/24 35/9 35/24 36/10 36/16 38/21 38/23 39/1 39/2 39/3 40/4 52/1 54/5 55/13 55/18 57/12 67/3 68/13 69/6 75/10 75/21 77/16 78/10 78/18 79/1 80/1 80/5 87/4 91/15 93/7 95/5 101/22 108/19 108/23 115/23 143/3 144/12 144/12 144/15 145/10 146/12 153/7 184/18 200/7 205/8 207/15 208/15 208/16 209/5 209/5 209/15 211/10 212/4 212/6 212/17 213/8 213/16 215/11 215/12 225/3 232/3 239/2 241/20 244/6 250/2 261/20 261/21 261/22 262/1 270/7 271/19 272/6 272/7 277/6

**ours [1]** 85/20

**ourselves [1]** 247/24

**out [85]** 7/10 8/25 12/5 15/24 19/9 25/15 25/23 26/3 27/8 33/25 34/14 34/24 39/21 48/23 48/25 50/1 50/4 52/19 53/12 56/2 57/21 61/8 71/5 78/20 79/23 81/13 81/14 81/16 89/20 102/17 105/14

# O


**out... [54]** 108/12 109/6 113/17 114/19 119/10 122/19 123/3 123/13 134/6 136/18 137/23 141/12 146/18 148/2 150/7 153/20 161/9 161/24 165/3 167/14 169/9 174/4 174/23 175/18 179/12 184/12 186/25 187/12 198/1 200/11 206/15 206/19 207/14 216/23 218/23 221/17 242/3 242/17 245/19 250/8 253/22 255/16 256/2 260/13 260/15 264/22 270/13 271/4 272/19 273/13 274/9 276/8 276/10 277/21

**outcome [15]** 79/22 82/18 93/16 93/18 95/3 95/13 95/14 95/15 95/22 97/9 196/8 241/7 241/20 263/20 264/19

**outcomes [1]** 201/6

**outlines [1]** 98/21

**outside [4]** 21/4 21/10 175/24 182/25

**outweighed [3]** 42/12 43/5 88/21

**over [42]** 6/14 20/8 59/1 59/2 61/23 82/4 95/16 106/2 106/6 108/20 117/25 119/5 119/7 145/20 156/23 165/22 168/22 170/18 177/23 178/10 178/17 179/21 179/24 180/22 183/13 186/12 191/13 192/12 196/13 202/21 214/18 215/15 221/18 223/5 230/9 237/16 240/17 264/13 267/6 267/8 271/22 271/24

**overboard [3]** 115/17 116/9 144/17

**overcome [1]** 108/14

**Overruled [5]** 64/5 102/5 106/19 113/24 180/18

**oversee [2]** 45/13 208/15

**overstate [1]** 129/1

**overwhelmingly [2]** 247/13 247/16

**own [17]** 67/3 105/2 139/3 139/3 191/20 192/21 202/13 232/21 232/24 236/11 242/21 243/25 244/7 258/15 258/15 267/4 269/23


# P


**p.m [4]** 124/13 207/10 207/11 279/20

**packet [5]** 149/25 150/1 152/19 257/5 257/24

**page [27]** 16/14 19/6 19/11 19/19 21/6 21/6 23/23 42/18 42/20 42/24 43/13 64/22 80/13 142/2 148/25 158/20 179/7 193/8 193/10 193/12 193/12 214/7 218/5 218/11 221/10 222/10 239/3

**pages [25]** 19/13 19/16 43/13 63/13 64/22 68/5 70/3 70/5 87/14 90/19 121/4 134/6 134/14 137/15 137/17 137/21 139/7 139/9 139/15 157/2 157/17 157/25 158/7 178/2 265/22

**pages' [2]** 111/23 115/25

**paid [1]** 40/1

**pain [3]** 151/6 151/9 151/13

**painful [1]** 249/21

**Palooza [3]** 211/15 211/16 211/21

**Pancake [3]** 211/15 211/16 211/21

**pandemic [3]** 132/13 277/9 280/8

**panel [102]** 13/7 31/5 31/11 33/6 33/9 33/13 35/2 35/8 35/13 35/18 35/21 36/18 37/4 37/23 38/10 38/21 39/1 40/1 40/5 40/21 56/24 56/25 58/3 71/16 71/18 78/15 79/4 79/10 79/18 79/23 79/24 80/20 81/2 81/4 82/5 88/21 88/24 89/3 89/9 89/10 89/12 89/17 89/22 90/3 90/5 90/25 93/7 94/14 95/1 98/7 99/4 101/18 103/23 116/5 121/15 122/3 146/4 146/5 156/7 167/4 167/7 172/22 173/2 173/2 181/23 201/3 208/19 208/22 209/1 209/3 211/3 213/7 215/11 215/11 215/17 216/7 216/11 216/17 216/21 218/8 218/22 219/10 220/11 222/13 222/18 229/7 231/9 231/20 231/20 235/6 235/9 235/11 236/25 237/1 243/24 244/1 247/6 248/21 248/23 263/21 271/20 276/25

**panel's [4]** 94/21 220/1 227/1 271/20

**panelist [4]** 37/22 39/19 166/15 167/11

**panelists [24]** 11/1 33/16 34/25 35/2 37/23 38/5 38/11 38/11 38/16 39/23 89/25 90/8 90/12 90/25 95/5 95/11 166/5 166/20 167/3 200/22 209/10

P

panelists... [3] 215/1 216/19 251/5
panels [2] 37/21 173/4
panels' [1] 202/6
panic [2] 240/10 240/10
paper [2] 241/16 265/17
paperwork [1] 171/8
paraphrasing [5] 52/1 67/22 121/11 219/14 267/5
parcel [2] 11/24 12/13
Pardon [4] 26/1 45/16 216/18 217/1
parents [2] 24/10 71/7
part [49] 10/24 11/4 11/23 12/3 12/13 17/22 33/9 38/25 39/1 39/2 39/3 39/6 40/16 44/13 49/12 49/14 60/3 67/5 70/5 70/25 72/17 83/19 92/12 95/3 115/6 146/23 149/25 150/1 150/6 152/15 152/19 161/2 167/9 191/12 197/12 209/11 209/15 222/11 234/5 234/6 238/6 238/22 240/7 246/24 249/19 260/18 261/21 269/7 274/16
partial [1] 64/24
participants [1] 280/9
participate [2] 95/4 266/17
participating [1] 88/24
participation [2] 81/22 95/5
particular [29] 12/24 16/10 17/18 18/2 29/1 33/22 34/22 36/2 45/9 49/14 53/8 53/16 53/24 59/25 60/1 61/21 68/25 98/11 100/2 103/9 111/14 116/2 116/14 198/17 246/25 248/5 248/8 257/9 258/6
particularly [1] 55/25
parties [60] 11/1 31/22 32/14 32/17 38/6 47/22 54/19 54/22 73/13 73/14 73/18 74/7 74/8 74/11 74/15 74/18 75/12 75/19 75/23 76/11 76/24 77/11 79/12 79/16 80/3 80/5 80/6 80/15 84/16 85/1 86/1 86/16 86/20 87/13 89/6 89/9 90/18 90/25 91/16 92/18 92/23 92/24 93/2 93/4 94/11 104/18 109/23 135/13 157/13 169/13 209/24 210/6 211/6 214/25 218/22 221/11 251/15 259/8 259/17 260/16
parties' [1] 76/22
partners [2] 211/22 212/6
parts [3] 64/19 66/4 69/25
party [22] 48/12 48/12 48/16 48/16 48/21 48/22 50/3 58/22 76/18 77/6 78/17 81/14 88/5 96/14 101/6 191/14 198/8 202/19 202/22 203/14 237/20 256/4
party's [4] 59/14 88/16 96/12 238/8
pass [10] 69/9 99/11 104/13 105/10 124/8 185/1 193/15 202/9 203/13 231/12
passes [1] 61/3
passing [1] 82/22
past [5] 32/4 45/9 88/25 97/7 277/9
pay [1] 40/4
paying [1] 232/23
peace [1] 154/19
peer [1] 276/2
peers [1] 24/23
pending [5] 106/25 168/11 174/24 177/8 184/24
penetrated [2] 126/1 147/1
people [21] 39/2 49/5 74/1 108/20 118/8 152/4 161/12 162/20 182/24 200/8 203/23 209/3 209/4 216/2 216/5 255/22 260/12 260/13 260/14 263/13 263/17
perceive [1] 225/25
perceived [1] 144/16
percent [6] 97/11 97/12 162/5 162/13 162/19 269/19
perception [1] 271/19
perfect [1] 264/4
perfectly [2] 130/2 159/20
Perhaps [1] 18/24
period [13] 54/17 54/18 59/8 77/7 77/15 77/15 77/25 78/3 86/11 128/16 199/9 225/9 268/16
periods [1] 269/4
permanently [1] 273/12
permit [1] 140/10
permits [1] 62/20
permitted [3] 62/2 79/9 238/8
permitting [1] 245/13
perplexing [2] 101/24 224/11
person [15] 103/13 132/3 144/19 162/5 162/6 162/18 179/14 180/9 203/6 206/18 206/22 215/2 242/25 263/10 275/2
personal [2] 10/2 213/23
personally [1] 142/10

P

perspective [6] 13/6 61/23 110/22 223/7 261/22 267/18
persuasive [3] 245/7 245/9 246/9
pertinent [1] 148/22
Ph.D [1] 265/25
phase [1] 95/3
phone [4] 91/4 109/1 150/5 181/9
phonetic [1] 161/11
photo [1] 211/10
photos [3] 111/4 111/8 111/9
phrase [1] 164/9
physical [1] 223/6
physically [3] 168/4 222/23 223/5
pick [1] 55/20
picked [5] 102/18 102/20 117/10 134/14 137/25
picking [3] 35/21 102/23 259/2
picture [2] 229/24 230/3
pictures [4] 110/23 110/24 150/9 150/10
piece [1] 237/14
pike [1] 277/14
pillow [1] 182/22
place [24] 34/3 34/5 34/12 34/21 50/16 52/8 63/19 172/19 190/24 191/11 192/5 192/9 193/3 195/1 199/3 199/4 199/9 199/12 200/5 201/7 204/17 204/18 239/6 264/13
placed [17] 187/14 188/1 188/24 189/7 189/15 189/22 190/3 190/17 194/2 194/7 195/15 198/23 204/20 205/3 205/21 206/1 275/2
plain [1] 19/20
plaintiff [7] 1/5 1/16 6/6 6/9 6/12 83/3 99/8
plaintiff's [5] 4/4 5/3 5/5 65/11 69/8
plane [1] 20/11
planning [1] 186/12
plans [3] 165/2 165/10 165/17
plausible [4] 145/23 146/6 146/10 146/13
play [3] 30/17 33/25 264/1
played [1] 61/8
player [1] 130/10
playfully [3] 143/9 143/9 179/4
playing [1] 245/18
pleading [1] 173/11
pleadings [2] 176/22 184/18
please [12] 6/4 9/17 34/7 66/23 97/1 102/8 124/14 148/12 153/6 207/12 212/1 217/9
plenty [1] 39/21
plus [1] 48/8
podium [1] 9/10
point [75] 8/17 23/3 26/6 34/23 43/1 50/4 61/5 61/9 75/4 77/19 85/8 86/17 88/7 100/15 113/22 117/23 119/24 120/2 121/10 125/16 126/18 127/19 128/4 128/8 128/20 128/23 130/21 131/19 133/15 135/5 136/22 136/24 140/2 141/24 142/6 151/8 153/17 158/24 159/9 160/24 163/11 164/23 165/3 167/17 168/7 168/16 171/9 173/23 176/23 186/23 187/11 189/9 191/9 192/1 196/5 198/24 203/11 210/24 211/3 233/19 239/2 245/10 245/16 250/12 251/23 252/1 252/10 252/18 255/25 261/3 261/20 272/25 273/2 274/22 275/1
pointed [1] 109/6
pointing [1] 137/23
policies [5] 10/4 10/5 10/6 10/8 34/18
policy [18] 11/15 45/11 50/10 50/12 50/14 50/25 55/13 56/22 67/3 67/5 95/22 96/9 96/20 169/19 171/11 273/20 274/14 275/5
political [1] 72/19
politics [1] 214/14
polygraph [4] 45/3 45/9 86/9 141/24
polygraphs [2] 238/21 244/13
pool [3] 35/5 35/13 209/1
poor [2] 186/3 208/4
poorly [2] 24/25 118/6
pop [2] 200/13 211/17
portion [1] 217/10
position [13] 26/17 36/23 38/15 40/1 40/1 95/12 146/2 208/14 212/11 252/13 262/5 267/25 268/19
positioned [1] 25/2
positions [2] 119/9 222/2
possibility [1] 204/8
possible [12] 29/9 32/3 78/14 92/11 92/12 97/5 108/9 134/15 145/8 155/24 156/5 199/1

**P**


**possibly [10]** 66/16 92/14 106/2 120/21 126/12 235/1 250/19 267/8 273/4 277/13
**post [2]** 260/9 264/12
**post-2011 [1]** 260/9
**posted [2]** 86/16 91/22
**potential [6]** 34/25 35/13 50/11 76/13 82/17 209/1
**potentially [2]** 132/24 234/24
**pounding [2]** 182/22 182/23
**pour [1]** 122/22
**power [2]** 134/17 260/13
**practical [2]** 9/22 19/15
**practice [1]** 270/8
**practiced [1]** 268/2
**practicing [3]** 101/2 119/9 222/2
**preamble [12]** 43/2 43/12 43/13 43/15 44/1 44/25 45/2 64/2 72/14 72/16 72/20 72/23
**precise [1]** 45/9
**precisely [4]** 39/14 42/15 43/7 231/11
**precluded [1]** 100/14
**precludes [1]** 177/7
**preconceptions [1]** 232/12
**predicted [1]** 17/7
**predominance [1]** 18/20
**prefer [2]** 9/10 161/8
**preference [1]** 11/25
**prehearing [10]** 78/9 79/11 79/14 80/23 91/15 92/2 92/13 156/17 156/18 156/19
**prehearings [1]** 80/13
**prejudice [3]** 42/12 43/6 239/23
**prejudiced [3]** 239/16 239/20 240/14
**prejudicial [25]** 43/10 43/23 44/6 44/10 44/15 44/21 68/8 88/20 102/1 102/11 103/9 103/13 103/19 104/1 112/10 112/13 157/9 238/15 238/18 256/14 256/14 256/15 257/4 273/5 273/8
**preliminarily [1]** 126/19
**preliminary [29]** 54/18 59/6 59/14 61/19 62/2 73/2 73/17 74/12 74/14 74/21 74/25 76/1 76/19 78/1 84/12 85/1 86/13 86/15 87/6 87/9 99/19 99/21 104/19 112/21 114/3 135/21 136/13 138/20 141/17
**prepare [1]** 265/7
**prepared [2]** 108/19 255/3
**preponderance [11]** 27/6 27/12 27/16 28/4 28/13 29/17 71/23 72/1 72/4 233/11 278/12
**prescribed [1]** 280/13
**presence [1]** 248/24
**present [21]** 18/22 31/11 31/12 35/8 48/8 60/8 63/25 79/2 81/11 101/7 101/16 104/9 167/11 200/7 215/10 224/14 227/4 227/12 237/22 241/24 248/14
**presentation [1]** 238/9
**presented [6]** 32/2 63/21 96/16 225/2 229/15 239/7
**presenting [3]** 101/10 121/15 239/13
**Preserve [1]** 251/17
**president [2]** 277/19 277/20
**press [1]** 72/18
**pressed [1]** 250/18
**presumably [1]** 252/4
**presume [3]** 40/8 188/12 216/14
**presumed [1]** 217/12
**presumption [1]** 264/14
**pretend [2]** 138/4 278/7
**pretrial [6]** 31/9 36/5 36/6 36/11 213/8 213/9
**pretty [13]** 80/8 95/3 95/25 115/22 118/24 122/17 123/21 130/14 138/13 165/7 182/7 184/5 196/14
**prevail [1]** 122/5
**prevailing [1]** 262/19
**prevent [9]** 31/21 92/15 122/4 163/21 164/14 189/24 196/22 253/8 275/19
**prevented [4]** 114/6 116/5 116/7 121/15
**preventing [3]** 46/5 122/2 239/12
**previous [7]** 201/4 201/11 201/21 201/23 206/5 206/10 206/11
**previously [6]** 63/10 90/15 91/3 95/8 97/16 238/25
**primarily [2]** 210/1 244/5
**primary [2]** 11/20 12/8
**print [1]** 141/12
**printed [1]** 134/6
**printouts [1]** 258/3
**prior [42]** 11/6 11/10 24/16 31/9 31/10 55/8 59/2 61/19 63/4 63/21 63/25 68/1 101/12 107/15 110/15 114/13 116/17 117/2 117/3 118/11 126/7 137/13 157/14

**P**


**prior... [19]** 163/10 164/5 172/7 181/2 183/15 213/10 218/15 237/14 239/7 239/10 240/21 240/23 242/10 244/20 245/16 268/23 269/9 269/12 269/21
**prioritizing [1]** 22/6
**private [12]** 51/21 174/13 192/23 205/24 247/19 261/19 264/1 264/16 278/8 278/14 279/2 279/7
**privileged [1]** 132/24
**probably [14]** 13/11 139/18 143/8 151/11 153/5 162/8 184/5 186/2 208/4 235/3 248/18 260/22 268/3 269/9
**probation [2]** 95/7 95/24
**probative [19]** 42/11 43/5 43/9 43/24 44/7 44/10 44/16 44/21 58/15 68/8 88/21 102/1 102/11 103/10 103/14 104/2 157/9 256/23 256/23
**problem [9]** 93/6 136/1 168/25 169/1 197/9 199/5 228/22 239/22 259/4
**procedural [16]** 9/3 78/17 78/20 78/25 81/4 82/11 90/11 96/6 241/22 241/23 242/11 242/20 243/20 244/11 244/14 246/12
**procedure [3]** 67/13 67/19 190/22
**procedures [2]** 47/16 83/5
**proceed [4]** 9/12 49/11 102/7 105/16
**proceeded [1]** 191/19
**proceeding [4]** 130/5 168/12 243/3 273/9
**proceedings [7]** 18/17 67/13 207/11 213/15 279/20 280/6 280/10
**proceeds [1]** 119/11
**process [107]** 8/13 10/22 10/25 11/3 12/9 12/12 12/15 13/1 28/24 29/3 32/7 32/8 33/7 34/2 34/5 34/18 36/21 38/20 38/23 38/24 40/11 47/14 47/15 55/11 66/6 66/8 67/13 68/15 68/16 73/1 73/4 74/9 75/15 77/24 78/5 78/7 78/8 78/12 80/11 81/3 82/7 82/11 82/12 82/20 82/21 82/25 83/10 84/1 84/4 86/10 86/24 90/6 90/13 92/24 98/25 103/6 107/23 122/15 130/16 130/25 131/6 131/11 135/1 135/6 135/7 139/2 158/25 160/17 164/20 169/15 169/19 172/10 172/14 172/16 172/22 173/8 186/10 186/16 187/9 188/21 191/12 208/3 216/25 217/2 241/18 243/6 248/20 248/24 250/2 252/3 259/12 259/15 259/16 260/2 260/3 261/4 262/2 263/14 263/17 264/3 268/24 270/1 273/11 274/17 275/16 277/24 278/12
**processes [4]** 10/8 26/20 67/18 277/5
**produced [1]** 181/20
**professional [2]** 213/18 274/23
**professor [2]** 276/25 277/1
**professor's [1]** 265/16
**proffer [1]** 183/7
**proffers [1]** 145/24
**profusely [1]** 98/14
**program [4]** 24/5 39/7 39/8 210/2
**programmed [1]** 14/24
**programming [12]** 21/8 22/3 22/13 22/17 23/4 23/17 24/2 25/4 39/9 39/10 39/12 249/20
**progression [1]** 123/23
**prohibit [5]** 42/11 45/2 46/20 46/22 66/14
**prohibited [4]** 51/25 61/5 61/9 188/2
**prohibiting [1]** 183/14
**promise [1]** 196/7
**promised [2]** 196/3 196/8
**prompt [4]** 11/3 68/16 90/13 94/10
**prompted [1]** 203/19
**promptly [1]** 77/21
**prong [4]** 51/8 51/11 220/18 220/19
**pronouncement [2]** 253/11 275/22
**proof [1]** 27/5
**proper [1]** 92/16
**property [2]** 51/21 192/23
**proportion [1]** 148/2
**proscribed [2]** 268/10 269/4
**prosecution [1]** 128/9
**prospectively [1]** 274/8
**protect [1]** 92/24
**protecting [1]** 261/14
**prove [1]** 241/6
**proveable [1]** 204/9
**proved [1]** 244/9
**proven [2]** 218/9 254/6
**provide [27]** 59/6 59/19 60/17 61/16 85/9 85/25

**P**

**provide... [21]** 103/5 116/1 116/16 132/19 132/22 133/6 133/12 133/19 135/21 136/11 137/2 137/6 138/22 149/23 158/12 180/15 209/24 210/22 236/12 259/11 268/6
**provided [25]** 35/24 56/22 61/17 61/18 61/21 61/23 62/1 76/1 83/18 87/13 102/12 102/14 102/15 102/24 110/22 114/2 132/21 133/13 137/14 138/7 146/11 150/14 224/4 224/9 259/25
**provides [2]** 236/12 259/23
**providing [4]** 22/13 114/6 137/8 261/1
**proving [1]** 133/25
**provision [2]** 41/21 160/5
**provisions [1]** 59/17
**public [6]** 122/19 247/18 255/16 261/12 264/10 279/7
**publicity [1]** 255/18
**publicly [1]** 24/18
**pull [7]** 142/14 152/10 158/5 158/17 160/19 160/21 193/11
**pulled [3]** 161/18 168/8 209/9
**punish [1]** 26/9
**purpose [8]** 12/5 12/8 59/4 59/15 70/25 237/9 247/7 251/16
**pursue [1]** 214/1
**push [2]** 142/20 143/6
**pushed [2]** 114/24 272/18
**put [29]** 44/9 81/20 95/24 122/17 126/3 127/19 135/12 135/18 190/23 192/4 192/9 192/25 193/3 199/3 199/12 200/3 200/10 204/17 205/4 249/8 249/25 252/17 253/3 254/23 255/17 259/7 268/18 274/10 275/13
**putting [3]** 201/7 243/5 275/19
**puzzling [1]** 223/9

**Q**

**question [70]** 11/6 13/14 14/2 14/14 14/21 17/1 21/12 21/24 24/24 28/4 28/8 28/15 28/17 28/19 29/25 32/1 33/5 43/18 50/24 51/3 51/4 54/12 64/4 64/14 66/21 67/17 68/17 70/17 77/8 82/11 85/17 96/10 101/15 102/8 102/16 103/8 103/15 133/3 133/4 133/8 135/18 141/16 148/12 148/18 148/22 175/16 177/10 185/4 185/14 186/2 189/4 189/13 216/6 222/24 225/5 230/17 246/15 257/10 258/1 258/3 261/7 263/8 265/15 266/12 267/4 267/10 271/1 273/23 275/10 279/8
**questioning [2]** 78/10 79/16
**questions [33]** 25/1 31/21 32/10 32/17 32/21 69/19 78/23 83/14 83/21 90/11 93/9 93/10 103/6 113/23 133/13 136/9 166/1 166/3 166/5 177/17 185/25 193/19 207/4 208/2 217/17 230/14 232/21 232/24 235/23 264/22 266/18 266/18 273/3
**quick [7]** 47/6 71/23 93/23 105/14 178/11 196/14 211/7
**quickly [6]** 59/23 72/13 187/18 188/3 199/24 278/4
**quite [5]** 38/20 60/13 182/6 242/15 268/1
**quo [6]** 251/14 251/16 251/20 251/22 252/1 252/2
**quotes [1]** 19/3
**quoting [3]** 64/2 249/13 249/17

**R**

**raise [3]** 7/12 39/10 155/19
**raised [1]** 265/19
**RAJARATNAM [2]** 3/2 6/18
**Rajartnam............69 [1]** 4/7
**Rajartnam...........193 [1]** 4/17
**Rajartnam.........104 [1]** 4/9
**range [4]** 70/8 84/10 95/23 255/11
**ranged [1]** 144/20
**ranges [3]** 254/2 254/3 254/21
**rape [18]** 66/11 68/2 101/25 105/19 105/22 111/17 112/4 112/5 121/12 122/15 180/2 224/9 229/17 231/8 243/6 243/8 244/5 256/13
**raped [14]** 102/10 103/11 103/12 106/1 112/13 112/16 144/25 221/5 223/18

R

**raped... [5]** 226/23 240/11 242/16 242/17 267/8
**rapes [2]** 106/9 267/11
**raping [1]** 147/25
**rapist [19]** 98/15 121/8 122/16 122/23 124/2 147/14 147/15 150/25 164/9 180/25 181/15 240/12 253/2 253/6 254/8 254/10 254/15 254/15 275/22
**rapists [1]** 147/5
**rarely [1]** 81/12
**rate [1]** 40/4
**rather [2]** 55/9 182/18
**rationale [3]** 77/9 79/10 92/4
**rationales [1]** 257/6
**RDR [2]** 280/4 280/17
**re [1]** 241/15
**re-Tweets [1]** 241/15
**reach [6]** 19/21 29/19 29/22 34/14 186/25 218/23
**reached [4]** 221/18 223/5 263/22 271/24
**react [3]** 26/12 26/14 197/8
**read [39]** 15/22 16/18 18/13 25/6 34/18 40/10 58/6 58/10 58/25 60/5 60/7 63/14 66/1 69/25 70/12 70/14 112/22 142/23 148/15 153/4 153/19 156/6 160/20 160/21 161/5 183/7 186/8 208/11 213/21 216/14 216/15 216/16 217/9 217/14 238/23 240/9 246/6 249/21 265/25
**reader [1]** 55/24
**reading [19]** 38/12 41/20 55/15 55/23 57/3 57/17 57/23 58/5 58/6 58/25 62/22 63/22 64/13 64/24 100/7 100/11 101/3 113/6 260/5
**reads [1]** 75/3
**ready [3]** 6/24 78/13 162/16
**reaffirm [1]** 183/13
**real [13]** 47/6 71/23 105/14 144/16 178/10 200/18 201/12 211/7 254/5 254/9 254/11 264/6 264/15
**reality [2]** 78/25 138/1
**realize [4]** 41/15 45/21 142/20 143/5
**really [49]** 11/16 13/11 73/3 76/12 78/8 78/11 79/1 79/2 79/3 81/25 89/25 93/23 96/10 102/13 119/25 127/25 128/3 131/13 133/24 133/24 134/1 144/12 144/17 146/15 146/16 146/19 146/19 147/23 153/5 153/8 153/16 163/19 199/24 200/13 219/18 220/6 220/11 227/14 228/19 231/1 231/5 232/3 252/24 259/11 265/20 267/5 270/15 271/7 278/4
**reason [20]** 12/3 38/3 38/20 44/19 45/9 55/2 59/8 78/1 92/12 93/25 129/10 144/24 203/24 204/15 218/21 219/21 226/20 242/15 247/20 268/17
**reasonable [2]** 55/24 263/21
**reasonably [1]** 263/2
**reasoning [2]** 218/18 219/6
**reasons [22]** 43/22 44/11 45/23 67/22 68/6 89/2 106/16 182/5 218/8 218/13 222/22 224/13 227/2 227/2 227/11 240/3 248/1 260/23 268/21 272/13 273/25 277/5
**rebut [3]** 32/24 61/2 113/18
**rebuttal [1]** 33/3
**recall [28]** 18/12 18/17 34/1 35/19 35/20 37/3 53/4 69/12 100/5 100/7 100/11 127/11 129/5 131/22 132/16 153/12 155/15 160/23 161/2 166/17 167/20 177/2 178/2 229/4 230/12 265/2 265/3 265/8
**receive [6]** 34/13 35/3 84/11 104/23 279/8 279/12
**received [7]** 36/14 85/12 91/9 112/18 131/14 209/2 210/15
**recently [3]** 10/11 89/5 262/10
**recess [2]** 124/12 279/19
**recipient [2]** 43/4 101/5
**recipients [4]** 63/8 63/19 238/24 239/6
**recitation [1]** 218/7
**recognize [1]** 77/24
**recollection [7]** 14/1 102/25 141/23 143/12 161/25 163/5 163/22
**recommend [1]** 263/1
**recommendation [1]** 45/15
**reconcile [1]** 223/12
**reconvened [1]** 124/13

## R


**record [12]** 9/17 18/8 59/12 158/15 159/10 166/23 168/8 168/8 201/4 201/19 204/13 280/6
**recording [3]** 200/9 200/16 210/17
**records [4]** 96/11 134/20 134/22 201/12
**recover [1]** 181/10
**recoverable [1]** 253/1
**recross [13]** 4/9 4/14 31/16 31/17 31/20 31/24 32/11 91/25 93/1 93/5 93/13 104/16 185/2
**Recross-Examination [4]** 4/9 4/14 104/16 185/2
**recross-examine [1]** 31/24
**redirect [13]** 4/8 4/13 4/18 31/20 92/1 93/1 93/5 99/14 104/14 140/10 140/11 177/19 202/10
**REDIRECT-EXAMINATION [1]** 202/10
**redraft [1]** 10/7
**REECE [6]** 4/20 7/20 89/13 207/18 231/16 235/18
**REED [1]** 1/13
**reenroll [16]** 95/18 107/18 107/23 109/9 126/19 167/17 187/1 187/8 187/16 187/21 188/14 188/20 189/1 189/5 189/8 246/22
**reenrolled [1]** 190/17
**reenrolling [2]** 126/12 189/25
**reenrollment [3]** 194/9 194/10 194/24
**refer [9]** 10/20 17/15 25/17 33/10 63/17 74/1 74/5 111/13 237/11
**reference [3]** 92/18 165/5 217/16
**referenced [2]** 36/4 184/18
**referencing [2]** 37/14 37/19
**referred [4]** 20/24 65/6 115/5 154/22
**referring [17]** 14/19 21/2 25/16 37/8 41/9 47/2 100/3 143/2 143/3 143/8 153/24 162/7 162/14 163/13 163/17 164/1 164/16
**refers [3]** 47/24 237/5 237/10
**reflect [4]** 217/20 217/22 218/18 219/6
**reformulate [1]** 251/2
**refresh [6]** 15/19 15/25 141/23 161/25 163/5 163/22
**refreshing [1]** 37/17
**refuse [1]** 192/7
**refused [4]** 61/4 100/12 192/6 272/19
**refuses [2]** 60/25 60/25
**reg [1]** 239/11
**regard [2]** 12/22 214/17
**regarding [8]** 13/1 40/17 41/22 47/20 178/7 186/18 213/20 218/19
**regardless [4]** 17/2 39/21 188/25 240/12
**regards [5]** 184/11 184/17 267/24 271/1 271/9
**registering [1]** 196/23
**regs [8]** 43/12 43/16 160/5 237/17 259/7 260/5 260/6 260/7
**regular [2]** 44/19 91/8
**regularly [1]** 182/7
**regulation [5]** 10/11 72/17 236/10 237/19 246/2
**regulations [31]** 42/3 42/8 45/12 47/4 47/5 51/1 52/24 63/12 63/15 63/17 72/5 72/13 72/21 77/21 79/25 104/10 135/9 135/11 142/5 159/23 160/2 236/16 236/17 237/15 238/16 238/17 239/3 242/4 244/14 245/6 246/4
**regulatory [1]** 259/5
**reject [2]** 175/5 223/10
**rejected [8]** 222/20 224/13 224/17 226/20 227/3 229/11 240/4 272/17
**related [20]** 10/1 10/7 10/10 11/18 12/25 32/4 47/18 49/13 49/17 49/18 49/18 51/16 94/6 94/6 109/24 110/9 115/8 179/18 182/11 192/3
**relates [4]** 10/4 100/9 266/25 277/3
**relating [1]** 193/20
**relation [2]** 9/23 143/23
**relationship [24]** 11/15 49/4 49/12 49/18 49/22 49/23 94/5 110/22 115/23 116/2 140/17 144/13 144/14 144/15 145/10 146/12 179/19 212/8 220/6 230/20 231/3 231/4 267/7 267/13
**relationships [1]** 198/19
**relax [1]** 121/11
**relaying [2]** 190/2 194/18
**relevancy [13]** 33/12 42/10 57/2 57/7 57/7 59/11 76/15 237/3 237/4 237/5 245/11 245/12 245/13
**relevant [43]** 13/11 42/11

## R


**relevant... [41]** 43/4 43/8 44/4 44/7 46/9 58/3 58/10 58/13 58/14 58/15 58/16 101/7 101/10 104/9 137/18 137/21 138/9 138/23 139/11 139/12 139/12 139/16 139/18 139/19 140/24 157/19 157/24 158/3 159/15 237/22 238/10 238/11 238/13 238/20 239/12 239/13 242/14 256/25 257/1 259/11 271/13
**relied [2]** 228/11 231/9
**relief [1]** 264/16
**religious [1]** 174/15
**religiously [2]** 174/14 174/14
**reluctant [1]** 278/22
**rely [4]** 122/3 206/5 206/10 229/21
**remain [3]** 8/20 99/8 199/4
**remarkable [3]** 263/13 264/16 278/17
**remarks [6]** 261/8 262/13 264/22 266/10 266/15 267/16
**remedy [1]** 95/22
**remember [51]** 8/25 11/18 25/18 26/5 26/7 26/11 30/15 41/8 41/12 46/11 55/20 62/17 62/23 63/14 70/8 71/10 86/8 120/20 123/12 126/6 127/12 127/13 128/11 128/12 131/24 132/5 138/25 141/22 151/10 152/18 155/20 157/23 157/25 160/25 161/17 162/3 162/15 163/14 164/25 165/12 165/16 167/24 170/7 195/19 195/23 199/5 201/20 228/12 231/2 233/6 255/6
**remind [2]** 62/17 212/11
**removed [2]** 26/10 196/16
**render [1]** 251/17
**renders [2]** 259/5 261/4
**repeat [6]** 18/20 28/9 51/3 145/14 209/21 259/1
**repeated [1]** 238/19
**repeatedly [1]** 272/15
**rephrase [4]** 186/4 188/10 208/6 219/22
**replace [1]** 277/23
**replete [1]** 249/23
**reply [2]** 244/20 244/23
**report [105]** 54/18 56/24 57/6 57/18 58/8 59/3 59/5 59/7 59/9 59/15 60/6 60/7 60/11 60/16 61/4 61/19 61/25 62/2 62/6 62/21 63/10 73/17 74/13 74/15 74/21 74/25 75/4 75/6 75/18 75/22 76/1 76/4 76/8 76/14 76/19 76/23 78/1 79/6 79/25 84/12 85/2 86/14 86/15 86/19 87/6 87/7 87/10 98/21 99/18 99/20 104/20 110/19 112/22 113/1 113/12 114/4 114/10 114/15 116/21 122/12 125/4 129/16 135/12 135/21 135/24 135/24 136/2 136/14 138/20 141/17 156/7 161/3 173/12 181/24 187/23 187/25 206/7 216/10 216/16 216/20 217/7 225/7 225/8 225/15 225/16 225/21 227/4 227/21 228/6 236/25 239/1 239/25 240/5 244/21 244/23 248/6 248/9 249/23 259/7 260/3 268/7 268/12 268/13 269/22 275/19
**reported [5]** 18/3 191/15 206/9 206/14 225/18
**reporter [2]** 7/11 280/18
**Reporter's [2]** 5/8 280/2
**reporting [2]** 197/24 225/23
**reports [5]** 73/2 248/7 249/14 249/18 254/4
**represent [2]** 130/5 153/1
**representation [2]** 64/23 197/2
**representative [2]** 8/21 8/22
**representatives [1]** 215/12
**represented [3]** 130/21 131/6 170/3
**representing [2]** 243/4 259/21
**reprogramming [3]** 15/2 15/8 249/5
**reputation [5]** 254/6 254/11 256/1 273/12 275/6
**reputational [1]** 273/14
**request [9]** 190/25 199/13 200/14 217/16 250/2 252/11 264/16 272/7 272/17
**requested [1]** 176/23
**requesting [2]** 174/22 195/20
**requestion [1]** 32/21
**requests [1]** 12/24
**require [1]** 135/11
**required [8]** 26/21 28/5 68/16 72/23 77/21 79/25 247/19 260/2

## R


**requirement [4]** 72/22 185/6 259/7 264/12
**requirements [3]** 64/2 64/3 259/6
**requires [4]** 11/15 174/17 237/23 268/15
**research [1]** 71/3
**residence [4]** 125/14 125/24 198/9 212/18
**resolution [6]** 30/23 55/11 75/12 86/23 232/1 255/11
**resolve [1]** 77/22
**resolved [7]** 57/1 75/14 188/3 196/5 196/20 237/2 271/10
**resources [2]** 59/20 209/24
**respect [1]** 228/18
**respond [28]** 11/5 59/3 59/6 59/13 61/2 61/3 75/19 76/18 76/20 87/11 88/7 99/23 100/17 104/19 110/19 112/25 113/11 114/15 121/2 161/18 161/20 161/20 161/22 251/19 259/19 266/11 268/12 268/14
**responded [5]** 12/24 40/14 76/18 86/13 153/15
**respondent [16]** 31/23 48/6 48/10 68/2 80/24 92/21 95/21 97/9 97/13 124/20 232/6 234/20 237/19 255/1 255/5 264/14
**respondent's [2]** 222/8 222/14
**respondents [4]** 31/3 92/20 97/15 193/12
**responding [4]** 37/25 59/4 100/15 150/23
**responds [1]** 161/21
**response [33]** 54/18 56/21 57/5 57/18 58/7 59/7 59/16 61/24 62/6 62/20 74/25 76/6 77/25 79/5 88/6 90/18 100/18 114/3 114/7 114/9 116/20 119/17 120/19 154/12 178/20 178/25 179/16 179/17 180/1 250/20 267/3 268/16 269/22
**responses [11]** 35/3 54/1 75/25 76/5 76/22 87/8 87/12 87/13 88/4 127/2 236/23
**responsibilities [1]** 85/19
**responsibility [5]** 11/20 116/10 153/21 233/1 235/19
**responsible [16]** 12/12 29/5 94/24 107/6 107/24 122/15 155/6 155/8 155/24 223/12 271/3 272/3 274/14 274/16 278/8 278/18
**rest [6]** 79/2 123/25 162/24 162/25 163/15 275/23
**restate [2]** 24/24 43/19
**restrict [8]** 101/6 137/8 237/20 238/13 238/17 238/20 245/15 260/18
**restricted [3]** 101/10 101/16 261/1
**restricting [1]** 104/8
**restrictions [3]** 191/4 239/6 245/13
**resubmitted [2]** 86/4 86/7
**result [10]** 17/12 19/20 22/21 96/8 98/3 169/18 169/20 170/9 206/4 263/11
**resulted [1]** 27/25
**results [5]** 22/19 22/24 86/9 97/7 97/25
**resumed [1]** 207/11
**retain [1]** 128/5
**retained [1]** 128/23
**retainer [1]** 34/16
**retired [8]** 31/11 33/11 34/15 34/22 35/18 40/12 78/16 89/20
**retraumatization [3]** 31/18 31/21 92/19
**retraumatized [1]** 60/14
**retrying [1]** 49/19
**return [1]** 80/1
**review [11]** 70/19 70/19 77/14 77/15 77/17 84/18 84/21 87/10 87/11 90/21 135/15
**reviewed [1]** 217/15
**reviewing [2]** 56/23 236/24
**reviews [1]** 75/2
**rewrite [1]** 10/9
**ride [1]** 218/13
**right [246]** 6/4 6/6 6/17 6/24 7/12 12/2 12/14 13/21 13/23 16/5 17/10 19/14 20/16 21/23 23/2 24/20 26/22 32/15 32/20 39/5 41/5 41/10 42/6 44/22 45/1 47/13 47/14 48/13 48/19 49/5 51/16 51/19 51/22 52/5 52/9 53/1 54/9 57/24 58/20 61/14 62/8 62/25 71/9 82/24 93/16 103/7 106/24 107/1 108/20 111/20 112/1 116/22 118/7 119/3 121/8 121/25 123/10 123/24 124/23 126/7 126/9 128/15 128/18 130/14 130/16 130/22 130/25 131/10 131/13

## R


**right... [177]** 131/19 131/22 131/24 132/8 132/15 132/18 133/9 133/15 133/23 134/7 135/23 136/4 137/11 137/15 137/17 138/8 138/17 139/16 140/1 140/24 140/25 142/14 142/24 144/6 144/22 145/10 145/12 145/18 146/4 147/2 147/3 147/10 147/12 147/21 148/9 149/8 149/12 149/13 149/17 150/11 150/14 152/11 152/23 153/2 153/4 153/6 153/19 154/10 154/10 155/7 156/8 157/6 157/22 157/22 157/25 158/1 158/3 158/6 158/20 158/23 159/2 159/7 159/22 160/6 160/13 160/19 162/20 163/1 163/8 163/19 163/25 164/14 164/18 165/20 166/9 166/13 166/20 167/3 167/9 168/10 169/10 169/15 169/23 170/8 170/10 171/5 171/8 172/1 172/4 172/23 174/11 174/12 175/21 175/24 176/2 176/13 176/21 177/4 177/11 177/16 177/25 179/5 180/5 181/21 182/12 184/12 184/15 185/13 185/18 185/25 187/17 188/4 188/18 190/18 192/11 192/22 192/23 194/21 195/7 195/8 197/17 198/13 203/25 205/20 206/16 206/21 207/3 207/17 209/22 211/2 213/12 214/25 215/15 216/1 216/4 216/5 221/13 222/9 222/12 223/21 224/18 224/19 225/13 225/17 227/16 227/17 228/14 229/1 229/9 231/24 233/10 233/15 234/4 234/18 235/11 237/18 240/15 243/19 245/25 246/10 246/13 246/16 248/18 250/5 252/7 252/7 256/25 257/3 258/14 265/12 266/24 272/13 273/2 274/5 274/7 274/18 274/24

**righteous [1]** 20/2

**righteously [1]** 275/15

**rights [4]** 85/19 214/8 214/14 248/4

**ring [1]** 210/20

**rings [1]** 210/21

**rise [3]** 124/11 207/9 279/18

**RMR [2]** 280/4 280/17

**ROARK [28]** 1/16 1/17 6/7 37/10 38/23 69/10 71/6 71/24 75/17 78/9 83/25 85/12 86/25 89/24 92/7 93/12 97/16 113/22 140/2 155/17 158/25 164/22 170/3 185/24 193/20 197/13 207/24 234/8

**Roark...............09 [1]** 4/6

**Roark...............207 [1]** 4/21

**Roark..............105 [1]** 4/11

**Roark..............185 [1]** 4/16

**Roark.............99 [1]** 4/8

**Roark............177 [1]** 4/13

**Roark............202 [1]** 4/18

**Roe [79]** 53/23 54/7 60/1 60/17 69/2 69/3 83/18 83/24 84/17 85/6 86/2 87/20 88/6 93/13 98/11 100/4 100/8 101/24 103/3 104/24 105/19 105/22 121/18 124/19 125/16 125/22 127/10 128/21 133/17 134/15 136/5 136/17 138/21 140/6 140/18 142/18 145/16 148/6 148/8 148/8 149/21 150/14 151/17 160/10 161/8 161/14 161/15 163/10 163/20 164/1 170/9 177/21 190/13 191/13 191/20 192/3 192/12 192/13 192/17 197/15 197/18 198/18 199/13 202/13 203/15 206/2 221/15 234/22 240/13 240/17 253/5 258/4 259/21 261/14 261/17 262/2 264/24 266/18 273/7

**Roe's [12]** 11/20 83/4 98/3 99/5 109/12 127/7 127/8 127/9 171/18 172/1 202/21 261/17

**role [14]** 9/7 9/19 9/25 10/24 25/2 26/24 73/10 81/8 81/9 82/8 82/10 82/11 90/6 186/10

**roles [1]** 10/12

**room [14]** 81/14 81/16 81/24 111/25 116/21 125/24 182/25 200/11 201/15 221/13 222/13 222/15 250/11 280/20

**roommate [6]** 119/8 119/8

**R**

**roommate... [4]** 120/24 222/1 224/23 224/23
**roommates [2]** 177/21 177/24
**rooms [2]** 81/14 167/14
**roped [1]** 262/9
**Rosenthal [1]** 252/23
**Rosenthal's [1]** 263/2
**roughly [2]** 126/23 140/15
**ruin [1]** 275/22
**ruined [1]** 122/17
**ruining [1]** 148/7
**rule [33]** 7/7 8/9 37/6 37/20 43/4 43/7 47/20 48/1 48/3 56/17 57/6 57/19 63/2 66/14 67/2 67/12 67/18 67/21 188/5 188/9 188/12 188/12 188/20 236/9 236/10 236/11 237/19 241/25 242/2 245/21 252/15 261/4 270/6
**Rule 1.19 [1]** 37/20
**Rule 1.29 [1]** 188/9
**Rule 5.3.10 [1]** 67/12
**Rule 5.3.14 [1]** 67/21
**rules [76]** 10/13 10/14 10/15 10/18 12/4 27/4 33/11 37/6 40/7 40/9 40/10 40/11 40/15 40/17 40/20 40/25 41/19 42/2 42/7 42/15 43/3 43/22 44/1 44/23 45/22 45/23 45/24 46/1 46/20 50/16 50/23 51/7 55/23 62/16 63/8 67/13 67/18 100/16 101/4 101/5 101/22 106/17 107/5 109/3 183/7 236/6 242/6 242/21 242/21 243/1 243/12 243/18 243/25 244/15 244/16 244/19 245/18 248/3 248/20 250/9 250/23 250/24 251/2 261/3 267/24 267/25 268/11 268/11 268/15 269/4 269/14 269/24 270/20 270/22 270/22 271/15
**ruling [3]** 171/12 264/8 272/3
**rulings [2]** 173/6 275/18
**run [4]** 105/14 124/1 182/21 212/17
**running [4]** 78/21 182/5 182/7 253/6
**runs [1]** 200/12
**Russel [13]** 7/21 13/19 13/19 13/20 16/11 25/12 170/21 170/22 170/25 171/6 171/9 207/6 207/13
**Ruvolo [6]** 46/3 89/5 89/20 112/8 215/18 216/12

**S**

**sad [1]** 153/23
**safe [1]** 138/12
**said [100]** 10/13 16/12 24/25 31/19 32/24 35/15 38/23 39/8 41/21 50/2 50/17 50/25 62/11 62/14 64/3 67/15 71/10 81/3 82/4 82/20 83/24 83/25 85/24 89/24 91/7 91/22 94/14 94/23 96/2 96/11 98/13 98/14 111/17 116/10 126/14 127/5 127/9 128/13 128/21 132/1 137/24 137/24 142/19 142/20 142/21 143/6 143/19 151/12 153/14 155/12 167/18 168/7 168/10 168/13 168/25 174/17 176/25 177/1 180/1 180/11 180/20 183/25 184/18 192/19 194/15 197/15 201/23 202/1 203/21 205/22 209/11 213/19 213/21 213/22 218/14 218/21 221/15 221/25 228/17 240/1 243/11 246/2 247/10 250/8 250/12 251/14 256/13 256/22 257/4 258/4 258/4 258/9 260/10 260/11 266/13 267/4 270/14 272/18 273/7 275/14
**same [51]** 21/11 40/20 42/17 47/15 47/16 47/17 47/21 48/23 49/1 49/5 49/12 49/17 49/19 50/1 50/14 52/18 52/20 53/12 62/15 62/19 62/24 63/11 68/6 72/8 73/22 75/22 80/12 80/17 86/4 89/2 99/24 100/13 101/20 103/12 113/14 117/25 143/25 144/1 147/5 162/2 162/2 200/17 220/5 224/13 225/20 240/5 244/18 248/14 250/10 264/12 278/11
**samples [1]** 18/15
**SAMUEL [2]** 3/2 6/18
**sanction [1]** 170/17
**sanctions [2]** 201/6 215/2
**sat [3]** 90/24 94/12 124/25
**satisfies [2]** 262/23 262/24
**save [1]** 74/4
**saw [11]** 22/22 25/10 54/21 91/2 158/4 166/7 166/12 196/1 213/21 265/22 272/19
**say [114]** 17/2 22/17 23/16 28/6 28/22 31/19

## S


**say... [108]** 32/20 33/18 35/10 39/8 44/23 45/24 48/21 49/2 51/7 53/10 53/11 55/24 56/3 56/10 56/15 58/17 61/22 64/23 70/3 73/11 77/23 85/15 101/5 103/20 108/25 109/2 113/3 115/9 115/16 115/23 121/1 121/8 127/1 128/6 129/1 129/22 133/11 134/9 137/19 138/12 140/23 143/19 144/10 144/11 145/6 145/16 146/18 146/24 147/5 154/13 154/14 154/15 154/15 156/8 157/20 159/9 162/4 162/6 162/13 163/8 163/25 164/8 168/20 174/3 179/4 179/13 180/24 180/25 185/7 187/20 194/20 195/22 200/15 201/18 204/4 205/7 205/11 205/15 205/25 206/16 222/7 225/1 225/6 234/19 238/16 239/5 242/22 246/7 246/7 249/16 251/4 252/14 253/20 255/7 256/15 264/2 265/3 265/11 266/4 266/12 267/2 267/2 268/11 269/15 273/15 273/16 276/18 278/17

**saying [52]** 13/10 16/22 20/1 20/10 20/11 20/13 27/17 28/12 48/1 50/23 58/5 108/24 113/18 114/19 120/9 128/17 136/18 143/6 143/9 143/22 144/7 144/17 145/4 145/9 145/24 147/17 147/18 151/20 153/14 154/4 154/7 154/12 157/23 166/17 175/17 176/16 179/17 189/14 189/16 194/22 201/10 205/23 224/15 225/22 226/5 247/11 249/12 253/8 254/16 260/1 273/14 279/2

**says [53]** 16/16 16/19 16/24 17/6 20/23 37/21 38/8 38/12 45/2 48/3 53/6 56/20 57/20 63/8 64/4 67/12 75/5 101/24 102/3 102/10 103/12 112/4 121/7 121/11 142/18 143/19 146/25 147/1 148/9 153/24 160/6 179/11 180/24 182/12 188/5 188/20 191/6 210/8 222/10 224/5 228/21 229/17 236/23 237/19 243/7 243/21 245/15 245/21 250/13 256/14 257/5 263/11 277/20

**SB [1]** 264/12

**scenario [1]** 275/3

**scene [1]** 266/15

**schedule [1]** 78/10

**scheduled [4]** 90/15 91/3 159/3 159/4

**schedules [1]** 35/11

**scheduling [4]** 12/23 90/10 186/12 200/4

**SCHNEIDER [5]** 3/2 6/15 180/20 184/17 276/14

**Schneider's [1]** 275/9

**Schneider............231 [1]** 4/22

**Schneider...........124 [1]** 4/12

**Schneider.........185 [1]** 4/14

**school [20]** 47/9 51/12 51/16 106/13 107/3 107/17 107/22 123/4 123/6 175/25 248/15 268/4 268/16 271/7 271/11 271/12 271/14 275/24 277/15 277/16

**school's [1]** 275/25

**school-related [1]** 51/16

**schools [16]** 26/12 26/21 39/21 47/5 48/4 106/23 177/7 238/24 247/18 260/9 264/10 268/2 268/6 278/6 278/9 278/19

**SCOTT [2]** 3/2 6/15

**scrambling [1]** 265/7

**screaming [1]** 182/21

**screen [8]** 81/18 81/20 87/15 88/11 149/16 149/17 149/20 181/9

**screw [1]** 145/17

**scroll [1]** 142/16

**seal [1]** 8/2

**seat [2]** 105/15 207/21

**seated [3]** 6/4 124/14 207/12

**sec [1]** 235/17

**second [24]** 14/20 21/9 60/13 60/14 66/20 93/21 109/18 111/2 147/9 155/2 155/6 182/2 193/22 197/12 218/21 220/9 220/18 226/20 234/13 234/13 234/18 246/15 260/18 276/4

**section [11]** 16/11 47/24 62/19 63/14 67/15 109/3 236/10 236/14 237/25 238/1 242/5

**sections [2]** 16/10 71/2

**secure [1]** 34/22

**see [24]** 7/11 19/10 61/20 81/19 93/7 103/21 108/6

S

see... [17] 113/11 142/24 147/24 150/25 152/24 153/7 154/20 158/18 158/21 168/4 194/20 213/19 225/25 259/8 262/12 265/23 276/25
seeing [5] 18/12 18/17 194/17 197/3 197/4
seeker [1] 27/23
seeking [1] 245/17
seem [1] 199/4
seemed [1] 197/10
seems [4] 219/17 221/4 233/17 247/2
seen [16] 59/15 92/20 94/10 96/13 133/16 139/7 193/5 193/8 210/3 210/10 210/11 249/10 254/21 265/19 265/21 275/18
selected [1] 172/22
selective [1] 241/9
selectively [1] 104/4
self [3] 147/4 228/13 228/22
self-control [3] 147/4 228/13 228/22
semester [14] 107/9 107/12 107/14 107/21 126/13 126/13 126/15 126/16 129/14 130/19 173/18 187/2 261/14 271/9
send [18] 34/24 80/2 90/9 114/19 120/8 135/12 138/5 149/10 151/17 151/20 151/22 199/10 252/3 260/15 275/24 275/25 276/3 276/4
sending [1] 111/8
sends [1] 168/19
seniority [1] 274/10
sense [11] 27/13 38/24 86/2 91/16 94/8 131/9 225/12 226/22 241/3 245/10 248/10
sensitive [2] 92/12 92/14
sent [12] 25/15 40/23 56/1 108/19 151/19 179/5 181/9 181/10 213/19 223/13 226/5 272/17
sentence [8] 16/16 16/19 17/6 19/19 20/23 38/14 43/8 237/23
sentiment [1] 122/24
separate [9] 46/12 49/16 80/18 94/2 110/2 110/5 194/4 239/23 268/20
separated [2] 261/15 271/6
September [5] 84/9 97/19 130/18 130/20 181/20
September 24th [1] 84/9
series [1] 152/23
serious [6] 66/12 145/5 261/21 278/8 278/19 278/21
seriously [1] 233/1
serve [2] 9/20 35/1
served [1] 10/9
serves [1] 102/25
service [3] 231/19 231/20 231/22
serving [4] 78/16 159/8 211/13 261/15
set [18] 18/11 30/24 34/23 68/12 68/13 68/20 70/18 81/14 114/14 114/17 164/24 167/14 177/9 249/8 251/8 252/7 263/25 266/15
setting [2] 59/22 165/2
settled [1] 30/23
settlements [1] 255/10
seven [2] 218/5 268/3
Seventeen [2] 140/14 169/16
several [6] 45/19 60/10 107/15 121/24 199/23 272/19
sex [44] 32/4 106/6 117/2 117/3 117/8 119/9 119/14 119/18 119/19 154/3 154/6 172/15 173/12 177/1 178/12 178/14 182/10 182/15 218/24 219/3 220/23 221/4 226/21 226/23 226/24 227/23 228/6 240/5 240/8 261/24 263/19 264/7 264/19 267/2 267/5 267/6 272/15 278/7 278/8 278/9 278/19 279/5 279/10 279/12
sexes [1] 22/20
sexual [40] 26/9 29/5 30/1 30/17 30/18 30/21 32/3 46/12 48/5 48/22 49/25 72/7 92/9 93/20 93/22 97/18 97/19 98/8 116/16 118/17 121/18 163/11 164/5 180/21 180/23 209/16 209/22 214/18 222/2 222/12 232/4 247/7 253/11 264/24 267/11 273/20 274/14 275/5 276/20 277/2
sexually [12] 53/10 53/11 125/5 125/23 128/21 145/1 145/25 146/1 219/18 222/15 270/16 277/21
sexy [1] 222/4
shall [2] 67/19 237/20
shape [1] 206/9
share [7] 75/22 81/20 88/4 155/14 159/25 259/7 270/7
shared [20] 54/19 73/17

## S

**shared... [18]** 74/15 74/18 75/24 75/24 84/16 84/17 84/20 84/23 87/3 88/6 90/24 100/19 141/2 152/4 216/17 216/19 216/20 221/20
**shares [1]** 81/18
**sharing [1]** 260/3
**Shaw [1]** 89/14
**she [259]** 49/6 60/11 60/12 60/13 60/13 60/25 61/4 61/15 61/17 61/21 61/23 62/1 62/4 62/5 62/6 62/7 62/11 62/12 62/14 62/15 62/16 62/19 65/24 65/25 66/1 80/21 83/18 83/18 83/19 83/25 84/2 84/5 84/6 84/7 84/8 84/17 86/2 86/4 86/5 87/20 87/23 87/24 88/10 88/13 89/5 92/15 98/12 98/13 98/13 98/18 98/19 100/12 100/13 102/15 102/21 102/21 102/24 106/1 106/6 106/7 106/9 111/8 111/12 111/16 111/17 111/23 112/3 112/4 112/13 112/23 113/11 113/18 114/2 115/4 115/5 115/15 115/15 115/24 116/10 116/21 116/24 117/7 117/10 117/13 117/13 117/14 118/7 118/18 118/19 119/3 119/7 119/7 119/9 119/11 119/14 119/21 119/24 120/8 120/10 120/13 120/23 120/23 120/24 121/1 121/2 121/7 121/11 121/18 122/21 124/1 124/5 125/25 126/4 129/2 129/10 129/10 129/11 129/16 136/20 137/23 138/7 142/18 143/2 143/6 143/8 143/10 143/10 143/12 143/19 143/19 143/22 144/21 145/24 146/24 146/25 146/25 148/2 148/9 151/8 151/11 151/23 153/12 153/13 153/13 153/15 153/15 153/24 153/24 161/13 161/23 166/15 170/12 170/12 170/14 172/25 177/24 178/12 178/18 178/25 179/2 179/4 179/11 180/1 180/24 181/2 181/4 181/5 181/6 181/20 182/11 182/14 182/14 182/15 182/16 182/18 182/18 191/13 192/12 197/18 197/20 197/20 197/21 197/22 198/5 198/7 198/8 198/9 199/14 212/25 213/8 213/19 213/19 213/22 221/25 222/4 222/23 223/4 223/18 224/4 224/9 224/17 224/21 224/21 224/22 224/22 224/25 225/1 225/5 225/8 225/15 225/16 225/18 225/20 226/24 227/20 227/23 228/5 228/6 229/17 231/7 240/9 240/9 240/10 240/11 240/18 242/17 247/3 247/14 249/3 249/12 249/13 249/17 249/22 250/8 250/13 250/25 256/13 256/13 258/4 258/4 265/11 266/12 266/13 267/2 267/3 267/4 267/5 267/11 267/12 267/14 270/14 270/14 271/23 271/25 272/15 272/17 272/19 273/6 273/7
**she's [11]** 62/2 65/23 144/3 145/5 148/15 153/2 154/5 154/6 162/20 246/21 270/15
**shepherded [1]** 248/20
**shock [1]** 153/8
**shocking [1]** 242/18
**shoes [1]** 260/21
**short [8]** 122/16 146/21 167/25 218/7 260/24 264/15 264/18 265/7
**shot [2]** 122/10 149/16
**shots [5]** 87/15 88/11 149/18 149/20 181/9
**should [30]** 15/2 15/8 19/5 28/23 29/1 33/23 41/24 61/12 62/12 77/7 79/9 82/10 97/23 136/22 138/14 162/23 170/6 170/14 183/8 187/15 194/12 214/1 215/2 237/10 241/24 249/18 256/15 258/7 267/2 272/8
**shoulders [2]** 277/4 277/7
**shouldn't [4]** 132/22 133/5 183/9 272/10
**shout [1]** 122/22
**show [3]** 47/24 182/6 249/9
**showing [2]** 263/20 264/5
**sic [6]** 104/14 112/14 120/5 140/9 160/11 166/7
**side [7]** 8/12 152/13 159/25 186/21 232/13 240/16 244/17
**sides [5]** 99/23 100/13 232/3 232/11 239/12
**sign [8]** 191/9 192/2 192/6 192/7 199/7 199/16 199/18 199/19
**signature [1]** 158/21

S


**signed [2]** 199/11 280/15
**significance [2]** 220/1 220/2
**significant [1]** 22/25
**significantly [3]** 17/7 20/24 122/9
**signify [1]** 54/16
**signs [3]** 94/18 202/4 211/22
**similar [6]** 88/25 89/6 94/7 225/24 253/17 263/23
**simmer [1]** 190/12
**simple [1]** 29/11
**simply [11]** 92/23 103/5 186/15 205/7 236/23 238/18 249/24 268/8 268/24 269/3 274/12
**simultaneously [1]** 80/3
**since [9]** 35/10 62/11 77/1 115/22 184/12 235/1 235/1 241/2 249/10
**single [4]** 39/23 72/3 237/23 248/24
**sir [20]** 7/14 8/19 13/9 25/25 39/20 63/13 67/17 72/9 72/12 84/13 85/7 87/19 89/3 103/6 103/15 118/14 145/19 185/19 195/14 196/24
**sister [1]** 165/8
**sit [2]** 132/9 278/7
**site [1]** 210/17
**sits [2]** 73/24 248/23
**sitting [7]** 66/12 88/23 96/6 221/16 248/2 263/22 271/25
**situation [18]** 29/1 61/1 63/11 115/18 115/19 145/3 147/19 147/20 148/16 151/3 161/1 161/14 190/11 191/25 193/4 196/5 198/17 272/21
**situations [3]** 209/25 231/5 253/17
**six [6]** 42/19 46/16 52/10 109/19 109/19 216/4
**skewed [1]** 184/6
**slept [1]** 18/13
**slip [2]** 124/19 124/20
**slow [3]** 18/8 211/25 212/2
**small [6]** 17/18 17/22 18/2 23/17 138/4 238/6
**smaller [1]** 123/20
**smoothly [1]** 200/12
**SMU [7]** 174/15 174/17 175/3 175/7 175/24 176/14 176/24
**SMU's [2]** 175/18 185/5
**Snapchat [15]** 61/18 83/19 98/9 149/2 149/5 149/6 149/9 149/17 149/20 150/4 150/12 152/7 153/10 181/9 230/2
**Snapchats [4]** 150/7 181/10 181/11 270/12
**snippet [1]** 138/4
**so [372]**
**soap [1]** 232/15
**social [3]** 149/6 214/9 214/10
**socializing [1]** 111/5
**society [1]** 277/6
**sole [1]** 247/6
**solely [1]** 58/10
**solution [1]** 268/23
**some [84]** 12/19 12/24 17/12 19/4 21/13 30/5 32/4 51/12 51/15 69/19 69/22 69/25 76/15 77/19 84/7 95/6 95/16 95/23 95/24 105/14 111/5 111/8 115/5 117/23 117/24 119/24 121/10 124/24 126/10 128/8 128/15 132/6 135/5 139/16 139/18 139/19 141/2 150/2 150/3 152/14 157/22 160/24 165/5 167/15 167/17 168/16 170/19 171/8 171/9 176/21 178/14 185/25 186/17 186/23 193/24 196/14 202/21 210/24 213/20 213/23 218/24 220/19 234/12 237/24 241/13 241/14 241/14 246/19 247/19 248/6 249/12 249/17 252/5 252/10 254/6 255/11 255/17 256/17 261/3 264/3 276/16 276/17 277/16 280/8
**somebody [7]** 144/6 149/3 168/25 200/10 200/11 259/13 278/14
**somehow [4]** 168/10 202/24 263/12 272/2
**someone [45]** 8/11 8/13 8/18 21/10 24/11 32/21 33/7 38/4 38/15 62/24 63/3 63/8 65/21 67/25 71/7 107/17 107/22 147/15 154/3 155/25 170/20 173/11 175/18 180/8 189/7 192/22 202/24 203/3 205/2 206/18 219/18 219/19 220/2 221/4 226/23 240/10 243/3 246/23 248/11 248/18 250/1 250/21 251/3 254/24 269/20
**someone's [2]** 63/24 254/11
**something [32]** 23/11 32/20 51/24 76/20 101/23 111/6 115/16 115/18 116/9

## S


**something... [23]** 121/8 127/1 133/25 155/21 161/11 170/19 180/24 190/9 190/22 191/10 197/22 208/3 214/7 220/6 224/11 231/9 232/4 243/23 252/5 255/12 259/2 267/21 275/15
**sometime [1]** 187/1
**sometimes [2]** 33/20 204/15
**somewhat [1]** 208/1
**somewhere [3]** 70/7 84/9 95/25
**soon [3]** 84/22 178/17 189/10
**sorority [4]** 212/3 277/19 277/19 277/20
**sorry [44]** 35/16 97/2 97/4 98/10 112/16 115/9 121/1 127/7 138/2 145/6 145/9 145/13 145/25 146/16 146/19 148/6 148/7 148/8 150/23 151/6 151/13 151/13 151/20 151/22 154/18 159/18 170/21 179/8 184/9 188/10 209/21 212/2 212/21 224/5 226/6 228/17 228/19 228/22 228/23 238/5 238/6 246/11 264/21 265/15
**sort [20]** 71/20 83/15 92/8 92/15 94/18 95/6 128/8 138/23 140/10 166/22 166/24 167/12 220/25 232/12 254/7 255/11 263/18 264/7 278/12 278/13
**sorts [2]** 226/6 278/20
**sound [4]** 131/17 134/7 204/12 219/20
**sounds [6]** 80/13 121/7 140/1 151/3 208/7 249/11
**source [2]** 34/14 89/19
**Southern [1]** 252/24
**space [1]** 216/3
**spades [1]** 240/6
**spare [1]** 207/14
**speak [5]** 18/8 81/15 90/3 90/5 201/17
**speaking [6]** 9/7 26/7 28/1 36/23 162/8 190/19
**speaks [1]** 171/17
**spear [1]** 25/3
**specific [11]** 18/16 83/1 143/17 149/14 155/19 166/25 209/8 209/16 211/5 214/11 217/10
**specifically [49]** 10/21 12/22 25/16 35/21 39/15 41/21 45/8 47/2 48/2 51/24 63/7 70/21 83/3 98/13 107/2 111/16 111/22 115/8 120/20 123/1 125/25 126/6 127/13 128/11 128/13 131/24 138/22 143/5 167/24 173/1 175/13 177/7 185/12 188/5 209/18 209/22 210/10 213/24 214/17 219/3 220/8 222/11 223/17 230/25 238/16 238/20 240/1 245/15 257/8
**specifics [2]** 214/19 229/4
**speculation [2]** 262/24 278/16
**sped [1]** 73/1
**spells [1]** 56/2
**spend [2]** 40/6 270/12
**spending [1]** 90/23
**spent [5]** 34/17 71/24 207/24 229/2 231/2
**spinning [1]** 116/24
**split [6]** 93/18 155/15 239/24 240/19 241/4 263/12
**splits [1]** 264/9
**splitting [3]** 110/10 272/5 272/11
**spoke [1]** 201/22
**spot [1]** 275/13
**spring [2]** 107/11 126/17
**stacked [1]** 172/20
**staff [10]** 35/1 35/5 35/9 35/11 38/10 38/11 38/22 89/16 89/21 196/13
**stage [5]** 98/18 137/11 137/12 158/8 248/24
**stand [4]** 9/1 193/6 209/14 251/22
**standalone [1]** 236/22
**standard [23]** 20/14 27/9 27/19 27/25 28/5 28/7 28/13 28/23 28/24 29/12 29/12 29/13 29/16 29/17 29/19 71/24 72/2 72/8 72/10 190/22 233/12 262/25 278/12
**standing [14]** 82/16 95/10 107/4 123/7 174/18 174/23 175/9 175/10 175/19 184/20 184/23 185/5 185/6 250/5
**start [11]** 7/14 69/23 73/5 124/10 125/2 173/20 173/21 178/18 226/15 265/21 274/3
**started [3]** 6/24 221/15 222/15
**starting [1]** 19/6
**starts [4]** 78/8 78/20 119/7 123/13
**stasis [1]** 199/1
**state [7]** 9/17 37/20 60/16 63/16 165/3 177/12

## S


**state... [1]** 227/6
**stated [16]** 18/19 36/1 44/12 66/25 85/12 87/14 88/20 92/6 98/12 98/12 98/14 100/18 101/23 103/25 114/12 226/22
**statement [12]** 87/24 92/18 157/11 162/5 162/13 162/19 166/23 166/25 220/16 220/19 220/20 249/7
**statements [6]** 79/17 116/20 167/12 218/22 229/14 247/5
**states [8]** 1/1 1/13 44/2 67/18 67/21 112/22 276/16 280/14
**stating [1]** 102/24
**statistical [3]** 173/10 183/21 184/3
**statistically [6]** 21/14 22/22 28/1 31/2 31/4 247/16
**statistics [6]** 173/15 184/1 184/3 247/18 264/11 264/12
**status [13]** 82/14 95/6 95/8 95/9 189/6 201/11 251/14 251/14 251/16 251/20 251/22 252/1 252/2
**stay [3]** 127/10 128/17 243/1
**stays [1]** 9/8
**STEIDL [18]** 4/15 7/16 7/18 33/19 108/3 108/8 108/19 109/1 140/9 166/7 167/9 167/18 185/17 185/22 193/18 215/14 215/19 246/22
**Steidl's [1]** 109/7
**step [6]** 75/8 75/9 95/11 105/11 185/16 207/5
**steps [1]** 172/25
**stick [1]** 139/8
**stigma [3]** 275/2 277/3 277/17
**still [10]** 58/25 59/10 75/19 76/11 84/7 93/13 153/21 223/11 231/8 279/4
**Stimpson [1]** 17/16
**stipulation [2]** 40/16 69/5
**stipulations [1]** 95/17
**stood [1]** 123/22
**stop [10]** 47/6 48/15 116/10 120/2 151/4 153/23 169/17 174/11 179/13 200/16
**stopped [1]** 187/15
**stored [1]** 137/1
**stories [1]** 221/11
**story [8]** 116/25 143/22 144/3 192/20 229/10 260/24 271/21 272/12
**straddles [1]** 128/2
**straddling [1]** 132/20
**straight [2]** 221/17 243/2
**strategic [1]** 260/20
**strategy [2]** 119/2 138/13
**stream [1]** 111/14
**street [4]** 1/21 1/24 176/3 280/20
**strict [2]** 45/25 244/14
**strictly [4]** 46/3 66/14 67/1 270/23
**strike [1]** 162/11
**string [2]** 102/15 181/3
**strive [1]** 35/7
**striving [1]** 243/4
**strong [1]** 274/21
**stronger [1]** 251/9
**strongest [1]** 241/20
**struggle [2]** 14/17 18/24
**student [56]** 10/5 10/5 10/8 10/10 11/15 11/16 11/23 11/25 13/6 16/5 17/7 32/6 37/14 37/22 37/25 66/6 72/2 72/3 73/6 75/11 78/22 79/3 79/20 82/12 82/14 95/6 96/9 158/24 164/24 165/15 168/11 173/7 177/8 186/13 186/18 188/21 190/11 190/20 190/21 191/6 192/16 192/17 198/3 199/2 201/1 201/7 201/11 203/14 203/21 203/22 204/16 204/22 231/20 262/1 278/13 278/17
**student's [1]** 194/2
**students [55]** 9/20 9/21 9/25 10/2 11/21 12/6 12/10 12/11 12/19 16/19 17/2 18/3 19/20 19/21 20/4 21/13 22/4 22/6 22/13 22/15 24/10 32/2 52/1 55/14 56/23 59/20 70/22 71/4 71/14 78/12 83/9 83/10 83/13 84/11 85/8 85/18 85/19 87/3 87/11 96/18 98/25 131/6 202/16 204/3 204/6 204/13 205/8 208/16 212/19 236/24 248/20 261/20 278/9 278/10 278/11
**Students' [6]** 55/11 75/11 75/16 86/21 86/23 209/6
**studies [3]** 18/3 18/11 70/15
**study [11]** 17/5 17/15 17/18 17/18 19/3 19/8 19/20 20/4 22/19 23/22 71/4
**stuff [3]** 140/10 180/14 254/7

## S


**stunning [1]** 242/18
**subject [1]** 25/25
**subjectively [1]** 153/6
**submit [33]** 59/16 61/15 62/3 74/7 74/8 74/19 74/24 76/6 76/11 76/24 77/1 77/12 77/12 77/16 80/5 83/14 85/9 86/11 87/20 105/2 112/3 113/4 113/10 136/22 138/2 141/19 141/20 141/24 142/12 148/3 155/1 157/18 176/19
**submits [1]** 112/3
**submitted [56]** 15/11 16/7 41/22 41/25 57/25 61/12 62/5 73/13 74/22 77/7 78/2 79/5 79/8 83/20 84/7 84/15 84/18 84/21 85/6 86/3 86/5 86/6 86/16 87/2 87/8 87/23 87/25 88/2 88/10 88/14 88/14 89/1 89/6 100/18 103/1 104/1 104/24 105/5 115/24 116/1 134/8 134/10 134/11 134/13 136/18 138/21 142/1 151/23 155/17 169/12 171/8 220/10 223/20 233/20 236/4 239/10
**submitting [5]** 87/17 113/7 134/23 139/4 164/22
**subpoena [3]** 134/17 134/19 260/13
**subsection [1]** 57/24
**Subsequent [1]** 121/18
**subsequently [3]** 109/9 120/4 133/16
**substance [1]** 91/21
**substantial [4]** 51/17 91/23 114/2 220/14
**substantially [3]** 42/12 43/5 256/23
**substantive [2]** 70/5 166/17
**succeed [1]** 261/10
**successful [3]** 150/5 150/6 151/5
**such [8]** 54/13 68/13 68/15 106/17 113/3 238/24 248/25 262/3
**suffered [1]** 18/11
**sufficient [1]** 276/8
**suggest [1]** 273/4
**suggested [2]** 18/3 234/22
**suggesting [1]** 213/1
**suggests [1]** 248/7
**Suite [2]** 1/24 3/4
**Sullivan [1]** 25/6
**summarizes [1]** 156/7
**summation [1]** 219/20
**summer [5]** 117/25 127/24 271/10 271/12 271/14
**super [2]** 179/8 228/17
**superfluous [3]** 259/5 268/1 269/1
**superior [1]** 21/20
**supervisor [1]** 109/7
**support [8]** 12/10 81/10 156/12 220/15 232/10 233/15 247/7 247/10
**supported [3]** 173/7 219/11 219/12
**supporting [1]** 210/6
**supposed [15]** 42/10 44/2 44/18 44/23 45/2 45/24 45/25 101/6 114/25 185/7 189/16 189/18 238/13 239/11 243/4
**supposedly [1]** 156/1
**sure [88]** 9/18 10/13 11/1 11/2 11/23 18/13 24/24 28/11 31/7 32/8 35/23 41/9 42/2 43/21 51/6 57/13 66/17 66/22 69/5 69/11 78/8 80/12 80/21 81/23 89/13 90/10 90/12 90/21 91/23 97/2 114/16 124/24 129/24 138/18 151/10 156/16 157/20 159/14 159/24 165/7 169/6 174/9 174/10 175/16 185/7 186/1 186/15 188/11 193/21 197/14 200/4 200/12 201/16 204/4 204/23 205/1 205/12 206/13 206/20 209/2 209/21 211/5 212/13 213/16 214/13 217/10 219/24 221/9 224/16 226/8 226/11 226/14 226/17 227/7 227/9 228/15 230/6 232/5 232/9 239/18 241/19 241/19 242/25 253/12 253/16 256/16 262/11 273/21
**surprise [1]** 69/1
**surprised [2]** 56/9 56/11
**survive [1]** 262/17
**survives [1]** 247/23
**survivors [9]** 31/18 31/19 210/4 244/5 244/8 244/9 247/7 247/11 247/14
**suspect [1]** 261/17
**suspend [1]** 276/11
**suspended [16]** 95/8 95/15 96/2 99/8 169/22 170/18 173/16 188/6 188/14 188/22 251/25 274/6 278/10 278/10 278/11 278/14
**suspension [3]** 123/9 123/22 188/15
**sustain [1]** 133/7
**Sustained [1]** 98/21
**swear [1]** 7/9

**S**

**switch [1]** 106/23
**sworn [4]** 7/12 7/13 185/18 207/19
**symbolization [6]** 17/4 19/23 20/1 20/19 22/23 24/1
**system [3]** 68/13 172/18 244/12

**T**

**take [26]** 13/9 34/5 34/12 34/21 76/20 81/15 81/16 94/11 153/21 187/18 200/15 207/8 214/22 215/4 217/9 228/16 235/16 243/12 247/11 252/4 252/15 262/5 265/16 274/22 275/18 279/17
**taken [10]** 32/6 32/9 71/5 78/22 110/24 110/25 116/9 122/18 123/3 277/10
**takes [4]** 34/2 52/7 168/19 261/5
**taking [6]** 116/10 144/15 154/5 232/25 252/10 252/20
**talk [57]** 8/10 8/12 11/20 20/8 23/1 30/4 31/5 33/6 40/8 46/8 46/23 53/21 59/24 68/10 71/23 72/25 79/5 79/7 81/1 83/1 90/9 90/11 91/10 91/21 92/8 93/23 96/4 102/20 120/12 139/6 141/8 147/9 152/23 161/7 161/10 161/15 161/23 164/19 167/15 169/10 178/7 191/7 193/23 197/12 197/18 198/12 199/24 200/25 201/1 206/1 218/1 230/4 250/9 260/10 260/14 260/16
**talked [24]** 22/20 22/24 36/12 37/1 46/25 77/14 78/4 80/22 81/7 82/24 86/25 89/10 89/24 91/25 104/18 161/13 164/20 193/20 213/25 218/19 233/3 269/5 270/10 277/8
**talking [43]** 8/14 18/7 19/16 23/11 25/18 25/22 41/1 44/13 44/15 54/1 70/22 71/2 83/3 108/25 115/20 116/15 118/10 128/16 150/9 151/4 161/12 163/9 164/4 182/10 186/12 197/13 198/18 199/2 205/10 215/7 215/9 218/2 221/16 222/3 229/2 231/2 245/11 246/12 248/2 255/2 255/7 270/8 273/6
**talks [3]** 70/19 70/21 160/3
**tally [1]** 247/24
**target [2]** 23/25 24/4
**targeted [3]** 21/7 22/3 249/4
**targeting [1]** 249/19
**task [2]** 13/9 76/20
**TCU [114]** 8/21 8/22 9/19 9/20 15/14 20/4 22/10 26/14 27/1 27/11 27/12 27/15 28/22 30/5 31/16 35/14 37/24 38/4 38/10 38/16 38/22 39/14 44/19 45/5 45/11 45/18 45/20 47/20 50/10 50/21 50/23 51/24 52/23 55/13 71/4 71/7 71/14 72/1 72/23 89/15 89/18 89/21 92/2 96/9 96/22 106/13 107/3 110/4 111/12 112/18 114/6 115/5 116/5 123/5 123/20 124/3 124/6 125/3 126/8 126/12 127/24 128/13 133/6 133/12 134/19 134/22 135/7 136/18 137/15 139/4 142/2 142/6 152/2 152/7 155/17 158/8 158/11 167/17 168/19 168/19 169/1 172/5 172/7 173/10 173/12 173/16 174/6 174/23 175/18 175/22 176/25 177/7 183/14 184/2 184/23 185/4 188/12 190/20 205/4 205/25 208/14 211/24 212/10 212/22 241/25 243/24 244/2 252/2 264/11 268/18 270/25 271/14 271/16 273/10
**TCU's [35]** 10/13 10/17 11/14 37/6 42/2 42/7 43/22 45/22 50/16 83/5 96/20 97/25 100/16 106/17 107/5 109/15 122/2 122/14 125/14 129/3 130/24 131/6 131/11 132/23 135/11 137/3 151/23 169/19 171/11 183/7 236/11 249/5 253/11 261/15 269/23
**team [3]** 51/13 212/4 212/5
**tech [2]** 81/10 200/8
**technical [1]** 20/19
**technically [1]** 129/15
**technique [2]** 32/11 32/12
**techniques [1]** 210/20
**teenagers [1]** 12/20
**Telephone [4]** 1/19 1/22 1/25 3/5
**tell [48]** 7/22 30/7 30/10 31/8 34/2 34/4 40/10 40/13 41/1 54/2 57/3 89/11 90/2 91/18 96/13

## T


**tell... [33]** 100/3 124/1 127/4 131/4 132/16 137/5 142/1 144/14 152/16 186/3 192/11 192/22 193/13 202/16 204/13 205/8 206/6 206/6 206/22 208/5 224/18 224/21 224/22 224/23 231/19 233/18 246/20 252/2 253/21 264/2 266/13 266/24 271/2

**telling [9]** 11/19 40/24 41/13 57/4 63/1 204/16 206/17 260/16 278/24

**tells [3]** 188/13 206/24 206/25

**temperature [1]** 204/14

**ten [2]** 268/12 268/14

**tend [3]** 16/19 17/2 19/22

**term [4]** 188/15 190/24 210/19 237/4

**terms [7]** 35/3 55/10 96/13 131/13 138/19 235/11 252/1

**terrible [2]** 179/14 180/8

**testified [8]** 69/20 147/11 182/14 182/18 195/25 224/21 264/13 264/24

**testify [1]** 182/15

**testifying [3]** 8/11 50/23 113/22

**testimony [30]** 8/10 8/16 8/16 8/18 35/19 81/25 139/22 140/16 140/19 140/24 143/12 144/4 145/2 145/12 146/22 148/5 155/15 156/2 165/17 166/7 166/12 167/16 167/20 196/19 221/22 232/19 233/18 240/9 266/25 267/10

**tests [1]** 45/3

**TEXAS [22]** 1/2 1/6 1/7 1/18 1/21 1/24 3/4 6/5 6/15 109/20 125/20 174/15 176/11 177/5 177/6 177/12 262/11 264/12 268/5 278/24 280/18 280/20

**text [147]** 49/18 61/17 68/1 68/4 68/5 68/25 83/18 85/5 86/4 86/11 87/1 87/14 88/5 88/11 88/14 90/20 94/6 98/9 98/12 98/16 101/11 101/24 102/3 102/9 102/12 102/14 102/18 102/22 102/25 103/1 103/9 103/12 104/23 105/2 105/3 105/5 110/21 111/11 111/12 111/14 111/16 111/22 112/3 112/9 115/4 115/9 115/12 115/25 116/2 116/6 116/8 116/14 120/8 120/12 121/14 133/20 134/15 136/17 137/20 138/1 138/2 138/4 141/8 142/12 142/14 143/15 143/23 144/6 144/8 147/7 147/23 148/15 150/11 152/14 154/25 155/25 156/1 156/3 157/2 157/2 157/13 157/17 158/5 158/7 159/9 160/19 163/8 164/8 164/12 178/2 178/7 179/5 179/10 180/20 180/21 181/3 181/15 182/1 182/6 183/14 220/9 220/14 223/13 223/17 224/2 226/1 226/2 226/5 227/14 227/25 228/7 228/10 229/5 229/12 229/16 229/18 229/20 229/25 230/2 230/4 231/7 233/19 234/1 234/8 234/14 234/20 235/2 236/10 238/7 242/17 243/7 250/12 250/20 256/12 256/20 257/5 257/9 257/13 257/13 257/18 257/21 258/4 258/6 258/11 258/17 260/22 270/14

**texting [4]** 133/16 144/20 153/22 160/23

**texts [20]** 44/8 87/16 104/1 104/5 112/3 136/23 136/23 137/15 137/17 139/6 152/23 154/22 161/2 181/16 181/24 182/10 183/2 234/5 251/6 270/12

**than [49]** 12/15 14/12 20/1 20/21 21/1 22/5 22/11 23/8 29/17 35/11 43/10 43/24 44/6 44/10 44/16 44/21 48/6 48/9 52/18 68/8 70/12 81/25 82/22 89/4 91/9 102/1 102/11 103/9 103/13 104/1 109/22 111/25 112/13 122/10 128/1 138/7 139/8 146/7 157/9 171/2 173/7 176/14 194/4 243/10 246/21 249/24 251/9 255/19 271/20

**thank [32]** 6/13 9/5 9/13 9/14 18/9 27/18 37/17 49/9 64/15 65/15 97/3 99/22 105/11 105/12 105/16 145/17 177/18 185/14 185/16 207/5 217/8 226/18 231/11 231/13 235/18 235/20 262/15 264/20 266/8 266/9 267/20 279/16

**thankfully [1]** 156/10

**Thanksgiving [2]** 54/23 85/13

# T


**that [1603]**

**that's [214]** 11/9 12/8 12/17 13/11 13/15 16/13 16/22 16/24 17/14 17/19 17/20 19/15 19/18 19/24 20/6 20/17 21/2 22/21 22/24 22/25 23/7 23/22 26/4 28/17 28/21 31/14 32/1 33/15 34/3 35/15 36/20 38/7 38/8 38/13 39/18 39/20 39/25 40/22 41/18 42/9 42/24 43/25 45/11 46/2 46/19 46/22 47/11 50/6 50/15 51/8 51/23 51/24 52/14 53/9 53/15 55/4 56/19 57/4 57/19 57/25 58/13 58/16 59/11 59/15 60/19 61/7 62/3 62/14 62/22 63/1 64/9 64/20 64/23 67/8 67/20 68/13 70/17 71/1 73/12 73/18 74/21 75/5 76/12 76/16 77/22 78/16 79/13 80/14 80/15 81/6 81/20 82/2 82/6 85/17 90/12 90/12 91/17 92/12 93/10 93/14 95/3 96/3 96/10 96/16 100/25 101/15 102/2 103/16 103/22 103/22 104/21 109/6 110/12 116/24 119/3 124/2 125/10 130/2 130/2 130/10 131/14 133/14 134/14 136/20 145/12 146/9 146/22 146/23 153/20 156/4 156/6 156/8 172/12 175/15 177/1 178/5 180/1 180/11 180/14 180/24 181/19 183/18 187/6 188/9 188/19 189/3 190/25 191/10 191/15 192/8 195/8 197/5 197/17 198/2 200/18 201/12 202/25 203/8 206/13 210/16 210/17 214/13 216/17 216/19 217/2 222/10 223/21 225/10 227/17 228/22 231/9 232/4 237/8 237/11 237/23 240/19 241/12 243/16 245/21 245/23 248/15 250/4 250/25 251/9 252/1 255/10 255/25 256/16 257/10 258/17 260/4 260/5 260/12 262/22 263/4 263/12 265/9 266/19 267/10 268/3 268/8 268/21 268/22 270/21 270/23 270/24 271/12 272/24 273/22 275/10 277/10 277/12 278/17 279/3

**their [65]** 5/5 8/13 8/14 14/18 18/25 22/14 23/21 24/13 24/22 26/10 27/2 32/4 35/11 39/10 49/18 49/19 55/14 71/8 76/21 78/17 79/3 79/10 80/3 81/15 81/25 86/18 95/8 102/14 109/3 122/2 122/12 166/3 181/24 193/8 193/10 193/11 200/23 210/2 210/3 210/8 210/10 210/11 210/13 220/5 229/14 230/20 231/3 231/3 238/19 241/1 242/20 243/25 244/6 248/3 251/19 252/11 252/12 258/16 260/18 262/5 267/7 267/13 268/21 270/2 270/9

**theirs [1]** 85/20

**them [83]** 7/9 8/2 24/5 24/5 32/9 32/21 32/22 34/17 39/15 40/10 40/13 50/11 52/18 53/7 54/24 59/20 77/16 78/13 79/4 81/1 81/20 89/15 92/13 93/9 93/10 95/12 96/7 104/3 110/8 110/10 110/25 112/9 119/10 122/8 122/10 127/23 131/14 133/16 134/23 136/20 137/19 151/21 151/22 151/23 157/19 157/20 157/22 157/24 158/4 159/10 159/25 176/5 187/7 190/23 194/19 196/13 201/5 201/13 205/9 206/6 219/10 235/12 236/18 236/18 237/16 240/21 244/9 246/14 247/1 251/1 252/24 253/8 253/25 254/17 261/9 261/15 261/18 268/20 269/19 270/21 273/6 273/11 278/24

**themselves [3]** 63/3 63/15 268/18

**then [119]** 17/11 19/4 26/23 32/20 33/8 33/13 34/24 35/4 41/8 49/21 49/24 52/23 54/13 56/5 65/13 70/6 73/10 73/16 73/17 74/6 74/14 74/24 75/2 75/3 75/7 75/9 75/23 76/5 76/17 77/15 77/17 77/18 78/25 79/11 79/18 79/21 81/3 81/4 82/17 82/19 84/11 84/11 85/8 85/9 86/18 86/20 88/4 91/7 93/4 94/24 95/11 102/17 105/2 108/22 115/17 117/23 123/18 132/8 135/11 138/3 138/5 139/19 143/10 146/10 148/6 148/9

## T


**then... [53]** 159/25 169/15 170/19 179/10 179/13 191/10 194/18 194/20 195/25 196/10 197/6 198/12 199/9 201/3 208/2 209/4 209/4 209/7 209/8 209/9 209/9 209/20 211/2 211/4 213/23 213/25 214/1 220/8 220/15 230/1 235/14 236/2 240/13 241/15 243/11 245/21 252/16 259/8 261/7 261/11 262/2 266/24 268/7 268/13 270/23 272/2 273/25 274/7 275/21 276/6 276/12 276/22 279/16

**theory [2]** 16/3 149/10

**there [180]** 7/10 8/21 16/12 21/13 26/2 27/8 31/2 36/22 37/2 38/3 39/21 39/22 41/2 44/4 46/12 47/6 47/23 48/15 48/20 53/16 53/17 55/21 55/22 57/11 58/18 65/21 66/12 68/25 70/6 72/7 77/10 77/14 78/22 82/4 82/10 83/7 87/24 91/22 95/9 98/16 98/24 104/3 107/17 111/23 112/12 112/17 115/4 117/14 117/15 119/5 126/10 127/23 128/8 128/11 128/15 128/20 135/10 135/17 135/17 135/24 136/18 139/16 140/2 140/11 141/2 141/2 142/24 143/2 144/7 144/21 150/2 150/3 151/2 153/23 153/24 155/19 156/19 156/24 157/11 157/11 158/15 162/7 162/14 164/2 164/16 165/5 166/22 168/25 169/17 174/11 174/12 174/24 176/9 176/12 176/21 177/11 177/23 178/10 178/17 179/21 179/24 180/20 182/24 186/15 188/8 189/14 189/16 189/18 191/4 191/6 193/2 193/24 194/1 194/3 194/9 194/9 194/10 195/13 196/4 200/6 201/20 201/23 202/20 204/5 204/8 204/15 205/5 208/17 211/18 213/9 215/18 217/10 220/13 221/25 226/13 227/15 227/25 229/7 229/16 233/14 234/4 234/12 234/19 239/15 239/19 239/21 247/15 249/2 250/22 252/5 252/6 252/23 255/4 255/21 255/25 256/2 256/2 256/3 256/6 256/6 257/15 258/9 260/8 260/8 262/18 263/10 267/1 269/21 273/7 273/13 273/14 273/18 274/11 275/11 275/12 275/12 276/4 277/22 278/6 279/14

**there's [81]** 33/7 33/8 33/9 33/13 39/9 43/12 43/12 43/13 45/25 47/20 48/1 58/17 59/13 76/19 78/1 79/8 80/13 81/3 81/4 82/20 92/16 93/7 109/3 139/8 139/18 143/15 143/17 146/9 147/20 148/3 151/16 160/5 164/21 167/15 168/25 177/6 177/7 188/5 188/12 188/20 188/25 190/15 190/25 201/4 201/6 204/9 204/15 204/19 211/11 218/7 220/17 224/11 228/7 229/18 243/9 246/19 248/11 248/25 249/7 249/8 249/24 250/12 251/8 256/7 263/17 264/3 264/5 264/6 264/14 268/8 268/14 271/7 273/15 274/7 275/16 275/18 276/16 276/17 276/22 277/8 277/12

**thereafter [1]** 218/24

**therefore [1]** 267/7

**these [78]** 8/25 12/3 18/11 19/7 21/7 22/2 24/15 24/16 28/2 32/13 39/4 45/13 45/24 47/3 47/3 47/7 48/25 52/23 55/23 56/18 59/17 62/15 64/2 67/7 77/22 89/2 92/8 92/20 92/22 93/25 94/3 94/10 113/23 122/11 126/20 136/17 143/15 151/17 151/19 152/12 152/14 152/16 152/19 154/22 155/13 156/10 159/9 164/11 178/7 180/15 201/18 211/16 215/25 219/9 220/4 220/7 230/14 230/19 230/22 232/6 241/25 242/4 243/1 247/5 247/13 252/19 254/21 255/11 266/17 267/11 269/17 270/18 275/11 275/17 275/18 275/18 277/14 278/20

**thesis [2]** 25/6 241/16

**they [230]** 11/2 20/13 21/4 21/10 22/11 23/20 24/14 26/8 27/1 27/16 27/19 27/25 30/12 32/3 32/7

# T

**they...** **[215]** 32/8 32/18 32/20 34/17 35/8 39/1 40/10 40/11 42/15 44/9 44/24 48/4 49/1 49/2 49/4 49/24 50/2 50/21 53/6 53/7 53/19 54/9 59/15 59/19 60/10 63/17 63/18 67/1 69/1 69/3 71/2 73/16 74/3 74/20 74/24 75/21 76/14 76/14 76/17 76/20 76/20 77/1 77/6 77/12 78/2 78/23 79/7 79/8 79/19 79/21 80/1 80/4 80/6 81/15 81/18 81/19 81/24 82/10 82/16 83/17 85/11 85/11 85/24 86/2 86/13 86/16 86/20 87/6 88/7 88/12 89/1 89/3 90/7 90/10 90/21 92/15 92/23 93/7 93/9 94/5 95/7 95/7 98/19 99/24 102/18 108/7 110/9 110/10 111/2 112/12 116/6 116/7 122/11 122/12 122/20 122/20 122/22 122/22 127/3 132/3 134/25 135/8 137/1 137/8 139/11 139/12 139/12 155/14 155/14 156/8 156/11 157/9 158/2 168/20 171/11 171/14 174/8 174/20 174/20 174/23 174/23 175/5 181/13 183/8 183/25 184/3 184/5 187/4 196/3 196/4 198/19 201/8 203/22 205/15 209/24 209/25 210/23 210/25 215/22 216/23 219/18 220/23 221/3 221/5 226/21 230/7 230/8 230/9 231/3 234/6 235/12 238/12 238/16 238/20 238/22 239/5 239/8 239/9 239/24 240/3 240/3 240/5 240/8 240/19 241/1 241/4 241/24 241/25 242/3 243/18 243/22 245/12 247/10 247/18 247/20 247/20 247/21 247/25 250/9 253/10 253/25 254/5 262/4 262/7 262/12 264/11 266/22 267/6 268/21 268/24 269/15 269/25 270/2 270/6 271/4 271/23 272/1 272/2 272/4 272/10 272/11 272/22 275/21 275/24 275/25 276/2 276/3 276/4 276/11 277/15 277/18 278/25 278/25 279/8 279/9

**they're** **[47]** 23/4 23/6 23/8 23/8 32/2 40/7 40/12 47/18 49/12 50/14 56/1 74/19 74/20 76/2 76/5 79/21 80/25 81/23 82/13 89/16 95/2 96/21 136/18 157/24 159/24 176/16 186/15 186/22 200/23 200/25 201/2 201/7 206/14 206/18 238/13 244/16 245/6 247/11 247/16 248/1 258/16 261/10 264/13 277/15 277/18 279/3 279/14

**they've** **[13]** 32/24 34/17 34/18 79/5 79/8 93/10 173/3 173/6 193/11 201/8 253/21 264/18 271/6

**thing** **[30]** 22/17 49/19 62/19 65/6 73/5 76/4 83/15 141/11 147/5 149/3 161/20 161/21 166/21 200/17 211/8 217/12 220/25 222/7 223/16 244/18 246/9 247/1 247/10 248/17 250/14 250/15 251/4 276/3 277/14 277/18

**things** **[54]** 11/8 11/13 27/1 31/15 31/16 33/12 40/9 67/7 69/20 69/22 70/11 70/12 70/14 81/21 82/19 88/25 111/9 115/10 117/15 117/18 117/24 123/16 137/23 138/18 148/1 148/1 155/12 156/16 161/13 163/21 164/15 174/17 180/11 181/20 183/8 198/25 200/3 200/17 204/14 211/12 222/5 224/6 226/7 238/14 241/22 246/19 246/19 252/19 260/7 262/12 262/16 270/19 272/6 277/11

**think** **[180]** 22/11 23/4 23/6 24/7 24/10 24/14 28/22 35/17 41/6 45/23 50/4 55/23 56/1 57/12 59/19 61/7 67/25 68/3 69/4 70/7 71/6 82/19 87/15 96/10 98/24 100/4 102/10 103/12 111/17 112/4 112/6 112/7 115/5 118/6 119/14 120/13 121/11 122/7 122/9 125/11 126/10 126/12 128/12 128/13 129/4 133/1 134/10 134/10 136/22 137/20 137/22 137/22 138/23 139/14 140/9 142/17 144/8 146/7 146/8 146/9 147/16 150/21 151/8 151/19 151/20 152/13 152/14 152/18 153/11

## T

**think... [111]** 153/13 153/19 153/22 156/4 156/9 158/2 158/16 161/22 162/23 164/9 165/5 165/7 171/13 171/25 172/1 172/18 178/5 178/24 180/2 180/4 183/14 183/25 184/4 186/14 193/24 196/17 200/3 200/8 201/20 202/16 202/25 203/4 203/6 203/9 204/19 205/3 205/5 206/3 210/6 210/17 210/23 211/10 211/13 214/6 229/23 230/16 230/25 231/2 231/4 232/24 239/21 239/21 240/13 240/18 241/20 241/24 242/17 242/19 242/25 243/7 243/9 244/10 244/11 244/16 244/25 245/9 246/8 247/4 247/8 248/1 248/11 248/15 250/3 250/4 250/7 250/13 250/14 250/23 251/21 251/23 255/1 255/4 256/17 256/24 256/25 257/12 258/5 258/8 258/9 260/5 260/12 263/2 263/20 263/24 265/14 269/16 269/16 271/11 271/12 272/6 272/21 272/22 272/22 273/2 274/15 275/10 276/16 276/19 277/15 278/3 279/13

**thinking [7]** 114/20 120/23 123/12 127/20 157/24 230/23 250/22

**thinks [3]** 38/4 249/22 276/15

**third [3]** 202/19 202/22 208/18

**thirty [4]** 38/10 65/10 65/12 65/13

**Thirty-eight [2]** 65/12 65/13

**Thirty-five [1]** 65/10

**this [320]**

**those [137]** 10/12 11/7 19/3 20/20 21/3 22/5 24/7 24/11 26/23 27/1 31/16 33/12 33/16 33/20 33/23 40/7 40/9 40/20 44/8 46/20 48/17 50/18 53/12 53/13 56/17 58/25 64/18 68/25 71/2 74/9 76/5 78/10 79/13 83/13 87/11 88/4 89/11 96/1 98/12 99/2 100/2 102/24 105/2 105/5 105/25 106/9 109/22 109/23 110/1 110/5 110/24 111/4 111/8 111/9 111/11 111/23 112/9 115/12 116/1 116/2 116/6 116/8 117/15 117/18 121/14 121/21 121/24 122/3 123/9 134/19 137/17 139/10 146/5 147/6 149/23 164/11 165/10 177/17 178/4 179/10 180/23 181/9 181/10 181/19 181/24 182/1 182/6 190/16 190/17 200/11 204/13 209/9 209/25 211/12 215/10 215/13 218/11 218/13 219/9 219/15 222/5 224/2 224/6 226/6 226/10 226/12 226/15 226/16 229/5 229/20 230/4 230/7 230/9 230/10 231/5 234/1 236/17 241/22 243/19 244/19 247/21 247/24 247/25 248/7 249/17 251/2 252/25 252/25 255/4 257/6 269/3 270/19 272/6 273/3 273/13 277/11 280/13

**though [22]** 24/15 29/4 39/13 48/15 48/20 84/6 100/21 106/7 107/5 107/24 122/21 151/17 154/25 157/25 158/6 169/4 169/23 187/12 189/20 189/25 265/16 277/14

**thought [10]** 103/25 118/1 129/11 131/8 133/24 165/7 165/8 170/14 221/5 271/15

**thoughts [3]** 24/11 24/16 219/15

**thousand [2]** 106/2 267/8

**threat [1]** 128/9

**threats [1]** 127/22

**three [29]** 33/13 35/5 35/17 43/12 49/22 79/13 79/24 80/1 80/4 89/15 116/17 117/2 118/11 178/12 196/20 215/9 215/17 216/4 216/7 227/15 233/4 235/6 235/8 238/6 251/24 255/2 259/13 270/10 277/9

**three-week [1]** 49/22

**through [43]** 10/22 30/23 32/7 33/7 40/11 47/13 73/1 75/14 78/13 78/21 84/2 84/3 84/4 86/23 94/12 97/22 124/23 124/24 126/16 128/13 146/14 147/23 157/24 164/19 169/11 192/13 198/16 198/17 198/19 209/7 243/5 246/14 248/20 257/13 257/18 257/24 259/14 260/2 264/3 264/5 268/24 272/16 275/16

**throughout [1]** 250/24

**T**


**throwing [1]** 279/3
**thrown [2]** 137/25 172/19
**thrust [1]** 232/15
**time [89]** 25/10 32/18 34/17 40/7 41/24 55/2 55/3 58/11 71/25 74/4 76/25 77/6 78/2 80/21 86/8 87/17 87/25 88/19 89/8 90/21 90/23 95/2 97/11 97/12 105/6 106/17 106/22 107/6 109/4 114/20 115/15 117/20 117/25 123/19 124/24 126/3 126/6 126/23 128/6 128/16 137/14 138/25 142/19 143/3 147/18 154/2 155/2 167/25 177/24 179/2 184/22 187/22 190/24 190/25 195/19 200/13 201/1 201/12 204/13 207/15 215/5 218/24 220/5 225/9 225/20 228/16 229/2 232/16 235/20 237/11 239/9 240/8 250/7 251/1 251/2 252/10 252/21 265/18 265/21 269/3 270/15 271/10 273/14 273/25 274/12 274/13 274/23 278/13 278/20
**timeline [3]** 34/21 85/13 138/19
**timelines [1]** 46/1
**timely [1]** 260/25
**times [16]** 18/13 37/3 49/20 60/10 106/2 106/6 116/8 121/24 142/19 199/23 208/19 233/7 240/21 267/6 267/8 267/11
**timing [1]** 169/8
**tip [1]** 25/3
**tipping [1]** 253/19
**tired [1]** 191/7
**title [89]** 9/23 10/4 10/7 10/11 15/16 15/17 16/1 16/3 26/4 26/19 28/5 28/25 30/5 31/5 33/6 36/18 37/21 43/3 45/6 46/18 47/8 47/13 50/5 50/13 50/13 50/19 51/7 51/8 51/16 51/21 52/5 56/25 65/19 65/21 65/23 71/12 71/15 71/16 71/18 71/20 72/5 72/13 72/16 72/17 73/7 73/22 73/24 81/9 82/25 83/4 83/5 88/23 95/18 96/5 96/8 96/23 97/8 97/25 106/25 132/2 132/23 135/9 135/11 142/5 159/22 164/23 165/2 173/3 173/7 177/4 186/10 188/21 190/21 199/25 200/1 200/20 208/20 214/15 231/20 237/1 248/3 251/9 261/22 263/5 269/18 273/10 277/14 279/4 279/15
**today [15]** 30/25 97/23 99/9 119/25 125/1 153/7 167/4 172/21 183/18 184/2 237/16 241/15 248/2 249/11 266/20
**today's [1]** 18/22
**together [19]** 58/25 110/23 111/5 117/20 117/21 118/1 135/12 150/7 200/3 207/25 230/15 230/19 230/22 231/3 237/21 249/8 250/8 259/8 262/7
**told [30]** 76/7 104/22 106/7 107/22 108/8 117/3 138/22 139/7 161/13 178/13 184/22 185/4 187/7 187/7 187/20 189/4 189/8 191/13 191/20 194/14 196/1 196/7 197/8 198/8 198/10 199/8 199/21 206/12 223/18 246/22
**tomorrow [2]** 173/19 252/14
**tone [1]** 108/23
**tons [3]** 252/23 253/12 253/16
**too [5]** 116/15 117/4 166/21 212/5 277/9
**took [6]** 42/3 86/18 117/10 154/3 233/5 233/8
**tool [1]** 271/2
**top [11]** 30/7 56/14 130/9 130/10 142/24 175/16 209/18 215/5 255/2 256/5 256/10
**topic [1]** 232/4
**total [1]** 134/11
**totally [2]** 91/17 94/2
**touch [2]** 178/22 179/2
**touching [3]** 119/21 143/9 179/4
**touchy [10]** 115/10 164/10 179/8 179/11 179/21 179/24 180/7 180/24 224/5 228/18
**towards [1]** 108/7
**town [2]** 52/15 275/20
**track [2]** 51/13 51/13
**traditional [1]** 31/1
**trained [5]** 34/17 35/1 244/4 244/7 247/6
**training [9]** 40/11 95/18 209/4 209/7 209/11 210/14 210/16 210/24 211/1
**transcribed [1]** 280/10
**transcript [14]** 1/12 123/7 176/23 176/25 177/9

# T


**transcript... [9]** 184/19 187/16 188/25 189/24 194/4 194/13 194/20 280/5 280/12
**transfer [2]** 34/11 55/10
**transferred [7]** 34/10 55/18 75/9 75/10 75/14 75/21 86/22
**transitioned [1]** 120/22
**transparent [1]** 183/4
**trauma [5]** 32/4 32/5 92/7 210/19 210/23
**traumatized [1]** 31/23
**traumatizing [2]** 84/5 92/10
**travel [1]** 165/3
**treat [1]** 259/17
**treated [2]** 186/16 246/21
**tremendously [1]** 71/5
**trial [5]** 122/25 137/22 157/5 162/3 255/1
**trick [1]** 189/13
**tried [10]** 148/3 152/20 157/18 167/17 179/2 233/11 239/8 250/17 263/16 273/5
**trouble [1]** 161/23
**true [13]** 20/12 31/4 40/22 43/25 64/18 124/2 137/24 150/25 165/1 189/3 198/24 264/23 280/5
**Trump [2]** 65/18 260/11
**truth [10]** 27/23 28/2 28/16 31/24 193/13 206/22 206/24 206/25 243/5 245/17
**truthful [1]** 205/25
**truthfully [1]** 205/4
**try [17]** 35/5 74/5 96/17 97/4 116/1 119/19 124/18 141/23 149/23 163/10 165/2 172/9 175/10 181/10 199/18 237/13 243/18
**trying [20]** 31/23 66/11 103/5 107/18 118/6 143/21 144/3 150/4 151/4 161/15 163/21 164/14 182/20 184/19 184/19 202/20 246/24 270/9 276/1 277/2
**turn [20]** 33/3 40/18 54/3 54/8 54/9 54/13 55/5 55/7 56/4 56/5 57/5 57/17 57/21 58/7 63/3 80/2 102/21 183/2 245/1 269/22
**turned [7]** 108/12 115/4 182/5 183/8 187/12 237/14 244/19
**turns [1]** 207/14
**Tweets [2]** 241/14 241/15
**Twenty [1]** 42/19
**Twenty-six [1]** 42/19
**two [97]** 30/16 34/10 46/12 46/21 47/21 48/18 48/25 49/16 49/20 49/22 52/10 52/18 55/7 55/12 55/17 59/17 79/13 80/2 94/2 94/10 96/1 105/25 110/1 110/25 111/5 122/8 125/19 139/19 141/3 146/5 155/13 165/22 165/23 167/4 167/7 169/16 196/19 210/18 210/18 211/1 214/4 215/9 215/11 215/12 215/13 218/1 218/8 218/19 219/7 219/9 219/15 221/3 221/11 224/13 224/14 224/17 225/13 225/15 225/24 226/16 226/21 227/3 227/11 227/12 227/20 230/7 230/8 230/11 232/1 233/3 233/4 239/15 239/23 240/3 240/4 240/7 240/18 242/4 243/19 247/15 248/14 255/2 257/6 258/9 259/13 263/5 263/13 263/14 264/22 265/22 267/1 269/2 269/3 271/3 271/5 271/7 275/11
**two-day [2]** 169/16 233/3
**two-week [1]** 269/2
**Tyner [1]** 8/23
**type [8]** 23/16 26/9 29/6 30/2 30/5 51/12 194/18 276/2
**types [6]** 11/7 24/11 28/2 92/22 117/15 194/1
**typical [4]** 95/22 96/8 96/15 253/23
**typically [7]** 33/24 34/2 34/5 34/8 77/24 81/12 82/9


# U


**Uh [24]** 16/18 21/18 74/16 144/2 173/22 186/24 194/11 196/11 202/2 206/23 209/13 211/9 214/5 218/6 218/10 218/12 218/25 223/1 224/7 224/20 230/25 234/21 236/13 267/23
**Uh-huh [24]** 16/18 21/18 74/16 144/2 173/22 186/24 194/11 196/11 202/2 206/23 209/13 211/9 214/5 218/6 218/10 218/12 218/25 223/1 224/7 224/20 230/25 234/21 236/13 267/23
**ultimate [1]** 29/4
**ultimately [4]** 79/19 171/16 259/24 278/23
**unable [2]** 222/23 224/2
**unanimous [1]** 235/8

## U

**unavailable [1]** 77/5
**unclear [1]** 124/25
**unconsensual [1]** 267/1
**uncontested [1]** 251/14
**under [30]** 16/16 18/2 19/15 47/7 50/10 50/14 52/2 52/5 77/21 85/18 85/21 85/22 132/1 142/5 169/19 171/11 177/9 204/20 205/3 205/21 206/1 222/12 228/23 259/7 261/5 264/12 266/16 276/13 279/4 279/17
**underage [1]** 203/24
**undergo [1]** 95/17
**understand [35]** 14/17 16/25 19/12 20/18 38/13 59/20 71/1 72/20 73/15 126/9 138/18 139/7 147/11 148/5 153/5 156/4 156/17 161/7 162/4 162/18 163/19 186/2 203/2 203/22 208/4 216/6 219/23 226/2 227/18 230/17 254/2 256/19 257/16 258/2 260/21
**understanding [7]** 18/25 72/14 84/2 125/2 135/16 210/7 227/1
**understands [1]** 186/15
**understood [3]** 27/17 28/17 92/23
**undo [2]** 162/22 163/9
**unduly [2]** 256/15 257/4
**unfair [8]** 42/12 43/6 94/11 122/25 242/18 270/24 273/22 274/16
**unfairly [5]** 112/9 238/15 238/18 273/5 273/7
**unfairness [1]** 244/12
**unforgivable [1]** 154/18
**unfortunately [2]** 17/11 217/12
**uninfluenced [1]** 8/17
**UNITED [3]** 1/1 1/13 280/14
**universe [1]** 48/17
**university [24]** 1/7 6/5 6/16 55/17 67/21 82/15 82/17 95/7 95/10 127/20 170/15 170/21 172/9 176/9 176/10 176/11 190/10 243/4 262/11 263/7 263/16 264/2 264/16 278/24
**university's [2]** 164/20 275/22
**unlawfully [1]** 275/4
**unless [2]** 175/18 253/7
**unnecessary [1]** 32/10
**unsolicited [1]** 111/9
**unsurprising [1]** 17/12
**Untangling [1]** 16/4
**until [21]** 41/15 55/19 85/24 93/10 95/15 121/25 127/22 127/23 129/4 137/10 157/4 175/8 178/4 214/23 225/8 240/23 249/11 250/23 268/7 271/4 272/16
**untimely [5]** 236/5 257/2 257/4 258/13 258/16
**unusual [1]** 221/4
**unwanted [1]** 264/25
**up [78]** 7/10 13/7 18/8 23/19 31/8 40/18 54/9 55/21 57/11 58/14 58/17 59/9 66/12 68/13 70/7 70/18 70/23 75/18 81/14 81/20 100/10 100/13 108/7 108/22 109/2 110/10 110/11 111/11 117/10 117/21 121/24 124/10 124/20 134/2 137/13 138/17 142/14 143/11 145/15 145/17 150/2 152/1 152/10 153/22 155/21 158/17 160/19 160/21 161/18 164/11 167/14 168/8 178/10 181/21 183/5 193/11 193/25 195/18 199/15 201/17 201/22 211/2 211/22 220/23 221/17 228/18 236/2 237/5 243/23 247/21 259/2 267/9 268/7 272/4 272/16 272/16 273/7 278/22
**updates [1]** 213/20
**upheld [1]** 99/4
**upset [4]** 118/7 120/13 263/11 263/13
**upstanding [1]** 204/6
**us [36]** 11/25 32/2 34/10 38/9 40/24 41/13 72/15 72/20 76/7 78/7 89/11 90/2 104/22 108/7 108/8 110/23 134/3 138/22 150/7 176/16 186/12 191/15 193/25 197/20 200/4 200/8 201/10 206/19 220/8 221/3 243/12 249/2 250/4 262/16 271/13 273/17
**use [17]** 35/18 38/9 38/11 39/22 57/8 57/19 72/1 85/19 124/18 210/23 244/24 245/2 268/22 270/5 275/21 275/21 278/11
**used [12]** 54/4 54/8 54/13 55/6 58/8 61/10 115/14 164/9 190/24 210/1 240/2 260/8
**uses [1]** 85/17

**U**

**using [1]** 247/21
**usually [4]** 34/10 34/13 79/13 209/25
**UT [1]** 268/5
**utilize [6]** 34/15 34/16 34/19 47/15 73/16 89/19
**utilized [1]** 27/12
**utilizing [1]** 75/23

**V**

**vacation [1]** 114/25
**vacuum [1]** 146/9
**vagina [6]** 126/1 147/1 221/18 223/6 224/25 271/25
**valid [2]** 227/12 243/8
**value [7]** 23/9 23/13 23/14 42/11 43/5 88/21 88/21
**variety [1]** 11/13
**various [2]** 12/23 40/8
**verdicts [1]** 256/2
**verify [1]** 192/16
**version [2]** 178/14 264/15
**versus [2]** 48/16 274/13
**very [65]** 6/10 6/13 6/20 6/23 7/5 7/25 8/8 8/24 10/14 10/17 13/18 13/22 14/3 16/16 16/19 26/24 32/7 43/8 56/2 73/5 78/12 78/12 81/12 84/8 90/20 92/7 99/13 104/14 131/11 135/6 137/10 145/13 151/6 151/13 155/18 159/24 163/21 164/15 168/16 179/6 181/19 181/19 199/5 221/11 222/7 229/24 230/3 232/5 238/12 249/21 254/25 259/18 261/2 262/9 262/10 263/22 266/5 266/8 271/12 271/18 272/24 274/21 277/25 278/22 279/16
**vet [1]** 270/9
**via [5]** 78/15 197/20 210/17 230/2 280/9
**victim [1]** 173/13
**victims [3]** 209/16 209/22 272/10
**VICTOR [1]** 1/7
**video [3]** 82/9 210/16 210/17
**videoconferencing [1]** 280/10
**videos [1]** 200/7
**view [8]** 28/14 28/14 76/3 105/2 138/13 138/15 192/1 271/18
**vigorously [1]** 26/9
**violated [7]** 197/21 202/13 204/9 261/21 262/1 273/20 273/21
**violates [1]** 50/25
**violating [4]** 50/23 192/14 274/14 275/5
**violation [23]** 79/20 79/20 79/21 82/13 82/13 93/19 93/21 94/24 95/2 95/21 96/9 96/18 104/9 183/18 197/25 198/22 201/2 201/8 215/3 215/3 219/7 233/15 243/18
**violations [4]** 47/25 50/11 50/12 201/19
**violence [4]** 30/24 97/24 205/18 205/19
**violent [2]** 182/18 182/20
**virtual [1]** 210/16
**VOLUME [1]** 1/12
**volunteer [2]** 231/22 235/19
**volunteered [1]** 267/3
**voting [2]** 35/2 89/21

**W**

**wait [4]** 8/25 214/23 240/23 252/19
**waiting [1]** 81/13
**walk [4]** 124/23 124/24 198/16 198/17
**walked [3]** 221/12 222/9 229/11
**walking [2]** 146/14 162/16
**walks [2]** 191/6 270/13
**wall [1]** 221/17
**want [101]** 7/1 16/18 18/8 24/4 24/11 31/5 31/21 32/9 39/2 39/14 39/15 50/19 60/13 60/14 69/19 71/7 71/23 72/25 73/2 73/20 78/13 80/10 80/25 83/1 84/4 93/23 96/4 106/7 110/8 110/10 116/15 117/4 117/7 118/1 119/14 124/23 124/24 127/25 129/1 129/2 132/21 132/25 134/1 135/5 137/5 137/17 138/17 139/6 141/8 141/14 142/14 142/17 147/2 154/18 156/16 159/10 160/19 161/5 161/7 164/19 167/15 169/10 176/8 176/10 176/22 178/7 189/12 191/7 193/19 193/23 193/24 195/22 197/12 199/24 203/23 203/23 203/23 204/4 217/10 218/1 219/15 224/25 231/19 233/17 233/18 246/17 255/6 256/2 258/24 259/3 259/17 262/14 265/3 265/13 266/10 267/16 269/12 270/1 272/18 277/21 278/4
**wanted [20]** 31/17 41/9

## W

**wanted... [18]** 91/23 117/21 119/10 129/12 143/10 145/11 169/4 169/9 178/14 184/15 196/4 197/22 197/22 232/5 232/9 247/3 264/21 267/5
**wanting [1]** 118/4
**wants [3]** 135/8 205/24 271/12
**warn [1]** 270/2
**was [607]**
**wasn't [40]** 25/11 26/17 49/9 49/21 50/7 50/9 54/15 60/3 68/4 87/21 108/8 117/15 118/23 127/22 127/23 131/7 136/5 139/3 144/12 146/11 150/6 150/18 150/22 157/1 167/11 170/9 175/8 189/14 189/16 208/1 231/10 244/23 244/25 250/20 255/3 256/20 259/24 267/12 272/12 272/12
**wasted [1]** 123/4
**watched [1]** 94/14
**water [1]** 105/14
**way [76]** 9/7 13/4 16/22 20/1 20/10 21/5 21/14 38/9 38/18 38/21 47/23 50/10 50/17 50/18 56/11 58/10 63/18 70/17 85/14 94/9 96/11 96/15 96/17 109/24 111/5 113/17 116/24 119/2 127/2 129/7 134/22 135/8 135/19 137/8 138/6 148/15 150/22 150/23 154/20 156/14 165/13 172/25 175/2 189/14 205/24 206/9 207/1 222/2 224/18 226/1 232/1 240/1 241/3 242/3 242/23 243/9 244/11 246/20 248/11 249/8 249/25 254/6 260/12 264/8 264/15 268/1 268/4 270/2 270/11 270/14 270/23 272/11 272/16 273/22 274/7 276/5
**ways [4]** 42/8 147/20 247/2 264/9
**we [303]**
**We'll [1]** 74/5
**we're [30]** 23/11 26/4 69/4 77/20 79/1 79/11 80/12 88/4 92/7 92/19 95/12 114/20 118/10 124/9 128/16 200/8 200/10 200/15 207/14 209/8 212/22 215/9 232/5 245/10 250/4 255/1 255/7 270/5 270/24 277/22
**we've [30]** 30/15 34/17 64/21 65/5 65/6 75/23 80/22 82/24 86/9 87/5 89/4 95/23 95/24 164/20 168/20 169/11 211/23 212/3 212/5 227/2 237/16 240/19 240/20 251/3 253/12 253/16 261/19 263/21 265/6 277/8
**weak [1]** 240/18
**weaknesses [1]** 18/12
**wearing [1]** 280/9
**Web [1]** 16/4
**website [6]** 193/11 210/3 210/8 210/10 210/11 210/13
**week [6]** 30/23 34/10 49/22 173/20 173/21 269/2
**weekly [1]** 211/20
**weeks [11]** 46/16 49/13 52/10 55/17 90/16 107/15 109/19 251/24 271/5 271/7 271/11
**weight [1]** 218/22
**weighted [2]** 235/1 235/1
**well [113]** 10/1 10/5 10/8 11/19 20/23 23/7 23/9 28/14 28/24 29/1 30/22 31/8 32/12 33/21 40/14 41/8 42/5 44/5 44/8 45/3 45/23 47/16 50/15 53/20 55/12 56/9 58/5 60/5 62/7 63/17 70/22 72/19 73/18 76/7 76/17 77/1 78/16 81/5 82/24 85/3 85/4 87/7 88/12 94/9 95/18 101/19 102/17 102/20 103/18 107/18 109/2 110/9 110/23 114/12 114/17 124/3 124/20 139/20 139/21 141/23 145/15 146/18 147/9 148/21 149/23 152/8 152/16 165/13 166/5 166/22 170/12 182/1 183/18 188/5 192/6 195/18 209/5 210/8 212/4 212/23 213/18 215/12 217/12 220/17 225/15 227/14 229/22 230/18 231/17 234/1 234/2 236/11 243/1 245/9 248/16 250/20 251/21 253/5 253/10 254/8 256/16 257/12 258/8 261/16 264/18 265/20 272/24 273/6 273/24 274/15 276/18 276/21 276/22
**went [30]** 25/23 26/2 27/16 27/19 30/19 30/22 31/15 53/19 84/2 108/5 108/6 108/20 121/10 139/24 144/20 147/23 165/22 178/10 180/22

## W


**went... [11]** 183/13 213/6 230/9 233/8 235/4 246/14 257/24 264/3 264/5 267/12 275/25

**were [208]** 5/5 7/13 12/4 19/3 22/19 22/25 26/8 26/21 26/23 27/17 30/5 30/9 30/11 30/12 31/10 31/12 31/15 40/23 41/2 41/2 41/13 41/14 42/20 44/9 46/12 49/4 49/13 49/14 49/17 51/13 52/10 60/8 61/18 64/18 69/1 69/3 71/2 71/3 76/1 83/7 83/9 83/10 83/13 86/20 86/20 87/3 87/8 87/12 88/8 89/12 89/15 89/25 92/25 93/4 93/25 94/3 94/5 94/6 102/18 102/25 104/1 104/3 106/17 107/14 107/18 108/20 109/4 109/9 109/22 109/23 109/23 110/24 110/25 111/2 112/12 114/6 114/24 115/4 115/12 116/8 117/20 117/24 119/18 121/14 125/3 126/3 126/23 127/19 127/20 127/23 129/7 132/6 132/8 132/15 134/13 136/6 136/17 137/1 137/18 137/21 138/19 139/24 140/9 141/18 144/7 146/4 146/5 147/12 151/12 151/13 152/7 152/16 152/19 153/16 155/6 155/14 155/24 156/17 156/24 157/9 157/19 158/3 163/9 164/9 164/16 165/1 165/8 165/14 167/25 172/8 172/14 173/2 174/22 175/7 175/14 177/25 178/13 178/20 180/20 181/13 181/16 181/19 182/1 182/7 182/24 183/2 183/4 183/21 184/18 184/19 184/22 187/18 190/17 194/15 194/24 196/4 196/4 197/4 198/19 198/19 199/3 202/24 203/3 209/3 211/18 214/25 220/10 221/16 223/13 223/16 223/17 224/1 224/2 224/8 225/2 227/12 230/7 230/8 230/9 230/22 232/8 232/9 232/13 232/23 233/24 235/6 235/12 241/23 241/24 244/18 245/1 246/12 249/19 250/22 250/23 252/25 257/15 258/9 260/21 262/9 264/24 267/1 267/11 271/15 272/5 273/2 275/14 280/10

**weren't [15]** 40/24 41/14 41/16 55/18 110/9 129/11 137/24 138/21 140/10 148/2 201/15 228/18 230/7 234/5 234/6

**West [2]** 1/18 1/21

**what [321]**

**what's [11]** 66/10 75/8 77/8 103/8 151/2 209/17 217/6 229/23 237/9 242/24 270/18

**whatever [15]** 73/14 76/18 81/17 87/8 136/23 143/22 154/18 158/7 201/18 241/18 256/14 258/2 258/12 267/21 270/12

**whatsoever [1]** 248/10

**when [136]** 8/11 8/13 10/21 12/3 12/4 12/18 28/13 32/2 32/20 32/20 33/18 34/8 34/13 34/21 34/21 39/1 40/17 40/23 41/24 56/23 58/25 61/18 62/3 64/24 69/25 75/10 75/17 76/7 81/25 84/14 85/15 87/2 91/2 92/7 92/20 92/25 93/7 95/21 100/17 102/24 104/23 106/11 107/18 107/19 108/25 110/24 112/4 112/8 113/10 118/10 119/21 121/1 123/12 123/13 124/2 126/3 127/11 127/19 130/16 130/17 134/6 136/13 138/1 138/9 138/19 143/23 147/23 151/12 153/24 159/23 161/1 162/4 162/6 162/13 163/8 163/25 164/4 164/7 165/10 166/11 167/23 174/3 174/22 175/14 177/7 178/10 179/21 179/24 180/1 180/7 181/21 182/4 182/14 182/15 183/8 183/8 184/19 186/22 187/20 189/4 190/13 193/11 194/7 194/14 197/18 200/22 200/25 202/3 206/16 213/13 220/8 221/12 221/25 222/8 222/14 224/23 224/25 229/11 230/13 232/8 236/24 238/23 242/16 242/22 243/22 248/13 250/18 255/10 258/3 269/14 270/8 271/22 272/11 275/14 277/12 279/11

**whenever [7]** 11/22 115/15 115/15 143/10 173/11 173/11 247/3

**where [58]** 14/13 19/10 22/21 30/16 31/2 43/14 48/22 49/25 50/16 55/22 63/2 65/24 71/1 79/19

## W


**where... [44]** 81/4 86/6 89/6 105/1 109/15 111/8 111/23 112/22 115/9 116/9 116/14 121/14 125/16 128/17 142/18 149/13 152/4 164/8 166/23 182/11 186/14 202/23 206/1 224/5 224/9 229/17 229/17 234/22 243/6 247/15 248/25 250/4 250/13 253/19 254/21 255/25 256/3 256/13 263/13 270/10 270/14 272/21 278/3 279/13

**whether [27]** 27/5 28/15 29/13 29/14 44/15 63/19 79/19 95/2 97/9 97/10 111/24 123/4 131/5 133/4 137/23 142/6 177/11 181/6 189/1 190/14 206/25 211/23 214/1 230/23 233/14 244/19 272/7

**which [86]** 8/9 17/22 25/16 25/18 25/21 29/23 31/10 33/2 34/14 37/8 37/15 41/1 42/11 43/3 43/12 50/10 51/25 52/6 52/7 58/22 59/15 61/4 62/2 62/4 63/23 66/11 68/2 68/7 69/24 73/17 75/11 75/15 77/25 78/9 78/17 79/25 82/12 88/8 91/3 93/20 93/22 98/8 99/17 101/23 101/24 110/10 111/17 122/15 123/17 129/11 137/13 137/21 145/9 145/24 156/7 159/23 175/18 177/6 180/21 189/10 192/21 192/22 194/7 197/6 206/22 209/15 221/3 221/4 222/11 223/18 231/7 233/24 236/11 237/15 240/1 241/21 245/6 248/4 248/17 258/6 259/6 260/1 261/5 264/9 271/11 272/3

**while [7]** 34/1 144/21 154/3 154/6 184/23 196/7 244/3

**white [2]** 235/13 235/14

**who [64]** 6/14 19/22 21/2 21/3 21/13 33/11 33/13 33/16 33/16 33/18 33/23 35/1 35/4 35/23 37/23 38/16 39/2 39/18 39/23 65/22 68/12 68/20 74/9 89/11 108/2 108/25 114/14 127/6 130/4 132/3 138/12 139/3 150/18 152/11 154/5 160/9 170/5 185/4 195/15 201/22 203/14 203/23 209/9 211/22 215/10 215/13 216/2 216/10 221/4 226/23 232/13 235/12 243/3 244/8 248/18 248/19 248/23 254/5 255/14 260/9 263/10 275/2 278/25 278/25

**who's [7]** 6/6 34/20 66/11 102/23 159/8 243/1 243/4

**whoever [1]** 82/23

**whole [17]** 65/6 94/12 102/14 103/16 126/16 140/8 142/19 166/21 172/22 179/19 217/12 239/22 245/16 247/1 249/23 256/1 261/4

**whom [2]** 175/12 256/15

**whose [3]** 43/5 247/6 248/23

**why [69]** 7/8 7/14 21/9 22/24 22/25 27/11 27/25 28/12 39/14 39/18 52/6 55/4 55/7 57/3 59/2 68/7 68/10 75/5 76/10 77/12 77/22 78/1 79/9 88/17 93/14 98/19 98/19 103/3 106/21 106/23 110/7 123/15 129/16 131/14 132/22 133/5 133/23 153/7 153/12 153/16 153/20 157/1 159/13 176/7 180/14 183/2 184/4 191/19 191/24 198/17 207/7 207/7 234/6 236/19 236/20 244/22 244/22 250/4 256/14 257/10 257/10 257/11 258/19 259/14 260/2 260/21 262/13 270/6 277/12

**will [85]** 7/9 9/9 23/17 25/1 34/13 34/24 37/22 43/17 45/13 56/5 56/13 56/24 57/1 57/6 58/2 65/7 65/9 65/10 65/13 65/14 69/7 74/11 75/14 81/18 81/20 82/4 89/11 92/15 93/9 95/13 97/4 98/22 111/13 113/23 122/22 122/22 124/10 128/3 132/23 148/23 160/20 161/23 162/9 162/23 162/24 162/25 163/2 163/15 165/21 184/18 186/3 186/4 200/14 200/16 200/16 201/3 208/5 208/5 212/11 236/25 237/2 245/6 247/24 248/24 251/11 252/13 258/25 259/20 261/7 261/18 265/24 265/25 269/19 273/25 275/21 275/24 275/25 276/2 276/3 276/4 278/9 278/10 278/11 279/14

## W


**will... [1]** 279/17
**WILLIAMS [3]** 280/4 280/17 280/17
**willing [2]** 251/4 277/15
**wind [1]** 277/13
**winking [1]** 206/17
**winter [3]** 55/16 68/19 107/12
**wished [1]** 88/12
**withdraw [3]** 25/1 33/5 53/20
**withdrawal [1]** 174/4
**withdrawing [2]** 127/20 127/24
**withdrawn [2]** 173/23 174/7
**within [6]** 18/22 73/24 123/20 128/6 196/19 271/6
**without [9]** 123/6 126/1 147/1 243/8 255/9 260/13 263/8 279/6 279/8
**witness [19]** 9/1 57/12 69/9 94/7 94/18 98/16 98/17 99/11 104/13 105/10 124/8 160/16 185/1 193/15 202/9 203/13 207/16 230/1 231/12
**witnesses [14]** 4/4 4/24 7/2 7/9 7/13 73/13 73/14 81/23 235/24 236/1 245/5 253/19 260/13 260/16
**woman [3]** 167/7 203/15 205/5
**women [21]** 18/22 19/17 23/5 23/6 23/8 29/24 29/24 30/3 30/9 30/11 186/6 202/25 203/4 208/9 247/11 247/14 247/16 249/4 249/22 249/24 275/18
**won [1]** 122/8
**won't [2]** 113/4 130/9
**wonder [2]** 250/25 277/2
**wondering [3]** 55/4 245/20 252/9
**word [11]** 5/9 15/4 23/9 38/2 39/12 73/11 118/7 137/25 144/25 180/23 210/23
**words [15]** 17/2 19/7 19/7 23/24 64/13 82/16 113/14 120/8 164/11 211/17 216/1 240/14 249/8 273/24 274/2
**work [5]** 29/1 149/2 228/23 263/5 263/7
**worked [4]** 28/24 89/4 169/9 204/2
**worker [1]** 213/3
**works [6]** 65/25 73/4 89/18 113/17 147/22 202/15
**world [3]** 149/3 206/7 214/11
**worrying [1]** 179/11
**worse [1]** 163/3
**worst [1]** 149/2
**worth [16]** 1/3 1/6 1/21 1/24 87/14 111/23 115/25 130/12 131/2 178/2 218/14 275/7 275/8 275/9 280/19 280/20
**would [235]** 7/6 7/12 8/24 9/1 9/17 11/7 11/11 11/12 11/14 11/22 11/23 11/25 12/15 13/1 13/9 13/24 14/4 15/22 16/8 16/24 20/18 21/3 21/5 21/10 21/13 21/21 21/22 24/11 24/14 24/21 25/21 27/9 27/10 27/22 27/25 28/9 28/15 28/22 29/7 29/19 31/4 31/23 34/5 34/12 34/15 34/21 35/12 36/17 36/17 36/22 37/10 37/11 38/5 40/8 40/21 42/16 43/19 46/8 46/9 48/17 49/2 49/16 49/19 50/2 50/4 52/3 52/21 52/22 53/21 55/24 56/9 57/7 57/24 58/4 58/11 58/22 59/2 59/17 59/22 61/1 61/15 62/17 63/6 63/15 64/10 64/11 66/8 68/3 69/1 69/10 72/8 73/11 73/12 74/3 74/3 75/9 76/20 77/5 77/12 77/17 77/23 79/12 79/15 79/17 81/14 82/17 85/5 85/21 91/14 91/14 94/1 94/2 94/7 94/11 98/8 98/18 103/20 107/2 107/14 107/20 109/18 110/12 111/4 113/6 115/16 115/16 115/17 115/19 115/19 115/23 116/19 117/4 121/8 122/8 122/9 123/22 123/25 124/1 124/5 126/14 126/15 127/1 127/10 128/6 129/17 130/18 137/19 138/2 138/5 140/23 144/8 144/9 144/22 144/24 156/12 161/8 161/11 165/7 174/24 179/4 180/7 180/9 180/25 181/23 182/7 184/5 184/23 187/1 188/2 188/13 189/10 191/22 196/3 196/8 196/8 199/3 201/24 201/25 202/13 202/25 203/4 203/9 204/5 205/5 205/7 205/25 206/9 207/6 209/15 212/8 216/23 217/13 217/14 217/25 219/18 226/22 229/21 233/8 234/24 235/3 238/14 241/6 241/11

**W**

**would... [32]** 244/1 244/22 244/22 246/2 247/10 250/14 251/6 255/12 259/25 260/1 261/12 262/2 262/5 263/1 263/22 265/11 265/14 267/25 268/24 269/21 270/6 271/1 271/8 271/11 271/14 271/15 272/23 273/17 276/12 276/15 277/1 278/22
**wouldn't [21]** 38/19 38/24 44/3 49/25 56/11 71/7 91/16 93/1 113/17 120/13 180/8 185/4 191/11 203/11 206/7 207/2 250/18 252/11 252/20 260/22 269/1
**wow [2]** 138/8 144/7
**write [6]** 10/5 38/14 56/7 73/16 131/14 236/18
**writes [1]** 75/3
**writing [3]** 110/4 249/3 250/25
**written [6]** 38/3 38/9 38/14 38/18 38/21 80/5
**wrong [9]** 57/9 115/16 126/11 188/23 189/15 253/14 255/7 258/16 264/6
**wrongdoing [1]** 220/13
**wrongfully [1]** 275/3
**wrote [8]** 38/16 41/6 41/20 60/19 66/2 216/10 216/12 250/21

**X**

**XXXX [16]** 8/3 8/3 8/4 8/4 8/5 8/5 8/7 8/7 145/6 145/9 148/6 153/6 153/8 154/17 162/9 179/13

**Y**

**y'all [17]** 36/12 40/8 57/4 67/1 116/16 117/2 117/20 117/20 178/12 212/23 213/2 213/6 213/14 214/22 218/18 230/18 230/18
**y'all's [4]** 113/14 116/2 217/20 219/6
**yeah [34]** 35/17 44/11 57/13 72/16 80/12 92/6 97/11 116/7 119/1 140/1 143/1 143/9 146/23 148/13 154/12 156/15 160/15 182/23 193/11 197/7 205/14 212/15 213/3 228/16 254/13 254/15 256/8 256/10 258/20 260/24 261/16 264/25 266/2 274/19
**year [31]** 13/11 15/12 16/7 30/20 49/22 55/25 95/16 96/2 97/8 123/3 123/24 126/16 129/4 170/18 187/1 208/15 208/16 208/18 212/4 212/18 212/19 249/3 250/22 250/24 270/8 274/7 274/9 274/25 276/8 276/10 276/11
**years [7]** 13/20 28/25 214/18 274/3 274/4 274/9 277/9
**yes [440]**
**yesterday [1]** 40/16
**yet [9]** 43/7 46/3 59/15 66/13 107/24 113/11 183/24 188/22 223/11
**you [1252]**
**you're [96]** 10/17 12/18 12/19 13/3 13/5 13/10 13/18 14/13 14/19 18/7 20/6 21/2 22/9 23/3 24/20 25/18 25/21 34/3 38/15 41/1 44/2 44/18 44/23 45/2 51/21 54/1 54/2 57/13 57/23 58/5 62/22 63/1 63/22 66/12 66/17 66/19 101/1 116/14 121/10 130/21 147/17 150/9 153/1 161/22 162/6 164/8 169/12 173/16 175/17 176/16 177/14 186/17 188/13 202/18 203/2 203/6 203/8 204/16 205/23 206/16 206/17 208/1 211/2 211/13 218/2 219/22 219/23 224/15 229/16 232/24 232/25 239/11 242/25 243/5 243/6 249/11 253/7 254/8 254/10 254/12 254/14 254/15 254/16 269/16 269/16 270/8 270/9 270/20 270/22 274/2 274/8 275/22 276/8 276/9 276/14 278/3
**you've [39]** 17/1 39/6 39/16 43/3 50/15 59/5 60/5 66/10 78/4 94/10 96/11 97/7 103/16 139/6 145/18 155/21 173/23 185/18 188/6 188/14 193/8 216/14 226/22 241/13 250/21 251/5 261/8 262/22 262/23 268/12 268/13 268/14 274/6 274/9 274/13 274/15 274/16 276/21 277/14
**young [3]** 12/20 243/5 277/19
**your [286]**
**yours [4]** 13/23 36/2 39/18 214/8
**yourself [5]** 8/15 23/25 25/2 145/14 214/16

## Y

**yourselves [2]** 215/18 216/1

## Z

**zero [2]** 226/6 228/19
**Zoie [4]** 7/17 280/4 280/17 280/17
**Zoom [9]** 78/15 79/23 81/19 81/24 132/11 132/12 215/15 215/19 216/3
**zwilliams.rmr [1]** 280/21
**ZZ [2]** 130/9 130/10