## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOHN DOE,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:22-CV-00297-O** |
| | § | |
| **TEXAS CHRISTIAN UNIVERSITY** | § | |
| **& VICTOR J. BOSCHINI, JR.,** | § | |
| | § | |
| *Defendants.* | § | |

---

### NON-PARTY JANE ROE'S MOTION TO QUASH,
### AND ALTERNATIVELY, FOR PROTECTIVE ORDER AND BRIEF IN SUPPORT

---

**WICK PHILLIPS GOULD & MARTIN LLP**

David J. Drez III
Texas Bar No. 24007127
*david.drez@wickphillips.com*
Colin P. Benton
Texas Bar No. 24095523
*colin.benton@wickphillips.com*
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone: 817.332.7788
Facsimile: 817.332.7789

**ATTORNEYS FOR NON-PARTY JANE ROE**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. iii

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................... 3

III.    ARGUMENT AND AUTHORITIES................................................................... 4

        A.      Legal standards under Federal Rules of Civil Procedure 26 and 45....................... 4

                1.      The test for showing undue burden under Rule 45. .................................... 4

                2.      The subpoena must be relevant as defined by Rule 26, but it
                        requires a stronger showing of relevance for non-party
                        discovery.................................................................................................... 5

        B.      The Subpoena for Roe's deposition should be quashed. ......................................... 7

                1.      Roe could offer no non-duplicative relevant testimony............................. 7

                2.      A deposition in this case would cause Roe undue burden. ......................... 9

        C.      The Subpoena for production of documents should be quashed. .......................... 12

                1.      Lack of relevance is already established, but assuming
                        *arguendo* the information would be relevant, its benefit
                        would be marginal...................................................................................... 13

                        a.      Request #1: Each communication between Roe and
                                Doe, including (without limitation), all screenshots
                                and archives of Snapchats and text messages. .............................. 14

                        b.      Request #2:  Each communication sent or received
                                by Roe that mentions Doe, the Allegations, and/or
                                the Proceedings. The scope of this request includes
                                social media posts by Roe, and/or communications
                                between Roe and TCU, Roe's family, four named
                                individuals and/or any law enforcement personnel
                                (including police reports or complaints filed).............................. 14

                        c.      Request #3: Each communication sent or received by
                                any of Roe's lawyers, to or from a person other than
                                Roe that mentions Doe, the Allegations, and/or any
                                of the Proceedings. ...................................................................... 15

d.    Request #4: Each TikTok video posted by Roe that refers (directly or indirectly) to Doe. The scope of this request includes deleted TikTok videos. ............................... 15

e.    Request #5: Communications between Roe and any person regarding a named individual. ........................................... 16

f.    Request #6: Each document evidencing questions, notes or scripts prepared for or by a named individual to testify at the Panel Hearing. ....................................................... 16

g.    Request #7: Each document evidencing Snapchat conversations or photos between Roe and Doe. .......................... 17

h.    Request #8: Each photograph and/or video that depicts Doe or records Doe's voice. ............................................. 17

i.    Request #9: Each audio and video recording made of a conversation during which the Allegations, Doe or the Proceedings are mentioned. ................................................... 18

j.    Request #10: Each communication between TCU and Roe or Roe's family or Roe's lawyers that reference any text message between a named individual and Roe. ...................................................................... 18

k.    Request #11: All no-contact orders signed by Roe with respect to Doe. ................................................................... 18

l.    Request #12: Journal entries, diaries or any form of notes made by Roe about Doe, the Allegations, and/or the Proceedings. .................................................................. 19

2.    Burden Imposed ....................................................................... 19

D.    The Court should order cost-shifting if Roe is required to produce documents. ..................................................................................... 21

E.    Alternatively, the Court should impose strict limitations on any testimony. .............................................................................................. 22

IV.    PRAYER ..................................................................................................... 24

CERTIFICATE OF CONFERENCE ........................................................................ 25

CERTIFICATE OF SERVICE ................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Advance Tech. Incubator, Inc. v. Sharp Corp.*,
    263 F.R.D. 395 (W.D. Tex. 2009) ........................................................ 4

*Andra Group, LP v. JDA Software Group, Inc.*,
    312 F.R.D. 444 (N.D. Tex. 2015) ....................................................... 11

*Burns v. Bank of Am.*,
    No. 03 Civ. 1685(RMB)(JCF), 2007 WL 1589437 (S.D.N.Y. June 4, 2007) ......................... 13

*Castleberry v. Camden Cnty.*,
    331 F.R.D. 559 (S.D. Ga. 2019) .......................................................... 6

*Dart Indus. Co. v. Westwood Chem. Co.*,
    649 F.2d 646 (9th Cir. 1980) ............................................................. 9

*DeGeer v. Gillis*,
    755 F. Supp. 2d 909 (N.D. Ill. 2010) .............................................. 20, 21

*Doe v. Amherst Coll. et al.*,
    No. 2:16-CV-01296-JLR, ECF No. 13 (W.D. Wash. Nov. 16, 2016)............................ 2, 9, 10

*Doe v. Maryland*,
    No. ELH-20-1227, 2021 WL 1174707 (D. Md. Mar. 23, 2021) ................................ 1

*Doe v. Ohio State Univ.*,
    No. 2:16-CV-171, 2018 WL 1373868 (S.D. Ohio Mar. 19, 2018)............................ 6

*Doe v. Princeton Univ.*,
    No. CV 20-4352 (BRM), 2020 WL 3962268 (D.N.J. July 13, 2020) ....................... 7

*Doe v. Purdue Univ.*,
    928 F.3d 652 (7th Cir. 2019) ............................................................. 4

*Doe v. St. Joseph's Univ.*,
    832 F. App'x 770 (3rd Cir. 2020)........................................................ 8

*Doe v. Texas A&M Univ.*,
    No. H-20-4332, 2021 WL 257059 (S.D. Tex. Jan. 26, 2021)............................ 8, 9

*Doe v. Univ. of Denver*,
    1 F.4th 822 (10th Cir. 2021) ............................................................. 8

*Doe v. Univ. of St. Thomas*,
    240 F. Supp. 3d 984 (D. Minn. 2017)..................................................... 1

*Doe v. Univ. of the South*,
　687 F. Supp. 2d 744 (E.D. Tenn. 2009) ................................................................. 1

*Edelson, P.C. v. Bandas Law Firm, P.C.*,
　No. 2:18-MC-980, 2018 WL 6588436 (S.D. Tex. Dec. 14, 2018) ........................... 5

*Furr v. Ridgewood Surgery & Endoscopy Ctr., LLC*,
　No. 14-1011-RDR, 2014 WL 6472885 (D. Kan. Nov. 18, 2014) ...................... 5, 9

*Gomes v. Univ. of Maine Sys.*,
　365 F. Supp. 2d, 6 (D. Me. 2005) .......................................................................... 1

*Hatcher v. Precoat Metals*,
　271 F.R.D. 674 (N.D. Ala. 2010) ........................................................................... 5

*HDSherer LLC v. Nat. Molecular Testing Corp.*,
　292 F.R.D. 305 (D.S.C. 2013) .................................................................. 18, 19, 20

*In re Venequip, S.A.*,
　No. MC 21-2090, 2022 WL 834780 (E.D. La. Mar. 21, 2022) ............................. 5

*Jenkins v. Pech*,
　No. 8:14-CV-41, 2015 WL 728305 (D. Neb. Feb. 19, 2015) ................................ 6

*Klocke v. Univ. of Tex. at Arlington*,
　938 F.3d 204 (5th Cir. 2019) ................................................................................ 4

*Laxalt v. McClatchy*,
　116 F.R.D. 455 (D. Nev. 1986) .............................................................................. 6

*Legal Voice v. Storman's, Inc.*,
　738 F.3d 1178 (9th Cir. 2013) ............................................................................. 21

*Leonard v. Martin*,
　38 F.4th 481 (5th Cir. 2022) ............................................................................... 21

*Linder Calero-Protocarrero*,
　251 F.3d 178 (D.C. Cir. 2001) ............................................................................. 21

*MetroPCS v. Thomas*,
　327 F.R.D. 600 (N.D. Tex. 2018) .......................................................................... 5

*Ntakirutimana v. CHS/Cmty. Health Sys., Inc.*,
　No. L-09-114, 2011 WL 13135608 (S.D. Tex. June 28, 2011) ............................ 13

*Tech. Serv., Inc. v. Zurich Am. Ins. Co.*,
　377 F. Supp. 3d 1197 (D. Or. 2019) ............................................................... 5, 22

*Plummer v. Univ. of Houston*,
  860 F.3d 767 (5th Cir. 2017) .......................................................................... 8

*Positive Black Talk v. Cash Money Records*,
  394 F.3d 357 (5th Cir. 2004) .......................................................................... 4

*Schorr v. Briarwood Estates, Ltd. P'ship*,
  178 F.R.D. 488 (N.D. Ohio 1998) ................................................................. 23

*Stamy v. Packer*,
  138 F.R.D. 412 (D. N.J. 1990) ........................................................................ 6

*Thomas v. IEM, Inc.*,
  No. 06-886-B-M2, 2008 WL 695230 (M.D. La. Mar. 12, 2008) ............................ 13

*Transcor, Inc. v. Furney Charters, Inc.*,
  212 F.R.D. 588 (D. Kan. 2003) .................................................................... 5, 6

*Vaigasi v. Mgmt. Corp.*,
  No. 11 Civ. 5088, 2016 WL 616386 (S.D.N.Y. Feb. 16, 2016) ............................. 6

*VHT, Inc. v. Zillow Grp., Inc.*,
  No. C-15-1096-JLR, 2016 WL 7077235 (W.D. Wash. Sept. 8, 2016) ..................... 6

*Wiwa v. Royal Dutch Petroleum Co.*,
  392 F.3d 812 (5th Cir. 2004) ................................................................. passim

*Yusuf v. Vassar Coll.*,
  35 F.3d 709 (2d Cir. 1994) ............................................................................. 4

*Zukoski v. Philadelphia Elec. Co.*,
  No. CIV. A. 93-4780, 1994 WL 637345 (E.D. Pa. Nov. 14, 1994) ........................ 6

**Rules**

Fed. R. Civ. P. 26(b)(1) .................................................................................... 6

Fed. R. Civ. P. 45(d) ............................................................................... passim

Fed. R. Civ. P. 45(d)(1) .................................................................................... 4

Fed. R. Civ. P. 45(d)(3)(A)(iv) ..................................................................... 4, 13

Fed. R. Civ. P. 34 ........................................................................................ 5, 18

Fed. R. Evid. 412 ........................................................................................... 12

**Other Authorities**

*Sedona Commentary*,
   9 SEDCJ (2008) .................................................................................................... 32

Under Federal Rules of Civil Procedure 26(c) and 45(d), Non-Party Jane Roe[1] ("Roe") files this Motion to Quash, and alternatively, for Protective Order ("Motion"), concerning the Subpoena Duces Tecum ("Subpoena") served by Plaintiff John Doe ("Doe"). The Subpoena purports to compel the production of documents and appearance for testimony on September 14, 2022, and to the extent necessary, Roe requests that she be relieved of any obligation to comply with the Subpoena until such time as the Court has considered this Motion. In support of this Motion, Roe states as follows:

## I. INTRODUCTION

Roe reported to Texas Christian University ("TCU") that Doe sexually assaulted her, and TCU's disciplinary process followed. Doe subsequently filed the underlying Title IX and breach of contract lawsuit against *TCU* (not Roe), claiming that the school discriminated against him on the basis of his sex when it found him responsible for violating the school's sexual harassment policy.

Doe served a subpoena duces tecum on Roe for her deposition and requested broad categories of documents. "It is not the province of [the] Court 'to retry' [Doe's] disciplinary proceeding." *Doe v. Maryland*, No. ELH-20-1227, 2021 WL 1174707, *23 (D. Md. Mar. 23, 2021).[2] Doe's efforts to obtain discovery from Roe, however, are designed to do just that. This

---

[1] This Court previously permitted Plaintiff to proceed under a pseudonym. ECF No. 41. Throughout the pleadings in this case, Roe is identified as the person who reported to TCU that she had been sexually assaulted by Doe, and Roe accordingly adopts that usage herein. Roe separately seeks leave to file unredacted versions of Exhibit A (the Subpoena, APP001 - 007) and Exhibit B (declaration of treating therapist, APP008 – 010) under seal. Redacted versions are contained within the Appendix in support of this Motion, filed concurrently herewith.

[2] Numerous cases support the principle that a Title IX case is not a retrial of the underlying proceedings. *See, e.g.*, *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 755 (E.D. Tenn. 2009) ("This is not a lawsuit between [Roe] and the Plaintiff[]…The Court therefore expresses no opinion as to whether a sexual assault occurred, whether any such acts were consensual, or who, as between John Doe and [Roe] is credible."); *Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d 984, 989-90 (D. Minn. 2017) ("As a general rule, Title IX is not an invitation for courts to second-guess disciplinary decisions of colleges or universities."); *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d, 6, 13 (D. Me. 2005) ("This Court's review is substantially circumscribed; the law does not allow this Court to retry the University's disciplinary proceeding.").

Court already has found that for Doe to show the Title IX panel reached an erroneous conclusion, Doe "must provide evidence '**on the record before the disciplinary tribunal**' that casts 'articulable doubt' on the panel's decision."[3]  The entirety of Roe's participation in the disciplinary process is contained within TCU's records, which Doe either already has or can request from TCU.

*None of Doe's theories of liability against TCU turn on evidence that could be elicited from Roe.* Yet Doe now improperly attempts to bring non-party Roe into his lawsuit by serving the Subpoena to compel her to testify at a deposition and produce documents responsive to 12 separate and overly broad requests. In a nearly identical scenario, U.S. District Judge James L. Robart quashed in its entirety a subpoena issued to the non-party complainant (like Roe) in the underlying school disciplinary proceeding and explained as follows:

> The heavy burden imposed on Ms. Jones may . . . be justified in a case litigating what happened [the night the alleged sexual assault took place]. However, the underlying litigation does not pose that question. Instead, Mr. Doe's claims challenge the policies under which [the college] and its administrators conducted their investigation and review, whether the administrators in fact followed [the college's] policies, and whether the process or policies discriminate against men, such as Mr. Doe. The majority of topics that Mr. Doe seeks to take up in a deposition of [Ms. Jones] are not relevant to those claims.

*John Doe v. Amherst Coll. et al.*, No. 2:16-CV-01296-JLR, ECF No. 13, p. 6 (W.D. Wash. Nov. 16, 2016).[4] The same reasoning applies in this case.

Because the die is cast on the record that was before the disciplinary tribunal, Doe's request for testimony and documents from Roe is duplicative, unnecessary, irrelevant and not proportional to the needs of the case. Moreover, Roe includes evidence from a treating therapist that establishes subjecting her to a deposition will result in significant emotional harm and trauma. The undue burden caused to Roe outweighs any potential relevance, and the Subpoena should be quashed in

---

[3]   ECF No. 40 at 8 (emphasis added).

[4]   For the Court's convenience, the Order is attached hereto at APP016 – 024.

its entirety. Alternatively, the Court should enter a protective order limiting, *inter alia*, the manner, means, scope, and duration of any testimony from Roe. To the extent that Roe is required to produce documents, she further requests the Court order Doe to pay for the costs of complying with the Subpoena given its breadth and burdensome nature.

## II. BACKGROUND

The Court is familiar with the underlying allegations and record before TCU's disciplinary tribunal.[5] While Roe accordingly limits her factual recitation to those relevant to this Motion, it is important to bear in mind that the disciplinary proceeding lasted nearly 17 hours, with both Doe and Roe providing voluminous documentary evidence and live testimony, including that of Roe who was subjected to rigorous cross examination by Doe's counsel. Further, this Court already has held an extensive evidentiary hearing in connection with Doe's request for a preliminary injunction and temporary restraining order. Doe managed to conduct this hearing without any live testimony of Roe or documents such as those requested in the Subpoena. Any deposition testimony Doe seeks from Roe is <u>not</u> Doe's first opportunity to question Roe, but instead a second round of questioning without any apparent limitation or relevance to this lawsuit against TCU. Similarly, to the extent Doe requests relevant documents (he does so only marginally), such documents are either already part of the record before the disciplinary tribunal or records in the possession of TCU.

Doe's claims pertain to TCU's actions and alleged bias. It is the outcome of TCU's process that Doe challenges in this lawsuit. The primary question is whether that process violated Title IX by discriminating against Doe on the basis of his sex.[6] Doe asserts three theories of Title IX liability: (1) TCU's disciplinary tribunal reached an "erroneous conclusion," (2) TCU selectively

---

[5] ECF No. 40 at 1–6.

[6] Doe also asserts a breach of contract claim against Defendants under the sexual harassment policy, student code of conduct, and student bill of rights. ECF No. 43 at ¶¶ 167–171.

enforces sexual harassment policy violations, and (3) there is a plausible inference TCU discriminated against Doe on the basis of his sex.[7] To succeed on the first theory, Doe will have to establish an erroneous conclusion based "on the record before the disciplinary tribunal."[8] To succeed on the second theory, Doe will have to establish that "'regardless of the student's guilt or innocence,' the severity of the penalty or the decision to initiate proceedings 'was affected by the student's gender.'"[9] To succeed on the third theory, Doe will have to establish a "plausible inference" that TCU discriminated against him on the basis of his sex. *Doe v. Purdue Univ.*, 928 F.3d 652, 667–68 (7th Cir. 2019).

### III. ARGUMENT AND AUTHORITIES

**A.    Legal standards under Federal Rules of Civil Procedure 26 and 45.**

Federal Rule of Civil Procedure 45 governs subpoenas and specifically instructs a party issuing and serving a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subjected to the subpoena." FED. R. CIV. P. 45(d)(1). Upon a timely motion, the Court *must* quash or modify a subpoena that, *inter alia*, subjects a person to undue burden. FED. R. CIV. P. 45(d)(3)(A)(iv).

**1.    The test for showing undue burden under Rule 45.**

The test in the Fifth Circuit for whether a subpoena imposes an undue burden as contemplated by Rule 45 is a question of reasonableness that is determined by balancing the benefits and burdens of the requested discovery. *See Advance Tech. Incubator, Inc. v. Sharp Corp.*, 263 F.R.D. 395, 399 (W.D. Tex. 2009) (citing *Positive Black Talk v. Cash Money Records*, 394 F.3d 357, 377 (5th Cir. 2004)). To conduct this balancing test, courts consider the factors

---

[7]    ECF No. 43 at ¶¶ 155-156.

[8]    ECF No. 40 at 8 (quoting *Klocke v. Univ. of Tex. at Arlington*, 938 F.3d 204, 210 (5th Cir. 2019)).

[9]    *Id.* at 7 (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)).

articulated in *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812 (5th Cir. 2004).  Those factors include: "(1) the relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed."  *Edelson, P.C. v. Bandas Law Firm, P.C.*, No. 2:18-MC-980, 2018 WL 6588436, at *5 (S.D. Tex. Dec. 14, 2018) (quoting *Wiwa*, 392 F.3d at 818).  "On a motion asserting undue burden, '[t]he moving party has the burden of proof to demonstrate that compliance with the subpoena would be unreasonable and oppressive.'" *MetroPCS v. Thomas*, 327 F.R.D. 600, 609 (N.D. Tex. 2018) (quoting *Wiwa*, 392 F.3d at 818).

> ### 2. The subpoena must be relevant as defined by Rule 26, but it requires a stronger showing of relevance for non-party discovery.

While Rule 45 "does not include relevance as an enumerated reason for quashing a subpoena[,] [i]t is well settled . . . that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34." *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003); *see also In re Venequip, S.A.*, No. MC 21-2090, 2022 WL 834780, at *11 (E.D. La. Mar. 21, 2022) (applying "the usual relevance and proportionality analysis required by Rule 26 and the undue burden analysis of Rule 45"); *Hatcher v. Precoat Metals*, 271 F.R.D. 674, 675 (N.D. Ala. 2010) ("Rule 45 must be read in conjunction with Federal Rule of Civil Procedure 26 because the latter rule 'clearly defines the scope of discovery for all discovery devices.'" (quoting 9 Wright & Miller, Federal Practice & Procedure; Civil 3d § 2452 (3d ed. 2008)).  Thus, "[i]n considering when a burden is undue, Rule 26 is relevant and should be considered." *Pegatron Tech. Serv., Inc. v. Zurich Am. Ins. Co.*, 377 F. Supp. 3d 1197, 1202 (D. Or. 2019).  "Lack of relevance is a valid reason to quash a subpoena." *Furr v. Ridgewood Surgery & Endoscopy Ctr., LLC*, No. 14-1011-RDR, 2014 WL 6472885, at *3 (D. Kan. Nov. 18, 2014).

Rule 26 grants parties the right to obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense. *See* FED. R. CIV. P. 26(b)(1). Relevance is construed very broadly, but "the concept of relevance is not unlimited." *Doe v. Ohio State Univ.*, No. 2:16-CV-171, 2018 WL 1373868 at *2 (S.D. Ohio Mar. 19, 2018). Indeed, numerous federal courts have recognized a stronger showing of relevance is required when seeking discovery from non-parties. *Wiwa*, 392 F.3d at 818 ("[I]f the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party."); *Castleberry v. Camden Cnty.*, 331 F.R.D. 559, 563 (S.D. Ga. 2019) ("Importantly, [n]on-party status is a factor courts may consider when analyzing whether a subpoena is unduly burdensome.") (internal quotes omitted); *Zukoski v. Philadelphia Elec. Co.*, No. CIV. A. 93-4780, 1994 WL 637345, at *3 (E.D. Pa. Nov. 14, 1994) ("It is a generally accepted rule that standards for non-party discovery require a stronger showing of relevance than for party discovery."); *Stamy v. Packer*, 138 F.R.D. 412, 419 (D. N.J. 1990) ("[T]he standards for nonparty discovery require a stronger showing of relevance than for simple party discovery."); *Laxalt v. McClatchy*, 116 F.R.D. 455 (D. Nev. 1986) (same).

To satisfy the discoverability standard in the context of discovery from a non-party, the information sought must have more than minimal relevance to the claims or defenses. *See Vaigasi v. Mgmt. Corp.*, No. 11 Civ. 5088, 2016 WL 616386, at *7 (S.D.N.Y. Feb. 16, 2016); *Jenkins v. Pech*, No. 8:14-CV-41, 2015 WL 728305, at *4 (D. Neb. Feb. 19, 2015). Information that is "negligibly relevant [or] minimally important to resolving the issues" does not satisfy the standard. *Ohio State Univ.*, 2018 WL 1373868, at *2 (quoting *VHT, Inc. v. Zillow Grp., Inc.*, No. C-15-1096-JLR, 2016 WL 7077235, at *1 (W.D. Wash. Sept. 8, 2016)). When relevance is not facially apparent, it is the burden of the party issuing the subpoena to establish that the information subpoenaed is relevant. *Transcor, Inc.*, 212 F.R.D. at 591.

**B.      The Subpoena for Roe's deposition should be quashed.**

The Subpoena for deposition testimony contains no limitations as to time and scope.[10]
Based on the nature of Doe's claims, Roe's testimony is not germane to the relief sought, but
instead is an effort to retry the underlying disciplinary proceedings, which the law prohibits.

### 1.      Roe could offer no non-duplicative relevant testimony.

Doe's allegations in the case are instructive as to why deposition testimony from Roe is
not relevant. In Doe's claims under Title IX, he mentions Roe only in the "erroneous outcome"
section.[11] Of the 17 "facts" that Doe claims "establish articulable doubt on the accuracy of the
outcome of the disciplinary proceeding," Doe identifies only 7 "facts" regarding Roe that appear
to be entirely from the record of the underlying disciplinary proceeding.[12] Indeed, in an earlier
pleading, Doe described "the underlying dispute in this case" as TCU's "handling of sexual assault
accusations made against [him]."[13] Doe further says he "did not commit sexual assault, however
he was wrongfully suspended from TCU pursuant to unfair rules, procedures and institutional
biases."[14] In further briefing to the Court to proceed under a pseudonym, Doe stated:

> Doe has never been charged with the crime of sexual assault, yet requiring him to
> litigate under his real name shifts the focus away from the conduct of TCU to the
> conduct of Doe. See Doe v. Princeton Univ., No. CV 20-4352 (BRM), 2020 WL
> 3962268, at *3 (D.N.J. July 13, 2020) (noting, "the issue here is not whether
> Plaintiff committed a sexual act, but whether or not Princeton subjected Plaintiff to
> an unfair disciplinary proceeding" and granting plaintiff's motion to proceed under
> a pseudonym).[15]

---

[10]   APP002 – 007.

[11]   ECF No. 43, ¶ 155.

[12]   *Id.*

[13]   ECF No. 4 at 1.

[14]   *Id.* at 2.

[15]   ECF No. 38 at 8 (emphasis supplied).

Permitting Doe to depose Roe has an analogous impact: it shifts the focus away from the conduct of TCU to the conduct of Roe. And just as the case Doe cites above states, "the issue here is not whether [Doe] committed a sexual act, but whether or not [TCU] subjected [Doe] to an unfair disciplinary proceeding." Roe's testimony will not alter the record that was part of TCU's decision. Instead, Doe seeks a re-trial of the TCU disciplinary proceeding, which the law does not allow. "Ultimately, courts must focus on 'ensuring the presence of 'fundamentally fair procedures to determine whether the misconduct has occurred.'" *Plummer v. Univ. of Houston*, 860 F.3d 767, 773 (5th Cir. 2017). Roe's testimony now has no bearing on those procedures. While Doe claims that "[i]nstability, jealously and vengeance are the underpinnings of Roe's motive to falsely accuse Doe of sexually assaulting her," he exhibits his own vein of vengeance in seeking Roe's deposition.[16]

In similar Title IX cases, courts limit their review to the record before the disciplinary panel and information related to it, such as the school's actions and procedures during the contested hearing, other hearings conducted by the school, school policies, and comments and publications made by school officials involved in the disciplinary hearing. *See e.g.*, *Doe v. Texas A&M Univ.*, No. H-20-4332, 2021 WL 257059 at *3–8 (S.D. Tex. Jan. 26, 2021) (reviewing the record before the tribunal and the tribunal's procedures); *Doe v. St. Joseph's Univ.*, 832 F. App'x 770, 773–74 (3rd Cir. 2020) (same); *Doe v. Univ. of Denver*, 1 F.4th 822, 830–35 (10th Cir. 2021) (same under the *Purdue* standard). For example, in *Doe v. Texas A&M,* Judge Rosenthal resolved a motion for preliminary injunction by examining the testimony from the investigation, whether the hearing officer addressed contradictory testimony, the length of time between the investigation and the

---

[16]   ECF No. 43, ¶ 79. Further, the requested deposition and production of Roe would run afoul of Federal Rule of Evidence 412.

draft report, the length of time for which the appeal was considered, whether there were any procedural irregularities, whether there was disparate treatment between the sexes, and whether the university had been pressured by the Department of Education. 2021 WL 257059 at *3–7. This Court was in accord, finding that for Doe to show TCU's Title IX panel reached an erroneous conclusion, Doe "must provide evidence '*on the record before the disciplinary tribunal*' that casts 'articulable doubt' on the panel's decision."[17]

Therefore, the Subpoena for an unlimited deposition of Roe should be quashed because it fails the relevance standard for non-parties. *See Amherst Coll.*, No. 2:16-CV-01296-JLR, ECF No. 13, p. 6 (recognizing "Mr. Doe's claims challenge the policies under which [the college] and its administrators in fact followed [the college's] policies, and whether the process or policies discriminate against men, such as Mr. Doe" and concluding "the topics Mr. Doe seeks to take up in a deposition [of Ms. Jones] are not relevant to those claims")[18]; *Furr*, 2014 WL 6472885, at *3 ("Lack of relevance is a valid reason to quash a subpoena.").

### 2.   A deposition in this case would cause Roe undue burden.

Contrary to Rule 45's mandate to "take reasonable steps to avoid imposing undue burden or expense," Doe's Subpoena imposes an impermissible burden to have Roe sit for a deposition, particularly without any limitations whatsoever. Courts have long noted the special need to protect nonparties from this type of harassment, inconvenience, and potential disclosure of confidential information. *See Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980).

In his complaint, Doe describes Roe as "fragile, insecure, unpredictable and immature. Even the smallest of slights or disagreements would destabilize Roe and could lead Roe to burning

---

[17]   ECF No. 40 at 8 (emphasis added).

[18]   APP021.

herself or forcing herself to purge."[19] Roe's treating counselor, Kim Garrett, observed that Roe has posttraumatic stress disorder and—echoing Doe's observations in part—is "in a very fragile emotional state."[20] Counselor Garrett has concluded that subjecting Roe to a deposition would cause Roe "significant emotional harm and trauma, and, among other things, exacerbate her PTSD and greatly increase the anxiety, hypervigilance, depression, and insomnia she regularly suffers."[21]

In *Doe v. Amherst College*,[22] the court was presented with a motion to quash a similar non-party subpoena for testimony and production in a Title IX lawsuit. Just as here, the underlying dispute was between the student (also Doe) that had been disciplined for sexual assault and the university. That student sought testimony and documents from the person, a non-party, that made the sexual assault allegations (just as Roe did here). The court recognized that an in-person deposition would impose a substantial burden: "The deposition would force Ms. Jones to relive a night in which she asserts Mr. Doe sexually assaulted her. It would also reraise the subsequent investigation, hearing, and period of publicity that Ms. Jones has endured. It takes no leap of logic to reason that a live deposition would impose emotional and psychological trauma upon Ms. Jones."[23] The court balanced the obvious burden with the potential benefit to the plaintiff. But the court recognized that the case was not "litigating what happened on [the night of the alleged assault]."[24] Because the plaintiff's claims concerned the college's policies and the conduct of its administrators in its disciplinary process, "[t]he majority of the topics that [the plaintiff] seeks to

---

[19] ECF No. 43, ¶ 48.

[20] APP010.

[21] *Id.*

[22] APP016 – 024.

[23] APP021.

[24] *Id.*

take up in a deposition are not relevant to those claims."[25] Among the topics were the decision to pursue the disciplinary process, her text messages, and communications between her and the college administrators.[26] The only arguably relevant topic was communications between her and the administrators, but the court recognized that those could be obtained from the party college and administrators.[27] Thus, the court concluded that balancing the potential relevance against the hardship of a "boundless, in-person deposition" did not outweigh the clear hardship on the witness, and the court quashed the deposition in its entirety.[28]

"The moving party opposing discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Andra Group, LP v. JDA Software Group, Inc.*, 312 F.R.D. 444, 449 (N.D. Tex. 2015).  Roe has done so here and set forth evidence establishing the burden of her compliance with the Subpoena would be unreasonable and oppressive.  Just as Judge Robart reasoned, "[i]t takes no leap of logic to reason that a live deposition would impose emotional and psychological trauma upon Ms. Jones."[29] Therefore, the Court should find Roe has established that compliance with the Subpoena for deposition testimony would cause her undue burden, and that burden outweighs the benefit of Doe's discovery of potentially relevant information.

---

[25] *Id.*

[26] *Id.* at APP021 – 022.

[27] *Id.* at APP022.

[28] *Id.* at APP023.

[29] *Id.* at APP021.

C.      **The Subpoena for production of documents should be quashed.**

The Subpoena seeks to compel Roe to produce the following categories of documents[30]

(paraphrased below) for a two-year time period[31] (since August 1, 2020):

1.      Each communication between Roe and Doe, including (without limitation), all
        screenshots and archives of Snapchats and text messages.

2.      Each communication sent or received by Roe that mentions Doe, the Allegations,[32]
        and/or the Proceedings.[33] The scope of this request includes social media posts by
        Roe, and/or communications between Roe and TCU, Roe's family, four named
        individuals and/or any law enforcement personnel (including police reports or
        complaints filed).

3.      Each communication sent or received by any of Roe's lawyers, to or from a person
        other than Roe that mentions Doe, the Allegations, and/or any of the Proceedings.

4.      Each TikTok video posted by Roe that refers (directly or indirectly) to Doe. The
        scope of this request includes deleted TikTok videos.

5.      Communications between Roe and any person regarding a named individual.

6.      Each document evidencing questions, notes or scripts prepared for or by a named
        individual to testify at the Panel Hearing.

7.      Each document evidencing Snapchat conversations or photos between Roe and
        Doe.

8.      Each photograph and/or video that depicts Doe or records Doe's voice.

9.      Each audio and video recording made of a conversation during which the
        Allegations, Doe or the Proceedings are mentioned.

---

[30]   APP005 – 007.

[31]   This time period alone is suspect. The TCU hearing occurred in January 2022, yet Doe seeks documents and
communications for at least 7 months afterwards.

[32]   As defined in the Subpoena, "The term 'Allegations' means and refers to the allegations of sexual misconduct
made by [Jane Roe] against [John Doe], including those asserted during the January 28 and 29, 2022 Title IX Panel
Hearing (the 'Panel Hearing') and those that are the subject of the February 2, 2022 Panel Hearing Deliberative
Report." APP005.

[33]   As defined in the Subpoena, "The term 'Proceeding' means and refers to TCU's Title IX proceeding involving
[John Doe], beginning with the initial report [Jane Roe] filed with TCU on September 15, 2021 through the January
28 and 29, 2022 Title IX Panel Hearing and the appeal of same. The Proceeding includes the reporting, complaint,
investigation, hearing and appeal process."  APP006.

10. Each communication between TCU and Roe or Roe's family or Roe's lawyers that reference any text message between a named individual and Roe.

11. All no-contact orders signed by Roe with respect to Doe.

12. Journal entries, diaries or any form of notes made by Roe about Doe, the Allegations, and/or the Proceedings.

The Court should also quash the Subpoena for document production because Roe establishes compliance would cause her undue burden and any relevance does not outweigh that undue burden. FED. R. CIV. P. 45(d)(3)(A)(iv).

**1.    Lack of relevance is already established, but assuming *arguendo* the information would be relevant, its benefit would be marginal.**

As explained above, the deposition testimony sought from the Subpoena is not relevant given Doe's claims or TCU's defenses. Likewise, the Court's limited review of the record before the disciplinary tribunal renders any document production by Roe as duplicative, burdensome and disproportionate to the needs of the case.

To the extent the requests seek information in TCU's possession—which would be the appropriate limit of relevance—Doe can seek them directly from TCU. "Courts have noted on numerous occasions that, 'if documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them' pursuant to Rule 45." *Thomas v. IEM, Inc.*, No. 06-886-B-M2, 2008 WL 695230, at *2 (M.D. La. Mar. 12, 2008) (*quoting Burns* v. *Bank of Am.,* No. 03 Civ. 1685(RMB)(JCF), 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007)); *see also Ntakirutimana v. CHS/Cmty. Health Sys., Inc.,* No. L-09-114, 2011 WL 13135608, at *2 (S.D. Tex. June 28, 2011) ("Rule 45 subpoenas are not meant to circumvent the regular discovery process under Rules 26 and 34.") (*citing Burns*, 2007 WL 1589437, at *14)). The same logic applies to communications between Doe and Roe, which should either be in TCU's possession (if submitted to the disciplinary tribunal) or in Doe's possession.

As for the requests that plainly smack of a fishing expedition, none of that information, even if related to some aspect of the investigation or the disciplinary proceeding, has any bearing on the causes of action Doe's claims present, which is whether TCU's actions violated Title IX and TCU's sexual harassment policy and TCU's student code of conduct and bill of rights. To the extent the Court concludes the information would be relevant, it would at best be duplicative and thus weighs in favor of quashing these requests for documents.  Roe will address each request in turn.

a.   **Request #1: Each communication between Roe and Doe, including (without limitation), all screenshots and archives of Snapchats and text messages.**

Roe objects to this request because Doe necessarily has communications between he and Roe.  To that point, Doe acknowledges reviewing "over 1,200 pages of text messages" between he and Roe that he "spent several weeks . . . gathering."[34] Imposing the burden on Roe to search for these, particularly considering the volume of material already in the record, is improper. Because Doe cannot establish a need for Roe to produce documents already in his possession, this request should be quashed. FED. R. CIV. P. 45(d); *Wiwa*, 392 F.3d at 818.

b.   **Request #2: Each communication sent or received by Roe that mentions Doe, the Allegations, and/or the Proceedings. The scope of this request includes social media posts by Roe, and/or communications between Roe and TCU, Roe's family, four named individuals and/or any law enforcement personnel (including police reports or complaints filed).**

Roe objects to this request because it is overbroad and would cause her undue burden. Assuming Roe had approximately 25 communications per day across all platforms, that would equate to 18,250 communications to review.[35]  Assuming it would require 5 minutes of attorney

---

[34]   ECF No. 43, ¶ 69, n. 4; ¶ 94, n. 7.

[35]   APP013 - 014.

time on average to review each communication, that would result in 1520 hours of attorney time to review the communications.[36]   Assuming a reviewing attorney billed out at $250/hour, that would equate to $380,208 in attorney time to review the requested documents and communications.[37]  Thus, having her search through these communications would cause her undue burden. FED. R. CIV. P. 45(d); *Wiwa*, 392 F.3d at 818. To the extent this request seeks communications between Roe and TCU, they can be requested from TCU (and likely already have been).  Doe likewise can request police reports or complaints directly from those authorities. The remaining portions of this request are plainly a fishing expedition. This request should be quashed.

      c.      **Request #3: Each communication sent or received by any of Roe's lawyers, to or from a person other than Roe that mentions Doe, the Allegations, and/or any of the Proceedings.**

Roe objects to this request because it is a fishing expedition and impermissibly overbroad. This would necessarily include communications between Roe's lawyers and Doe's lawyers, which would already be in the possession of Doe's lawyers. To the extent communications between Roe's lawyers and TCU are relevant, Doe can request them from TCU. Therefore, this request should be quashed because it would be unduly burdensome for Roe to comply. FED. R. CIV. P. 45(d); *Wiwa*, 392 F.3d at 818.

      d.      **Request #4: Each TikTok video posted by Roe that refers (directly or indirectly) to Doe. The scope of this request includes deleted TikTok videos.**

Roe objects to this request because it is not relevant. If TikTok videos were part of the record before the disciplinary tribunal, Doe can request those from TCU. Otherwise, there is no relevance to any TikTok video Roe may have posted. Moreover, this request is facially overbroad

---

[36]   *Id.*

[37]   *Id.*

and a fishing expedition. It is also vague and lacks particularity as Roe would have no way of knowing what videos "indirectly" referred to Doe. Therefore, this request should be quashed because it is not relevant, requests documents available to TCU, and compliance would cause Roe undue burden. FED. R. CIV. P. 45(d); *Wiwa*, 392 F.3d at 818.

### e.   Request #5: Communications between Roe and any person regarding a named individual.

Roe objects to this request because it lacks relevance, is overbroad, and lacks sufficient particularity.  FED. R. CIV. P. 26(b), 45(d); *Wiwa*, 392 F.3d at 818. There is no indication from Doe's pleadings that establish any relevance concerning communications between Roe regarding this third party. To the extent this request seeks communications between Roe and Doe regarding the named individual, those communications are already available to Doe and in his possession. Finally, Roe has set forth evidence establishing that compliance would cause her an undue burden given the expense of time and money to search her electronic communications.[38] Therefore, this request should be quashed.

### f.   Request #6: Each document evidencing questions, notes or scripts prepared for or by a named individual to testify at the Panel Hearing.

Roe objects to this request because it lacks relevance, is overbroad, and lacks sufficient particularity. FED. R. CIV. P. 26(b), 45(d); *Wiwa*, 392 F.3d at 818. There is no indication from Doe's pleadings that establish any relevance concerning questions, notes, or scripts prepared for or by this undefined third party for use at the Panel Hearing. Doe also cannot establish that these materials, even if relevant, are in Roe's possession. To the extent these materials are relevant, they could be requested from the individual. This request should be quashed.

---

[38] *Id.*

g.    **Request #7: Each document evidencing Snapchat conversations or photos between Roe and Doe.**

Roe objects to this request because it lacks relevance and would cause Roe undue burden. Roe has set forth evidence establishing that compliance would cause her an undue burden given the expense of time and money to search her electronic communications.[39] Doe notes in his live complaint that he "engaged a professional to attempt to retrieve all of the Snapchats between Doe and Roe but the professional was unable to successfully retrieve the Snapchats without Roe's cooperation."[40]  But this assertion is not evidence, and it is not facially apparent why Roe should be tasked with providing conversations and photos between herself and Doe. Moreover, this request is overbroad. It requests conversations and photos long-after the Panel Hearing occurred, and regardless of whether these conversations and photos have any connection to the underlying dispute. Therefore, this request should be quashed.

h.    **Request #8: Each photograph and/or video that depicts Doe or records Doe's voice.**

Roe objects to this request because it is facially overbroad as there is no limit as to what photograph or video that Doe seeks to discover. FED. R. CIV. P. 45(d); *Wiwa*, 392 F.3d at 818. Moreover, Doe cannot establish the relevance of any photograph and/or video that depicts Doe or records his voice to the claims he asserts against Defendants in this case. FED. R. CIV. P. 26(b). Additionally, Roe has established the undue burden that she would be subjected to if she had to search all of her electronic communications for any related, attached, and/or forwarded photograph and/or video.[41] Therefore, this request should be quashed.

---

[39]  *Id.*

[40]  ECF No. 43, ¶ 69, n. 5.

[41]  APP013 – 014.

i. **Request #9: Each audio and video recording made of a conversation during which the Allegations, Doe or the Proceedings are mentioned.**

Roe objects to this request because it is a fishing expedition with no relevance to Doe's underlying claims. Doe cannot establish that any audio or video recording made by anyone (without limit) would be in Roe's possession. To the extent Doe seeks audio or video recordings made by a specific individual, he should request such audio or video recordings from the individual directly. Finally, Roe has established the undue burden that she would be subjected to if she had to search for each audio and video recording mentioning the Allegations, Doe, or the Proceedings. Therefore, this request should be quashed.

j. **Request #10: Each communication between TCU and Roe or Roe's family or Roe's lawyers that reference any text message between a named individual and Roe.**

Roe objects to this request because it is a fishing expedition and impermissibly overbroad. This would necessarily include protected communications from Roe's lawyers. To the extent communications between Roe's lawyers and TCU exist and are relevant, they can be requested from TCU and likely have been. Finally, Doe cannot establish the relevance of any communications concerning/referencing a named individual who is a non-party, not referenced in Doe's First Amended Complaint, and not defined in the Subpoena. FED. R. CIV. P. 26(b). Therefore, this request should be quashed because it would be unduly burdensome for Roe to comply. FED. R. CIV. P. 45(d); *Wiwa*, 392 F.3d at 818.

k. **Request #11: All no-contact orders signed by Roe with respect to Doe.**

Any "no-contact orders" would have been prepared and issued by TCU, and Doe can request such information from TCU (and likely has). Therefore, this request should be quashed.

l.    **Request #12: Journal entries, diaries or any form of notes made by Roe about Doe, the Allegations, and/or the Proceedings.**

Roe objects to this request because it seeks to discover her private diary and journal entries. This request invades Roe's privacy by seeking her own diary and journal entries, intended to be a record of her private thoughts. *HDSherer LLC v. Nat. Molecular Testing Corp.*, 292 F.R.D. 305, 307 (D.S.C. 2013) (reciting Federal Rules of Civil Procedure protect non-party from compliance with subpoena that would cause, inter alia, embarrassment and annoyance). Unless this material was before the disciplinary panel, it is irrelevant. Therefore, this request should be quashed because it would be oppressive and cause Roe undue burden.

2.    **Burden Imposed**

As noted above, Roe's counsel has submitted a declaration demonstrating the burden of Roe to comply with the Subpoena for documents. For collection of two devices and one e-mail account, a vendor has estimated approximately $3,110, exclusive of project manager time (billed at $195/hour) and monthly hosting fees.  The vendor estimated the collection from one mobile phone and one email account to constitute an estimated 110 gigabytes of data.[42]

The Subpoena requests text messages, Snapchat communications, photographs, video recordings, and TikTok videos for a period of two years.[43]  According to https://www.localproject.net/docs/texting-stats/ (last visited August 1, 2022), the average adult between 18 – 24 years old sends 128 texts every day.[44]  Doe indicated in his live complaint that he had reviewed over 1,200 pages of text messages before the TCU hearing in January 2022.  It is highly probable that Roe has well in excess of 50,000 text messages (or in excess of 90,000 if the

---

[42]  *Id.*

[43]  APP007.

[44]  APP013

aforementioned statistics are correct).  This is not inclusive of emails, Snapchat communications, photographs, video recordings, and TikTok videos or other social media platform material that is requested in the Subpoena.[45]

Assuming Roe had 25 communications per day across all platforms, that would equate to 18,250 communications to review.[46]  Assuming it would require 5 minutes of attorney time on average to review each communication, that would result in 1520 hours of attorney time to review the communications.[47]  Assuming a reviewing attorney billed out at $250/hour, that would equate to $380,208 in attorney time to review the requested documents and communications.[48]  The Subpoena for documents should be quashed because it imposes a significant financial burden on Roe if she were forced to fully comply with the requests.

In sum, the majority of the applicable *Wiwa* considerations establish that the Subpoena imposes an undue burden and should be quashed. As shown above, Doe has failed to demonstrate a need for the requested documents and that they are unavailable from less burdensome sources (including from Doe himself). Further, the Requests seek irrelevant information and are facially overbroad. In seeking documents from a number of non-parties not named in this lawsuit—and, indeed, not claimed to have played any role in this lawsuit—the Subpoena seeks a large amount of information that can have no possible relevance to this action. Finally, Roe has established that compliance with the subpoena would be oppressive and unreasonable and cause her undue burden. The Subpoena for documents should be quashed in its entirety.

---

[45]  *Id.*

[46]  APP014.

[47]  *Id.*

[48]  *Id.*

**D.      The Court should order cost-shifting if Roe is required to produce documents.**

"In the subpoena context, cost-shifting should occur when an order requiring compliance subjects a non-party to 'significant expense.'" *DeGeer v. Gillis*, 755 F. Supp. 2d 909, 928 (N.D. Ill. 2010) (citing and quoting Rule 45(c)(2) for the proposition that "an order compelling production 'must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.'"). "In other words, Rule 45 ___***requires***___ a district court to shift a nonparty's cost of complying with a subpoena if those costs are significant." *Leonard v. Martin*, 38 F.4th 481, 490 n.8 (5th Cir. 2022) (emphasis added). Commentators recognize Rule 45 contemplates such cost shifting on the common-sense premise that "[t]hird parties should not be required to subsidize litigation to which they have no stake in the outcome." *Id.* at 918 (quoting SEDONA COMMENTARY, 9 SEDCJ *198–99 (2008)).   The Sedona Commentary specifically outlines best practices regarding the acquisition of information from non-parties, including the following factors to be considered in connection with cost-shifting discussions: "(a) the scope of the request; (b) the invasiveness of the request; (c) the need to separate privileged material; (d) the non-party's interest in the litigation; (e) whether the party seeking production of documents ultimately prevails; (f) the relative resources of the party and the nonparty; (g) the reasonableness of the costs sought; and (h) the public importance of the litigation." *Id.* at 928–29 (quoting SEDCJ at *202).

As established above, compliance with the Subpoena for documents would present Roe with a significant expense.[49] *Legal Voice v. Storman's, Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013) ("[W]e have no trouble concluding that $20,000 is 'significant' "); *Linder Calero-Protocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001) (suggesting that even $9,000 may be sufficient

---

[49]   APP013 - 014.

significant to justify shifting costs under Rule 45(d)(2)(B)(ii)).  The 12 categories of requested documents are broad and invasive, and many are available from other sources, including parties to this case. Accordingly, should the Court order Roe comply with the Subpoena, it should likewise order costs of compliance to be shifted to Doe.

**E.      Alternatively, the Court should impose strict limitations on any testimony.**

As stated above, the Subpoena should be quashed in its entirety. If, however, the Court is inclined to allow Doe to obtain discovery from Roe, it should consider a variety of limitations and exercise its "broad latitude" in a protective order. *Pegatron Tech. Serv., Inc.*, 377 F. Supp. 3d at 1202.

In *Pegatron*, the district court was "called upon to balance the legitimate discovery needs of a defendant in a civil lawsuit…with the legitimate privacy needs of a nonparty witness…who seeks to avoid or minimize embarrassment, oppression, and undue burden arising from a deposition subpoena." *Id.* at 1199. *Pegatron* was a dispute with an insurance company over coverage for the proposed witness's claims that arose out the disclosure of private and sensitive information unlawfully obtained from her electronic device. *Id.* at 1199 – 1201. The court, in lieu of ordering the deposition, instead permitted the party seeking the testimony to submit written interrogatories that had to be answered within 14 days and encouraged the parties to agree that the answers would be treated as stipulated testimony. *Id.* at 1204. If the interrogatory process was not satisfactory, the court left open the possibility for a renewed request for her deposition, with conditions that "might include having the deposition taken in the Court's conference room with the Court supervising the deposition." *Id.*

In lieu of a deposition, Roe submits that the same tools of discovery could be utilized:  Roe could provide testimony through interrogatories as stipulated testimony, as in *Pegatron*. Alternatively, Doe could submit to a deposition on written questions that is strictly limited to Roe's

involvement in the disciplinary proceedings and any related engagement with TCU personnel.  If that process is not satisfactory, Doe could renew his request for a deposition at a later date.

In another case with similar concerns, although concerning *the deposition of the plaintiff* (versus a non-party, as Roe is here), the court nonetheless imposed the following conditions:

> (1) the deposition shall be taken at a neutral site, the jury deliberation room of this court; (2) the deposition shall be scheduled in two-hour segments; (3) the deposition shall be taken in the presence of a magistrate judge who may use discretion to determine, among other things: (a) whether the deposition should be adjourned at any time during the two-hour period, (b) whether the questions are abusive or oppressive; and (c) whether all counsel are conducting themselves pursuant to Rule 2:4:7, "in a temperate, dignified, and responsible manner"; and (4) if further sessions are needed to complete the deposition, these sessions must also be scheduled in two-hour segments as needed by agreement of counsel, after conferring with the magistrate judge.

*Schorr v. Briarwood Estates, Ltd. P'ship*, 178 F.R.D. 488, 492 (N.D. Ohio 1998).

If this Court orders that the deposition proceed, Roe submits, at a minimum, the following conditions should be imposed:

> (1) the deposition should occur virtually or at a neutral site (preferably the courthouse with the Magistrate Judge present);

> (2) the deposition should be limited to 2 hours in total;

> (3) the subject matter should be limited to the record that was before the TCU disciplinary panel;

> (4) Doe should not be present, either virtually or in person;

> (5) no more than 2 attorneys for Doe should be present;

> (6) Roe should be entitled to have 1 additional person present aside from counsel; and

> (7) the deposition should not be videotaped or recorded other than by stenographic means.

## IV. PRAYER

WHEREFORE, non-party Jane Roe respectfully requests that, to the extent necessary, she be relieved of any obligation to comply with the Subpoena until such time as the Court has considered this Motion, that the Court grant this Motion in its entirety and quash the Subpoena; and alternatively, for a protective order limiting the scope, duration, and method of deposition, including individuals allowed to be present, that the deposition not be videotaped or recorded other than by stenographic means, and that any deposition transcript and exhibits, or documents produced, be required to be filed under seal, including any response to this motion that identifies Roe by name; and further in the alternative for the Court to find compliance would be a significant expense to Roe, so the cost of compliance to be shifted to Doe; and for all other relief at law and in equity to which Roe is justly entitled.

Respectfully submitted,

**WICK PHILLIPS GOULD & MARTIN LLP**

*/s/ David J. Drez III*
David J. Drez III
Texas Bar No. 24007127
*david.drez@wickphillips.com*
Colin P. Benton
Texas Bar No. 24095523
*colin.benton@wickphillips.com*
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone: 817.332.7788
Facsimile: 817.332.7789

**ATTORNEYS FOR NON-PARTY JANE ROE**

## CERTIFICATE OF CONFERENCE

Counsel for Roe and counsel for Doe have conferred in good faith regarding the issues contained in this Motion on August 1, 2022, in an effort to resolve the dispute without Court action. No agreement was reached, despite reasonable efforts.  Therefore, this matter is submitted to the Court for consideration.

*/s/ David J. Drez III*
David J. Drez III

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will electronically mail notification of such filing to all counsel of record who have appeared in this case.

*/s/ David J. Drez III*
David J. Drez III