UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JOHN DOE, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:22-cv-00297-O |
| § | |
| TEXAS CHRISTIAN UNIVERSITY, § | |
| § | |
| Defendant. § | |

### ORDER

Before the Court is (1) Non-Party Jane Roe's Motion to Quash, and Alternatively, for Protective Order (Mot. to Quash, ECF No. 66), filed August 3, 2022, (2) Texas Christian University's Response and Brief to Non-Party Jane Roe's Motion to Quash (Def.'s Resp., ECF No. 78), (3) John Doe's Response to Jane Roe's Motion to Quash (Pl.'s Resp., ECF No. 79), and (4) Non-Party Jane Roe's Reply in Support of Motion to Quash (Reply, ECF No. 81). On September 14, 2022, the Court issued an interim Order regarding Roe's motion (Interim Order, ECF No. 84), relieving Roe of her obligation to comply with the subpoena until the Court could further consider the motion on the merits.

I.   BACKGROUND

On August 3, 2022, non-party to this litigation, Jane Roe, filed a Motion to Quash Plaintiff John Doe's Subpoena to Testify at a Deposition in a Civil Action, issued on July 19, 2022 (Subpoena, ECF No. 67 at 2–7). Roe's earlier reports of sexual assault by Plaintiff John Doe prompted Defendant TCU's Title IX disciplinary proceedings against him and, in turn, gave rise to this suit. *See* Compl., ECF No. 1. Doe's subpoena commands Roe to appear for deposition and

to produce an array of documents and electronically stored information[1] (Subpoena at 7).

The parties disagree about (1) the importance of Roe's testimony to Doe's claims and (2) the burden a deposition might impose on her. They have the same fundamental disagreements with respect to Roe's production of requested documents. Unless Plaintiff can show particular need for the information sought, TCU supports Roe's motion to quash because TCU has no reason to doubt

---

[1] The subpoena seeks information compiled from a two-year period including:

1. Each communication between Roe and Doe, including (without limitation), all screenshots and archives of Snapchats and text messages.

2. Each communication sent or received by Roe that mentions Doe, the Allegations, and/or the Proceedings. The scope of this request includes social media posts by Roe, and/or communications between Roe and TCU, Roe's family, four named individuals and/or any law enforcement personnel (including police reports or complaints filed).

3. Each communication sent or received by any of Roe's lawyers, to or from a person other than Roe that mentions Doe, the Allegations, and/or any of the Proceedings.

4. Each TikTok video posted by Roe that refers (directly or indirectly) to Doe. The scope of this request includes deleted TikTok videos.

5. Communications between Roe and any person regarding a named individual.

6. Each document evidencing questions, notes or scripts prepared for or by a named individual to testify at the Panel Hearing.

7. Each document evidencing Snapchat conversations or photos between Roe and Doe.

8. Each photograph and/or video that depicts Doe or records Doe's voice.

9. Each audio and video recording made of a conversation during which the Allegations, Doe or the Proceedings are mentioned.

10. Each communication between TCU and Roe or Roe's family or Roe's lawyers that reference any text message between a named individual and Roe.

11. All no-contact orders signed by Roe with respect to Doe.

12. Journal entries, diaries or any form of notes made by Roe about Doe, the Allegations, and/or the Proceedings.

Roe's claim that a deposition would impose an undue burden (Def.'s Resp. at 2).[2] TCU did not express a position on the document production request.

### A. Deposition

Roe argues that requiring her to appear for an in-person deposition would produce only irrelevant, duplicative testimony (Mot. to Quash at 7–9), given that she has already testified exhaustively on the record produced in the Title IX disciplinary proceedings. *Id.* at 8. She argues that any information she possesses has no bearing on any of Doe's claims—erroneous outcome, selective enforcement, or gender bias (*id.* at 7–9; Reply at 3–5)—and that the Court's consideration should be confined to the disciplinary record (Mot. to Quash at 9; Reply at 2). Second, Roe claims that compelling her testimony would impose an undue burden in the form of "significant emotional harm and trauma" by forcing her to relive the experiences giving rise to her sexual assault allegations. *Id.* at 9–11.

Doe argues that it is essential to depose Roe—who is designated as a key witness by both parties to the suit—because she has personal knowledge and information "relevant to the fairness and thoroughness of the process from its inception to its end," including information about the myriad interviews, meetings, and investigation that TCU conducted prior to and during the proceedings to which she was a party or witness; and information shedding light on her own credibility, including her motives for and manner of reporting (Pl.'s Resp. at 2–5). Doe also claims that Roe's evidence that compelling her testimony would impose an undue burden is insufficient and that she must therefore be deposed. *Id.* at 9–12. Should the Court uphold the subpoena, Roe requests strict limitations on deposition (Mot. to Quash at 19–22), which Plaintiff partially accepts (Pl.'s Resp. at 15).

---

[2] Notably, TCU does not waive its right to have Roe testify at trial (Def.'s Resp. at 2)—a requirement that might exact a similar toll as the deposition TCU would quash.

### B. Production of Documents

Roe argues that each document request is either irrelevant, duplicative, or—if relevant—is either obtainable from another source (TCU) or that any usefulness is outweighed by the burden production imposes (Mot. to Quash at 12–19). If the Court disagrees, Roe requests cost-shifting in light of her projections that compliance costs would exceed $380,000. *Id.* at 19–22. Defendant counters that Roe has offered only "boilerplate" objections lacking adequate evidentiary support and claims the documents are *not* available from TCU because "almost all" are FERPA-protected (Pl.'s Resp. at 12–15).

## II.  LEGAL STANDARDS

Rule 26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, . . . the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). And as the rule clearly states: "[i]nformation within this scope of discovery *need not be admissible in evidence* to be discoverable." *Id.* (emphasis added).

Even if the discovery request meets this standard, however, Rule 45 dictates that a court "*must* quash or modify" a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(3)(A)(iv) (emphasis added). The party opposing the subpoena has the burden of proving that compliance would be "unreasonable and oppressive," a fact-specific determination for which courts consider several items: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the

request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (cleaned up) (applying the rule to subpoenas duces tecum). The party opposing the subpoena may use affidavits or *other evidence* to demonstrate the unreasonable or oppressive nature of the burden imposed. *HCAPS Conroe Affiliation Inc. v. Angelica Textile Servs. Inc.*, No. 3:15-MC-60-N-BN, 2015 WL 3867923, at *2 (N.D. Tex. June 22, 2015) (emphasis added).

When the subpoena applies to a nonparty, as is the case here, courts "must be sensitive to the nonparty's compliance costs." *Leonard v. Martin*, 38 F.4th 481, 489 (5th Cir. 2022). And when a court orders a nonparty to comply with a subpoena despite objection, the court must shift costs to protect the nonparty, provided those costs are significant. *Id.* at 489, 490 n.8 (finding a well-supported estimate of $60,000 in compliance costs was of disproportionate value compared to any information compliance would produce regarding the subpoenaed party's credibility).

As a general matter, "modification of a subpoena is preferable to quashing it outright." *Wiwa*, 392 F.3d at 818. This is in keeping with the general rule that discovery rules are to be broadly and liberally construed. *Aderholt v. Bureau of Land Mgmt.*, No. 7:15-CV-00162, 2016 WL 11782267, at *2 (N.D. Tex. Oct. 30, 2016). And when imposing limitations on discovery, courts have broad discretion to craft appropriate protective orders. *See* Fed. R. Civ. P. 26(c)(1); *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985).

### III. ANALYSIS

The Court has considered the parties' arguments,[3] including their fundamental

---

[3] Having set out and applied the legal standards above, which dictate the outcome of this motion, the Court need not address the parties' other arguments such as: the relative persuasive weight of certain authorities; the dispute over Fed. R. Evid. 702's applicability to Ms. Garrett's opinion regarding the burden a deposition would impose on Roe; or the sufficiency of Roe's evidence in support of her costs of compliance estimate, among others.

disagreement about whether Doe is entitled to discover evidence beyond just that "on the record before the disciplinary tribunal." *See* Mot. to Quash at 9; Pl.'s Resp. at 6; Reply at 2. Based on a straightforward application of Rule 26, the Court agrees that Doe's discovery is not so limited and finds that the information Doe seeks—via deposition and document requests—is relevant and, with some modification, can be sought without imposing an undue burden on Roe.

### a. Appearance for In-Person Deposition

The Court finds that Doe's need to discover information about interviews, meetings with TCU officials, the investigation, the panel hearing, and the appeal *in which she participated* directly or as a witness are relevant to Doe's claims as it may shed light on both the accuracy of the outcome of the disciplinary proceeding (erroneous outcome) and TCU's potentially disparate treatment of Roe (a female) and Doe (a male) throughout the investigation and proceedings (gender bias; selective enforcement).[4] Information reflecting on Roe's credibility—including potential motives to lie or to report, contradictory statements, and conversations with others throughout the process—is similarly relevant to Doe's claim of erroneous outcome.

Having considered her evidence, the Court recognizes that Roe's deposition will necessarily impose some hardship on her given the sensitive nature of the case. However, with the following limitations, the Court finds that allowing the deposition would not impose an *undue* burden and that it is justified in light of Doe's need to obtain the information. In keeping with its broad discretion to craft appropriate protective remedies, the Court **ORDERS** that any deposition of Roe will be subject to the following conditions:

---

[4] All Doe must allege are facts that, if true, raise a plausible inference of sex discrimination. *Overdam v. Texas A&M Univ.*, 43 F.4th 522, 526–28 (5th Cir. 2022) (applying the Title IX pleading standard, consistent with *Purdue* and *Yusuf* (erroneous outcome, selective enforcement, etc.), requiring the plaintiff to allege facts that, "if true, raise a plausible inference that [the university] or its administrators discriminated against [him] on the basis of sex).

1. The **single** deposition shall occur at a neutral site (as agreed by the parties);[5]

2. The deposition shall be limited to **4 hours** total;[6]

3. No more than **two attorneys** may be present for either party (as agreed by the parties);[7]

4. Roe shall be entitled to have **one person** present aside from counsel;[8]

5. Doe may be present **in-person** but may not communicate with anyone other than his counsel;

6. Doe **may not** seek information from Roe regarding her prior sexual history with anyone other than Doe and is **ORDERED** to refrain from seeking information for the purpose of embarrassment, harassment, or other improper means.

   **b. Production of Documents**

Here the Court applies its prior reasoning as to relevance—namely, that much of the information Doe seeks may shed light on both the accuracy of the outcome of the disciplinary proceeding (erroneous outcome) and TCU's potentially disparate treatment of Roe (a female) and Doe (a male) throughout the investigation and proceedings (gender bias; selective enforcement), and is therefore relevant. And Roe has not offered anything but conclusory objections in protest. Likewise, Roe is in exclusive possession of much of the information sought, most of which is FERPA-protected. Nor has Roe sufficiently demonstrated that the burden of producing such information outweighs its likely benefit. Thus, the Court **ORDERS** that Doe may compel disclosure of the requested information **except for** police reports or complaints filed that Doe may personally request and obtain.

---

[5] Pl.'s Resp. at 15.
[6] Mot. to Quash at 23.
[7] Pl.'s Resp. at 15.
[8] Mot. to Quash at 23.

    **c. Cost Shifting**

Roe estimates that the costs of compliance with the subpoena will exceed $380,000 (Mot. to Quash at 19–22). In the event Roe's costs do become "significant"—a standard that does not necessitate meeting even a portion of that total estimate, *see Leonard*, 38 F.4th at 489, 490 n.8—the Court will shift costs as necessary. Doe is free to amend his document production requests accordingly.

**IV.   CONCLUSION**

Having considered the parties' briefing materials, for the foregoing reasons, and in light of the modifications outlined above, the Court **ORDERS** that Non-Party Jane Roe's Motion to Quash be **DENIED in part** and **GRANTED in part**.

**SO ORDERED** on this **21st day** of **September, 2022**.

*[Signature]*
Reed O'Connor
UNITED STATES DISTRICT JUDGE