IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>    *Plaintiff*,<br><br>v.<br><br>TEXAS CHRISTIAN UNIVERSITY,<br><br>    *Defendant*. | Civil Action No. 4:22-CV-00297-O |

**PLAINTIFF JOHN DOE'S MOTION TO HOLD
NON-PARTY JANE ROE IN CONTEMPT OF COURT,
MOTION TO COMPEL DEPOSITION OF
NON-PARTY JANE ROE AND
BRIEF IN SUPPORT THEREOF**

**TO THE HONORABLE U.S. DISTRICT JUDGE REED O'CONNOR:**

Plaintiff John Doe presents this motion to the Court because Non-Party Jane Roe was uncooperative during her November 3, 2022, deposition and, ultimately, walked out of the deposition prior to its completion. Doe presents this motion as an emergency motion because of the impending trial setting (January 9, 2023) and pre-trial deadlines.[1]

### I. FACTUAL AND PROCEDURAL BACKGROUND

This Court is well familiar with the respective claims and defenses of the parties in this case and Roe's central role. *See generally, Doe v. Tex. Christian Univ.*, No. 4:22-CV-00297-O, 2022 WL 1573074 (N.D. Tex. Apr. 29, 2022). In short, "Roe filed a complaint with TCU accusing Doe of sexually assaulting her on two separate occasions." *Id.*, *1. Roe alleged that Doe digitally

---

[1] Doe has filed his emergency motions as soon as he could following the receipt of Roe's deposition transcript, which was received on Monday, November 7, 2022.

Plaintiff John Doe's Emergency Motion to Hold
Non-Party Jane Roe in Contempt of Court – Page 1

penetrated her vagina while in her dorm room at TCU's Colby Hall (the "alleged Colby Hall incident"). *Id.* Next, Roe alleged that Doe sexually assaulted her while in Austin, Texas following a TCU/University of Texas football game (the "alleged Austin incident"). *Id.* TCU rejected Roe's alleged Austin incident but found Doe in violation of Title IX in connection with the alleged Colby Hall incident. *Id.*, *2–3.

The Court ordered the deposition of Jane Roe. *See* Order dated September 21, 2022 (ECF No. 96); Order dated October 27, 2022 (ECF No. 118). As the Court is aware, the foregoing orders grew out of Roe's attempts to avoid providing *any* sworn testimony whatsoever, including testimony about the allegations she made against John Doe that have resulted in this lawsuit. *See* Roe's Motion to Quash (ECF No. 66) and Motion for Reconsideration (ECF No. 103).

Roe's deposition commenced on November 3, 2022. *See* App. A, 1.[2] Roe engaged in misconduct, almost throughout her deposition, that has caused Doe to incur unnecessary expenses and attorney's fees. Almost immediately, Roe refused to answer questions concerning her allegations against Doe. Her reasoning was that she had previously provided unsworn testimony at TCU's Title IX hearing. For example, *early* in the deposition the following exchange took place:

> Q. Okay, And you state there were multiple occasions. How many occasions did you mean?
> A. Two.
> Q. Okay. And you state that the assaults took place in multiple occasions; is that correct?
> A. Yes.
> Q. And where were you referring to?
> A. I already said that during the hearing at TCU and my answer is the same.
> Q. What answer is that? What locations? What multiple locations?

---

[2] By separate motion, Plaintiff will request permission to file a copy of Roe's deposition transcript under seal.

Plaintiff John Doe's Emergency Motion to Hold
Non-Party Jane Roe in Contempt of Court – Page 2

> MR. DREZ: If she's relying on her - - what she said at the disciplinary panel, she's relying on that.
> Q. (BY MR. FILLMORE) I'm asking you the question. You need to answer the question that I'm asking you.
> A. I already have - -
> Q. What were the locations?
> A. - - answered the question.
> Q. What were the locations?
> A. My dorm room at Colby Hall and a Villas apartment in Austin.

App. A, 4 (Dep. 14:21–15:14). Not long thereafter, the following exchange took place about the alleged Austin Incident:

> Q. What happened in Austin?
> A. I answered that during my trial with TCU when I - - what I said is what happened.
> Q. Okay. I'm asking you to tell me.
> A. And I'm saying no.
> MR. DREZ: She's not - - she is - -
> Q. (BY MR. FILLMORE) You're refusing - -
> MR. DREZ: - - relying on what before - -
> Q. (BY MR. FILLMORE) You're refusing to answer my questions?
> A. You can watch the video. What I said is what happened.
> Q. I'm ask- - - the court has ordered you to be here to answer my questions.
> MR. FILLMORE: You-all made - - this is abuse of the process. You made that argument. You made this argument and it was rejected by the court.
> MR. DREZ: She is answering your questions. With regard to that specific question, she is telling you she's answered it before, so move on.
> THE WITNESS: I'm saying the answer - -
> MR. FILLMORE: No.
> THE WITNESS: The answer is the same.
> Q. (BY MR. FILLMORE) What happened in Austin?
> A. The answer is the same.

App. A, 12 (Dep. 46:25–47:24). Doe's counsel made another attempt to obtain Roe's testimony about her alleged Austin incident:

---

Plaintiff John Doe's Emergency Motion to Hold
Non-Party Jane Roe in Contempt of Court – Page 3

> Q. When did you answer that?
> A. During the trial, I explained what happened, who I saw when I went in, where we went. I've explained it.
> Q. And you're refusing to provide answers to my questions under oath. Is that true?
> MR. DREZ: Are you swearing your testimony before was true?
> THE WITNESS: Yes.
> MR. DREZ: Okay. So she's not - - she's refusing to talk about it here, but she's not disclaiming anything she's previously said.
> Q. (BY MR. FILLMORE) My question to you is, are you going to refuse to provide questions (sic) under oath about the Austin incident?
> MR. DREZ: Other than as she's previously testified before TCU, the answer is yes, she is refusing.
> Q. (BY MR. FILLMORE) Is that true?
> MR. DREZ: Ask your next question. She's answered it.

App. A, 15 (Dep. 59:20–60:22). Eventually, Roe did provide *general* information about the alleged Austin incident, but only after persistent questioning. *See* App. A, 16 (Dep. 61:7–64:11).

But Roe's planned lack of cooperation became resolute when she was questioned about the only alleged incident that TCU used to justify its Title IX conviction of Doe, the alleged Colby Hall incident:

> Q. Okay. So let's talk about Colby Hall, then. Let's go back and talk about Colby Hall.
> A. Okay.
> Q. All right.
> MR. DREZ: Can I just say something to her?
> MR. FILLMORE: Uh-huh
> MR. DREZ: If you get to a point where you aren't comfortable answering questions - -
> THE WITNESS: On - - my answer is going to be the same to every question, but you can ask them.
> Q. (BY MR. FILLMORE) Okay. Are you refusing to answer questions?
> A. Yes.
> Q. You're not going to answer any questions about Colby Hall?

| | |
|---|---|
| A. | No. Everything I said during the trial is the truth. Or not a trial. Sorry. A - - |
| Q. | You were at a Title IX hearing. |
| A. | Yes, hearing. |
| Q. | You were not under oath. |
| A. | Yes, but - - |
| Q. | You are today. |
| A. | - - you can take my responses to that as what I would be saying now because it is the truth. |
| Q. | Okay. All right. I need to ask you some questions. |
| A. | You can ask them, but I will not answer them. |
| Q. | All right. So I want to know - - you were wearing clothes, you were wearing panties when he comes over to your dorm room, correct? |
| A. | I refuse to answer that question. |
| Q. | And you go and you sit on your bed with [Doe] correct? |
| A. | I refuse to answer that question. |

MR. DREZ: Stop for just a second.

MR. FILLMORE: Uh-huh.

MR. DREZ: Okay? I'll let you make your record of the questions you were going to ask her.

MR. FILLMORE: Uh-huh.

MR. DREZ: But I'm going to ask that you don't ask them here because she's asked you not to. If you want to make a record - - if she said she's not going to answer them and she's sticking to her prior testimony, them I'm asking, for the purpose of understanding where the witness is coming from, you can make your record after. You can put all those questions on the record if you want to take something before the Judge. But if you keep asking them now, she's going to get real upset.

***

| | |
|---|---|
| Q. | Okay. So let's go to the night that you allege something happened. You claim that he forcefully penetrated your vagina with his - - one or more - - fingers - - |
| A. | I'm not answering those questions. |
| Q. | - - while you were sitting on the bed? |
| A. | I'm not answering those questions. |
| Q. | You claim that he forcefully penetrated your vagina with his - - one or more fingers while he - - you were bent over the desk in your room? |

| | |
|---|---|
| A. | I'm not answering those questions. |
| Q. | Are you telling the truth? Are these claims real? |
| A. | I think everyone in the room knows it's the truth. |
| Q. | And - - so why won't you answer the questions? If everybody knows it's true, why won't you answer the questions? |
| A. | I already have and I think you're trying to make me upset. I'm not going to let you bully me into feeling like I'm the person that did something wrong. |
| Q. | I want to know how did he get his fingers inside your vagina when you were wearing pants and panties? |
| A. | I'm not answering that question. |

***

| | |
|---|---|
| Q. | . . . The story you told at the hearing is y'all were sitting beside each other and he reached over and stuck his fingers in your vagina, right? That's what you told - - |
| A. | That is what happened, yes. |
| Q. | And you claim then that you got up and went over to the desk to escape him, right? |
| A. | That's true. |
| Q. | All right. So - - and he went - - he followed you over there and stuck his fingers in you again? |
| A. | Yes. |
| Q. | All right. From behind or the front? How? |
| A. | I'm not answer that question. |
| Q. | You can't recall or are you just refusing to answer. |
| A. | I'm just refusing to answer. |
| Q. | So you do know, you're just refusing to give that information? |
| A. | Because I think you're trying to make me upset. |
| Q. | Ma'am, I have to ask you these questions because - - |
| A. | You can ask them. |
| Q. | Okay. So I'm not trying to make you upset. I'm trying to get what the truth is. So if you can explain to the jury how he managed to bypass your pants and panties to get his fingers in our vagina, can you do that? |
| A. | You've asked me that question four times and I've had the same response. |
| Q. | And your response is what? |
| A. | I'm not answering that. |

App. A, 29–31 (Dep. 113:17–115:21; 119:3–120:2; 121:3–122:11).

Thereafter, Roe's deposition was recessed between 4:22 p.m. and 4:33 p.m. Roe's deposition recommenced at 4:33 p.m.—but without Roe. Roe's attorney then made the following announcement:

> THE VIDEOGRAPHER: On the record at 4:33.
> MR. FILLMORE: Okay. What do you want to say, Drez? I mean...
> MR. DREZ: The witness is no longer going to continue to answer questions.

App. A., 32 (Dep. 125:1–5). Roe refused to complete her deposition, and the deposition has been suspended pending further order from the Court.

## II. Argument and Authorities

Undoubtedly, Roe disagrees with the Court's orders requiring her deposition. However, her disagreement does not grant her the right to flout those orders. *See, e.g.*, *Rousseau v. 3 Eagles Aviation, Inc.*, 130 Fed. Appx. 687, 690 (5th Cir. 2005). Doe turns to the Court for help.

"A federal court has at its disposal an array of means to enforce its orders .... [I]ts powers include those furnished by federal rule and by inherent authority .... The details of these steps are committed to the discretion of the District Court[.]" *Degen v. United States,* 517 U.S. 820, 827, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996) (internal citations omitted). "It is axiomatic that the court possesses the inherent authority to enforce its own orders." *S.E.C. v. AmeriFirst Funding, Inc.*, No. 3:07-CV-1188-D, 2010 WL 997388, at *8 (N.D. Tex. Mar. 18, 2010) (internal quotation marks omitted).

Plaintiff respectfully submits the Court should hold that Roe is in contempt of court, and

the Court should use its power "furnished by federal rule and by inherent authority" to enforce its orders against Jane Roe. *Degen v. United States,* 517 U.S. at 827; Fed. R. Civ. P. 37(b)(1) ("If the court where discovery is taken orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as a contempt of court"); Fed. R. Civ. P. 45(g) ("The court . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it."). Roe should be ordered to complete her deposition, and the Court should add an extra hour to the Court's four-hour time limitation to make up for the time Roe wasted by her lack of cooperation.

In addition to the contempt finding, Doe requests the Court to enter an order that sets forth conditions that Roe must satisfy to purge herself of the contempt finding. If the Court finds Roe in contempt, Plaintiff respectfully suggests that she should, *at a minimum*, meet the following conditions to purge herself of contempt:

1. Jane Roe should appear a second time, within a week from the date of the Court's order, in order to conclude her deposition;

2. At her second in-person deposition, Jane Roe should provide non-evasive answers to questions concerning the alleged Austin incident and the alleged Colby Hall incident, as well as any of Doe's counsel's remaining deposition questions that are within the prior parameters set by the Court; and

3. Roe should reimburse Doe for the attorney's fees and expenses incurred in connection with the filing of these motions, including any resulting hearing(s).

Doe believes the foregoing conditions may persuade Roe to abandon her strategy of defeating the Court's prior orders through brazen misconduct.

---

Plaintiff John Doe's Emergency Motion to Hold
Non-Party Jane Roe in Contempt of Court – Page 8

### III. Prayer for Relief

Plaintiff John Doe requests the Court to grant these emergency motions and enter any order that the Court deems necessary to ensure that Non-Party Jane Roe complies with this Court's orders and the Federal Rules of Civil Procedure.

Respectfully submitted:

By: *H. Dustin Fillmore III*
H. Dustin Fillmore III
State Bar No. 06996010
The Fillmore Law Firm, L.L.P.
201 Main Street, Suite 700
Fort Worth, Texas 76102
817-332-2351 – Office
817-870-1859 – Fax
dusty@fillmorefirm.com

Bryan D. Bruner
State Bar No. 03252475
Lynne B. Frank
State Bar No. 24087215
Bruner & Bruner, P.C.
3700 W. 7th Street
Fort Worth, Texas 76107
817-332-6633 – Office
817-332-6619 – Fax
bbruner@brunerpc.com
Lfrank@brunerpc.com

Brian Roark
State Bar No. 00794536
Botsford & Roark
1307 West Avenue
Austin, Texas 78701
512-476-1900 – Office
512-479-8040
Admitted pro hac vice

*Counsel for Plaintiff John Doe*

## Certificate of Conference

The undersigned certifies that he conferred with David Drez (counsel for Jane Roe) concerning the merits of these motions on November 9, 2022. Mr. Drez confirmed that his client opposes the relief sought. Accordingly, the motions are presented to the Court for determination.

*Bryan Bruner*

## Certificate of Service

The undersigned certifies that on November 9, 2022, a true and correct copy of this document was served on counsel for TCU and counsel for Jane Roe via the Court's electronic filing system, CM/ECF.

*Lynne B. Frank*