IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>*Plaintiff*,<br><br>v.<br><br>TEXAS CHRISTIAN UNIVERSITY,<br><br>*Defendant*. | Civil Action No. 4:22-CV-00297-O |

**PLAINTIFF JOHN DOE'S REPLY TO NON-PARTY JANE ROE'S RESPONSE TO PLAINTIFF JOHN DOE'S EMERGENCY MOTIONS TO HOLD NON-PARTY JANE ROE IN CONTEMPT OF COURT AND TO COMPEL ROE'S DEPOSITION**

**TO THE HONORABLE U.S. DISTRICT JUDGE REED O'CONNOR:**

This filing is Plaintiff John Doe's reply to Non-Party Jane Roe's response to Doe's motion to hold Roe in contempt of court and motion to compel the completion of Roe's court-ordered deposition. Doe intends to respond to Roe's separate motion for protective order and motion to quash Doe's trial subpoena within the time allowed by Local Rule 7.1(f), unless the Court orders otherwise.

## I. Introduction

Doe has already demonstrated his great need for Roe's sworn testimony. *See generally* John Doe's Response to Jane Roe's Motion to Quash (ECF No. 79). Indeed, Roe's credibility will be at the heart of Doe's claims, especially because TCU's Title IX process reversed the burden of proof and required Doe to prove a non-violation of Title IX. *Id.* at 7–9.

While TCU's Title IX process was never a search for truth, the trial of this matter is supposed to be. And because "discovery is founded upon the policy that the search for truth should

be aided," the Court should enforce its prior orders and grant the emergency relief Doe requests. *Franks v. Nat'l Dairy Products Corp.*, 41 F.R.D. 234, 238 (W.D. Tex. 1966) (quoting *Tiedman v. American Pigment Corporation*, 253 F.2d 803, 808 (4th Cir. 1958)).

## II. Brief: Argument & Authorities

### A. Roe remains defiantly in contempt.

Roe's response demonstrates the cynical game she is playing with the Court and Doe. Doe's subpoena and the Court's previous orders "relat[ing] to it," Fed. R. Civ. P. 45(g), required Roe to submit to a deposition of up to four hours. *See* Order, ECF No. 96 at 6-7; Order, ECH No. 118 at 4-5. The Court specifically "**ORDER[ED]** Roe to comply with the subpoena to appear for deposition, subject to the Court's specified modifications." *See* Order, ECF No. 118 at 4-5.

*Twice* the Court rejected Roe's efforts to avoid questioning about her underlying sexual assault allegations, citing "Doe's substantial need to obtain relevant information from Roe regarding the underlying allegations that gave rise to this lawsuit." Order, ECF No. 118 at 4. And based on Roe's opposition to such questioning, the Court imposed specific limitations aimed at easing what the Court found would be the "burden that necessarily comes with being deposed about one's allegations of sexual assault." *Id.* And the Court did so, citing "Doe's considerable need for information highly relevant to his dispute with TCU." *Id.* at 3.

The Court further identified as permissible topics of examination "information about … the panel hearing, and the appeal *in which [Roe] participated* directly or as a witness" and "[i]nformation reflecting on Roe's credibility—including potential motives to lie or to report [and] contradictory statements." Order, ECF No. 96 at 6 (emphasis in original). That the subpoena and Court's orders contemplate a deposition in which Doe could test Roe's credibility in the specific

context of her underlying sexual assault allegations was further confirmed when the Court ordered that "Doe **may not** seek any information from Roe regarding her prior sexual history with anyone *other than* Doe ...." *Id.* at 7 (bold in original; italics added); Order, ECF No. 118 at 5.

Yet despite the subpoena and the Court's orders, Roe refused to answer multiple questions aimed at, among other things, testing the veracity of her still-evolving but always-false allegations of Doe's sexual assaults. *See, e.g.*, App. A at 30-31 (Dep. 119:3-121:21) (Roe's newest version of the Colby Hall incident, wherein Doe was allegedly "on top of" Roe with Roe seeing Doe's "eyes" and then explaining, "I think 'on top' and 'next to' is not that ... I don't mean it differently."). As Mr. Drez explained on one of the times when he interrupted to interfere with the examination:

> MR. DREZ: Are you swearing your testimony before was true?
> THE WITNESS: Yes.
> MR. DREZ: Okay. So she's not – *she's refusing to talk about it here*, *but she's not disclaiming anything she's previously said.*

App. A at 15 (Dep. 60:8-13) (emphasis added).

And now Roe has doubled down on her contempt, arguing that by simply referring back "to her prior [unsworn] testimony before the TCU panel" and "swearing" that it "was true," she provided answers sufficient to cut off all further inquiry. *See* Response, ECF No. 131 at 17 ("Roe did answer certain questions by referring to her prior testimony before the TCU panel, even swearing multiple times that her prior testimony was true. That Doe's counsel did not like the answer does not equate to a refusal to answer, and in any event, Roe was not ordered to answer those or any questions and she certainly was not required to answer them more than one time.").

Like her counsel's argument, Roe's deposition strategy was aimed at defying the subpoena and the Court's orders. The Court specifically rejected Roe's argument that because "she has already testified exhaustively on the record produced in the Title IX disciplinary proceedings," Roe

should not have to answer under oath probing questions about her sexual assault allegations. Order, ECF No. 96 at 3. And despite being reminded during the deposition, "[y]ou made this argument and it was rejected by the court," Roe and her counsel remained disrespectfully and defiantly stiff-necked: "She is answering your questions. With regard to that specific question, she is telling you she's answered it before [*i.e.*, "I answered that during my trial with TCU when I - - when I said what happened"], *so move on*." App. A at 12 (Dep. 47:1-19) (emphasis added).

**1. A prior order directing Roe to answer specific questions is unnecessary.**

Roe and her counsel apparently believed she was at liberty to answer questions by evasively referring to her prior Title IX statements and then refusing any further inquiry or follow up since "[n]o where in the Court's order was Roe ordered to answer any particular question." Response, ECF No. 131 at 15-16. This, Roe argues, insulates her from any contempt finding. The only authority she cites in support is *Ibarra v. Baker*, 338 Fed. Appx. 457 (5th Cir. 2009).

In *Ibarra*, the district court sanctioned a lawyer ("Durfee") after his client violated a subpoena to produce documents. *See Ibarra*, 338 Fed. Appx. at 460. After being served with the subpoena, the client "deleted approximately 2,500 of the subpoenaed emails." *Id.* The Court noted "[t]here is no evidence that Durfee knew Rosenthal was going to do this." *Id.* at 469. Moreover, "no subpoena was issued to Durfee in his individual capacity." *Id.* at 471. Thus, the Court made the unremarkable ruling that "Durfee could not have disobeyed the subpoena if it did not require him to act, and the district court therefore abused its discretion insofar as it sanctioned Durfee under Rule 45." *Id.*

Here, Doe's subpoena and the Court's orders did require Roe "to act." And Roe's evasive answers and eventual refusal to give any answer to questions on topics on which the Court ordered

her deposition violated the subpoena and the Court's orders and constitute contempt. *See, e.g.*, *Andrews v. Holloway*, 256 F.R.D. 136, 139-145 (D.N.J. 2009) (holding witness in contempt of court's order identifying topics on which witness was to give testimony where witness "did appear for depositions and answer questions," but some of his answers were "intentionally evasive," others were not "complete and honest," and others were "at best, incomplete, and at worst, dishonest"); *Jones v. Clinton*, 36 F. Supp. 2d 1118, 1127 (E.D. Ark. 1999) (holding former President Clinton in civil contempt, explaining "[o]n two separate occasions, this Court ruled in clear and reasonably specific terms that plaintiff was entitled to information regarding any individuals with whom the President had sexual relations or proposed or sought to have sexual relations and who were during the relevant time frame state or federal employees. Notwithstanding these Orders, the record demonstrates by clear and convincing evidence that the President responded to plaintiff's questions by giving false, misleading and evasive answers that were designed to obstruct the judicial process."); *In re Gorsoan Ltd.*, No. 17-CV-5912 (RJS), 2020 WL 3172777, at *2-*3, *10 (S.D.N.Y. June 15, 2020) (imposing sanctions where court had previously held witness in contempt "under the Court's inherent authority, Rule 37(b)(2)(A)(vii), and Rule 45(g)" where, in response to subpoena and court's subsequent order requiring her to give her deposition, the witness "ultimately 'sat for a deposition'—literally, but … not in any meaningful sense" and ruling that her "flagrant and repeated failure to answer questions truthfully at her February 6, 2018 deposition was tantamount to a violation of that order") (citing *Andrews* for the proposition "that 'a party who attends a deposition and answers questions as mandated by a court order can be held in contempt of that order if his [or her] answers are misleading and evasive'") (brackets in original). As also pointed out by the court in *Andrews*:

> The purpose of a deposition is to enable a party to obtain truthful and complete information about relevant topics. Truthfulness is demanded through the requirement that the deponent testify under oath or affirmation, Rule 30(b)(5)(A)(iv), Fed.R.Civ.P., and completeness is required through the provisions of Rule 37(a)(4), Fed.R.Civ.P., that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond."

*Andrews*, 256 F.R.D. at 141.

Here, Roe refused to answer (either outright or by evasively referring to her prior unsworn statements) multiple questions on topics (her sexual assault allegations) that were contemplated by the subpoena, thoroughly litigated before the Court, and identified in the Court's orders as being relevant topics on which Roe was ordered to give her deposition. With her counsel's help, Roe defied the Court's orders and obstructed the judicial process. This is contempt under Rule 45(g).

**2. Being physically present for part of her court-ordered deposition does not insulate Roe from a contempt finding.**

Roe's contention that "Doe's motion is similar to one rejected in *Stewart v. Kroeker*, No. C04-2130L, 2005 WL 8172489 (W.D. Wash. Sept. 13, 2005)" is also meritless. Response, ECF No. 131 at 16. In *Stewart*, unlike here, there was no prior order litigating the subpoena and its scope and ordering compliance with it as tailored by the Court. *See id.* at *1. And since the subpoena in *Stewart* did not specify topics (nor would it; the witness was an individual, not an entity), the court ruled there was no basis for contempt under Rule 45(g). *Id.*

Contempt under Rule 37(b)(1) was also not viable in *Stewart* since the deposing party never obtained an order for the witness to respond to the specific questions to which she asserted her Fifth Amendment privilege. *Id.* Thus, there was no prior order which the witness defied to support a contempt finding under Rule 37(b)(1). *Id.*; *see also Evans v. Griffin*, 932 F.3d 1043, 1046 (7th Cir. 2019) (holding "form orders that the district court uses in many, if not all, *pro se* prisoner cases"

were not sufficient to constitute requisite orders under Rule 37(b), explaining, "[n]either of those orders compelled Evans to answer any questions, produce any documents, or sit for a deposition at all").

Here, the Court's prior orders addressed the scope of Roe's deposition, including issues of relevancy, and ordered compliance with the subpoena as tailored by the Court. Roe's violations of the Court's prior orders supply the necessary prerequisite to hold Roe in contempt under Rule 37(b)(1). *See* Fed. R. Civ. P. 37(b)(1).

**3. Roe also defied both the subpoena and the Court's orders when she unilaterally terminated the deposition early.**

Roe terminated her court-ordered deposition by leaving after approximately 2 hours and 15 minutes of questioning and before Doe's counsel had completed his examination.[1] Roe did so unilaterally and without seeking any modification of the Court's orders. This too is contempt. *See Andrews v. Holloway*, 256 F.R.D. 136, 142, 146 (D.N.J. 2009) ("The Court finds that Defendant's unilateral cancellation of depositions is contemptuous of its Order .... If Defendant felt, as he now argues, that Plaintiffs were abusing the discovery process, his option was to contact the Court and seek a modification of the Order—Defendant is well aware of the role the Court plays in moderating discovery disputes. Defendant did not do so and the Court finds him in contempt for ending depositions at will."); *Bythewood v. Unisource Worldwide, Inc.*, 413 F. Supp. 2d 1367, 1378–79 (N.D. Ga. 2006) (holding witness in contempt after he "became agitated and stormed out of the deposition, refusing to continue his testimony" and explaining "Green was not authorized to unilaterally end his deposition prior to its conclusion simply because he became agitated and lost his temper").

[1] The deposition started at 1:08 pm, and because Roe left, it stopped at 4:36 pm. *See* App. A at 1 (Dep. 1), 32 (Dep. 126). Excluding the off-the-record time for multiple intervening breaks, the actual deposition time was approximately 2 hours and 15 minutes.

As the Court in *Andrews* alluded to, Rule 30 contemplates a deponent's right to "move to terminate or limit [the deposition] on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent." Fed. R. Civ. P. 30(d)(3)(A). But "Rule 30(d)(3)(A) expressly limits the timing for a motion under Rule 30(d) to being made during a deposition." *Holmes v. N. Tex. Health Care Laundry Coop. Ass'n*, No. 3:15-CV-2117-L, 2016 WL 2609995, at *3 (N.D. Tex. May 6, 2016). A later-filed motion seeking to terminate the deposition is untimely. *See id.*; *Mashiri v. Ocwen Loan Servicing, LLC*, No. 12cv2838-L (MDD), 2014 WL 4608718, at *2 (S.D. Cal. Sept. 15, 2014) ("If counsel for Plaintiff believed that counsel for Defendant was asking the same question repeatedly in bad faith or to unreasonably annoy, embarrass or oppress Plaintiff, counsel's option was to move to terminate or limit the deposition under Rule 30(d)(3). Plaintiff's current motion to terminate the deposition is untimely for that purpose as Rule 30(d)(3) requires the motion be made during the deposition.").

Not only did Roe *not* make the required motion during her deposition, but she purposefully delayed, choosing instead to threaten the motion as a counterattack if Doe sought relief:

> MR. DREZ: And we will likewise reserve our rights to seek redress because counsel continued to ask the witness questions in a means designed to upset her and harass her and embarrass her, and nonetheless continued pressing that means, and we consider it improper and we'll raise that issue with the court and – *if and when relief is sought.*

App. 1 at 32 (Dep. 126:12-18) (emphasis added).

Roe's motion for protective order, asking the Court to grant her a "protective order from any further participation in this lawsuit," including to "preclude her from further deposition … testimony," based on "Doe's counsel's conduct at the deposition," *see* Response, ECF No. 131 at 17, 23-24, is nothing more than an untimely motion to terminate the deposition under Rule

30(d)(3). Here again, the Court should hold Roe in contempt for violating the subpoena and the Court's orders when she unilaterally terminated the deposition.[2]

**4. Roe ignores the Court's inherent authority and Plaintiff's motion to compel.**

Doe invoked the Court's inherent authority as one of three grounds for relief. *See* Motions, ECF No. 125 at 7-8. Roe ignored this ground, and she does not dispute that the record here invokes the Court's inherent authority to grant Doe relief. *See* Response, ECF No. 131 at 16-17.

Similarly, in addition to his motion for contempt, Doe also filed a motion to compel. *See* Motions, ECF No. 125 at 1-9. While there is overlap between the two motions, Doe is separately entitled to relief under Rule 37(a)(1) (an order compelling the completion of Roe's deposition) and Rule 37(a)(5) (the reasonable expenses incurred in making the motion, including attorneys' fees). *See* Fed. R. Civ. P. 37(a)(1), (a)(5).

Roe acknowledges Doe's compel motion. *See* Response, ECF No. 131 at 1, 24 ("The issue before the Court is whether to compel additional testimony from Roe," and asking the Court to "deny Doe's … Motion to Compel"). But Roe limited her response and arguments in opposition only to "Doe's Motion for Contempt," arguing it "should be denied" for various reasons related solely to a contempt finding under Rule 45(g) and Rule 30(b)(1). *Id.* at 15-17.

Doe acknowledges that Roe's separate and essentially third-filed motion for protective order asks the Court to "preclude her from further deposition … testimony." Response, ECF No. 131 at 24. But nowhere in her response does Roe dispute the Court's inherent authority to grant

---

[2] Contrary to Roe's apparent belief, nothing in the subpoena or the Court's orders specified the order in which Doe's counsel had to address relevant topics with Roe. *See* Response, p. 3 (claiming "Doe's counsel—over the course of more than two hours—asked almost no questions concerning the topics Doe told the Court he purportedly needed to pursue"). That Doe's counsel was prevented from questioning Roe on *all* relevant topics before Roe unilaterally terminated her deposition early highlights how Doe has been prejudiced by Roe's contempt.

Doe relief or Doe's separate ground under Rule 37 for compelling the completion of Roe's deposition and awarding Doe his reasonable expenses, including attorneys' fees.

## III. Conclusion

As Doe first stated, unless the Court issues an intervening order that obviates the need, Doe will file a separate response to Roe's latest dilatory motion seeking a protective order as well as her motion to quash. In that response, Doe will further establish that Roe is engaged in a bad faith test of wills with the Court and Doe. It is no accident Roe did not provide the Court with the video of her deposition. Doe will do so with his response. While the written transcript shows Roe was not harassed, badgered, or abused, the video confirms she was treated with patience and respect. And, equally important, the video shows Roe, for the most part, coolly and calmly executing her plan to flout the deposition process and this Court's orders. In sum, Doe's future response will provide important context for assessing the credibility of Roe's off-camera temper tantrums and the latest round of declarations from Roe's social worker advocates. In any event, Doe's emergency motions for contempt and to compel are ripe, and Doe respectfully requests the Court to grant them and to enter an order the Court deems best to ensure Roe complies with the subpoena and this Court's prior orders.

Respectfully submitted:

By: *H. Dustin Fillmore III*
H. Dustin Fillmore III
State Bar No. 06996010
Charles W. Fillmore
State Bar No. 00785861
The Fillmore Law Firm, L.L.P.
201 Main Street, Suite 700
Fort Worth, Texas 76102
817-332-2351 – Office
817-870-1859 – Fax
dusty@fillmorefirm.com

Bryan D. Bruner
State Bar No. 03252475
Lynne B. Frank
State Bar No. 24087215
Bruner & Bruner, P.C.
3700 W. 7th Street
Fort Worth, Texas 76107
817-332-6633 – Office
817-332-6619 – Fax
bbruner@brunerpc.com
Lfrank@brunerpc.com

Brian Roark
State Bar No. 00794536
Botsford & Roark
1307 West Avenue
Austin, Texas 78701
512-476-1900 – Office
512-479-8040
Admitted pro hac vice

*Counsel for Plaintiff John Doe*

## Certificate of Service

The undersigned certifies that on November 17, 2022, a true and correct copy of this document was served on counsel for TCU and counsel for Jane Roe via the Court's electronic filing system, CM/ECF.

*Charles W. Fillmore*